**IN THE DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM DAVIS | ) | |
| 143 Gabriel Drive | ) | |
| Bear, Delaware 19701 | ) | C.A. No.  1:21-cv-01773 |
| | ) | |
| ISSAC MONTAGUE | ) | DEMAND FOR |
| Sussex Correctional Institution | ) | JURY TRIAL |
| 23203 Dupont Blvd. | ) | |
| Georgetown, Delaware 19947 | ) | |
| | ) | |
| LUKE ERIXSON | ) | |
| 24281 German Road | ) | |
| Seaford, Delaware 19973 | ) | |
| | ) | |
| KEITH CAMPBELL | ) | |
| 11 Lochview Drive | ) | |
| Bear, Delaware 19701 | ) | |
| | ) | |
| ADAM CALLOWAY | ) | |
| 29 North Pine Ext. | ) | |
| Seaford, Delaware 19973 | ) | |
| | ) | |
| NASIER GIBBS | ) | |
| 321 South East Second Street | ) | |
| Milford Delaware 19963 | ) | |
| | ) | |
| CHARLES TURNER | ) | |
| 12544 Ponder Road | ) | |
| Ellendale, Delaware 19941 | ) | |
| | ) | |
| AUGUSTINE HAYMOND | ) | |
| Sussex Correctional Institution | ) | |
| Medium Building A-Tier | ) | |
| 23203 Dupont Blvd. | ) | |
| Georgetown, Delaware 19947 | ) | |
| | ) | |
| NEKI T. GIBBS SR. | ) | |
| James T. Vaughn Correctional Center | ) | |
| 1181 Paddock Road | ) | |
| Smyrna, Delaware 19977 | ) | |
| | ) | |
| AARON GIVENS | ) | |
| 31531 Jestice Farmroad | ) | |
| Laurel, Delaware 19956 | ) | |

DONBRAY DURHAM                                )
624 River Road                               )
Dover, Delaware 19901                        )
                                             )
MICHAEL KLINE                                )
34146 Colony Drive North                     )
Millsboro, Delaware 19966                     )
                                             )
KEVIN IGNUDO                                  )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                    )
                                             )
GEORGE STURGIS                               )
26558 HANDY ROAD                             )
Millsboro, Delaware 19966                     )
                                             )
RICHARD EDWARDS                              )
Sussex Correctional Institution              )
Medium Building B-Tier                        )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                    )
                                             )
TIMOTHY NEWCOMB                              )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                    )
                                             )
AJ MCMULLEN                                   )
James T. Vaughn Correctional Center           )
1181 Paddock Road                            )
Smyrna, Delaware 19977                        )
                                             )
BARRY KLINE                                   )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                    )
                                             )
GERALD LUSBY                                  )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                    )
                                             )
CHRISTOPHER MORALES                          )
2264 York Drive                              )

2

Woodbridge, Virginia 22191                )
                                          )
DONALD R. BECKWITH                        )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
                        Plaintiffs        )
                                          )
v.                                        )
                                          )
KIRK NEAL                                 )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
LYLE NEAL                                 )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
RYAN MADDOX                               )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
MATTHEW LONG                              )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
SGT. BRASWELL                             )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
CORRECTIONAL OFFICER EVANGLETT            )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
CORRECTIONAL OFFICER DUPERON              )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
CORRECTIONAL OFFICER WILKENS              )

3

Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
                                                        )
CORRECTIONAL OFFICER TEEFOR )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
                                                        )
CORRECTIONAL OFFICER WEST )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
                                                        )
CORRECTIONAL OFFICER MATHIS )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
                                                        )
CORPORAL KRAFT )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
                                                        )
CORRECTIONAL OFFICER VERNET )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
                                                        )
CORRECTIONAL OFFICER PURDY )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
                                                        )
ISSAC MITCHELL )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
                                                        )
SGT. CHARLES )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
                                                        )
SGT. HUDSON )
Sussex Correctional Institution )

23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
NICOLE GARDENER                           )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
SGT. HASTINGS                             )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
SGT. GIVENS                               )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
CORRECTIONAL OFFICER MYLES VENT           )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
BRANDON MESSICK                           )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
SGT. PURNELL                              )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
SGT. CASSIDY                              )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
SGT. STEVEN LONG                          )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
CORPORAL STEELE                           )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )

Georgetown, Delaware 19947                )
                                          )
SGT. MCCARTHY                             )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
CORRECTIONAL OFFICER SESSELER             )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
CORRECTIONAL OFFICER CLARK                )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
CORRECTIONAL OFFICER WRIGHT               )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
CORRECTIONAL OFFICER EVERETT              )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
JOHN DOES                                 )
CORRECTIONAL OFFICERS                     )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
TRUMAN MEARS, WARDEN                      )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
JON BECK, DEPUTY WARDEN                   )
Sussex Correctional Institution           )
23203 Dupont Blvd.                        )
Georgetown, Delaware 19947                )
                                          )
                                          )
                    Defendants            )

## COMPLAINT

1.     Plaintiffs are former and current inmates at Sussex Correctional Institution in Georgetown, Delaware ("SCI") who bring this action to remedy, and seek redress for, a systemic pattern of abusive and unlawful conduct by correctional officers at SCI. This abusive and unlawful conduct has been ratified and institutionalized by the policies established by SCI's Warden and Deputy Warden.

2.     On numerous occasions throughout 2020 and 2021, Defendants engaged in extreme, unprovoked and unnecessary acts of violence against the Plaintiffs. Defendants' egregious misconduct, including the delay or denial of medical attention to treat the injuries resulting from their assaults, caused permanent physical harm, severe emotional distress and violated the Plaintiffs' Constitutional rights.   This Complaint seeks compensatory damages, injunctive relief, punitive damages, attorneys' fees, and any and all other available remedies.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question) and supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a).

4.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) as the Defendants are all located in this District, and the acts and omissions giving rise to the claims all occurred in this District.

## PARTIES

5.     Plaintiff William Davis resides at 143 Gabriel Drive, Bear, Delaware 19701.  He is a citizen of Delaware.

6.     Plaintiff Isaac Montague is presently being held at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947 He is a citizen of Delaware.

7

7.    Plaintiff Luke Erixson resides at 24281 German Road, Seaford, Delaware 19973. He is a citizen of Delaware.

8.    Plaintiff Keith Campbell resides at 11 Lochview Dr., Bear, Delaware 19701.  He is a citizen of Delaware.

9.    Plaintiff Adam Calloway resides at 29 North Pine Ext., Seaford, Delaware 19973. He is a citizen of Delaware.

10.    Plaintiff Nasier Gibbs resides 321 South East Second Street, Milford, Delaware 19963.  He is a citizen of Delaware.

11.    Plaintiff Charles Turner resides at 12544 Ponder Road, Ellendale, Delaware 19941. He is a citizen of Delaware.

12.    Plaintiff Augustine Haymond is presently being held at SCI.  He is a citizen of Delaware.

13.    Plaintiff Neki Gibbs is presently being held at James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977.  He is a citizen of Delaware.

14.    Plaintiff Aaron Givens resides at 31531 Jestice Farmroad, Laurel Delaware 19956. He is a citizen of Delaware.

15.    Plaintiff Donbray Durham resides at 624 River Road, Dover, Delaware 19901.  He is a citizen of Delaware.

16.    Plaintiff Michael Kline resides at 34146 Colony Drive North, Millsboro Delaware 19966.  He is a citizen of Delaware.

17.    Plaintiff Kevin Ignudo is presently being held at SCI.  He is a citizen of Delaware.

18.    Plaintiff George Sturgis is presently being held at SCI.  He is a citizen of Delaware.

19.    Plaintiff AJ McMullen is presently being held at James T. Vaughn Correctional. He is a citizen of North Carolina.

20.    Plaintiff Barry Kline is presently being held at SCI.  He is a citizen of Delaware.

21.    Plaintiff Christopher Morales resides at 2264 York Drive, Woodbridge, Virginia 22191.

22.    Plaintiff Gerald Lusby is presently held at SCI.  He is a citizen of Delaware.

23.    Plaintiff Donald R. Beckwith is presently held at SCI.

24.    All of the Plaintiffs exhausted the available grievance remedies yet received no redress.

25.    Defendant Kirk Neal is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about February and July 18, 2020, and February 21, April 1, May 23, August 21, September 18, and October 18, 2021.  Defendant Neal was involved in unprovoked violence against Plaintiffs Davis, Montague, Erixson, Campbell, Nasir Gibbs, Haymond, Morales and Givens.  Reasonable discovery may establish that Defendant Kirk Neal was also involved in assaults against other Plaintiffs.

26.    Defendant Lyle Neal is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19948.  He was working on or about February September 18, 2020. He was involved in unprovoked violence against Plaintiff Montague.  Reasonable discovery may establish that Defendant Lyle Neal was also involved in assaults against other Plaintiffs.

27.    Defendant Ryan Maddox is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about May 18, and September 18, 2021, and was involved in unprovoked violence against Plaintiff Montague and Neki Gibbs. Reasonable discovery may show that he was also involved in the unprovoked attacked against

Plaintiff Davis on or about October 18, 2021.   Reasonable discovery may establish that Defendant Maddox was also involved in assaults against other Plaintiffs.

28.      Defendant Matthew Long is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He oversaw a hearing involving Plaintiff Montague and prevented Plaintiff Montague from seeking redress.  Reasonable discovery may establish that Defendant Long was also involved in assaults against other Plaintiffs.

29.      Defendant Sgt. Braswell is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about September 18, 2021, and was involved in unprovoked violence against Plaintiff Montague. Reasonable discovery may show that he was also involved in the unprovoked attacked against Plaintiff Davis on or about October 18, 2021.   Reasonable discovery may establish that Defendant Braswell was also involved in assaults against other Plaintiffs.

30.      Defendant Evanglett is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about October 18, 2021, and was involved in unprovoked violence against Plaintiff Davis.  Reasonable discovery may show that he was also involved in the unprovoked attacked against Plaintiff Montague on or about September 18, 2021.   Reasonable discovery may establish that Defendant Evanglett was also involved in assaults against other Plaintiffs.

31.      Defendant Duperon is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about July 18, 2020 and was involved in unprovoked violence against Plaintiff Campbell.   Reasonable discovery may establish that Defendant Duperon was also involved in assaults against other Plaintiffs.

32.     Defendant Wilkens is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about July 18, 2020 and was involved in unprovoked violence against Plaintiff Campbell.  Reasonable discovery may establish that Defendant Wilkens was also involved in assaults against other Plaintiffs.

33.     Defendant Keefer is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about July 18, 2020 and was involved in unprovoked violence against Plaintiff Campbell.  Reasonable discovery may establish that Defendant Keefer was also involved in assaults against other Plaintiffs.

34.     Defendant West is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  She was working on or about July 18, 2020 and was involved in unprovoked violence against Plaintiff Campbell.  Reasonable discovery may establish that Defendant West was also involved in assaults against other Plaintiffs.

35.     Defendant Mathis is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  She was working on or about February 19, 2020 and was involved in unprovoked violence against Plaintiff Calloway.  Reasonable discovery may establish that Defendant Mathis was also involved in assaults against other Plaintiffs.

36.     Defendant Corporal Kraft is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about February 21, 2021, and was involved in unprovoked violence against Plaintiff Turner.  Reasonable discovery may establish that Defendant Kraft was also involved in assaults against other Plaintiffs.

37.     Defendant Vernet is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about August 2020 and April 1, and September 1, 2021, and was involved in unprovoked violence against Plaintiff Edwards,

Haymond, and Kline.  Reasonable discovery may establish that Defendant Vernet was also involved in assaults against other Plaintiffs.

