## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DAVIS, et al.,              )
                              )
          Plaintiffs,    )
                              )
     v.                    )
                              )     No. 1:21-cv-01773-TLA
NEAL, et al.,            )
                              )
         Defendants.   )
                              )
                              )
                              )
                              )
_____ )

## MEMORANDUM OPINION

Plaintiffs, current and former inmates incarcerated at the Sussex Correctional Institution ("SCI") in Georgetown, Delaware, filed a civil rights complaint against correctional officers and administrators at SCI pursuant to 42 U.S.C. § 1983 and state tort law. Currently before me is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint and Motion to Sever (D.I. 32). For the reasons explained below, I grant in part and deny in part the motion to dismiss and deny in full the motion to sever the remaining claims.

### I.   BACKGROUND

Plaintiffs are current and former inmates at SCI who allege the correctional officers at the prison engaged in a pattern or practice of abuse that prison leadership—the warden and deputy warden—ratified and even encouraged. D.I. 29 ¶¶ 1, 793. On December 17, 2021, two inmates, William Davis and Isaac Montague, filed an initial complaint against

eight named defendants and additional John Does.  D.I. 1.  They filed an amended complaint, joining new plaintiffs and defendants, on February 16, 2022.  D.I. 3.  Finally, by stipulation of the parties, D.I. 28, the plaintiffs filed the Second Amended Complaint ("Complaint"), which is the operative complaint and subject of this motion to dismiss.  D.I. 29.  The Complaint again joins additional plaintiffs and defendants, plus it adds a new claim for retaliation for having filed this lawsuit.  *Id.*  It contains ten counts brought on behalf of 39 current and former SCI inmates ("Plaintiffs") against 42 correctional officers, the warden, and deputy warden (collectively, "Defendants").[1]  *Id.*

In the Complaint, Plaintiffs first allege specific facts about the abuse each endured in sections titled by each Plaintiff's name.  *Id.* ¶¶ 88-792.  For example, they allege that, while Plaintiff Montague was waiting to use the phone, Defendant Kirk Neal told him he needed to go to his cell for "lock in," said to "shut the fuck up" when he asked a question, and then started attacking him once back in the cell.  *Id.* ¶¶ 88-96.  It also alleges Defendants Sgt. Kevin Braswell, Lyle Neal, and Ryan Maddox joined the assault by kicking and punching Montague, pulling dreadlocks from his head, and calling him racist names.  *Id.* ¶¶ 97-100.  Finally, Maddox inserted a can of pepper spray directly into his mouth and sprayed a large amount into his mouth, throat, and lungs.  *Id.* ¶ 101.  When Defendants stopped assaulting him, Montague could not walk and needed to be placed on a gurney to see a nurse.  *Id.* ¶ 103-104.  The stories of alleged assaults on other Plaintiffs, which I will not recount for the sake of brevity, vary in how many officers participated and

---

[1] Throughout this opinion, I refer to Defendants as their names are set out by Plaintiffs in the Second Amended Complaint.

the severity of the injuries incurred.  But all similarly allege a pattern of unprovoked violence.

The Complaint then turns to the alleged actions, or lack thereof, of Warden Truman Mears and Deputy Warden Jon Beck.  It alleges Mears and Beck knew of the pattern of unprovoked violence and excessive force through grievances filed, videotapes of the assaults, infirmary records, and reporting by other prison officials. *Id.* ¶¶ 799, 806.  Despite this knowledge, they failed to discipline effectively the officers involved in the assaults and instead established *de facto* policies that allowed the abuse to continue.  *Id.* ¶¶ 793-808.

Based on the previous specific allegations, the Complaint lists ten causes of action against Defendants:

1. Count I – Use of Excessive Force Under the Fourteenth and Eighth Amendments;

2. Count II – Lack of Adequate Medical Care Under the Fourteenth and Eighth Amendments;

3. Count III – Failure to Supervise Under the Fourteenth and Eighth Amendments;

4. Count IV – Failure to Intervene Under the Fourth Amendment;

5. Count V – State-Created Danger Under the Fourteenth Amendment;

6. Count VI – Assault and Battery;

7. Second Count VI – Intentional Infliction of Emotional Distress[2];

8. Count VII – Violation of the Right to Dignity;

---

[2] Because the Complaint mistakenly includes two Count VIs, I refer to them either as Count VI for assault and battery or Count VI for intentional infliction of emotional distress.  Defendants seek dismissal of the latter only, which should ease any confusion.