38.    Defendant Isaac Mitchell is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about October 29, 2021 and December 6, 2021, and was involved in unprovoked violence against Plaintiff Haymond and Plaintiff Newcomb.  Reasonable discovery may establish that Defendant Mitchell was also involved in assaults against other Plaintiffs.

39.    Defendant Purdy is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about September 1, 2021 and December 6, 2021, and was involved in unprovoked violence against Plaintiff Kline.  Reasonable discovery may establish that Defendant Purdy was also involved in assaults against other Plaintiffs.

40.    Defendant Sgt. Hudson is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about November 21, 2021, and was involved in unprovoked violence against Plaintiff Sturgis.  Reasonable discovery may establish that Defendant Hudson was also involved in assaults against other Plaintiffs.

41.    Defendant Dr. Nicole Gardener is a nurse employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  She was working on or about November 30, 2021, and was involved in medical neglect against Plaintiff Sturgis.  Reasonable discovery may establish that Defendant Gardener was involved in additional medical neglect that impacted other Plaintiffs.

42.    Defendant Sgt. Hastings is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about August 2020, and was involved in unprovoked violence against Plaintiff Edwards.  Reasonable discovery may establish that Defendant Hastings was involved assaults against other Plaintiffs.

43.     Defendant Sgt. Givens is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about August 2020, and was involved in unprovoked violence against Plaintiff Edwards.  Reasonable discovery may establish that Defendant Givens was involved in assaults against other Plaintiffs.

44.     Defendant Brandon Messick is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about August 2020, and was involved in unprovoked violence against Plaintiff Edwards.  Reasonable discovery may establish that Defendant Messick was involved in assaults against other Plaintiffs.

45.     Defendant Sgt. Purnell is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about August 2020, and was involved in unprovoked violence against Plaintiff Edwards.  Reasonable discovery may establish that Defendant Purnell was involved in assaults against other Plaintiffs.

46.     Defendant Sgt. Cassidy is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about August 2020, and was involved in unprovoked violence against Plaintiff Edwards.  Reasonable discovery may establish that Defendant Cassidy was involved in assaults against other Plaintiffs.

47.     Defendant Keen is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about August 2020, and was involved in unprovoked violence against Plaintiff Edwards.  Reasonable discovery may establish that Defendant Keen was involved in assaults against other Plaintiffs.

48.     Defendant Humes is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working on or about August 2020, and was involved in

unprovoked violence against Plaintiff Edwards. Reasonable discovery may establish that Defendant Humes was involved in assaults against other Plaintiffs.

49.    Defendant Sgt. Steven Long is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about November 25, 2021, and was involved in unprovoked violence against Plaintiff Ignudo. Reasonable discovery may establish that Defendant Long was involved in assaults against other Plaintiffs.

50.    Defendant Corporal Steele is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about November 25, 2021, and was involved in unprovoked violence against Plaintiff Ignudo. Reasonable discovery may establish that Defendant Steele was involved in assaults against other Plaintiffs.

51.    Defendant Sgt. McCarthy is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about November 25, 2021, and was involved in unprovoked violence against Plaintiff Ignudo. Reasonable discovery may establish that Defendant McCarthy was involved in assaults against other Plaintiffs.

52.    Defendant Sesseler is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working in July or August 2017, and was involved in unprovoked violence against Plaintiff McMullen. Reasonable discovery may establish that Defendant Sesseler was involved in assaults against other Plaintiffs.

53.    Defendant Clark is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working in July or August 2017, and was involved in unprovoked violence against Plaintiff McMullen. Reasonable discovery may establish that Defendant Clark was involved in assaults against other Plaintiffs.

54.     Defendant Everett is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working in July or August 2017, and was involved in unprovoked violence against Plaintiff McMullen.  Reasonable discovery may establish that Defendant Everett was involved in assaults against other Plaintiffs.

55.     Defendant Wright is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was working in June 5, 2020, and was involved in unprovoked violence against Plaintiff Lusby.  Reasonable discovery may establish that Defendant Wright was involved in assaults against other Plaintiffs.

56.     Defendant John Does are unidentified correctional officers employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947 who were working throughout 2020 and 2021 and were involved in unprovoked violence against Plaintiffs.  Reasonable discovery, including but not limited to the videotapes of the attacks, will reveal the identity of the John Doe Defendants and reveal whether they were involved in the assaults on Plaintiffs.

57.     Defendant Truman Mears serves as the Warden of the SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  In that capacity, he is responsible for establishing the policies and procedures for correctional staff at SCI. By allowing and encouraging a system of abusive conduct by correctional officers to become a *de facto* policy at SCI, he was personally involved in the unconstitutional and unlawful conduct at issue. In addition, reasonable discovery will show that he was alerted on multiple occasions to unprofessional and illegal conduct by the correctional guards, yet failed to act.  His failure to act led to a litany of violent attacks, including but not limited to the violent attack on Plaintiff Davis.

58.     Defendant Jon Beck serves as the Deputy Warden of the SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  In that capacity, he is responsible for establishing the policies and

15

procedures for correctional staff at SCI. By allowing and encouraging a system of abusive conduct by correctional officers to become a *de facto* policy at SCI, he was personally involved in the unconstitutional and unlawful conduct at issue. In addition, reasonable discovery will show that he was alerted on multiple occasions to unprofessional and illegal conduct by the correctional guards, yet he failed to act.  His failure to act led to a litany of violent attacks, including but not limited to the violent attack on Plaintiffs Davis.

## FACTS REGARDING ATTACK ON PLAINTIFF MONTAGUE

59.    On or about September 18, 2021, while working as a correctional officer at SCI, Defendant Kirk Neal initiated and engaged in a violent attack against Plaintiff Montague.

60.    Defendant Neal lacked any cause or provocation for the violent attack.

61.    Plaintiff Montague encountered Defendant Kirk Neal when he lined up to use the free phone, and obtain his commissary sheet, phone sheet and toilet paper.  Defendant Kirk Neal told him he could not use the phone and needed to go to his cell for "lock in."

62.    Defendant Kirk Neal followed Plaintiff Montague to his cell, asking for his pen back and telling him to "shut the fuck up."

63.    Defendant Kirk Neal stood in the doorway of Plaintiff Montague's cell, preventing Plaintiff Montague from closing his cell door.

64.    Defendant Kirk Neal jumped in and out of the doorway, and called "a code."

65.    Upon hearing Defendant Kirk Neal call a code, Plaintiff Montague immediately laid down on the floor of his cell on his stomach with his hands behind his back.

66.    Despite Plaintiff Montague's passive posture, Defendant Kirk Neal began to assault Plaintiff Montague.

16

67.     As Plaintiff Montague laid on his stomach with his hands behind his head, trying his best to defend himself, Defendant Kirk Neal kneed him in the side of his face.

68.     Defendants Braswell, L. Neal and Maddox rushed to Plaintiff Montague's cell and joined with Defendant Kirk Neal in assaulting Plaintiff Montague.

69.     These Defendants kicked and punched Plaintiff Montague and pulled his dreadlocks from his head, leaving bald spots.

70.     One Defendant used his handcuffs as a weapon, hitting Plaintiff Montague in his face and causing a permanent scar.

71.     Defendants Kirk Neal and Maddox called Plaintiff Montague a racist name.

72.     Defendant Maddox inserted the can of pepper spray into Plaintiff Montague's mouth and pressed down on the nozzle, forcing large amounts of pepper spray into Plaintiff Montague's body.

73.     Other Defendants John Does were present and videotaped the assault, but did not participate.  None attempted to halt the assault.

74.     The Defendants' assault was so severe that Plaintiff Montague could not walk when Defendants finally halted the beatings.

75.     Defendant John Doe placed Plaintiff Montague on a gurney and brought him to a nurse, who patched up his bleeding face.

76.     Defendants John Does placed Plaintiff Montague in "the hole" for twenty-one days.

77.     Plaintiff Montague was not provided with adequate medical examination or treatment.

78.     Plaintiff Montague repeatedly filed "sick slips" seeking pain relief and treatment but received only ice for his injuries.

17

79.     Plaintiff Montague's eye remained swollen shut for multiple days and he could not breath properly for many days.

80.     Even today, months after the assault, Plaintiff Montague's eye remains darkened.

81.     Plaintiff Montague's shoulder remains injured from the assault.

82.     Plaintiff Montague suffers from sudden sharp pains in his head.

83.     Defendant Sgt. Matthew Long prevented Plaintiff Montague from seeking redress for his injuries by refusing to allow him to call witnesses and refusing to listen to Plaintiff Montague's testimony.

84.     Plaintiff Montague subsequently filed grievances, all of which were ignored or disregarded.

**FACTS REGARDING ATTACK ON PLAINTIFF DAVIS**

85.     On or about October 18, 2021, Plaintiff Davis was being detained as SCI despite the fact that his release had been ordered.  SCI failed to promptly implement the release order, and instead detained Plaintiff Davis for more than 72 hours.

86.     Plaintiff Davis, concerned that he was not being released as ordered by the court, approached the control desk and asked Defendant Kirk Neal about his release.

87.     Defendant Kirk Neal ignored Plaintiff Davis' request.

88.     Approximately an hour later, during recreation time, Plaintiff Davis thought he heard his name called over the public announcement system and approached Defendant Evanglett at the control center once again to inquire.

89.     Defendant Neal screamed at him that his name had not been called.

18

90.    Approximately ten minutes later, Plaintiff Davis heard his name called.  He approached the control desk again, and asked a correctional officer to read the status sheet to him because he did not have his glasses.

91.    Defendant Kirk Neal overhead the request, and began to shout at him with words to the effect: "Get the fuck over here you fucking dickhead."

92.    Defendant Kirk Neal grabbed Plaintiff Davis and walked him down the tier, asking "Where the fuck do you live?"

93.    Plaintiff Davis answered that he lived in Newark, but then clarified that he lived in Bear.

94.    The fact that Plaintiff Davis answered with his address out of the facility rather than with information about his cell block designation enraged Defendant Neal.  He slammed Plaintiff Davis to the ground, and began to kick and beat him.

95.    Defendant Evanglett and other as-yet unidentified Defendants joined with Defendant Kirk Neal to beat and kick Plaintiff Davis.

96.    One Defendant held his feet to the ground.

97.    Another Defendant repeatedly punched Plaintiff Davis in the head.

98.    Yet another Defendant handcuffed Plaintiff Davis' hands behind his back.

99.    Defendants Kirk Neal, Evanglett and the other as-yet unidentified Defendants continued the violent beating and kicking even after handcuffing Plaintiff Davis.

100.    Defendant Evanglett began to spray pepper spray in Plaintiff Davis' face.

101.    Defendant Evanglett inserted the nozzle into Plaintiff Davis' nose and sprayed excessive amounts of pepper spray into Plaintiff Davis' body.

102.    The pepper spray caused such extreme pain and harm that Plaintiff Davis formed the belief that he was going to die and began to have severe difficulty breathing.

103.    When the nozzle broke off the pepper spray and began to spew on the Defendants, they finally stopped assaulting Plaintiff Davis.

104.    Defendants took Plaintiff Davis to the booking and receiving.

105.    Defendant Neal then took Plaintiff Davis to a holding cell, and slammed him, face first, into the tiled concrete floor.

106.    Plaintiff Davis was still handcuffed and could not break the fall in any way.

107.    Plaintiff Davis did not receive adequate medical evaluation or treatment despite being visibly injured with serious head injuries.

108.    During the next shift, at approximately 8:30pm, SCI belatedly released Plaintiff Davis to his mother.

109.    Plaintiff Davis went to the emergency room and sought medical treatment for his serious injuries, which included substantial injuries to his head and brain.