9. Count VIII – First Amendment Retaliation under 42 U.S.C. § 1983; and

10. Count IX – Violation of Substantive Due Process Rights Under the Fifth and Fourteenth Amendments.

On September 16, 2022, Defendants filed a motion to dismiss the Complaint and a motion to sever.  D.I. 32.  They sought partial dismissal of the Complaint under Federal Rules of Civil Procedure 8 and 12(b)(6).  *Id.*  They sought dismissal of Counts VII and VIII as to all Defendants, plus Counts II, IV, VI for intentional infliction of emotional distress, and Count IX, as to a subset of Defendants listed in charts attached to their brief in support of their motion as Exhibits 1-4 ("Defendants' Charts").  *Id.* at 1; D.I. 33-1.  They did not seek dismissal of Counts I, III, V, or VI for assault and battery.  They also asked the Court to sever the claims that remain following resolution of the motion into separate cases for each Plaintiff.  *Id.*

After reviewing the parties' briefing (D.I. 33, D.I. 36, D.I. 37), I ordered Plaintiffs to submit a chart of their own, to be reviewed in comparison to Defendants' Chart.  D.I. 47.  It needed to list—for Counts II, IV, VI for intentional infliction of emotional distress, VII, and IX—"each Plaintiff bringing a claim under each Count and the Defendant(s) against whom each Plaintiff is asserting each claim."  *Id.*  Plaintiffs submitted the responsive chart on July 28, 2023 ("Plaintiffs' Chart").  D.I. 48.

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss Under Rule 8

Courts have the power to dismiss a complaint for failing to comply with Federal Rule of Civil Procedure 8.  *See Wilson v. Sinners*, 2018 WL 1414839, at *3 (D. Del. Mar.

19, 2018).  It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In practice, a complaint survives Rule 8 dismissal if it contains sufficient factual allegations to provide fair notice of the claims and the grounds on which they rest.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).  On the other hand, courts should dismiss a complaint if it is "so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Id.*

### B.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should grant the motion if, after accepting all well pleaded allegations as true and viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled to relief. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Maio v. Aetna*, Inc., 221 F.3d 472, 482 (3d Cir. 2000).  The issue is not whether plaintiffs will "ultimately prevail" but whether they can make a "plausible" showing that they are entitled to relief.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citation omitted); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).   A claim is plausible if it "raise[s] a reasonable expectation that discovery will reveal evidence" of the unlawful act.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

In making its determination, the Court need not accept bald assertions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Conclusory allegations or bare statements of liability are not entitled to assumptions of truth.  *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011).  Further, a complaint may be subject to dismissal if

an affirmative defense is clear on the face of the complaint.  *See Barrett v. McDonald*, 2015 WL 5679732, at *2 (D. Del. Sept. 25, 2015) (citation omitted).

## III.   DISMISSAL UNDER RULES 8 AND 12(b)(6) FOR CLAIMS LISTED IN DEFENDANTS' EXHIBITS

Defendants argue that the claims against the specific correctional officers listed in Defendants' Charts should be dismissed under both Rule 8 and Rule 12(b)(6).  Defendants' Charts relate to claims brought under Count II for lack of adequate medical care, Count IV for failure to intervene, Count VI for intentional infliction of emotion distress, and Count IX for a violation of Plaintiffs' substantive due process rights.

### A. Defendants' motion to dismiss the Count II claims is granted in part and denied in part.

Defendants urge dismissal of many of Plaintiffs' Count II claims, which allege lack of adequate medical care.  I address first the claims on which the parties agree before resolving the disputed claims.

To start, the parties have some overlap in how they view the Complaint.  They agree there are no claims for lack of adequate medical care stated against Matthew Long, CO Jeff Purdy, CO Wright, CO Roswell, CO Jones, CO Hood, and Sgt. Deon Brown.  *See* D.I. 33-1 at 2-3; D.I. 48 at 2-7.  When the parties agree no claim has been alleged in the Complaint, there is no claim to dismiss.  As a result, Defendants' motion to dismiss the lack-of-adequate-medical-care claims against the above-listed Defendants is denied without prejudice.  If Plaintiffs attempt to assert this claim against the listed Defendants going forward in this case, Defendants may renew their motion.

That is where the similarity ends on this Count, leaving in dispute claims for lack of adequate medical care against 22 Defendants.  To determine whether the contested claims may proceed, Plaintiffs must allege (1) "that the defendants were deliberately indifferent to their medical needs" and (2) "that those needs were serious."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  They can meet this pleading requirement by alleging "a variety of circumstances," including that the official "knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a non-medical reason."  *Id.*  Courts within this Circuit have held that inmates stated a claim for failure to provide medical care against correctional officers where they assaulted the plaintiff and, following the assault, refused to bring the inmate to the appropriate medical care professional to receive treatment.  *See, e.g.*, *Lauria v. Lieb*, 2023 WL 2188930, at *3-4 (W.D. Pa. Feb. 23, 2023); *Robinson v. Phelps*, 946 F. Supp. 2d 354, 361-62 (D. Del. 2013).