110.    Plaintiff Davis continues to need medical care and continues to suffer from his injuries.

**FACTS REGARDING ATTACK ON PLAINTIFF LUKE ERIXSON**

111.    On or about January 29, 2020, at approximately five o'clock in the evening, in preparing for a search of the inmates and tier, correctional officers began ordering inmates out of the area.

112.    Due to a loud television on nearby, Plaintiff Erixson was unable to hear orders to exit.

113.    Defendant Kirk Neal verbally assaulted Plaintiff Erixson yelling, "dumbass, get up!"  Plaintiff Erixson immediately complied.

114.    Defendant Kirk Neal grabbed Plaintiff Erixson's arm, forced it up over his head, and twisted it behind his back between his shoulder blades.  Defendant Kirk Neal pulled Plaintiff Neal into a nearby hallway by the cafeteria holding Plaintiff Erixson's forearm in one hand, and elbow in the other.  Plaintiff Erixson complied.

115.    Defendant Kirk Neal then forced Plaintiff Erixson into a stairwell.

116.    Defendant Kirk Neal slapped Plaintiff Erixson approximately nine times across the face.

117.    Defendant Kirk Neal ordered Plaintiff Erixson to take his clothing off.  While Plaintiff Erixson was undressing, Defendant Kirk Neal verbally assaulted Plaintiff Erixson yelling, "I always knew you were a bitch," and "you fucking pussy!"

118.    Defendant Kirk Neal told Plaintiff Erixson to get dressed.  Plaintiff Erixson was ordered to go outside.  Plaintiff Erixson began to cry from the assault.

119.    Correctional officers ordered Plaintiff Erixson and other inmates to go to the gym, and then back into the building.

120.    Plaintiff Erixson reported the assault to correctional officer West.  Ms. West shook her head at Plaintiff Erixson.

121.    Plaintiff Erixson reported the assault to another as-yet identified correctional officer and expressed that he was afraid to go back into the building.  The as-yet identified correctional officer responded, "I don't know what to tell you."

122.    Plaintiff Erixson reported the assault to an as-yet identified nurse who also did nothing.

21

123.    Once back on the tier, Plaintiff Erixson filed a grievance no. 489421.  His grievance never received a response.

124.    On or about February 18, 2020, seeking redress for the assault, Plaintiff Erixson's mother reported the assault to Janice, the Warden's secretary.  The report never received a response.

125.    Over the next four months, Defendant Kirk Neal verbally harassed Plaintiff Erixson at least twice a week on his tier.  Defendant Kirk Neal yelled, among other things, "are you going to tell your Mommy on me."

126.    Plaintiff Erixson filed numerous additional grievances against Defendant Kirk Neal with the understanding, that if proper procedure was followed, the initial grievance would have required Defendant Kirk Neal to no longer have contact with Plaintiff Erixson.  Each time, he attempted to follow up about a grievance, correctional officers laugh and taunted Plaintiff Erixson.  Four months later, Capt. Hickman interviewed Plaintiff Erixson regarding the assault and Plaintiff Erixson did not see Defendant Kirk Neal onward.

127.    Plaintiff Erixson suffered from ongoing fear and anxiety of having an interaction with Defendant Kirk Neal.

128.    Defendant Kirk Neal's assault, coupled with being laughed at by correctional officers in connection to his grievances, caused Plaintiff Erixson to became so anxious of coming out of his cell that he oftentimes chose to not eat to avoid any interaction with Defendant Kirk Neal or other correctional officers.

129.    Even today, Plaintiff Erixson suffers from panic attacks as a result of the assault.

22

## FACTS REGARDING ATTACK ON PLAINTIFF KEITH CAMPBELL

130.    On or about July 18, 2020, while Plaintiff Campell was exercising in the gym, Defendant Duperon took possession of Plaintiff Campbell's bedsheet that was hanging in his dorm window next to his bunk bed.

131.    Plaintiff Campbell requested that Defendant Duperon returned the bedsheet but his requests were ignored.

132.    Plaintiff Campbell observed Defendant Duperon return a bedsheet belonging to another inmate who is white, but Defendant Duperon persisted in his refusal to return the bedsheet to Plaintiff Campbell, who is Black.   Plaintiff Campbell told Defendant Duperon that such disparate treatment appeared racist.

133.    At approximately one o'clock in the afternoon, Defendant Kirk Neal called Plaintiff Campbell into his office.   Defendant Kirk Neal accompanied Plaintiff Campbell back to his dorm to inspect his area.   Defendant Kirk Neal asked Plaintiff Campbell to open his locker.   Plaintiff Campbell asked to speak to Defendant Kirk Neal's supervisor, Lt. Pussey.

134.    In response to that request, Defendant Kirk Neal took out a can of pepper spray and sprayed it into Plaintiff Campbell's face.

135.    Defendant Kirk Neal tackled Plaintiff Campbell to the ground.

136.    While on the ground, Defendant Kirk Neal sprayed Plaintiff Campbell in his nose and face making it difficult for Plaintiff Campbell to breathe.   Defendant Kirk Neal sprayed pepper spray in his own hands and rubbed it into Plaintiff Campbell's eyes.

137.    Defendants Duperon, Wilkens, Keifor, West, and other as-yet unidentified Defendants rushed to the scene and joined with Defendant Neal to beat Plaintiff Campbell at the tier.

23

138.    Defendant Kirk Neal got on top of Plaintiff Campbell and punched Plaintiff Campbell in his face.

139.    Defendant Kirk Neal continued to spray pepper spray in Plaintiff Campbell's mouth and eyes.

140.    Defendants assaulted Plaintiff Campbell for approximately five minutes.

141.    Lt. Pussey came to the assault and ordered the Defendants to get off Plaintiff Campbell at which point Defendants finally stopped assaulting Plaintiff Campbell.

142.    Plaintiff Campbell was handcuffed and walked off his dorm tier.  Defendants forced Plaintiff Campbell to walk with pants down and his genitals exposed.

143.    Defendants strip searched Plaintiff Campbell and ordered him to put his pepper spray covered fingers in his mouth and touch his genitals.  Plaintiff Campbell was not allowed to shower for twenty-four hours.

144.    Plaintiff Campbell was not provided with adequate medical examination or treatment despite being visibly injured with bruises and scratches on his eyes and covered in pepper spray.  Defendants took Plaintiff Campbell to medical where he received only a band aid for his serious injuries.

145.    Defendants John Does placed Plaintiff Campbell in "the hole" for fifteen days.  On or around August 4, 2020, Plaintiff Campbell was transferred to Vaughn and placed in the SHU, where he remains.

146.    Plaintiff Campbell's shoulder was injured from the assault and left a painful lump from the assault making rotation of his shoulder painful and difficult.  Plaintiff Campbell's shoulder makes a popping sound when rotated.  He requested an MRI but his request was denied.

24

He had three visits with a physical therapist over the course of two months.  Plaintiff Campbell believes the bone healed incorrectly because bone is still protruding from shoulder.

147.    Plaintiff Campbell sustained broken blood vessels in his left eye from Defendant Neal shoving his fingers and rubbing pepper spray in Plaintiff Campbell's eyes.  Plaintiff Campbell's vision remains blurry as a result of the assault. Plaintiff Campbell began using eye drops as a result of this incident and continues to use them when his sight is blurry.

148.    This was the first time Plaintiff Campbell had ever been pepper sprayed.  Even today, Plaintiff Campbell feels like there's always something stuck in his throat and is constantly trying to clear his throat.

149.    Plaintiff Campbell filed grievances but was prevented from seeking redress for his injuries.  During the hearing, the hearing officer refused to allow Plaintiff Campbell to call witnesses, and refused to view video recordings of the incident.  Defendants objected to interviewing witnesses due to COVID risk.  On or about April 2020, Plaintiff Campbell's grievances were dismissed.

150.    As a result of the assault, Plaintiff Campbell suffers from frequent nightmares, loss of sleep, claustrophobia, headaches, and anxiety.  He received two mental health counselling sessions for after filing a grievance regarding lack of treatment where he was instructed to take deep breaths and redirect his thoughts.

**FACTS REGARDING ATTACK ON PLAINTIFF ADAM CALLOWAY**

151.    On or about February 19, 2020, at approximately midnight, needing to use the bathroom, Plaintiff Calloway walked to the community bathroom.

152.    Plaintiff Calloway noticed Defendant Mathis on watch his way to the bathroom.

153.    Plaintiff Calloway, concerned and mindful that Defendant Mathis was a female correction officer, used a bedsheet to cover himself as he used the bathroom.

154.    Defendant Mathis screamed at Plaintiff Calloway to "take the fucking sheet down" to which Plaintiff Calloway complied.

155.    Defendant Mathis shouted at Plaintiff Calloway to, "get the fuck over here right now."  Plaintiff Calloway complied and approached Defendant Mathis.

156.    Defendant Mathis said that Plaintiff Calloway had "breached security" by using the bedsheet.  Plaintiff Calloway explained why he used the bedsheet.

157.    Defendant Mathis slammed her hand down on the desk and asked, "so what are you going to do?"

158.    Defendant Mathis reached for her pepper spray and sprayed excessive amounts of pepper spray into Plaintiff Calloway's face.

159.    Defendant Mathis tackled Plaintiff Calloway, causing him to land face down.

160.    Due to his fall positioning, Plaintiff Calloway was unable to put his hands behind his back as Defendant Mathis was on top of him.

161.    Defendant Mathis grabbed Plaintiff Calloway's hair and struck Plaintiff Calloway in the head with the pepper spray can.

162.    Defendant Mathis deployed excessive amounts of pepper spray a second time into Plaintiff Calloway's face.

163.    Defendant Mathis handcuffed and threw him into the hallway.

164.    Due to the excessive pepper spray to the face, Plaintiff Calloway could not breathe.

165.    Other as-yet unidentified Defendants arrived and approached Plaintiff Calloway as he was on the ground and handcuffed.

166.    One Defendant spit and verbally assaulted Plaintiff Calloway.

167.    Another Defendant picked Plaintiff Calloway up and placed their hand under his arm and around Plaintiff Calloway's neck, and grabbed his hair.  Defendant put Plaintiff Calloway in a half-nelson position.

168.    Defendants John Does collectively assaulted Plaintiff Calloway and punched Plaintiff Calloway in the face, chest, and stomach.

169.    Defendants continued to assault Plaintiff Calloway by driving Plaintiff Calloway's head into a closed and locked door.  The impact of Plaintiff Calloway's head hitting the door caused his forehead to swell and glass on the door to crack.  The impact caused made Plaintiff Calloway to cry.

170.    Defendants mocked Plaintiff Calloway and made crying sounds themselves to taunt him.

171.    Defendant began to drag Plaintiff Calloway and his legs gave out.

172.    One Defendant maneuvered Plaintiff Calloway's arm in a way that "snapped" his elbow, leaving a tennis ball size knot in the elbow area.

173.    Defendant John Doe placed Plaintiff Calloway in a single cell where a nurse took his vital signs.

174.    Defendants' assault to Plaintiff Calloway's face chipped two of his teeth.

175.    Plaintiff Calloway's forehead sustained a large bump and swelling from being slammed into the door head first.

176.    Plaintiff Calloway was not provided with adequate medical examination or treatment.

177.    Defendants John Does placed Plaintiff Calloway in "the hole" for approximately six.

178.    Plaintiff Calloway subsequently filed grievances, all of which were ignored or disregarded.

179.    Plaintiff Calloway began suffering from migraines after the assault.

180.    Plaintiff Calloway suffers from chronic pain in his head, left elbow and teeth as a result of the assault.  His elbow fused back together improperly and causes him pain on a daily basis.