Applying this pleading standard, Plaintiff Richard Edwards states a claim for lack of medical care and provides fair notice under Rule 8 against Defendant Sgt. Hastings.  The Complaint alleges that Hastings knew Edwards was suicidal, *see* D.I. 29 ¶ 383, but rather than provide care, Hastings said, "This isn't going to go down like you expected" and assaulted him.  *Id.* ¶ 384.  These allegations, if true, show that Hastings knew of a serious medical need, intentionally refused to provide treatment, and instead caused additional harm.  Defendants' motion to dismiss Edwards' claim against Sgt. Hastings is thus denied.[3]

---

[3] For Sgt. Hastings, Defendants seek to dismiss claims against him brought by Richard Edwards, Jamal Solomon, and Charles Robinson.  Yet because Plaintiffs only pursue a claim by Edwards,

That said, Plaintiff Edwards does not state a claim for lack of medical care against Miles Vernet, Sgt. Robert Givens, Sgt. Jeremiah Purnell, Sgt. Andrew Cassidy, CO Keen, CO Humes, and Brandon Messick. The Complaint alleges that these Defendants began participating in the assault after Edwards' conversation with Sgt. Hastings about being suicidal, so there are no allegations that they knew of his medical need. *Id.* ¶¶ 383, 386-88. The Complaint also alleges that Defendants took Edwards to the infirmary after the assault, *id.* ¶ 403, meaning that any medical care he received at that point—adequate or inadequate—would be the responsibility of the medical professionals, not the correctional officers. Thus Defendants' motion to dismiss Edwards' claims against Vernet, Givens, Purnell, Cassidy, Keen, Humes, and Messick is granted. These claims are dismissed with prejudice because the factual allegations in the Complaint tell us that amendment would be futile.

Three claims fail because they lack sufficient detail to provide notice under Rule 8 or to state a claim under Rule 12(b)(6):

- Plaintiff Augustine Haymond lacks sufficient detail to state a claim for lack of medical care against Defendant Vernet. The Complaint alleges that, after Vernet and others attacked Haymond, "[h]is vitals were taken but he was not treated for his injured rib" despite "his belief that his rib was broken." *Id.* ¶ 251. The Complaint does not state whether the Defendant checked Haymond's vitals or a medical professional did, so I am unable to tell who allegedly failed to treat his injured rib.

- Plaintiff Danny Harding, Jr. lacks sufficient detail to state a claim for inadequate medical care against Sgt. Jeremiah Purnell. The Complaint states that Harding and Purnell had an argument before other officers, but not Purnell, assaulted him. *Id.* ¶¶ 523-28. It is unclear from the Complaint whether Purnell observed the assault, knew

---

that is the only claim I address. As mentioned above, when the parties agree no claim is stated in the Complaint, there is no claim to dismiss. I will continue this pattern of only addressing the claims in dispute for the rest of the claims included in Defendants' Charts.

about Harding's medical needs following the assault, or played any part in bringing him to a segregated unit instead of a medical professional.

- Plaintiff Jimmie Moore lacks sufficient detail to state a claim for lack of adequate medical care against Sgt. Russell. The Complaint states that Moore and Russell had an argument before other officers, but not Russell, assaulted him. *Id.* ¶¶ 731-38. It is unclear from the Complaint whether Russell observed the assault, knew about Moore's medical needs following the assault, or played any part in bringing him to a separate unit instead of a medical professional.

Because there is insufficient detail to state a claim, Defendants' motion to dismiss these three claims is granted. But they are dismissed without prejudice because amendment that includes additional detail of Defendants' involvement may not be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").

Another two claims fail because the particular Defendant was not personally involved in the incident after which the Plaintiff allegedly received inadequate medical care. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Thus, I hold the following:

- Plaintiff George Sturgis does not state a claim for lack of medical care against Sgt. Hudson. Sturgis claims he was denied medical care after an incident with CO Naomi Strand, a different correctional officer, but the Complaint contains no allegations of faulty medical care in relation to the assault by Sgt. Hudson. *See id.* ¶¶ 357-65. Thus Defendants' motion to dismiss Sturgis' claim against Hudson is granted. This claim is dismissed with prejudice because amendment cannot solve Hudson's complete lack of involvement in the incident that preceded Sturgis' inadequate medical care.

- No Plaintiff states a claim for lack of adequate medical care against Deputy Warden Beck. In Plaintiffs' Chart, they contend that Plaintiffs Montague, Davis, and Campbell bring claims for lack of adequate medical care against Beck. D.I. 48 at 2-3. The Complaint, however, says that Beck helped set the *de facto* policy of abusive conduct and was not directly involved in assaults on Plaintiffs. D.I. 29 ¶ 87. Montague, Davis, and Campbell do not allege that Beck assaulted them or provided them medical care. Because he was not personally involved in the assaults or their medical care after the

assaults took place, Defendants' motion to dismiss the claims for lack of medical care against Beck is granted.  This claim is dismissed with prejudice because no amendment can save a claim against a Defendant who was not personally involved.

As to the remaining claims for lack of adequate medical care, allegations in the Complaint undermine their viability.   Specifically, many Plaintiffs allege that the correctional officers involved in their assaults took them to the medical unit to see a medical professional, meaning that the officers themselves did not intentionally refuse or delay medical care.  *See Rouse*, 182 F.3d at 197.  Instead, Plaintiffs take issue with the medical care they received from nurses, doctors, and other professionals, who are not named as Defendants in the Complaint.  As a result, where Plaintiffs allege they received medical care following their assault (and do not allege that such care was untimely), their claims against the correctional officers will be dismissed with prejudice under Rule 12(b)(6):

- Plaintiff Nathan Lewandowski does not state a claim for lack of medical care against Sgt. Jeremiah Purnell.  The Complaint says that, following the Purnell's assault on him, "Plaintiff Lewandowski spoke with a nurse and told her that he was assaulted and did not feel safe.  Plaintiff Lewandowski requested pain medication but did not receive any medical treatment."  *Id.* ¶ 571.