181.    Plaintiff Calloway was emotionally scarred from the assault.  Every time Plaintiff Calloway heard correctional officer keys jingle in preparation for the evening count, he was placed in a state of horror for his safety.

182.    Plaintiff Calloway requested to meet with mental health services within SCI because of the assault but his requests were denied.

183.    Even today, he suffers from anxiety, post-traumatic stress disorder, nightmares, insomnia, paranoia and depression.

## FACTS REGARDING ATTACK ON PLAINTIFF NASIER GIBBS

184.    On or about February 21, 2021, Plaintiff Gibbs was being processed for intake at SCI.

185.    Plaintiff Gibbs approached the phone and asked Defendant Kirk Neal to use the phone.

186.    Defendant Kirk Neal tripped Plaintiff Gibbs at his knees as he was walking over to the phone.  Plaintiff Gibbs hit his face as he fell face first on the concrete floor.

187.    Defendant Kirk Neal and two other as-yet unidentified Defendants began to kick Plaintiff Gibbs all over his body.  Defendant John Doe kneeled on Plaintiff Gibbs' neck.

188.    Defendant John Doe took out a can of pepper spray, took of the nozzle and sprayed it into Plaintiff Gibbs' face.  Defendant's assault on Plaintiff Gibbs was approximately four minutes.

189.    Defendants John Does transported Plaintiff Gibbs to a receiving cell and then placed Plaintiff Gibbs in "the hole" for seven days.

190.    Plaintiff Gibbs was not allowed to shower until four days later.

191.    Plaintiff Gibbs was not provided with adequate medical examination or treatment. Plaintiff Gibbs sustained large, nut sized, visible swelling to his forehead and his elbow.

192.    Today, Plaintiff Gibbs suffers from mental flashbacks and depression from the Defendant's assault.

193.    Plaintiff Gibbs filed a grievance which was ignored and disregarded.

**FACTS REGARDING ATTACK ON PLAINTIFF CHARLES TURNER**

194.     On or about February 21, 2021, Plaintiff Turner went to fill out a phone slip and commissary sheet.

195.    Plaintiff Turner spoke with a correctional officer for the paperwork and filled it out.

196.    As Plaintiff Turner was completing the paperwork, he heard the correctional officers yell "five minutes to lock in!"

197.    Plaintiff Turner hurried to complete the paperwork.  Being new to SCI, Plaintiff Turner asked the correctional officer for a location to place the paperwork for review.

198.    As Plaintiff Turner was putting the paperwork in a box, Plaintiff Turner was sprayed directly in his face between his glasses with pepper spray by Defendant Corporal Kraft.

199.    Defendant Kraft assaulted Plaintiff Turner, jumped him and slammed Plaintiff Turner down on the ground and pushed Plaintiff Turner's face into tile concrete floor.

200.    Defendant Kraft again sprayed excessive amounts of pepper spray onto Plaintiff Turner for a second time.

201.    During the assault, Defendant Kraft and other as-yet unidentified Defendants taunted Plaintiff Turner with comments, "we got another one" and "we got a big here this time!"

202.    Other as-yet unidentified Defendants assisted in the assault and forced Plaintiff Turner into handcuffs and held his hands in the air.

203.    Plaintiff Turner previously had surgery on right arm so has difficulty putting arms behind back during the assault.

204.    Other as-yet unidentified Defendants transported Plaintiff Turner to the medical unit bent over with his hands handcuffed in the air making it extremely difficult to walk.

205.    Plaintiff Turner communicated to Defendants that this position was hurting him and that he would like to be released for the position.

206.    Defendants responded to Plaintiff Turner's requests by elbowing and kneeing Plaintiff Turner as they transported him.

207.    Other as-yet unidentified Defendants took Plaintiff Turner to the medical unit where they only took his blood pressure.

208.    Plaintiff Turner was not provided with adequate medical examination or treatment.

209.    Defendants John Does placed Plaintiff Turner in "the hole" for seven days.

210.    After the assault, Plaintiff Turner suffered from extreme fear of leaving his cell and that he would be jumped.

211.    An as-yet unidentified Officer at a hearing checked the video, came back and said Plaintiff Turner was in the right, and Defendant Kraft was wrong.

212.    The Defendant's assault was so severe that even today Plaintiff Turner continues to suffer from a shoulder injury from the assault.

213.    Plaintiff Turner subsequently filed grievances which were used ignored or disregarded.

**FACTS REGARDING ATTACK ON PLAINTIFF AUGUSTINE HAYMOND**

214.    On or about April 1, 2021, concerned for his health, Plaintiff Haymond reported to Defendants Kirk Neal and Vernet that his cellmate was going through withdrawal and experiencing bowel incontinence for the past two days.

215.    Due to the unsanitary nature and stench of the cell, Plaintiff Haymond made a request to Defendant Kirk Neal and Defendant Vernet for his cellmate to take a shower.

216.    Defendant Kirk Neal and Defendant Vernet told Plaintiff Haymond to "do it yourself" and "handle it" or else he would be charged and sent to the "hole."

217.    While Plaintiff Haymond went to the common area and for ice, Defendant Vernt entered Plaintiff Haymond's cell.  When Plaintiff Haymond returned to his cell, he discovered an apple he took from the cafeteria smashed on the floor of his cell.

218.    Plaintiff Haymond walked over to the correctional officer desk and asked if he could use a broom to clean the apple.

219.    Defendant Vernet told Plaintiff Haymond she shouldn't have taken the apple and told him to "lock-in" because cell clean up isn't until Friday, recreation is over, and he wasn't getting a broom.

220.    Defendants Kirk Neal and Vernet each grabbed one side of Plaintiff Haymond and pulled him back to his cell.

221.    One Defendant tripped Plaintiff Haymond causing him to fall and hit his rib on the bottom bunk made of steel.

222.    Plaintiff Haymond was not provided with adequate medical examination or treatment despite a broken rib.  His vitals were taken but he was not treated for his injured rib, rather he was told to put in a sick call.

223.    Defendants took Plaintiff Haymond to "the hole" for approximately ten days and wrote Plaintiff Haymond up for "refusing lock-in."

224.    Plaintiff Haymond's mother called SCI to complain about the treatment.   No response was made after the report.

225.    When Plaintiff Haymond was returned to Housing Unit 4, Defendant Neal taunted Plaintiff Haymond and said, "don't mess with Haymond, he'll call his mommy."  Defendant Neal called Haymond "a junky" in front of other inmates to humiliate him.

226.    On or about October 29, 2021, Plaintiff Haymond was using the dorm community bathroom to brush his teeth.

227.    Plaintiff Haymond and three other inmates were in the bathroom at the time. Defendant Mitchell yelled, "what are you all faggots in here?!"

228.    Plaintiff Haymond attempted to wash out his mouth out toothpaste when Defendant Mitchell reached for his can of pepper spray and sprayed excessive amounts into the bathroom.

229.    To avoid the impact of the pepper spray, Plaintiff Haymond got on the ground and blocked his face.

230.    Despite Plaintiff Haymond's passive and non-threatening posture, Defendant Mitchell approached Plaintiff Haymond and emptied the can of pepper spray directly under Plaintiff Haymond's arm and up towards his face, temporarily blinding Plaintiff Haymond.

231.    Defendant Mitchell handcuffed Plaintiff Haymond behind his back. Other as yet identified Defendants rushed over and picked Plaintiff Haymond up in the air by his hands.

232.    Plaintiff Haymond communicated to Defendant Mitchell that he had a previous shoulder injury. Defendant Mitchell did not stop raising Plaintiff Haymond's arm above his head but instead yelled "shut the fuck up." Defendant Mitchell's conduct caused Plaintiff Haymond's shoulder to become reinjured and worsen.

233.    Defendants transported Plaintiff Haymond through a vestibule to medical. During the transport, Plaintiff Haymond's mouth was burning from the pepper spray causing him to drool. Defendants yelled to "stop spitting or your head is going to hit the concrete."

234.    Defendants took Plaintiff Haymond's head and slammed it into the vestibule doors.

235.    Defendants brought Plaintiff Haymond to a receiving area where they strip searched him. Defendants ordered Plaintiff Haymond to spread his butt cheeks and lift his testicles before ordering him to put his pepper-spray covered fingers in his mouth to open his mouth.

236.    Defendant Mitchell took Plaintiff Haymond to "the hole" and threw Plaintiff Haymond into the wall. Plaintiff Haymond stayed in "the hole" for four days.

237.    Plaintiff Haymond was not provided with adequate medical examination or treatment despite his pepper spray and shoulder injury.

238.    Plaintiff Haymond sustained rib, shoulder, face burn, and back injuries from the assault.

239.    Even today, Plaintiff Haymond's shoulder continues to remain injured from the assault and experiences a "popping" when he moves his right shoulder.

240.    Plaintiff Haymond experiences on going headaches after the assault.

241.    When Haymond returned to CRU from the hole, Defendant Neal repeatedly harassed Plaintiff Haymond by knocking on the door of his cell.  Many times while Haymond tried to sleep, Defendant Neal would shout, "wake the fuck up."

242.    Plaintiff Haymond suffers from increased post-traumatic stress disorder from the assault.  He has nightmares and night terrors resulting from the assault.  Plaintiff Haymond is anxious about visiting the bathroom and is in constant fear of the correctional officers.  He contemplates daily that a simple visit to the bathroom could result in an assault.  Plaintiff Haymond put in a mental health request in connection to his PTSD and anxiety after observing a correctional officer pepper-spray another inmate that was taking a shower.

243.    Plaintiff Haymond subsequently filed grievances which were disregarded.  Staff Lt. Hannah met with Plaintiff Haymond about his grievance.  Staff Lt. Hannah disclosed she had not reviewed the video evidence of the incident. Staff Lt. Hannah advised that in order for Plaintiff Haymond rejoin the ninety-day "Road to Recover Track 4 Program," he had to plead guilty to the write-up.  Plaintiff Haymond had only four more days to serve of the program to achieve completion.  Staff Lt. Hannah advised that, in the alternative that Plaintiff Haymond pled not guilty, he would receive a 30-day sanction, be removed from the program, and be required to start the program from the beginning.  Plaintiff Haymond pled guilty so to return to the program.

**FACTS REGARDING ATTACK ON PLAINTIFF NEKI GIBBS**

244.    On or about May 18, 2021, at approximately noon, Defendant Maddox took his can of pepper spray, pressed on the nozzle and sprayed excessive amounts of pepper spray onto the left side of Plaintiff Gibbs' face.

245.    After a brief tussle, Plaintiff Gibbs put himself on the floor and Defendant Maddox put his knee on top of Plaintiff Gibbs.  Defendant Maddox pushed down on Plaintiff Gibbs and hit the top of his head.

246.    Defendant Maddox lifted Plaintiff Gibbs head and kneed him in his face causing Plaintiff Gibbs' left eyebrow to split open and blood to drip from his face onto the floor.

247.    Defendant Maddox transferred Plaintiff Gibbs to Vaughn and placed in the SHU/"the hole" where he currently is.

248.    Plaintiff Gibbs was not provided with adequate medical examination or treatment despite his obvious eye injury.  When Plaintiff Gibbs requested medical, Defendant responded "You think we're going to give you any kind of help after what you did?"

249.    Plaintiff Gibbs requested stitches for his eye injury, but was denied treatment.

250.    Plaintiff Gibbs sustained a large permanent scar over his left eye lid.

251.    Plaintiff Gibbs had previously filed grievances against Defendant Maddox which were never adjudicated.  Plaintiff Gibb's grievances were sent to Capt. Mitchell, but Plaintiff Gibbs was told he was "imagining" the mistreatment.