- Plaintiff Reuel Ray does not state a claim for lack of medical care against Sgt. Jeremiah Purnell.  The Complaint says that, following Purnell's assault on him, John Does took him to the medical unit.  *Id.* ¶ 766.  Then, "[i]n medical, Plaintiff Ray requested for his neck to be examined.  The nurse did not provide any care to Plaintiff Ray's neck.  Plaintiff Ray's right eye was swollen shut and his right jaw was injured."  *Id.* ¶ 767.

- Plaintiff Isaac Montague does not state a claim for lack of medical care against Sgt. Kevin Braswell and Lyle Neal.  The Complaint says that, following Defendants' assault on him, "Defendant John Doe placed Plaintiff Montague on a gurney and brought him to a nurse, who patched up Plaintiff Montague's bleeding face."  *Id.* ¶ 104.  Later, he allegedly put in sick call slips but received only ice.  *Id.* ¶ 107.

- Plaintiff Keith Campbell does not state a claim for lack of medical care against CO Duperon, CO Brandon Wilkens, CO Keefer, and CO West.  The Complaint says that, following the assault on him, "Defendants took Plaintiff Campbell to the medical room where he received only a band-aid for his serious injuries."  *Id.* ¶ 173.

- Plaintiff Shamir Sudler does not state a claim for lack of medical care against CO Duperon.  The Complaint says that, following Duperon's assault on him, "Plaintiff Sudler visited medical, where he requested treatment for his burning genitals and body. The nurse only checked his vitals."  *Id.* ¶ 684.

- Plaintiff Adam Calloway does not state a claim for lack of medical care against CO Amy Mathis.  The Complaint says that, following the assault, "Defendants placed Plaintiff Calloway in a single cell where a nurse took his vital signs."  *Id.* ¶ 202.

- Plaintiff Charles Turner does not state a claim for lack of medical care against Cpl. Joseph Kraft.  The Complaint says that, following the assault, "[o]ther as-yet unidentified Defendants took Plaintiff Turner to the medical unit where they only took his blood pressure."  *Id.* ¶ 236.

- Plaintiff Kendall Smith does not state a claim for lack of medical care against CO Aaron Bianca, CO Jared Payton, and CO Eric Layman.  The Complaint says that, after the assault, "Plaintiff Smith was then taken to medical where he did not receive adequate medical treatment. The nurse took his vitals and told Plaintiff Smith to squeeze his genitals using his pepper spray contaminated hands."  *Id.* ¶ 552.

**B.  Defendants' motion to dismiss Count IV is denied.**

The parties agree that Plaintiffs did not bring Count IV failure-to-intervene claims against Defendants Matthew Long, CO Wright, Sgt. Deon Brown, and Sgt. Russell.  *See* D.I. 33-1 at 6; D.I. 48 at 7-8.  There is thus no claim to dismiss.  Defendants' motion to dismiss claims for failure to intervene against the four above-listed Defendants is itself denied without prejudice.  If Plaintiffs attempt to assert this claim against the listed Defendants going forward in this lawsuit, they may renew their motion.

11

### C. Defendants' motion to dismiss Count VI is granted in part and denied in part.

Defendants move to dismiss many claims that allege intentional infliction of emotional distress. To start, the parties agree there are no claims for intentional infliction of emotional distress stated against Sgt. Kevin Braswell, Lyle Neal, Matthew Long, CO Evanglett, and CO Wright. *See* D.I. 33-1 at 8; D.I. 48 at 8-12. As a result, Defendants' motion to dismiss claims for intentional infliction of emotional distress against these five Defendants is denied without prejudice. If Plaintiffs attempt to assert this claim against the listed Defendants going forward in this lawsuit, they may renew their motion.

As to the disputed claims, Plaintiffs meet their pleading burden if they allege "(1) extreme and outrageous conduct; (2) an intent to cause severe emotional distress or reckless disregard with respect to causing emotional distress; and, (3) the conduct actually caused severe emotional distress." *Jordan v. Delaware*, 433 F. Supp. 2d 433, 444 (D. Del. 2006) (quoting *Capano Mgmt. Co. v. Transcon. Ins. Co.*, 78 F. Supp. 2d 320, 327 (D. Del. 1999)). Applying this pleading standard, I hold the following:

- Charles Turner states a claim for intentional infliction of emotional distress against Kraft. The Complaint contains allegations that Kraft engaged in (1) extreme and outrageous conduct by viciously beating and pepper spraying Turner; (2) he acted with intent, or at least recklessness, because, during the assault, he taunted Turner by saying, "We got a big one here this time!" and elbowing and kneeing Turner more when he said he was in pain; and (3) the conduct is alleged to have caused severe emotional distress by making Turner afraid constantly that he would be attacked. D.I. 29 ¶¶ 223-39. Defendants' motion to dismiss Turner's claim against Kraft is denied.