252.    As a result of the assault, Plaintiff Gibbs remains in constant fear Defendant Maddox.  Plaintiff Gibbs has trouble sleeping and has frequent headaches.  Plaintiff Gibbs receives mental heath counseling for the assault approximately every three months.

## FACTS REGARDING ATTACK ON PLAINTIFF AARON GIVENS

253.    On or about May 23, 2021, after being processed for intake at SCI, Plaintiff Givens requested medical treatment for withdrawal symptoms he was experiencing.

254.    Defendant Kirk Neal approached Plaintiff Givens' cell, opened the door, and began an assault on him.

255.    Defendant Kirk Neal tacked Plaintiff Givens to the ground which caused Plaintiff Givens to hit his face on a nearby desk causing a black eye.

256.    Defendant Kirk Neal put his knee in Plaintiff Givens' back.

257.    Plaintiff Givens communicated to Defendant Kirk Neal that he couldn't breathe.

258.    Defendant Kirk Neal immediately inserted the can of pepper spray into Plaintiff Givens' mouth and pressed down on the nozzle, forcing large amounts of pepper spray into Plaintiff Givens' body.

259.    Defendant Kirk Neal lacked any cause or provocation for the violent attack.

260.    Defendant Kirk Neal called code and two other as-yet unidentified Defendants arrived.

261.    Defendant Kirk Neal and Defendant John Does dragged Plaintiff Givens to the infirmary.

262.    Defendant Kirk Neal placed Plaintiff Givens in "the hole" for approximately five days.

263.    Plaintiff Givens sustained a black eye, bruised ribs, and injuries from the pepper spray.

264.    Plaintiff Givens was not provided with adequate medical examination or treatment for eye injury or pepper spray.

265.    Plaintiff Givens saw a counselor about the incident on several different occasion regarding his fear of the correctional officers and mental health from the assault.

266.    Today, Plaintiff Givens has post-traumatic stress disorder.  He felt like he was going to be left to die in SCI or was going to be killed.  Plaintiff Givens continues to have a hard time with sleeping and experiences nightmares about the assault.

### FACTS REGARDING ATTACK ON PLAINTIFF DONBRAY DURHAM

267.    On or about October 30, 2021, Plaintiff Durham was processed at SCI for intake for public intoxication.

268.    Plaintiff Durham was directed to place his hands outside the cell so that a correctional officer could unlock his handcuffs.

269.    Due to his intoxication, Plaintiff Durham was unable to understand the directives.

270.    Another as-yet unidentified Defendant entered the cell, took out his pepper spray, and sprayed Plaintiff Durham directly in his face.

271.    Defendant John Doe tackled Plaintiff Durham face down to the ground causing Plaintiff Durham's teeth to pierce through his bottom lip resulting in profusive bleeding and two broken teeth.

272.    Three other as-yet unidentified Defendants entered Plaintiff Durham's cell.

273.    One Defendant knelt down on Plaintiff Durham's neck and continued to spray him with pepper spray for approximately five to ten minutes.

274.    After Defendant John Does emptied the pepper spray can onto Plaintiff Durham, he was left in his cell with excessive bleeding that made his orange jumpsuit turn burgundy.

275.    Plaintiff Durham did not receive adequate medical evaluation or treatment despite the large obvious amounts of blood that poured from his face.

276.    Plaintiff Durham feared for his well-being during and after the assault but also from the lack of response from his medical requests and crying for help.

277.    The next day, Plaintiff Durham's beard hair began to fall out as a result of the pepper spray and observed scratches on both of his biceps.

278.    Even today, Plaintiff Durham still has right knee and neck pain from the assault.

279.    Plaintiff Durham continues to take antibiotics for his lip injury from the assault.

## FACTS REGARDING ATTACK ON PLAINTIFF MICHAEL KLINE

280.    On or about November 23, 2021, Plaintiff Kline was processed into SCI's Violation of Probation Section.

281.    While Plaintiff Kline was sitting on his bed, an as-yet unidentified Defendant told him pick up his mattress and to stand on a white line for a couple hours.

282.    When Plaintiff Kline went to retrieve his mattress, Defendant John Doe used his pepper spray to spray excessive amounts of pepper spray onto Plaintiff Kline.

283.    A group of eight other as-yet unidentified Defendants rushed to join the assault on Plaintiff Kline.

284.    Defendant John Does took Plaintiff Kline outside in the yard and demanded that he roll a log.

285.    Defendant John Doe then took out green pepper spray and sprayed Plaintiff Kline.

286.    Plaintiff Kline vaguely remembers while handcuffed being thrown around in a cell by a group of as-yet unidentified Defendants.

287.    Sixteen days later, Plaintiff Kline woke up in Christiana Hospital where he was intubated and received six staples in his head.

38

288.    While in the hospital, an as-yet unidentified Defendants punched Plaintiff Kline in the jaw while he was handcuffed to the bed.

289.    Plaintiff Kline sustained damage to his throat muscles, and had to learn how to eat and talk again during rehabilitation.

290.    During rehabilitation, Plaintiff Kline learned how to walk again.

291.    Plaintiff Kline was taken back to SCI and put in the infirmary holding cell for two days.

292.    Plaintiff Kline was stripped of his clothing and was repeatedly taunted by as-yet unidentified Defendants.  Plaintiff Kline was deprived of food.

293.    Plaintiff Kline continues to suffer from the injuries sustained from the assault.

294.    Plaintiff Kline has a large, eight-inch, scar on his head, stretching from the top to back of head and front to back.

295.    Plaintiff Kline now experiences seizures from the assault and is required to take seizure medicine.  Plaintiff Kline is no longer able to drive because of the seizures and has a large amount of hospital bills.

296.    Plaintiff Kline was emotionally scarred from the assault.  He feared for his life during and after the assault.  Plaintiff Kline felt humiliated from the assault.  Even today, Plaintiff Kline feels anxious and jittery when around people.

**FACTS REGARDING ATTACK ON PLAINTIFF KEVIN IGNUDO**

297.    On or about November 16, 2021, Plaintiff Ignudo was admitted to SCI and taken directly to the infirmary where he was placed in a Psychiatric Close Observation cell to await a housing decision.

298.    Plaintiff Ignudo stayed in the infirmary building for about a week and was then transferred to an isolation cell in merit building cell 111.

299.    Plaintiff Ignudo was given a "food loaf" instead of meals and deprived of toilet paper.   Plaintiff's food loaf was placed on feces.

300.    On or about November 25, 2021, while his cell was being cleaned of feces, Plaintiff Ignudo was handcuffed and moved to the MSB building.  While there, Plaintiff Ignudo broke the light in his cell. broke.

301.    Defendant Sgt. Steven Long approached Plaintiff Ignudo's cell, asked him about the light.

302.    Defendant Sgt. Long opened Plaintiff Ignudo's cell door and asked Plaintiff Ignudo about the light.   Plaintiff Ignudo requested recreated time and Defendant Sgt. Long responded, "you're about to get your recreation!"

303.    Defendant Sgt. Long reached for his pepper spray and sprayed excessive amounts of pepper spray onto Plaintiff Ignudo.

304.    Defendants Captain Steele and Defendant Sgt. McCarthy rushed to Plaintiff Ignudo's cell.

305.    Defendants Sgt. Long, Capt. Steele and Sgt. McCarthy punched Plaintiff Ignudo in his head and cornered him in the cell, out of sight of facility cameras.

306.    Plaintiff Ignudo, while handcuffed, attempted to move his body to the entrance of the cell where he knew a camera was.  Defendants punched Plaintiff Ignudo in the ribs.

307.    During the assault, the Defendants verbally assaulted Plaintiff Igundo.  One of the Defendants said, "I will rip your dick off and put it in your mouth!"

308.    After the assault, one Defendant stood on Plaintiff Ignudo's back.

40

309.    Plaintiff Ignudo was held in the "hole" for about seven days where he stripped of his uniform, and made to sleep on concrete with no mattress and no clothes.  Plaintiff Ignudo was then returned to his cell.

310.    Plaintiff Ignudo was written up for the incident.  Plaintiff Ignudo subsequently filed a grievance on December 6, which has not been adjudicated.  Plaintiff Ignudo also filed a PREA complaint on or about December 8, 2021.

311.    Plaintiff Ignudo was not provided with adequate medical examination or treatment despite his eye visibly being swollen shut.  Plaintiff Ignudo sustained injuries to his face, right eye, both knees and back.  He received a blood pressure and temperature examination and cotton swab for his eye.  Plaintiff Ignudo requested an MRI for his knee injuries and was denied.

312.    Even today, Plaintiff Ignudo still has a scar on his head.  He also has a cut that improperly healed on his foot.

313.    Plaintiff Ignudo fears for his life being when he is around the same officers who assaulted him; he is afraid they will put stuff in his food.  His fears are worsened as he observes other inmates being beat for non-aggressive incidents.

**FACTS REGARDING ATTACK ON PLAINTIFF GEORGE STURGIS**

314.    In 2008, Defendant Hudson administered medication to inmates in the early morning.

315.    Defendant Hudson approached Plaintiff Sturgis' Plaintiff Sturgis was already walking towards the area to receive his medication.

316.    Defendant Hudson began to walk behind Plaintiff Sturgis and pushed Plaintiff Sturgis down a flight of stairs.

317.    Defendant Hudson stood over Plaintiff Sturgis, took out a can of pepper spray, and sprayed Plaintiff Sturgis.

318.    Plaintiff Sturgis sustained a back injury from the fall and experiences chronic back pain.  His bones protrude out from his body from healing incorrectly.

319.    A hearing was held on the matter but nothing was done.

320.    Plaintiff Sturgis attended physical therapy and was told he needed an adjustment but never received one.

321.    On or about December 19, 2019, at approximately five in the morning Plaintiff Sturgis was eating breakfast at a table with other inmates.

322.    Defendant Naomi Strand approached the table, took out her pepper spray and began spraying Plaintiff Sturgis and other inmates in the face.

323.    The other inmates ran away from the pepper spray.  Plaintiff Sturgis who walks with a cane, was unable to run away.  Plaintiff Sturgis turned his head.  Defendant Strand continued to pepper spray Plaintiff Sturgis.

324.    Plaintiff Sturgis was taken to medical and then to "the hole" for five days.

325.    On or about November 9, 2021, Plaintiff Sturgis participated in an open meeting the in the cafeteria.

326.    Plaintiff Sturgis left the cafeteria with his cane to walk to his cell to use the bathroom.  Plaintiff Sturgis walked back to the cafeteria to rejoin the meeting.

327.    To get back to the cafeteria, Plaintiff Sturgis had to walk through a doorway with a sliding door that was manually operated by correctional officers.

328.    Plaintiff Sturgis approached the door as it was open.

329.   Defendant Naomi Strand observed Plaintiff Sturgis about to walk through the doorway.

330.   Defendant Strand intentionally shut the door on Plaintiff Sturgis causing his right leg and cane to be smashed between the door and wall.  Plaintiff Sturgis felt great pain from the pressure on each side of his leg.

331.   Plaintiff Sturgis looked to the doorway control area and observed Defendant Strand laughing at him as his leg was stuck.

332.   Defendant Strand released the door to open causing Plaintiff Sturgis to fall. Another inmate helped Plaintiff Sturgis back up on his cane.

333.   Plaintiff Sturgis requested to go to medical and was told to filed multiple sick slips.

334.   Plaintiff Sturgis contacted medical and they reported they did not have any record of the injuries he complained of.