- Kevin Ignudo states a claim for intentional infliction of emotional distress against Sgt. Steven Long, Cpl. Steele, and Sgt. Joseph McCarthy. The Complaint contains allegations that they (1) engaged in extreme and outrageous conduct by handcuffing, pepper spraying, and beating Ignudo; (2) acted with intent, or at least recklessness, because they taunted Ignudo by saying, "You're about to get your recreation!" and "I

will rip your dick off and put it in your mouth!"; and (3) caused severe emotional distress by making Ignudo afraid constantly that he would be attacked. *Id.* ¶¶ 328-43. Defendants' motion to dismiss Ignudo's claim against Long, Steele, and McCarthy is denied.

- Atiba Mayfield states a claim for intentional infliction of emotional distress against Sgt. Steven Long and CO Hood. The Complaint contains allegations that they (1) engaged in extreme and outrageous conduct by beating Mayfield immediately after he attempted suicide; (2) acted with intent, or at least recklessness, because they orally assaulted him during the attack; and (3) caused severe emotional distress by making Mayfield feel "traumatized," "helpless," "frightened," and determined to avoid interactions with correctional officers following the assault. *Id.* ¶¶ 590-99. Defendants' motion to dismiss Mayfield's claim against Long and Hood is denied.

- Danny Harding, Jr. does not state a claim for intentional infliction of emotional distress against Sgt. Fountain and Sgt. Correa. The Complaint does not allege that Defendants' conduct caused severe emotional distress. Instead, it says that "[t]he full extent of Plaintiff Harding's physical and emotional injuries is presently unknown." *Id.* ¶ 528. As such, Defendants' motion to dismiss this claim against Defendants Fountain and Correa is granted. It is dismissed without prejudice because amendment that includes additional details of Harding's emotional harm would not be futile.

### D. Defendants' motion to dismiss Count IX is granted in part and denied in part.

As to the Count IX claims for violating Plaintiffs' substantive due process rights, the parties are almost entirely in agreement. Plaintiffs' Chart and Defendants' Chart align in that there are no claims under Count IX asserted against Sgt. Kevin Braswell, Lyle Neal, Ryan Maddox, CO Evanglett, CO Duperon, CO Brandon Wilkens, CO Keefer, CO West, CO Amy Mathis, Cpl. Joseph Kraft, CO Miles Vernet, CO Jeff Purdy, Sgt. Hudson, Sgt. Hastings, Sgt. Robert Givens, Brandon Messick, Sgt. Jeremiah Purnell, Sgt. Andrew Cassidy, CO Keen, CO Humes, Sgt. Steven Long, Cpl. Steele, Sgt. Joseph McCarthy, CO Wright, CO Naomi Strand, Sgt. Correa, Sgt. Fountain, CO Aaron Bianca, CO Jared Payton, CO Eric Layman, CO Roswell, CO Jones, CO Hood, Sgt. Deon Brown, Sgt. Russell, CO Jefferson, and CO Spencer. As a result, Defendants' motion to dismiss substantive due

process claims against the above-listed Defendants is denied without prejudice.   If Plaintiffs attempt to assert this claim against the listed Defendants going forward in this lawsuit, Defendants may renew their motion.

That leaves only Defendant Isaac Mitchell.  In Plaintiffs' Chart, they argue that Plaintiff Neki Gibbs states a claim against Mitchell.  D.I. 48 at 12 (citing D.I. 29 ¶ 281). The relevant portion of the Complaint states the following: "Plaintiff Gibbs had previously filed grievances against Defendant Maddox which were never adjudicated. Plaintiff Gibb's grievances were sent to Capt. Mitchell, but Plaintiff Gibbs was told he was 'imagining' the mistreatment."  D.I. 29 ¶ 281.

Based on this allegation, Gibbs does not state a claim for violating substantive due process rights against Mitchell.  To start, it is unclear if the "Capt. Mitchell" who denied Gibbs' grievance, *id.* ¶ 281, is the same Isaac Mitchell that participated in assaults on Plaintiffs Haymond, Newcomb, and Selby, *see id.* ¶ 59 (listing Mitchell's involvement in assaults against those three Plaintiffs).  Assuming he is the same Mitchell, there is still no allegation that he failed to investigate, denied Gibbs' ability to present evidence or have witnesses testify, or otherwise infringed on Gibbs' due process rights.  Instead, the only allegation is that Mitchell was rude in rejecting the grievance by telling Gibbs he was imagining the mistreatment.  Defendants' motion to dismiss this claim against Mitchell is granted, and the claim is dismissed without prejudice to Plaintiffs' amending the Complaint to include additional details about his review of the grievance and how it harmed Gibbs.

## IV.   DISMISSAL OF OTHER CLAIMS UNDER RULE 12(b)(6)

Separately, Defendants seek dismissal under Rule 12(b)(6) for the Count VII claims

for violating the law of dignity and Count VIII claims for retaliation.