335.   Plaintiff Sturgis submitted sick calls every day.

336.   Plaintiff Sturgis filed grievances to medical on their lack of record of his injuries and sick calls resulting in a lack of treatment for injuries and pain he was experiencing.  He was only given pain relievers.

337.   On or about February 1, 2022, was the first time Plaintiff Sturgis met with a nurse about the injury to his leg.

338.    On or about November 21, 2021, Plaintiff Sturgis received his medication at the infirmary and began to walk back to his cell.

339.   Defendant Sgt. Hudson ordered Plaintiff Sturgis to open his mouth to check that his medication was swallowed.  Plaintiff Sturgis complied.

43

340.    Defendant Sgt. Hudson ordered Plaintiff Sturgis to stick out his tongue.  Plaintiff Sturgis complied.

341.    Defendant Sgt. Hudson ran out from behind the desk and positioned himself between Plaintiff Sturgis and his cell to prevent Plaintiff Sturgis from going into his cell.

342.    Defendant Sgt. Hudson then grabbed Plaintiff Sturgis by the neck and choked him.

343.    Correctional Officer Psaradakis handcuffed Plaintiff Sturgis and stated, "you know how he is.  This is for your own safety."

344.    Defendant Sgt. Hudson claimed he choked Plaintiff Sturgis because he feared Plaintiff Sturgis had Covid-19.

345.    Due to his reputation for fighting other inmates at SCI, Plaintiff Sturgis was under the belief that Defendant Sgt. Hudson wanted to agitate the situation to escalate in to a fight.

346.    Plaintiff Sturgis was placed in "the hole" for twenty-three days.  Plaintiff Sturgis was denied clothing, bedding, and toilet paper.

347.    Defendant Hudson falsely wrote Plaintiff Sturgis up for creating a safety hazard.

348.    Plaintiff Sturgis talked with Sgt. Hannah who advised that if Plaintiff Sturgis stopped claiming that Defendant Hudson choked him that he would receive time served for the twenty-three days.

349.    On or about November 25, 2021, while attempting to walk down a flight of stairs to take a shower, Plaintiff Sturgis fell down the stairs.

350.    Plaintiff Sturgis was hospitalized due to a fall down the stairs and then taken back to SCI and placed in the CRU.

351.    Plaintiff Sturgis lived in daily fear of Defendant Sgt. Hudson, Defendant Neal and other correctional officers as he was taunted by them and repeatedly threatened.

352.   Correctional officer Bowen worked overtime to take Plaintiff Sturgis to the hospital.  On the evening of November 25, Officer Bowen told Plaintiff Sturgis, "if we weren't on the news right now, I would kick your ass."  Officer Bowen explained to Plaintiff Sturgis that he has to explain to his wife that he has to miss thanksgiving to take him to the hospital.

353.   On or about November 27, 2021, Defendant Neal approached Plaintiff Sturgis' cell.  Defendant Neal told Plaintiff Sturgis that "if you fall again or act like you're sick, then I'm going to spray you personally and things will happen to you that no one will find out about."

354.   One-night Plaintiff Sturgis didn't have food in his cell during the expecting meal time.  Defendant Neal told him, "go to the hospital to eat."

355.   Plaintiff Sturgis continuously had nightmares about Defendant Hudson pushing him down the stairs.  Plaintiff Sturgis experiences symptoms of post-traumatic stress disorder from the assaults at SCI.

356.   Today, Plaintiff Sturgis is deathly afraid of stairs.

357.   On or about November 30, 2021, Dr. Nicole Gardener falsely advised Plaintiff Sturgis that his medication gabapentin could not be administered at SCI.  Plaintiff Sturgis was receiving gabapentin for a previous condition where he had broken ribs.

358.   Defendant Gardener gave Plaintiff Sturgis a different medication, naproxen, instead.  Naproxen did not help Plaintiff Sturgis' medical condition.

359.   Plaintiff Sturgis learned that another inmate was being given gabapentin.

360.   Plaintiff Sturgis requested his correct medication gabapentin from Defendant Gardener and she replied, "you won't be getting it. Your blood pressure is high because you are African American."

361.   Plaintiff Sturgis never received his correct medication while in SCI.

362.    Plaintiff Sturgis feared for his life and safety.

363.    Plaintiff Sturgis' biggest fear was the possibility that he could die at SCI and no one would know what happened to him.

364.    Plaintiff Sturgis feared retaliation for filing grievances against Defendant Hudson for choking him and that correctional officers would set him up to be attacked.  On one occasion, correctional officers instructed Plaintiff Sturgis to walk out while the building was on a code four lock down where inmates were required to be in their cells.

### FACTS REGARDING ATTACK ON PLAINTIFF RICHARD EDWARDS

365.    On or about August 2020, Plaintiff Edwards contracted Covid-19.

366.    Plaintiff Edwards was placed in an open lot dorm that housed roughly eighty other inmates.  After requesting twenty-four other inmates to move bunks and those inmates' lack of compliance, correctional officers ordered Plaintiff Edwards repeatedly to move to different bunk locations on at least four occasions around the SCI facility while he was sick with Covid-19.

367.    Despite being sick with Covid-19, Plaintiff Edwards complied with the correctional officers' orders to move.  Plaintiff Edwards was required to move his own bedding, locker box, and property by himself.

368.    Due to physical, mental, emotional exhaustion, Plaintiff Edwards reported to as-yet unidentified Defendant John Doe a request to stay in one bunk because the constant moving from one bunk to another was causing him to feel suicidal.

369.    Defendant John Doe immediately handcuffed Plaintiff Edwards with his hands behind his back.

370.    Other as-yet unidentified Defendants Defendant John Does working in the Covid-19 Unit rushed to the site of Plaintiff Edwards.

46

371.    Defendant Sgt. Hastings asked Plaintiff Edwards if he was suicidal to which Plaintiff Edwards answered "yes."

372.    Defendant Sgt. Hastings stated to Plaintiff Edwards, "this isn't going to go down like you expected" and began to assault Plaintiff Edwards.

373.    Defendant Sgt. Hastings squeezed Plaintiff Edwards' left bicep extremely hard applying pressure between his bicep and triceps to the point where Plaintiff Edwards' arm naturally and instinctively moved to correct an unnatural positioning.

374.    Defendant Sgt. Hastings yelled to the other Defendant John Does, "he is resisting, he is resisting" and they rushed to participate in the assault against Plaintiff Edwards.

375.    One Defendant picked up Plaintiff Edwards and slammed him face first into metal tables.

376.    Defendant John Does picked up Plaintiff Edwards again and slammed him on the ground.

377.    Once on the ground, one Defendant kicked, punched, and kneed Plaintiff Edwards.

378.    Defendant Sgt. Hastings and the other as-yet unidentified Defendants worked together to carry out the assault on Plaintiff Edwards.

379.    During the assault, one of the Defendants repeatedly told the others to, "turn his head," at which point they turned Plaintiff Edwards' head and punched him in the face.

380.    After being observed by two nurses Beth and Sherry that banged on the window that was overlooking the area, Defendant Sgt. Hastings and the other Defendants brought Plaintiff Edwards into another hallway that did not have cameras and continued the assault.

381.    Defendant Sgt. Hastings and the other Defendants slammed Plaintiff Edwards into the wall, grabbed him by the throat, and choked him.

47

382.    Plaintiff Edwards pleaded and begged for Defendant Sgt. Hastings and the other Defendants to stop because he could not breathe.

383.    Defendant Sgt. Hastings and the other Defendants continued their assault and raised Plaintiff Edwards arms while handcuffed, forcing Plaintiff Edwards to fold his body over himself, making breathing even more difficult for him.

384.    Defendant Sgt. Givens interlaced his fingers with Plaintiff Edwards' and made a twisting, squeezing motion, causing extreme pressure to Plaintiff Edwards' bones.

385.    Defendant Sgt. Hastings and the other Defendants then moved Plaintiff Edwards into another hallway called the Alcove.  The Alcove is a hallway between areas that are secured and can only be unlocked by an officer in the control booth.

386.    Defendant Sgt. Hastings and Defendant John Does raised Plaintiff Edwards' arms behind his back handcuffed as high as they could go, forcing Plaintiff Edwards to walk bent over.

387.    Defendant Sgt. Hastings and the other Defendants ran Plaintiff Edwards' head directly into a door they knew was locked, causing severe cuts on Plaintiff Edwards' head.

388.    Defendant Sgt. Hastings and the other Defendants then repeated the assault they just performed on Plaintiff Edwards again, concluding with running his head into the locked door, once again, causing severe injuries to Plaintiff Edwards' head.

389.    While Defendant Sgt. Hastings and the other Defendants were deciding where to take Plaintiff Edwards after the assault, Defendants held him bent over with his arms straight up in the air, again, making it difficult for Plaintiff Edwards to breathe.

390.    Continuously throughout the physical assault, Plaintiff Edwards was also verbally assaulted.

391.    Defendant Sgt. Hastings and the other Defendants repeatedly made verbal statements such as, "I bet your bitch ass ain't suicidal now," "you motherfuckers are gonna learn," and "say you're a bitch."

392.    Defendant Sgt. Hastings and the other Defendants took Plaintiff Edwards to the infirmary where they threatened to "kick his ass" if he didn't start walking and placed him in psychiatric observation.

393.    Plaintiff Edwards reported the incident to Defendant Warden Truman Meas, Defendant Deputy Warden J. Beck, and Security Superintendent Marvella Wise.    Plaintiff Edwards' family reported the incident to DOC headquarters.    No one ever followed up with Plaintiff Edwards.

394.    Plaintiff Edwards has experienced multiple suicide attempts and receives psychiatric treatment.    He experiences constant anxiety each time he sees any of the guards involved in the incident.    Plaintiff Edwards fears of retaliation.    He reports trouble sleeping and uncontrollable crying.

395.    Plaintiff Edward's head suffered from several open wounds as a result of assault on his head.

396.    For months, Plaintiff Edwards had dark purple bruises and indentations on his wrists, as well as scabs on his broken skin from the handcuffs.

397.    Even today, months after the assault, Plaintiff Edwards experiences physical scarring on arms.    He feels constant pain in wrist and hand whenever it is turned.    Plaintiff Edwards receives physical therapy every two weeks for neck and back injuries.

## FACTS REGARDING ATTACK ON PLAINTIFF TIMOTHY NEWCOMB

398.    On or about December 6, 2021, a nurse was giving urine tests in the shower area of Plaintiff Newcomb's tier.

399.    Unaware of the urine test, Plaintiff Newcomb used the bathroom and returned to his cell right before the nurse arrived on the tier.

400.    Defendant Isaac Mitchell approached Plaintiff Newcomb's cell and advised that he needed to take a urine test and to drink water.  When Plaintiff Newcomb said he just used the bathroom, Defendant Mitchell put Plaintiff Newcomb in handcuffs and advised he was taking Plaintiff Newcomb to medical.

401.    Just before Defendant Mitchell and Plaintiff Newcomb were about to leave the tier, Defendant Mitchell briefly left the tier to check if the transport to medical complied with the tier's scheduled quarantine.

402.    Defendant Mitchell returned and told Plaintiff Newcomb again to drink water.

403.    Plaintiff Newcomb was unable to drink water because he was still handcuffed. When Plaintiff Newcomb communicated this to Defendant Mitchell, Defendant Mitchell began enraged.

404.    Defendant Mitchell picked up Plaintiff Newcomb and slammed him on the ground causing Plaintiff Newcomb to hit his face and shoulder on the tile concrete floor.  Defendant Mitchell landed on top of Plaintiff Mitchell.