### A.  Claims for violating the right to dignity are not actionable.

Defendants move to dismiss under Rule 12(b)(6) Plaintiffs' claims for violating the

law of dignity contained in Count VII.  They argue that, although dignity is an important

principle underlying many constitutional claims, it is not a standalone cause of action.

Because Plaintiffs' failed to cite a single case recognizing violation of dignity as an

actionable tort and I similarly failed to find such a case, I agree and dismiss the claims for

violating the law of dignity against all Defendants.

Dignity, or respect of our fellow human beings, is an important principle underlying

many constitutional rights.  Because of this, the Supreme Court has routinely discussed

dignity in cases where plaintiffs seek to vindicate those rights.  *See, e.g.*, *Cohen v.*

*California*, 403 U.S. 15, 24 (1971) (First Amendment protections are necessary to

"comport with the premise of individual dignity and choice upon which our political system

rests"); *Schmerber v. California*, 384 U.S. 757, 767 (1966) ("The overriding function of

the Fourth Amendment is to protect personal privacy and dignity against unwarranted

intrusion by the State."); *Miranda v. Arizona*, 384 U.S. 436, 460 (1966) ("[T]he

constitutional foundation underlying the privilege [against self-incrimination] is the respect

a government—state or federal—must accord to the dignity and integrity of its citizens.");

*Trop v. Dulles*, 356 U.S. 86, 100 (1958) ("The basic concept underlying the Eighth

Amendment is nothing less than the dignity of man."); *Obergefell v. Hodge*s, 576 U.S. 644,

663 (2015) ("[T]hese liberties [protected by the Fourteenth Amendment] extend to certain personal choices central to individual dignity and autonomy.").  In each of these cases, the Court mentioned dignity in connection with a claim for a violation of some other recognized right and not as the right itself.

Similarly, the Third Circuit has mentioned dignity but did not recognize it as cause of action in *Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015).  There, the plaintiffs brought a civil-rights suit against the City of New York alleging it violated their First and Fourteenth Amendment rights through a police surveillance program targeting Muslims following the September 11 terrorist attacks.  *Id.* at 284-85.  In conducting a standing analysis, the Court explained that discrimination is "dignitary" in nature because the injury caused by discrimination is "the affront to the other's dignity."  *Id.* at 293 (citation omitted).  But that discussion of dignity was meant to explain why the plaintiffs had standing to sue for other recognized claims: discrimination under the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.  *Id.* at 288, 293.

Neither did the Delaware Supreme Court create such a dignity tort in *Snowden v. State*, 672 A.2d 1017 (Del. 1996).  It recognized that denying a criminal defendant his right to represent himself in his trial violated his "dignity and autonomy."  *Id.* at 1021.  But again, the discussion of dignity supported his already established Sixth Amendment right to self-representation.  *Id.*  It did not create a standalone claim for violating dignity.

As neither federal nor Delaware courts have created the tort Plaintiffs seek, I dismiss their Count VII with prejudice for failure to state a claim under Rule 12(b)(6).  Although

these claims for violating dignity are not independently recognized, Plaintiffs may proceed with other claims, such as those for Eighth and Fourteenth Amendment violations, that seek to remedy the same underlying violations of their dignity.

**B. The allegations in support of the retaliation claim lack sufficient detail.**

Defendants also move to dismiss Count VII that alleges First Amendment retaliation.  To plead such a claim, a plaintiff must allege that (1) he engaged in constitutionally protected activity; (2) the government responded with retaliation; and (3) the protected activity caused the retaliation.  *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013).  The allegations must be factual and not only "[t]hreadbare recitals of the elements" and "conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Complaint does not allege sufficient detail to satisfy all three elements of retaliation.  Plaintiffs allege they filed this lawsuit, which is protected speech under the First Amendment, and that, since filing, they have been "subjected to various acts of retaliation, including without limitation additional acts of excessive force and physical abuse, deprivation of basic amenities and verbal and emotional abuse."  D.I. 29 ¶¶ 836-37.  Next, they state that the "Defendants' retaliatory conduct was intended to, and does, adversely affect Plaintiffs' right to free speech," and there "is a direct causal link between the Defendants' retaliatory conduct and the impairment of Plaintiffs' free speech rights."  *Id.* ¶¶ 838-39.  These allegations fail for multiple reasons.  It is unclear which Plaintiffs faced retaliation and which Defendants retaliated.  There is no detail describing the new acts of force and abuse Plaintiffs faced.  And ultimately, the allegation of causation is a mere "threadbare recital," *Iqbal*, 556 U.S. at 678, of that element.