405.    The nurse observed the assault, became frightened and exclaimed, "oh my God!"

406.    Defendant Mitchell lifted Plaintiff Newcomb up by his handcuffed hands behind his back forcing him to be bent over.  Plaintiff Newcomb exclaimed that he felt his shoulder was broken.

407.    Defendant Mitchell took Plaintiff Newcomb to medical where he again expressed his shoulder was broken.  The staff in medical advised Plaintiff Newcomb to put in a sick call.

408.    Defendant Mitchell wrote Plaintiff Newcomb up for belligerence and non-compliance.

409.    Defendant Mitchell placed Plaintiff Newcomb in "the hole" for fifteen days.

410.    Plaintiff Newcomb entered sick calls for seven consecutive days.

411.    Despite the fact that Plaintiff Newcomb's bone was sticking up in his shoulder and another bone under his eye, Plaintiff Newcomb was not provided with adequate medical examination or treatment.  On or about December 11, 2021, Plaintiff was taken to a doctor and x-rays were requested by the doctor.  The x-rays were not conducted due to "short staffing."  On or about December 15, 2021, Plaintiff Newcomb was finally taken to get x-rays on his shoulder.  Plaintiff Newcomb never received the results from the X-rays or any care for his injury.

412.    Today, Plaintiff Newcomb's shoulder remains injured from the assault.  Plaintiff Newcomb's right shoulder bone protrudes out from his body.  He experiences decreased mobility in lifting his arm and putting his arm behind him.  He experiences pain every time he is handcuffed behind his back.  For two months Plaintiff Newcomb requested medical care but has not received any medical care for his shoulder injury.

413.    Plaintiff Newcomb now experiences regular severe headaches that he never had before.

414.    Plaintiff Newcomb subsequently filed grievances regarding the assault and lack of medical treatment, none of which were adjudicated.   The only time his grievance was acknowledged was when Capt. Jones advised Plaintiff Newcomb that the grievance filed against the correctional officers for the assault should be placed against medical staff instead.

415.    Plaintiff suffers daily from continuous fear and anxiety of retaliation from Defendant Mitchell and Defendants John Does from filing his grievances.  Plaintiff Newcomb experiences depression from not being able to treat his shoulder injury.

### FACTS REGARDING ATTACK ON PLAINTIFF AJ MCMULLEN

416.    In or about July or August 2017, while incarcerated at SCI Sussex, Plaintiff McMullen learned his pregnant girlfriend had suffered a miscarriage and lost their baby.  Plaintiff McMullen was visibly upset.

417.    A correctional officer known as "D" asked Plaintiff McMullen, "do you have a fucking problem?"  When Plaintiff McMullen responded with a request to be left alone, correctional officer Ms. D called code for other officers to arrive on the tier.

418.    Once the code was called, Plaintiff McMullen laid on the floor to comply with the code.

419.    Defendant Sesseler, Defendant Clark, and Defendant Everett arrived on the tier and stated we are "about to fuck you up."

420.    Despite voluntarily laying down in a nonthreatening position, Defendant Sesseler or Defendant Clark picked up his foot and stomped directly on Plaintiff McMullens head.

421.    Defendants handcuffed Plaintiff McMullen and took him to a receiving hall at which point they picked up his body and threw him into a cell.  As a result of being unable to brace himself while handcuffed, Plaintiff McMullen's head made a direct forceful impact with the concrete ground.

422.    In receiving, Defendant Clark ordered Plaintiff McMullen to touch his genitals and then place his fingers in his mouth.  Defendant Clark asked Plaintiff McMullen, "how do your balls and ass taste?"  Plaintiff McMullen asked, "why are you doing this?"  Defendant Clark yelled,

"shut the fuck up.  Once we get you in the orange jump suit, once we get you to BMOD, we're going to beat your ass N*****."

423.    Defendant Clark punched Plaintiff McMullen in the jaw twice and called him the "n" word again.

424.    A nurse witnessed the assault in receiving, but she turned away from watching as Plaintiff McMullen screamed.  Plaintiff McMullen believes there was a camera in the receiving hall.

425.    Defendant Sesseler threatened Plaintiff McMullen with future harm if he said anything to anybody about the beating in anticipation of a hearing over the write-up.

426.    McMullen was placed in "the hole" for approximately 30 days, transferred to housing unit 5, and then transferred to Vaughn in October of 2018.

427.    Plaintiff McMullen submitted a letter to Internal Affairs through his girlfriend describing the physical abuse but received no response.

428.    Plaintiff suffered from continuous fear of retaliation from filing his grievances. Plaintiff McMullen has nightmares and wakes up in cold sweats.  Since the assault, he has a fear of being sexually assaulted. The incident triggered PTSD from past abuse by prison guards in North Carolina in 2014.

429.    Plaintiff McMullen suffers from severe headaches, migraines that are intensified, and constant head throbbing.  He receives treatment for headaches and received mental health counseling.

## FACTS REGARDING ATTACK ON PLAINTIFF BARRY KLINE

430.    On or about August 31, 2021, Plaintiff Kline was order to be released from SCI on pre-trial detention unsecured bond.  Plaintiff Kline was not released.

431. On or about September 1, 2021, at approximately ten forty-five in the morning, Plaintiff Kline's cell mate was sick and throwing up onto Plaintiff Kline's bed located on the lower bunk.

432. Plaintiff Kline made a request for cleaning supplies to nearby correctional officers Defendant Purdy and Defendant Vernet. Plaintiff Kline's cell only had a sink and a tiny bar of soap.

433. Defendant Purdy yelled, "get back in your cell…lock it in!" Plaintiff Kline complied.

434. Recreation was schedule at approximately eleven thirty in the morning. Plaintiff Kline walked from his cell to exit downstairs and was last person in line to exit the tier for recreation. Plaintiff Kline made a request to Defendant Vernet to visit medical or mental health. Defendant Vernet immediately replied, "no! Lock in."

435. Defendant Vernet grabbed Plaintiff Kline by the left arm and pulled him back to his cell.

436. Once in front of his cell, Defendant Vernet lift Plaintiff Kline up and threw Plaintiff Kline face first into ground. As a result, Plaintiff Kline's head and face made a forceful impact with the concrete floor.

437. Defendant Vernet beat Plaintiff Kline and held him down on the ground.

438. Defendant Vernet turned Plaintiff Kline's head, inserted a can of pepper spray can into Plaintiff Kline's nostril and pressed down on the nozzle, forcing pepper spray into Plaintiff Kline's nose. Defendant Vernet repeated sprayed Plaintiff Kline in his nose and face, utilizing approximately three or four cans of pepper spray.

439.    Other as yet-identified Defendants arrived to Plaintiff Kline's cell.  Plaintiff Kline was handcuffed.  Two Defendant got on each side of Plaintiff Kline, yanked him up to his feet, and lift him off the ground holding his arms behind him like a fish hook.  Defendants dragged Plaintiff Kline to a booking cell.

440.    Once in front of the booking cell, Defendant John Does picked up Plaintiff Kline and threw him into the cell.  Plaintiff Kline was still handcuffed when Defendant John Does threw him.  Plaintiff Kline's head made a direct forceful impact with the floor causing it to split open.  Plaintiff Kline was unable to brace the fall because he was still handcuffed.

441.    Plaintiff Kline head bled and blood ran down his face.  After five minutes, he was taken to medical where he received butterfly stitches on his forehead.

442.    Defendants John Does placed Plaintiff Kline in "the hole" for ten days.

443.    Plaintiff Kline couldn't breathe in his nose for three days.

444.    Even today, Plaintiff Kline can't take or smell and has a scar on his forehead.

445.    Plaintiff Kline was released from SCI on September 10, 2021.

446.    Today, Plaintiff Kline experiences nightmares about the assault.  He is emotionally distraught from the assault and is in extreme fear of SCI.

**FACTS REGARDING ATTACK ON PLAINTIFF GERALD LUSBY**

447.     On or about June 5, 2020, at approximately eight thirty in the morning, Plaintiff Lusby's unit was mandated to go outside while electrical work was done at SCI.

448.    June 5, 2020 was brutally hot and sunny.

449.    Plaintiff Lusby, along with other inmates, were confined to the outside yard for seven hours.

450.    The yard is a large open area that did not have a place to take shelter from the sun.

55

451.    Plaintiff Lusby was unable to escape the sun.

452.    Plaintiff Lusby experience discomfort and pain on his skin from the long exposure to the sun.

453.    Defendant Wright was responsible for the gym and yard.

454.    Plaintiff Lusby communicated to Defendant Wright that he was experiencing pain from the exposure to the sun and requested to go inside to the gym/garage to get out of the sun.

455.    Defendant Wright denied his request.

456.    Plaintiff Lusby tried to escape the sun by putting a shirt over his head.

457.    Defendant Wright ordered Plaintiff Lusby to remove the shirt from his head.

458.    Plaintiff Lusby experienced sun poisoning from the long exposure to the sun.  His right eye was swollen shut.

459.    Plaintiff Lusby's shoulders and tops of hands suffered from blistering and peeling with puss.

460.    Plaintiff Lusby experienced head aches for months after the long sun exposure.

461.    On or about June 6, 2020, Plaintiff Lusby received Tylenol from medical and lotion for the sun poisoning.

462.    Over the next few days, Plaintiff Lusby's eye swelling and skin blistering worsened.  Plaintiff Lusby made several additional visits to medical.  During one visit, a nurse told him the lotion he was given was making his condition worse.  The nurse did not prescribe anything else.

463.    Plaintiff Lusby received "no work" paperwork due to his sun poisoning, swollen eye, and blistering peeling skin.

464.     Plaintiff Lusby's swollen eye and blistering skin conditions lasted for several weeks after the sun exposure.

465.     Today, Plaintiff Lusby has noticeable large circles of discoloration on his skin from the blisters.

466.     Plaintiff Lusby filed several grievances against Defendant Wright for being confined to the yard and confined to seven hours of sun exposure causing him to experience sun poisoning, but his grievances were all ignored or disregarded.

## FACTS REGARDING ATTACK ON CHRISTOPHER MORALES

467.     On or about August 21, 2021, Plaintiff Morales arrived at SCI as a pretrial detainee.

468.     After securing his housing information and blankets, Mr. Morales was ordered, in hostile and condescending language, to go upstairs to his cell.

469.     As he started to proceed up the stairs, Mr. Morales said something to the effect of "you guys are mighty hostile."

470.     At that point, Defendant Kirk Neal responded "that's right" and then came around from behind the podium where he was standing and ran toward Mr. Morales.

471.     Defendant Kirk Neal applied mace to the inside of Mr. Morales' mouth as he and other officers punched Mr. Morales in a manner by which they used their handcuffs as a form of brass knuckles.

472.     As a result of the correctional officers' assault, Mr. Morales suffered injuries to his head and face.

473.     Notwithstanding his obvious injuries, the correctional officers declined to provide any medical treatment for Mr. Morales. Instead, Mr. Morales was charged with disobeying an

order and disrespect toward correctional officers, for which he was immediately brought to a disciplinary segregation cell.

474.    At his subsequent administrative disciplinary hearing, Mr. Morales complained about the officers' conduct and brought to the disciplinary hearing officer's attention the assault he had endured, pointing out that it was likely captured on video. Mr. Morales therefore exercised his administrative rights.

475.    Nevertheless, the disciplinary hearing officer ignored Mr. Morales' claims and determined him to be guilty of the charges against him. Mr. Morales therefore had no further administrative remedy.