Interestingly, when I asked Plaintiffs to clarify which of them were alleging retaliation against whom, their clarifying submission listed only Jimmie Moore as alleging retaliation against Defendants Sgt. Russell, CO Jefferson, CO Spencer, and John Does. D.I. 48 at 12.  But Moore's claim for retaliation is based on his filing of a previous lawsuit, not this lawsuit.  *Id.*  Recall that the Complaint alleged retaliation for "[t]he filing of *this* action."  D.I. 29 ¶ 836 (emphasis added).   The Complaint itself did not allege retaliation for any protected speech other than this lawsuit, and Plaintiffs cannot use the clarifying chart—a tool meant only to help organize and understand the Complaint—to add new allegations.  As a result, I conclude the Complaint does not sufficiently allege that Jimmie Moore or any other Plaintiff faced First Amendment retaliation.

That said, I will allow Plaintiffs leave to amend the Complaint with respect to their retaliation claim.  Amendment is not futile.  Because the claim fails for lack of specificity, and not a legal impediment, an amendment might cure the deficiencies.   Neither is amendment inequitable.  Although the Complaint is the third one filed, Plaintiffs could not have alleged facts about retaliation for filing *this* lawsuit until after they filed the initial complaint.  Further, multiple claims survive the motion to dismiss (and Defendants did not move to dismiss others), so the parties will continue discovery as usual no matter whether Plaintiffs amend.  Their retaliation claim is thus dismissed without prejudice, and they will have 30 days to amend this claim if they wish to do so.

## V.   SEVERING CLAIMS UNDER RULE 20

Finally, Defendants move to sever Plaintiffs' remaining claims, arguing they fail the test contained in Federal Rule of Civil Procedure 20 for permissive joinder of claims.  It

18

allows joinder of claims against multiple defendants if (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Joinder of claims and parties is "strongly encouraged," and district courts should "entertain[] the broadest possible scope of action consistent with fairness to the parties." *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

Defendants argue the first requirement—that the claims arise out of the same transaction, occurrence, or series of transactions or occurrences—is unmet. This element "refers to the similarity in the factual background of the relevant claims" and requires a case-by-case examination of the facts. *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010). The events comprising the transaction or series of transactions must "bear[] a logical relationship" to one another. *Cf. Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002) (citation omitted) (interpreting the relationship of compulsory counterclaims under Rule 13, which must arise out of the same transaction or occurrence). The concept of a logical relationship is "viewed liberally to promote judicial economy." *Id.* It exists where "separate trials on each of the claims would involve a substantial duplication of effort and time by the parties and the courts" because the claims are "offshoots of the same basic controversy between the parties." *Id.* at 389-90 (citation omitted).

Applying this standard, courts allow claims to proceed jointly when they involve a repeated pattern or practice of unlawful conduct. *See, e.g.*, *Griggs v. Holt*, 2018 WL

5283448, at *11 (S.D. Ga. Oct. 24, 2018), *aff'd sub nom. Varner v. Shepard*, 11 F.4th 1252 (11th Cir. 2021); *Mann v. Donald*, 2009 WL 811574, at *9 (M.D. Ga. Feb. 24, 2009), *report and recommendation adopted*, 2009 WL 811577 (M.D. Ga. Mar. 25, 2009); *Chimenti v. Pennsylvania Dep't of Corr.*, 2016 WL 1125580, at *17 (E.D. Pa. Mar. 21, 2016). For example, in *Griggs* the Court denied the defendants' motion to sever where the complaint alleged "a pattern or practice at [a prison] of using excessive force solely to harm inmates" even though "each incident of excessive force occurred separately." 2018 WL 5283448, at *11. In *Chimenti*, the Court denied the motion to sever where plaintiffs alleged a "DOC policy and practice" to deny necessary medical care to inmates, even though they had different medical conditions and were treated by different medical personnel at different times. 2016 WL 1125580, at *16-17.

On the other hand, courts sever claims when they cover a wide range of topic areas that are logically disjoint. *See, e.g.*, *Parkell v. Linsey*, 2017 WL 3485817, at *3-4 (D. Del. Aug. 14, 2017) (no logical relationship as to claims relating to an illegal strip search, interference with legal mail, First Amendment religious discrimination, and Eighth Amendment medical needs); *Crichlow v. Doe*, 2012 WL 1673004, at *2 (D. Del. May 11, 2012) (similar); *Drumgo v. Burris*, 2012 WL 1657196, at *2 (D. Del. May 9, 2012) (similar). For example, the Court severed claims in *Fatir v. Markell* where the plaintiff sought relief for claims related to religious discrimination, conditions of confinement, medical needs, postal charges, and denial of good time credits, among others. 2016 WL 5946870, at *5 (D. Del. Oct. 12, 2016). With such varied claims, severance was proper

20

because there was little logical relationship between his claim for medical needs and that for denial of good time credits. *Id.*

Plaintiffs' claims here more closely resemble a pattern of related abuse than logically dissimilar events. They allege that Defendants created a "systemic pattern of abusive and unlawful conduct" and that SCI's Warden Mears and Deputy Warden Beck "ratified and institutionalized" a practice of such conduct. D.I. 29 ¶ 1, *see also id.* ¶¶ 86, 87, 793, 799, 800, 806, 807. The Complaint's specific allegations, which detail abuse occurring at a frequent and regular rate in the period beginning in early 2020 and continuing through early 2022, confirm the pattern. *Id.* ¶¶ 88-792. The Complaint also includes allegations that many Defendants engaged in abuses against multiple Plaintiffs. *See, e.g.*, *id.* ¶ 45 (Defendant Neal participated in violence against eleven Plaintiffs); *id.* ¶ 57 (Defendant Vernet participated in violence against four Plaintiffs); *id.* ¶ 64 (Defendant Purnell participated in violence against four Plaintiffs). The alleged instances of violence, though they occurred on different days, are logically related because Plaintiffs allege they are part of a larger, frequent, and consistent pattern of violence and abuse at SCI. Thus, I find the claims represent a series of occurrences that satisfy the first element of Rule 20.