476.    Even if Mr. Morales had administrative remedies beyond his September 7, 2021 disciplinary hearing, he was transferred out of SCI a few days after that hearing. Mr. Morales later filed a Complaint with the Department of Corrections, Office of Internal Affairs. Upon information and belief, that investigation is still pending. However, there is no remedy to be afforded to Mr. Morales through the Internal Affairs process since (1) that process relates to internal discipline for correctional officers and no remedies for victims; and (2) Mr. Morales is no longer incarcerated so the grievance process is unavailable to him.

### FACTS REGARDING ASSAULT ON DONALD R. BECKWITH

477.    On or about June to July of 2021, Plaintiff Donald R. Beckwith was confined in the Stanley Tailor and Program buildings of SCI.

478.    In both the Stanley Tailor and Program buildings, Plaintiff Beckwith was subjected to forced nudity and sexual harassment.

479.    Plaintiff Beckwith, along with other inmates, are required to defecate in front of one another and staff, including female staff, without being allowed to cover their genitalia in any way.

480.    In both the Stanley Tailor and Program buildings, the showers and toilets are installed together, approximately three feet away from each other.

481.    Plaintiff Beckwith, along with other inmates, are required to shower and perform all hygiene and bodily functions without being allowed any privacy whatsoever.

482.    There are no shower curtains provided in either the Stanley Tailor or Program buildings.

483.    Beckwith reports that many inmates shower while wearing underwear in order to preserve any privacy.

484.    Female correctional officer Sgt. Michelle Philips and other Jane Doe female correctional officers routinely walk into the shower area daily and observe male inmates performing hygiene and bodily functions.

485.    The inmate reference manual DOC 4.4 Policy states that "every inmate has the right to do his time with dignity," but Defendant Warden and other Defendants continued to refuse to build any structures to provide privacy and continued to permit correctional staff to invade Plaintiff Beckwith and other incarcerated persons' privacy on a daily basis.

486.    The ACA inspection in Sep 27, 2021, at approximately 10:50am observed the open nature of the restroom facilities in the Program Building. Unknown DOC officials from Dover visited the facility on October 4, 2021 at 11:30am, observed the open nature of the restrooms in the Program Building.

487.    Instead of fixing the problem, Defendants exacerbated the violations.

488.    On or about July 2, Plaintiff Beckwith used a sheet to cover himself while using the toilet.  Correctional officer Monaco took the sheet away from Plaintiff Beckwith and wrote him up for a class-2 violation for using a bed-sheet to conceal his genitals while using the restroom.

59

489.    On or about July 3, 2021, Defendant Capt. Edwards issued a memorandum prohibiting inmates from adequately covering themselves while using the toilet.

490.    On or about July 3, Plaintiff Beckwith grieved the ongoing and persistent violation of the incarcerated persons' rights to dignity in the bathroom and shower stalls. Plaintiff Beckwith was not provided a grievance hearing for the July 2021 complaint. His grievance was ignored or disregarded.

491.    On or about October 2021, Plaintiff Beckwith filed a second grievance. His grievance was ignored or disregarded.

492.    On or about December 7, 2021, Plaintiff Beckwith filed a third grievance. On or about January 20, 2022, a hearing was held. At the hearing, Plaintiff Beckwith's grievance was acknowledged. Plaintiff Beckwith has not been provided a response following the hearing.

493.    Plaintiff Beckwith was disciplined with "low-ap," including a loss of all privileges, despite his appeal to Lt. Burgess and Staff Lt. Long explaining fourth Amendment and PREA violations for observing him while performing bodily functions.

494.    Correctional officers continue to watch inmates perform bodily functions without serving any legitimate purpose.

495.    Plaintiff Beckwith and other persons again grieved the issue and reported the issue to the PREA hotline. PREA Investigator Sgt Madigan admitted to the violative nature of the Defendants' conduct but claimed he lacked the power to change the policy.

## FACTS REGARDING PERSONAL INVOLVEMENT OF SCI'S ADMINISTRATION AND LACK OF SUPERVISION

496.    In their capacity of Warden and Deputy Warden at SCI, Defendants Mears and Beck are responsible for establishing the policies and procedures for correctional staff at SCI. By allowing and encouraging a system of abusive conduct by correctional officers to become a *de*

*facto* policy at SCI, Defendants Mears and Beck were personally involved in the unconstitutional and unlawful conduct at issue.

497.    In addition, prior to the assaults upon the Plaintiffs as described above, Defendant Mears knew about the excessive force routinely employed by the Defendant correctional officers.

498.    Yet despite knowing the details and in many cases having access to videotaped recordings of these assaults, Defendant Mears failed to supervise and take effective disciplinary actions against the Correctional Officer Defendants.

499.    Defendant Mears' failure to supervise the Correctional Officer Defendants involved in the attacks described above was a proximate cause of the same Correctional Officer Defendants' subsequent assaults.

500.    Reasonable discovery likely will also that Defendants Mears and Beck knew that one or more of the Correctional Officer Defendants had previously used excessive force against an incarcerated person.  Their failures to supervise the Correctional Officer Defendants led to the assaults described above.

501.    Reasonable discovery will show that Defendant Mears was well aware that SCI correctional officers routinely and violently assaulted Plaintiffs and other incarcerated persons.

502.    Reasonable discovery will show that Defendant Mears learned of the correctional officers' pattern and practice of the excessive use of force through grievances, videotapes of the assaults, infirmary records and reporting by officials.

503.    Reasonable discovery will show that Defendant Mears failed to halt the pattern and practice of the excessive use of force.

504.    Reasonable discovery will show that Defendant Mears' failures and omissions are the proximate cause of harm to Plaintiffs.

505.    Prior to the assault on Plaintiff Davis, Defendant Beck knew about the excessive force used by the Correctional Officer Defendants against Plaintiff Montague.

506.    Yet despite knowing the details and having access to a videotaped recording of the assault, Defendant Beck failed to take effective disciplinary actions against the Correctional Officer Defendants involved in the assault on Plaintiff Montague.

507.    Defendant Beck's failure to supervise the Correctional Officer Defendants involved in the attack on Plaintiff Montague is a proximate cause of the same Correctional Officer Defendants' subsequent assault on Plaintiff Davis.

508.    Reasonable discovery will show that Defendant Beck was well aware that SCI correctional officers routinely and violently assaulted Plaintiffs and other incarcerated persons.

509.    Reasonable discovery will show that Defendant Beck learned of the correctional officers' pattern and practice of the excessive use of force through grievances, videotapes of the assaults, infirmary records and reporting by officials.

510.    Reasonable discovery will show that Defendant Beck failed to halt the pattern and practice of the excessive use of force.

511.    Reasonable discovery will show that Defendant Beck's failures and omissions are the proximate cause of harm to Plaintiffs.

## COUNT I – FOURTEENTH AND EIGHTH AMENDMENTS – USE OF EXCESSIVE FORCE

512.    The foregoing allegations are incorporated in full by reference as if fully set forth.

513.    Defendants use of excessive force against Plaintiffs violates their Fourteenth Amendment and Eighth Amendment rights to be free from cruel and unusual punishment.

## COUNT II – FOURTEENTH AND EIGHTH AMENDMENTS – LACK OF ADEQUATE MEDICAL CARE

514. The foregoing allegations are incorporated in full by reference as if fully set forth.

515. By failing to provide appropriate medical treatment following their use of excessive force against the Plaintiffs, Defendants' actions and omissions were deliberately indifferent to Plaintiffs' serious medical needs.

516. As such, Defendants' failure to provide adequate medical care violated Plaintiffs' Fourteenth and Eighth Amendment rights to be free from cruel and unusual punishment.

## COUNT III – FOURTEENTH AND EIGHTH AMENDMENTS – FAILURE TO SUPERVISE

517. The foregoing allegations are incorporated in full by reference as if fully set forth.

518. Defendants Mears and Beck are officials with policymaking authority at SCI and had either actual or constructive knowledge of the propensity and routine of Correctional Officer Defendants, including Defendant Kirk Neal, to engage in unnecessary, excessive and punitive force against incarcerating persons.  By failing or refusing to discipline officers employing excessive force against incarcerated persons, Defendants Mears and Beck were personally involved in the violations of Plaintiffs' Fourteenth and Eighth Amendment rights.

519. Defendants Mears and Buck, by virtue of their own deliberate indifference to known deficiencies in their policies and procedures, allowed to develop an environment in which there was an unreasonable risk that a constitutional injury would occur, and their deliberate indifference caused or contributed to Plaintiffs' injuries.

520. Their failures to supervise were a proximate cause of the assault on Plaintiffs.

## COUNT IV – FOURTH AMENDMENT - FAILURE TO INTERVENE

521. The foregoing allegations are incorporated in full by reference as if fully set forth.

522.    Each of the individual Correctional Officer Defendants and the John Doe Defendants had actual knowledge of the violation of Plaintiffs' constitutional rights by the others. Each of the individual Correctional Officer Defendants (including the John Doe Defendants) were present at the scene when Plaintiffs were assaulted and had the opportunity to intervene and protect Plaintiffs' constitutional rights.

523.    By failing to intervene, the individual Correctional Officer Defendants (including the John Doe Defendants) violated Plaintiffs' Fourth Amendment rights.

### COUNT V – FOURTEENTH AMENDMENT - STATE-CREATED DANGER

524.    Because of Plaintiffs' status as incarcerated persons and Defendants' status as correctional officers and officials, Defendants maintained a level of authority and control over the Plaintiffs.

525.    The harm caused to the Plaintiffs by the Defendants was foreseeable and direct.

526.    The harm caused to the Plaintiffs was intended by the Defendants.

527.    By virtue of their authority and control over the Plaintiffs, Defendants created an opportunity that otherwise would not have existed to cause harm to the Plaintiffs.

528.    Defendants are therefore liable to the Plaintiffs under the Fourteenth Amendment. *See Estate of Smith v. Marasco*, 318 F.3d 497, 506 (3d Cir. 2003).

### COUNT VI – ASSAULT AND BATTERY

529.    The foregoing allegations are incorporated in full by reference as if fully set forth.

530.    Each of the Defendants (including the John Doe Defendants) engaged in acts of assault and battery against Defendants. Defendants' assault and battery of Defendants were non-discretionary acts done in bad faith and with gross or wanton negligence.

531.    The Defendants (including the John Doe Defendants) are therefore liable for assault and battery.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

532.    The foregoing allegations are incorporated in full by reference as if fully set forth.

533.    Defendants intentionally inflicted emotional distress on Plaintiffs.

## COUNT VII – VIOLATIONS OF THE LAW OF DIGNITY

534.    The foregoing allegations are incorporated in full by reference as if fully set forth.

535.    The acts and omissions of the Defendants violated the dignity of Plaintiffs.

536.    Plaintiffs' rights to dignity are protected by law.

537.    Defendants' deprivations of Plaintiffs' rights to dignity are actionable.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs request that the Court granted the following relief:

A.      Award compensatory damages;

B.      Award punitive damages against all Defendants;

C.      Award attorneys' fees and costs; and

D.      Award any other relief as the Court deems just and proper.

**WHITEFORD TAYLOR & PRESTON LLC**

*/s/ Daniel A. Griffith*
Daniel A. Griffith, Esq. (ID # 4209)
The Renaissance Centre, Suite 500
405 North King Street
Wilmington, DE 19801-3700
Telephone: (302) 353-4144
Email: dgriffith@wtplaw.com


*/s/ Susan L. Burke*
Susan L. Burke, Esq. (ID #6973)
Dwayne Bensing, Esq. (ID #6754)
ACLU Delaware
100 W. 10 Street, Suite 706
Wilmington DE 19801
Telephone: (202) 445-1409
Email: sburke@aclu-de.org
Email: dbensing@aclu-de.org

*Attorneys for Plaintiffs*

Dated: February 16, 2022

66