Additional cases cited by Defendants do not persuade me otherwise. Much of the caselaw involves claims so logically dissimilar that they are unhelpful in resolving the current motion. *See Salley v. Sec'y Pennsylvania Dep't of Corr.*, 565 F. App'x 77, 79 (3d Cir. 2014) (claims as varied as withholding of property, denial of medical needs, and racial discrimination); *Mincy v. Klem*, 303 F. App'x 106, 107 (3d Cir. 2008) (claims as varied as due process violations, interference with mail, and physical abuse); *Biggins v. Danberg*,

2012 WL 37132, at *2 (D. Del. Jan. 6, 2012) (claims as varied as unsanitary food practices, denial of medical needs, religious discrimination, and mail tampering); *Drumgo v. Burris*, 2012 WL 1657196, at *2 (D. Del. May 9, 2012) (allegations included "completely unrelated claims such as conditions of confinement, religion, access to the courts, and retaliation").  Further, Defendants' reliance on *Staats v. Phelps* is inappropriate because the Court's reasoning there turned on plaintiffs acting *pro se* and having trouble coordinating their filings from different prisons, but Plaintiffs here are represented by counsel, who can coordinate filings on their behalf.  2019 WL 4415404, at *8 (D. Del. Sept. 16, 2019) ("The need for all Plaintiffs to agree on all filings made in this action, and the need for all filings to contain the original signatures of all Plaintiffs, will lead to delay and confusion.").  Finally, Defendants argue that *Stokes v. Carney* is the "most analogous case in the Third Circuit," D.I. 37 at 5, but the claims in that case involved only four incidents of alleged abuse such that the Court concluded they were "disparate" incidents and not part of a larger pattern.  2021 WL 4477185, at *8-9 (E.D. Pa. Sept. 29, 2021).  Where, as here, Plaintiffs successfully plead allegations of a pattern or practice of unlawful behavior, joinder is appropriate.  *See Chimenti*, 2016 WL 1125580, at *17.

Defendants do not challenge whether a question of fact or law common to all of them will exist under the second element of Rule 20.  *See* D.I. 33 at 14-17 (discussing only the first element).  Still, for good measure and to confirm that joinder is appropriate, I find that questions of law and fact common to all defendants will arise.  All Plaintiffs bring claims against Warden Mears and Deputy Warden Beck in Count III for failure to supervise under the Fourteenth and Eighth Amendments.  The Complaint alleges that Mears and

22

Beck knew about the ongoing abuse, allowed it, and even encouraged it by making abusive conduct the *de facto* policy at SCI.  D.I. 29 ¶¶ 793-808, 814-17.  All Plaintiffs bring this claim against these officials and supervisors, and Defendants have not moved to dismiss this Count.  This claim will require resolution of factual and legal issues regarding what Mears and Beck knew, how they responded to information of abuse, and whether their responses amounted to failure to supervise.  These common questions satisfy the second element of Rule 20.  *See Cooper*, 266 F.R.D. at 90 (noting that the threshold for the commonality requirement is very low).

Defendants assert that, even if Rule 20's requirements are satisfied, I should still exercise my discretion to sever the case.  *See Odin's Eye Ent. v. Does 1-66*, 2013 WL 5890408, at *1 (D. Del. Oct. 31, 2013) (explaining that courts may exercise discretion to sever claims to prevent prejudice or delay, ensure judicial economy, or safeguard principles of fundamental fairness); *Westinghouse v. Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 147 (D. Del. 2019) (same).  I choose not to do so and will instead keep the claims together.  Severing them would waste this Court's and the parties' resources because it would require multiple rounds of discovery, conferences, motions briefing, hearings, and rulings.  Even on a coordinated schedule, dividing one case into 39 does not serve judicial economy.  On the other hand, Defendants will not be unduly prejudiced absent severance.  Although different Defendants participated in the alleged abuse in varying degrees, jurors will be able to distinguish claims against one officer from claims against another.  The claims, though numerous, are not too difficult to understand or isolate.

I therefore deny Defendants' motion to sever, as the circumstances of this case currently do not warrant such separation.

## VI.   CONCLUSION

For these reasons, Defendants' motion to dismiss is granted in part and denied in part, and their motion to sever is denied in full.  An appropriate order follows.

/s/ Thomas L. Ambro<br>Circuit Judge, sitting by designation

Dated: August 17, 2023