# IN THE DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM DAVIS<br>143 Gabriel Drive<br>Bear, Delaware 19701 | ) ) ) | |
| | ) | C.A. No.  1:21-cv-01773 TLA |
| ISAAC MONTAGUE<br>Sussex Correction Institution<br>23203 Dupont Blvd.<br>Georgetown, Delaware 19947 | ) ) ) ) | DEMAND FOR<br>JURY TRIAL |
| | ) | |
| LUKE ERIXSON<br>24281 German Road<br>Seaford, Delaware 19973 | ) ) ) | |
| | ) | |
| KEITH CAMPBELL<br>11 Lochview Drive<br>Bear, Delaware 19701 | ) ) ) | |
| | ) | |
| ADAM CALLOWAY<br>29 North Pine Ext.<br>Seaford, Delaware 19973 | ) ) ) | |
| | ) | |
| NASIER GIBBS<br>321 South East Second Street<br>Milford, Delaware 19963 | ) ) ) | |
| | ) | |
| CHARLES TURNER<br>12544 Ponder Road<br>Ellendale, Delaware 19941 | ) ) ) | |
| | ) | |
| AUGUSTINE HAYMOND<br>Sussex Correction Institution<br>Medium Building A-Tier<br>23203 Dupont Blvd.<br>Georgetown, Delaware 19947 | ) ) ) ) ) | |
| | ) | |
| NEKI T. GIBBS, SR.<br>James T. Vaughn Correctional Center<br>1181 Paddock Road<br>Smyrna, Delaware 19977 | ) ) ) ) | |
| | ) | |
| AARON GIVENS<br>31531 Jestice Farm Road<br>Laurel, Delaware 19956 | ) ) ) | |
| | ) | |
| DONBRAY DURHAM<br>624 River Road<br>Dover, Delaware 19901 | ) ) ) | |
| | ) | |
| MICHAEL KLEIN | ) | |

1

Millsboro, Delaware 19966                )
                                         )
KEVIN IGNUDO                             )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
GEORGE STURGIS                           )
26558 Handy Road                         )
Millsboro, Delaware 19966                )
                                         )
RICHARD EDWARDS                          )
Sussex Correctional Institution          )
Medium Building B-Tier                   )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
TIMOTHY NEWCOMB                          )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
BARRY CLINE                              )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
GERALD LUSBY                             )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
CHRIS MORALES                            )
2264 York Drive                          )
Woodbridge, Virginia 22191               )
                                         )
DONALD R. BECKWITH                       )
Sussex Correctional Institution          )
                                         )
JACOB REECE                              )
121 Chance Road                          )
Clayton, Delaware 19938                  )
                                         )
KYLE BULLOCK                             )
119 Woodlawn Drive                       )
Smyrna, Delaware 19977                   )
                                         )
DANNY HARDING, JR.                       )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )

DONALD WHITE                                        )
Sussex Correctional Institution                     )
23203 Dupont Blvd.                                  )
Georgetown, Delaware 19947                          )
                                                    )
KENDALL SMITH                                       )
James T. Vaughn Correctional Center                 )
1181 Paddock Road                                   )
Smyrna, Delaware 19977                              )
                                                    )
NATHAN LEWANDOWSKI                                  )
25809 Kings Lane                                    )
Millsboro, Delaware 19966                           )
                                                    )
BRADLEY ZAHNER                                      )
Sussex Correctional Institution                     )
23203 Dupont Blvd.                                  )
Georgetown, Delaware 19947                          )
                                                    )
ATIBA MAYFIELD                                      )
Sussex Correctional Institution                     )
23203 Dupont Blvd.                                  )
Georgetown, Delaware 19947                          )
                                                    )
BRYON KELLY                                         )
Sussex Correctional Institution                     )
23203 Dupont Blvd.                                  )
Georgetown, Delaware 19947                          )
                                                    )
WARREN SELBY                                        )
Sussex Correctional Institution                     )
23203 Dupont Blvd.                                  )
Georgetown, Delaware 19947                          )
                                                    )
PATRICIO BAUTISTA                                   )
Sussex Correctional Institution                     )
23203 Dupont Blvd.                                  )
Georgetown, Delaware 19947                          )
                                                    )
JAMAL SOLOMON                                       )
Sussex Correctional Institution                     )
23203 Dupont Blvd.                                  )
Georgetown, Delaware 19947                          )
                                                    )
LAQUAN JOHNSON                                      )
James T. Vaughn Correctional Center                 )
1181 Paddock Road                                   )
Smyrna, Delaware 19977                              )
                                                    )
CHARLES ROBINSON                                    )
Sussex Correctional Institution                     )

Georgetown, Delaware 19947                    )
                                              )
SHAMIR SUDLER                                 )
Sussex Correctional Institution               )
23203 Dupont Blvd.                            )
Georgetown, Delaware 19947                    )
                                              )
RICHARD S MADDUX                              )
Sussex Correctional Institution               )
23203 Dupont Blvd.                            )
Georgetown, Delaware 19947                    )
                                              )
JIMMIE MOORE                                  )
Sussex Correctional Institution               )
23203 Dupont Blvd.                            )
Georgetown, Delaware 19947                    )
                                              )
REUEL RAY                                     )
Sussex Correctional Institution               )
23203 Dupont Blvd.                            )
Georgetown, Delaware 19947                    )
                                              )
JASON BENNETT                                 )
420 East 6th Street                           )
Laurel, Delaware 19956                        )
                             Plaintiffs       )
v.                                            )
                                              )
KIRK NEAL                                     )
Sussex Correctional Institution               )
23203 Dupont Blvd.                            )
Georgetown, Delaware 19947                    )
                                              )
LYLE NEAL                                     )
Sussex Correctional Institution               )
23203 Dupont Blvd.                            )
Georgetown, Delaware 19947                    )
                                              )
RYAN MADDOX                                   )
Sussex Correctional Institution               )
23203 Dupont Blvd.                            )
Georgetown, Delaware 19947                    )
                                              )
MATTHEW LONG                                  )
Sussex Correctional Institution               )
23203 Dupont Blvd.                            )
Georgetown, Delaware 19947                    )
                                              )
KEVIN BRASWELL                                )
Sussex Correctional Institution               )
23203 Dupont Blvd.                            )
Georgetown, Delaware 19947                    )

DAVID DUPERRON                        )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
BRANDON C.                            )
WILKENS                               )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
MARK KEEFER                           )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
RONALD R.WEST                         )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
AMY MATHIS                            )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
JOSEPH E. KRAFT                       )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
MILES VERNET                          )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
JEFF PURDY                            )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
ISAAC MITCHELL                        )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
ALVIN HUDSON                          )
Sussex Correctional Institution       )
23203 Dupont Blvd.                    )
Georgetown, Delaware 19947            )
                                      )
PHILIP S. HASTINGS                    )

23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
ROBERT GIVENS                                         )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
BRANDON MESSICK                                       )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
JEREMIAH PURNELL                                      )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
ANDREW CASSIDY                                        )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
COREY KEEN                                            )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
STEVE LONG                                            )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
DYLAN STEELE                                          )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
JOSEPH MCCARTHY                                       )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
JEFFREY WRIGHT                                        )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
NAOMI STRAND                                          )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )

ANTHONY CORREA                    )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )
JERMAINE FOUNTAIN                 )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )
AARON BIANCA                      )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )
JARED PAYTON                      )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )
ERIC LAYMAN                       )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )
TRACY C. JONES, JR.               )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )
TERRY HOOD                        )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )
DION BROWN                        )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )
TANNER RUSSELL                    )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )
TYSON JEFFERSON                   )
Sussex Correctional Institution   )
23203 Dupont Blvd.                )
Georgetown, Delaware 19947        )
                                  )

7

Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
JEREMIAH L. DRUMMOND )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
MARK SESSLER )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
RYANN SCHAFER )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
SCOTT D. BOLLINGER )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
UHLAND J. PEPPER )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
DAVID R. SEYMORE )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
JEREMY BLANK )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
JOSHUA M. BETTS )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
JOSHUA L. NIBLETT )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
BRETT HAMPSTEAD )
Sussex Correctional Institution )
23203 Dupont Blvd. )

)
NICHOLAOS PSAROUDAKIS                    )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
HAROLD MCTEER                            )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
DEE STRANICK                             )
c/o Sussex Correctional Institution      )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
STEPHEN CHALMERS                         )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
ANTON LINDALE                            )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
KENNETH W. CHARLES                       )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
KEITH CALVERT                            )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
CHASE REYNOLDS                           )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
JUAN DIAZ                                )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
JOHN PUSEY                               )
Sussex Correctional Institution          )
23203 Dupont Blvd.                       )
Georgetown, Delaware 19947               )
                                         )
ZACHARY MCMAHON                          )

9

23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
TIMOTHY MANARAZE )
c/o Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
RALPH RICHARDSON )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
NICOLAS THOMSON )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
CHRIS WISNIEWSKI )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
STEVE MARINER )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
AMONTAY CLANTON )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
RICHARD T. WILSON )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
KEVIN T. DUNN )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
AMOS N. CALLAWAY )
Sussex Correctional Institution )
23203 Dupont Blvd. )
Georgetown, Delaware 19947 )
)
BRIAN M. CLARKE )
Sussex Correctional Institution )
23203 Dupont Blvd. )

ADRIENNE HANNA                                    )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
JOHN DITTMAN                                      )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
BENJAMIN COVERDALE                                )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
HUNTER WEST                                       )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
ANTHONY L. WISE                                   )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
JAMES BRAY                                        )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
HUNTER SIMPSON                                    )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
ARTHUR O'DAY                                      )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
WILLIAM CHANDLER                                  )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
BRYAN J. TINDLEY                                  )
Sussex Correctional Institution                   )
23203 Dupont Blvd.                                )
Georgetown, Delaware 19947                        )
                                                  )
SHYANNE MANCHA                                    )

23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
JOSEPH SMITH                                          )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
DUSTIN SIMPSON                                        )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
BRANDON JENKINS                                       )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
MICHAEL RUNNE                                         )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
BENJAMIN HARMON                                       )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
FREDERICK DOBRONZ                                     )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
AARON BENNETT                                         )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
CHRISTOPHER TURAK                                     )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
DONALD LAYTON                                         )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )
                                                      )
MELINDA ROBINSON                                      )
Sussex Correctional Institution                       )
23203 Dupont Blvd.                                    )
Georgetown, Delaware 19947                            )

MARK HULING                                  )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                   )
                                             )
JON MUMFORD                                  )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                   )
                                             )
CARL THOMAS                                  )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                   )
                                             )
KEVIN BATES                                  )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                   )
                                             )
MICHELLE PHILLIPS                            )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                   )
                                             )
COLBY STEELE                                 )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                   )
                                             )
JOHN DOES                                    )
CORRECTIONAL OFFICERS                        )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                   )
                                             )
TRUMAN MEARS, WARDEN                         )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947                   )
                                             )
JON BECK, DEPUTY WARDEN                      )
Sussex Correctional Institution              )
23203 Dupont Blvd.                           )
Georgetown, Delaware 19947,                  )
                                             )
                                             )
                    Defendants               )

## THIRD AMENDED COMPLAINT

1.      Plaintiffs are former and current inmates at Sussex Correctional Institution in Georgetown, Delaware ("SCI"), who bring this action to remedy, and seek redress for, a systemic pattern of abusive and unlawful conduct by correctional officers at SCI. The policies established by SCI's Warden and Deputy Warden have ratified and institutionalized this abusive and unlawful conduct.

2.      On numerous occasions throughout 2020 and 2021, Defendants engaged in extreme, unprovoked, and unnecessary acts of violence against the Plaintiffs. Defendants' egregious misconduct, including the delay or denial of medical attention to treat the injuries resulting from their assaults, caused permanent physical harm, severe emotional distress, and violated the Plaintiffs' Constitutional rights. This Complaint seeks compensatory damages, punitive damages, attorneys' fees, and any and all other available remedies.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question) and supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) as the Defendants are all located in this District, and the acts and omissions giving rise to the claims all occurred in this District.

## PARTIES

5.      Plaintiff William Davis resides at 143 Gabriel Drive, Bear, Delaware 19701. He is a citizen of Delaware.

6.      Plaintiff Isaac Montague is presently being held at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He is a citizen of Delaware.

7.      Plaintiff Luke Erixson resides at 24281 German Road, Seaford, Delaware 19973. He is a citizen of Delaware.

8.      Plaintiff Keith Campbell resides at 11 Lochview Dr., Bear, Delaware 19701. He is a citizen of Delaware.

9.      Plaintiff Adam Calloway resides at 29 North Pine Ext., Seaford, Delaware 19973. He is a citizen of Delaware.

10.     Plaintiff Nasier Gibbs resides at 321 South East Second Street, Milford, Delaware 19963. He is a citizen of Delaware.

11.     Plaintiff Charles Turner resides at 12544 Ponder Road, Ellendale, Delaware 19941. He is a citizen of Delaware.

12.     Plaintiff Augustine Haymond is presently being held at SCI, Medium Building A-Tier. He is a citizen of Delaware.

13.     Plaintiff Neki T. Gibbs, Sr. is presently being held at James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977. He is a citizen of Delaware.

14.     Plaintiff Aaron Givens resides at 31531 Jestice Farm Road, Laurel, Delaware 19956. He is a citizen of Delaware.

15.     Plaintiff Donbray Durham resides at 624 River Road, Dover, Delaware 19901. He is a citizen of Delaware.

16.     Plaintiff Michael Klein resides at 34146 Colony Drive North, Millsboro, Delaware 19966. He is a citizen of Delaware.

17.     Plaintiff Kevin Ignudo is presently being held at SCI. He is a citizen of Delaware.

18.     Plaintiff George Sturgis resides at 26558 Handy Road, Millsboro, Delaware 19966 . He is a citizen of Delaware.

19.     Plaintiff Richard Edwards is presently being held at SCI, Medium Building B-Tier. He is a citizen of Delaware.

20.     Plaintiff Timothy Newcomb is presently being held at SCI. He is a citizen of Delaware.

21.     Plaintiff Barry Cline is presently being held at SCI. He is a citizen of Delaware.

22.     Plaintiff Gerald Lusby is presently held at SCI. He is a citizen of Delaware.

23.     Plaintiff Chris Morales resides at 2264 York Drive, Woodbridge, Virginia 22191.

24.     Plaintiff Donald R. Beckwith is presently held at SCI.

25.     Plaintiff Jacob Reece resides at 121 Chance Road, Clayton, Delaware 19938. He is a citizen of Delaware.

26.     Plaintiff Kyle Bullock resides at 119 Woodlawn Drive, Smyrna, Delaware 19977. He is a citizen of Delaware.

27.     Plaintiff Danny Harding, Jr. is presently being held at SCI. He is a citizen of Delaware.

28.     Plaintiff Donald White is presently being held at SCI. He is a citizen of Delaware.

29.     Plaintiff Kendall Smith is presently being held at James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977. He is a citizen of Delaware.

30.     Plaintiff Nathan Lewandowski resides at 25809 Kings Lane, Millsboro, Delaware 19966. He is a citizen of Delaware.

31.     Plaintiff Bradley Zahner is presently being held at SCI. He is a citizen of Delaware.

32.     Plaintiff Atiba Mayfield is presently being held at SCI. He is a citizen of Delaware.

33.     Plaintiff Bryon Kelly is presently being held at SCI. He is a citizen of Delaware.

34.     Plaintiff Warren Selby is presently being held at SCI. He is a citizen of Delaware.

16

36.     Plaintiff Jamal Solomon is presently being held at SCI. He is a citizen of Delaware.

37.     Plaintiff Laquan Johnson is presently being held at James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977. He is a citizen of Delaware.

38.     Plaintiff Charles Robinson is presently being held at SCI. He is a citizen of Delaware.

39.     Plaintiff Shamir Sudler is presently being held at SCI. He is a citizen of Delaware.

40.     Plaintiff Richard S. Maddux is presently being held at SCI. He is a citizen of Delaware.

41.     Plaintiff Jimmie Moore is presently being held at SCI. He is a citizen of Delaware.

42.     Plaintiff Reuel Ray is presently being held at SCI. He is a citizen of Delaware.

43.     Plaintiff Jason Bennett resides at 420 East 6th Street, Laurel, Delaware 19956. He is a citizen of Delaware.

44.     All of the Plaintiffs exhausted the available grievance remedies yet received no redress or have shown that their attempts at exhaustion would be futile.

45.     Defendant Kirk Neal is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. Defendant Kirk Neal was involved in the excessive use of force against Plaintiffs Davis, Montague, Erixson, Campbell, Haymond, Morales, Givens, Reece, Smith, Sturgis and Maddux. Reasonable discovery may establish that Defendant Kirk Neal was also involved in assaults against other Plaintiffs.

46.     Defendant Lyle Neal is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was involved in excessive use of force against Plaintiffs Montague, Turner and Givens.

17

47.     Defendant Ryan Maddox is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about May 18, and September 18, 2021, and was involved in the excessive use of force against Plaintiffs Montague and Neki Gibbs, Sr.

48.     Defendant Matthew Long is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He oversaw a hearing involving Plaintiff Montague and prevented Plaintiff Montague from receiving redress.

49.     Defendant Kevin Braswell is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about September 18, 2021, and was involved in the excessive use of force against Plaintiff Montague and Turner.

50.     Defendant David Duperron is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about July 18, 2020 and December 2021and was involved in the excessive use of force against Plaintiffs Campbell and Sudler.

51.     Defendant Brandon Wilkens is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about July 18, 2020 and was involved in the excessive use of force against Plaintiffs Campbell, Edwards and Mayfield.

52.     Defendant Mark Keefer is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about July 18, 2020 and was involved in the excessive use of force against Plaintiff Campbell.

53.     Defendant Ronald R. West is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about July 18, 2020 and was involved in the excessive use of force against Plaintiff Ray.

54.     Defendant Amy Mathis is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. She was working on or about February 19, 2020 and was involved in the excessive use of force against Plaintiff Calloway.

55.      Defendant Corporal Joseph Kraft is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about February 21, 2021, and was involved in the excessive use of force against Plaintiffs Turner and Ray.

56.      Defendant Miles Vernet is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was involved in the excessive use of force against Plaintiffs Edwards, Haymond, Barry Cline, Kelly, Durham, White and Davis.

57.      Defendant Jeff Purdy is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was involved in the excessive use of force against Plaintiffs Cline and Kelly.

58.      Defendant Isaac Mitchell is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was involved in the excessive use of force against Plaintiffs Haymond, Newcomb and Selby.

59.      Defendant Alvin Hudson is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was involved in the excessive use of force against Plaintiffs Sturgis and Johnson.

60.      Defendant Philip S. Hastings is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was involved in the excessive use of force against Plaintiffs Nasier Gibbs, Solomon, and Robinson.

61.      Defendant Robert Givens is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was involved in the excessive use of force against Plaintiff Calloway.

62.      Defendant Brandon Messick is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working around August 2020, and was involved in the excessive use of force against Plaintiffs Edwards and White.

63.      Defendant Sgt. Jeremiah Purnell is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working around August 2020, March 29,

2021, and February 9 and 17 2022, and was involved in the excessive use of force against

Plaintiffs Edwards, Lewandowski, Harding, Ray, Reece, Harding, and Johnson.

64.      Defendant Sgt. Andrew Cassidy is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working around August 2020, and was involved in the excessive use of force against Plaintiffs Edwards and Reece.

65.      Defendant Keen is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working around August 2020, and February 14, 2022, and was involved in the excessive use of force against Plaintiffs Edwards, Cline, Bullock, Zahner and Bennett.

66.      Defendant Sgt. Steven Long is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about May 1 and November 25, 2021, and was involved in the excessive use of force against Plaintiffs Ignudo and Mayfield.

67.      Defendant Dylan Steele is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about November 25, 2021, and was involved in the excessive use of force against Plaintiffs Davis, Campbell and Johnson.

68.      Defendant Sgt. Joseph McCarthy is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about November 25, 2021, and was involved in the excessive use of force against Plaintiff Ignudo.

69.      Defendant Wright is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on June 5, 2020, and was involved in the abuse of Plaintiff Lusby.

70.      Defendant Naomi Strand is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. She was working on or about November 9, 2021, and was involved in the excessive use of force against Plaintiff Sturgis.

71.     Defendant Anthony Correa is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working around February 17, 2022, and was involved in the excessive use of force against Plaintiff Harding.

72.     Defendant Jermaine Fountain is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working around February 17, 2022, and was involved in the excessive use of force against Plaintiff Harding.

73.     Defendant Aaron Bianca is a correctional officer who may have been employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about February 10, 2021 at the Vaughn facility alongside Defendant Kirk Neal, and was involved in the excessive use of force against Plaintiff Smith.

74.     Defendant Jared Payton is a correctional officer who may have been employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about February 10, 2021, at the Vaughn facility alongside Defendant Kirk Neal and was involved in the excessive use of force against Plaintiff Smith.

75.     Defendant Eric Layman is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was involved in the excessive use of force against Plaintiff Reece.

76.     Defendant Tracy C. Jones, Jr. is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working around May 2021, and was involved in the excessive use of force against Plaintiff Zahner.

77.     Defendant Terry Hood is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was involved in the excessive use of force against Plaintiff Mayfield.

78.     Defendant Sgt. Dion Brown is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about July 21, 2021, and was involved in the excessive use of force against Plaintiff Bautista.

79.     Defendant Tanner Russell is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about February 27, 2022, and was involved in the excessive use of force against Plaintiff Moore.

80.     Defendant Jefferson is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about February 27, 2022, and was involved in the excessive use of force against Plaintiff Moore.

81.     Defendant Kameron Spencer is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. He was working on or about February 27, 2022, and was involved in the excessive use of force against Plaintiffs Moore and Klein.

82.     Defendant Jeremiah L. Drummond is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Montague, Campbell and Ray.

83.     Defendant Mark Sessler is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Montague.

84.     Defendant Ryann Schafer is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Montague and Calloway.

85.     Defendant Scott D. Bollinger is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Ray.

86.     Defendant Uhland J. Pepper is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Ray.

87.     Defendant David R. Seymore is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Turner and Ray.

88.     Defendant Jeremy Blank is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Ray.

89.     Defendant Joshua M. Betts is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Ray.

90.     Defendant Joshua L. Niblett is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Calloway and Ray.

91.     Defendant Brett Hampstead is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Turner.

92.     Defendant Nicholaos Psaroudakis is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Turner.

93.     Defendant Harold McTeer is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Turner and Mayfield.

94.     Defendant Dee Stranick was a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Turner.

95.     Defendant Stephen Chalmers is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Turner.

96.     Defendant Anton Lindale is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Turner and Cline.

97.     Defendant Kenneth W. Charles is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Turner and Newcomb.

98.     Defendant Keith Calvert is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Turner.

99.     Defendant Chase Reynolds is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Turner.

100.     Defendant Juan Diaz is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Turner.

101.     Defendant John Pusey is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Calloway, Edwards and Bullock.

102.    Defendant Zachary McMahon was a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Bullock.

103.    Defendant Timothy Manaraze was a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Bullock.

104.    Defendant Ralph Richardson is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Reece and Bullock.

105.    Defendant Nicolas Thomson is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Bullock.

106.    Defendant Chris Wisniewski is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiffs Calloway and Bullock.

107.    Defendant Steve Mariner is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Bullock.

108.    Defendant Amontay Clanton is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Bullock.

109.    Defendant Richard T. Wilson is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Edwards.

110.    Defendant Kevin T. Dunn is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Cline.

111.    Defendant Amos N. Callaway is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Nasier Gibbs.

112.    Defendant Brian N. Clarke is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Nasier Gibbs.

113.    Defendant Adrienne Hanna is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  She was involved in the excessive use of force against Plaintiffs Nasier Gibbs, Campbell and Haymond.

114.    Defendant John Dittman is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Calloway.

115.    Defendant Benjamin Coverdale is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Calloway.

116.    Defendant Hunter West is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Campbell.

117.    Defendant Anthony L. Wise is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Zahner.

118.    Defendant James Bray is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Zahner.

119.    Defendant Hunter Simpson is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Durham.

120.    Defendant Arthur O'Day is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Klein.

121.    Defendant William Chandler is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Klein.

122.    Defendant Bryan J. Tindley is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Johnson.

123.    Defendant Shyanne Mancha is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  She was involved in the excessive use of force against Plaintiff Givens.

124.    Defendant Joseph Smith is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Mayfield.

125.    Defendant Dustin Simpson is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Mayfield.

126.    Defendant Brandon Jenkins is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Mayfield.

127.    Defendant Michael Runne is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Mayfield.

128.    Defendant Benjamin Harmon is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Reece.

129.    Defendant Frederick Dobronz is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Reece.

130.    Defendant Aaron Bennett is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Reece.

131.    Defendant Christopher Turak is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Reece.

132.    Defendant Donald Layton is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Reece.

133.    Defendant Melinda Robinson is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  She was involved in the excessive use of force against Plaintiff Reece.

134.    Defendant Mark Huling is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Reece.

135.    Defendant Jon Mumford is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Reece.

136.    Defendant Carl Thomas is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Davis.

137.    Defendant Kevin Bates is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Campbell.

138.    Defendant Michelle Phillips is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  She violated policies and was involved in the mistreatment of Plaintiff Beckwith.

139.    Defendant Colby Steele is a correctional officer employed at SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947.  He was involved in the excessive use of force against Plaintiff Ignudo.

140.    Defendant Truman Mears serves as the Warden of the SCI, 23203 Dupont Blvd., Georgetown, Delaware 19947. In that capacity, he is responsible for establishing the policies and procedures for correctional staff at SCI. By allowing and encouraging a system of abusive conduct by correctional officers to become a *de facto* policy at SCI, he was personally involved in the unconstitutional and unlawful conduct at issue. In addition, reasonable discovery will show that he was alerted on multiple occasions to unprofessional and illegal conduct by the correctional guards, yet failed to act. His failure to act led to a litany of violent attacks, including but not

limited to the violent attacks on Plaintiffs. Defendant Mears was also directly involved in the

assault upon Plaintiff Bennett as more fully described below.

141.    Defendant Jon Beck serves as the Deputy Warden of the SCI, 23203 Dupont Blvd.,

Georgetown, Delaware 19947. In that capacity, he is responsible for establishing the policies and

procedures for correctional staff at SCI. By allowing and encouraging a system of abusive conduct

by correctional officers to become a *de facto* policy at SCI, he was personally involved in the

unconstitutional and unlawful conduct at issue. In addition, reasonable discovery will show that he

was alerted on multiple occasions to unprofessional and illegal conduct by the correctional guards,

yet failed to act. His failure to act led to a litany of violent attacks, including but not

limited to the violent attacks on Plaintiffs.

130. Defendant Johns Does are correctional officers who are visible in the videotapes of

the use of excessive force who have not yet been identified.

## FACTS REGARDING ATTACK ON PLAINTIFF MONTAGUE

142.    On or about September 18, 2021, while working as a correctional officer at SCI,

Defendant Kirk Neal initiated and engaged in a violent attack against Plaintiff Montague.

143.    Defendant Kirk Neal lacked any cause or provocation for the violent attack.

144.    Plaintiff Montague encountered Defendant Kirk Neal when he lined up to use the

Phone and obtain his commissary sheet, phone sheet, and toilet paper. Defendant Kirk Neal told

him he could not use the phone and needed to go to his cell for "lock in."

145.    Defendant Kirk Neal followed Plaintiff Montague to his cell, asking for his pen

back and telling him to "shut the fuck up."

146.    Defendant Kirk Neal stood in the doorway of Plaintiff Montague's cell,

preventing Plaintiff Montague from closing his cell door.

147.    Defendant Kirk Neal jumped in and out of the doorway, and called "a code." Upon

hearing Defendant Kirk Neal call a code, Plaintiff Montague immediately laid down on the floor

of his cell on his stomach with his hands behind his back.

148.    Despite Plaintiff Montague's passive posture, Defendant Kirk Neal began to assault Plaintiff Montague.

149.    As Plaintiff Montague lay on his stomach with his hands behind his head, trying his best to    block his face from being hit, Defendant Kirk Neal kneed Plaintiff Montague in the side of his face.

150.    Defendants Braswell, Lyle Neal and Maddox rushed to Plaintiff Montague's cell and joined with Defendant Kirk Neal in assaulting Plaintiff Montague.

151.    These Defendants kicked and punched Plaintiff Montague and pulled his dreadlocks from his head, leaving bald spots.

152.    One Defendant used his handcuffs as a weapon, hitting Plaintiff Montague in his face and causing a permanent scar.

153.    Defendants Kirk Neal and Maddox called Plaintiff Montague a racist name.

154.    Defendant Maddox inserted a can of pepper spray into Plaintiff Montague's mouth and pressed down on the nozzle, forcing large amounts of pepper spray into Plaintiff Montague's mouth, throat, and lungs.

155.    Other Defendants John Does were present and videotaped the assault with a recording device, but did not participate. None attempted to halt the assault.

156.    The Defendants' assault was so severe that Plaintiff Montague could not walk when Defendants finally halted the beatings.

157.    Defendants Ryann Schaffer, Jeremiah Drummond and Mark Sessler placed Plaintiff Montague on a gurney and brought him to a nurse, who patched up Plaintiff Montague's bleeding face.

158.    Defendants placed Plaintiff Montague in the Special Housing Unit, ("the hole") for twenty-one days immediately following the incident.

159.    Plaintiff Montague was not provided with adequate medical examination or treatment.

160.    Plaintiff Montague repeatedly filed "sick call slips" seeking pain relief and treatment, but received only ice for his injuries.

161.    Plaintiff Montague's eye remained swollen shut for multiple days, and he could not breath properly for many days.

162.    Even today, months after the assault, Plaintiff Montague's eye remains darkened.

163.    Plaintiff Montague's shoulder remains injured from the assault.

164.    Plaintiff Montague suffers from sudden sharp pains in his head.

165.    In a disciplinary hearing following the assault upon Plaintiff Montague, Defendant Matthew Long prevented Plaintiff Montague from seeking redress for his injuries by refusing to allow him to call witnesses and refusing to listen to Plaintiff Montague's testimony.

166.    Plaintiff Montague subsequently filed grievances, all of which were ignored or disregarded.

## FACTS REGARDING ATTACK ON PLAINTIFF DAVIS

167.    On or about October 18, 2021, Plaintiff Davis was being detained at SCI despite the fact that his release had been ordered. SCI failed to promptly implement the release order, and instead detained Plaintiff Davis for more than 72 hours.

168.    Plaintiff Davis, concerned that he was not being released as ordered by the court, approached the control desk and asked Defendant Kirk Neal about his release.

169.    Defendant Kirk Neal ignored Plaintiff Davis' request. Approximately one hour later, during recreation time, Plaintiff Davis thought he heard his name called over the public announcement system and approached Defendant Vernet at the control desk once again to inquire.

170.    Defendant Kirk Neal screamed at Plaintiff Davis that his name had not been called.

approached the control desk again, and asked a correctional officer to read the status sheet to him because he did not have his glasses.

172.    Defendant Kirk Neal overhead the request and began to shout at him with words to the effect: "Get the fuck over here you fucking dickhead."

173.    Defendant Kirk Neal grabbed Plaintiff Davis and walked him down the tier, asking "Where the fuck do you live?"

174.    Plaintiff Davis answered that he lived in Newark, but then clarified that he lived in Bear.

175.    The fact that Plaintiff Davis answered with his address out of the facility rather than with information about his cell block designation enraged Defendant Kirk Neal. He slammed Plaintiff Davis to the ground and began to kick and beat him.

176.    Defendants Vernet, Dylan Steele and Carl Thomas joined with Defendant Kirk Neal to beat and kick Plaintiff Davis.

177.    One Defendant held Plaintiff Davis' feet to the ground.

178.    Another Defendant repeatedly punched Plaintiff Davis in the head.

179.    Yet another Defendant handcuffed Plaintiff Davis' hands behind his back.

180.    Defendants Kirk Neal, Vernet, Steele and Thomas continued the violent beating and kicking even after handcuffing Plaintiff Davis.

181.    Defendant Vernet began to spray pepper spray in Plaintiff Davis' face.

182.    Defendant Vernet inserted the nozzle into Plaintiff Davis' nose and sprayed excessive amounts of pepper spray into Plaintiff Davis' nose, throat, and lungs.

183.    The pepper spray caused such extreme pain and harm that Plaintiff Davis formed the belief that he was going to die and began to have severe difficulty breathing.

184.    When the nozzle broke off the pepper spray and began to spew on the Defendants, they finally stopped assaulting Plaintiff Davis.

186.     Defendant Kirk Neal then took Plaintiff Davis to a holding cell, and slammed him, face first, into the tiled concrete floor.

187.     Plaintiff Davis was still handcuffed and could not break the fall in any way.

188.     Plaintiff Davis did not receive adequate medical evaluation or treatment despite being visibly injured with serious head injuries.

189.     During the next shift, at approximately 8:30pm, SCI belatedly released Plaintiff Davis to his mother. Consequently, Plaintiff Davis had no meaningful opportunity to file a grievance arising out of his assault.

190.     Plaintiff Davis went to the emergency room and received medical treatment for his serious injuries, which included substantial injuries to his head and brain.

191.     Plaintiff Davis continues to need medical care and continues to suffer from his injuries.

**FACTS REGARDING ATTACK ON PLAINTIFF LUKE ERIXSON**

192.     On or about January 29, 2020, at approximately five o'clock in the evening, in preparation for an unscheduled and irregular search of the inmates and tier, correctional officers began ordering inmates out of the area.

193.     Due to a loud television that was on nearby, Plaintiff Erixson was unable to hear orders to exit.

194.     Defendant Kirk Neal verbally assaulted Plaintiff Erixson yelling, "Dumbass, get up!" Plaintiff Erixson immediately complied.

195.     Defendant Kirk Neal grabbed Plaintiff Erixson's arm, forced it up over his head, and twisted it behind his back between his shoulder blades. Defendant Kirk Neal pulled Plaintiff Neal into a nearby hallway by the cafeteria, holding Plaintiff Erixson's forearm in one hand, and elbow in the other. Plaintiff Erixson complied.

196.     Defendant Kirk Neal then forced Plaintiff Erixson into a stairwell.

197.    Defendant Kirk Neal slapped Plaintiff Erixson approximately nine times across the face.

198.    Defendant Kirk Neal ordered Plaintiff Erixson to take his clothing off. While Plaintiff Erixson was undressing, Defendant Kirk Neal verbally assaulted Plaintiff Erixson yelling, "I always knew you were a bitch," and "You fucking pussy!"

199.    Defendant Kirk Neal told Plaintiff Erixson to get dressed. Plaintiff Erixson was ordered to go outside. Plaintiff Erixson began to cry from the assault.

200.    Correctional officers ordered Plaintiff Erixson and other inmates to go to the gym, and then back into the building.

201.    Plaintiff Erixson reported the assault but the correctional office just shook her head at Plaintiff Erixson.

202.    Plaintiff Erixson reported the assault to another officer and expressed that he was afraid to go back into the building. He responded, "I don't know what to tell you."

203.    Plaintiff Erixson reported the assault to an as-yet identified nurse who also did nothing.

204.    Once back on the tier, Plaintiff Erixson filed a grievance no. 489421. His grievance never received a response.

205.    On or about February 18, 2020, seeking redress for the assault, Plaintiff Erixson's mother reported the assault to Janice, the Warden's secretary. The report never received a response.

206.    Over the next four months, Defendant Kirk Neal verbally harassed Plaintiff Erixson at least twice a week on his tier. Defendant Kirk Neal yelled, among other things, "Are you going to tell your Mommy on me?"

207.    Plaintiff Erixson filed numerous additional grievances against Defendant Kirk Neal with the understanding that if proper procedure were followed, the initial grievance would have required Defendant Kirk Neal to no longer have contact with Plaintiff Erixson. Each time he

Erixson. Four months later, Capt. Hickman interviewed Plaintiff Erixson regarding the assault, and Plaintiff Erixson did not see Defendant Kirk Neal onward.

208.    Plaintiff Erixson suffered from ongoing fear and anxiety of having an interaction with Defendant Kirk Neal.

209.    For Plaintiff Erixson, Defendant Kirk Neal's assault, coupled with his being disregarded by correctional officers in connection to his grievances, caused him to become so anxious about coming out of his cell that he oftentimes chose to not eat, to avoid any interaction with Defendant Kirk Neal or other correctional officers.

210.    Even today, Plaintiff Erixson suffers from panic attacks as a result of the assault.

### FACTS REGARDING ATTACK ON PLAINTIFF KEITH CAMPBELL

211.    On or about July 18, 2020, while Plaintiff Campbell was exercising in the gym, Defendant David Duperron took possession of Plaintiff Campbell's bedsheet, which was hanging in his dorm window next to his bunk bed.

212.    Plaintiff Campbell requested that Defendant Duperron return the bedsheet but his requests were ignored.

213.    Plaintiff Campbell observed Defendant Duperron return a bedsheet belonging to another inmate who is white, but Defendant Duperron persisted in his refusal to return the bedsheet to Plaintiff Campbell, who is Black. Plaintiff Campbell told Defendant Duperron that such disparate treatment appeared racist.

214.    At approximately one o'clock in the afternoon, Defendant Kirk Neal called Plaintiff Campbell into his office. Defendant Kirk Neal accompanied Plaintiff Campbell back to his dorm to inspect his area. Defendant Kirk Neal asked Plaintiff Campbell to open his locker. Plaintiff Campbell asked to speak to Defendant Kirk Neal's supervisor, Lt. Pusey.

215.    In response to that request, Defendant Kirk Neal took out a can of pepper spray and sprayed it into Plaintiff Campbell's face.

217.	While on the ground, Defendant Kirk Neal sprayed Plaintiff Campbell in his nose and face, making it difficult for Plaintiff Campbell to breathe. Defendant Kirk Neal sprayed pepper spray in his own hands and rubbed it into Plaintiff Campbell's eyes.

218.	Defendants Duperron, Brandon Wilkens, Mark Keefer, Hunter West, and other as-yet unidentified John Doe Defendants rushed to the scene and joined with Defendant Kirk Neal to beat Plaintiff Campbell.

219.	Defendant Kirk Neal got on top of Plaintiff Campbell and punched Plaintiff Campbell in his face.

220.	Defendant Kirk Neal continued to spray pepper spray in Plaintiff Campbell's mouth and eyes.

221.	Defendants assaulted Plaintiff Campbell for several minutes.

222.	Lt. Pusey came to scene of the assault and ordered the Defendants to get off Plaintiff Campbell, at which point Defendants finally stopped assaulting Plaintiff Campbell.

223.	Plaintiff Campbell was handcuffed and walked off his dorm tier. Defendants forced Plaintiff Campbell to walk with his pants down and his genitals exposed.

224.	Defendants Kevin Bates, Dylan Steele, and Jeremiah Drummond strip searched Plaintiff Campbell and ordered him to put his pepper spray covered fingers in his mouth and touch his genitals. Plaintiff Campbell was not allowed to shower for twenty-four hours.

225.	Plaintiff Campbell was not provided with adequate medical examination or treatment despite being visibly injured with bruises and scratches on his eyes and covered in pepper spray. Defendants took Plaintiff Campbell to the medical room where he received only a band-aid for his serious injuries.

226.	Defendants Adrienne Hanna placed Plaintiff Campbell in "the hole" for fifteen days. On or around August 4, 2020, Plaintiff Campbell was transferred to the James T. Vaughn Correctional Center and placed in the Secured Housing Unit ("SHU"), where he remains due to an "emergency classification" related to the incident attack.

227.    Plaintiff Campbell's shoulder was injured from the assault which left a painful lump, making rotation of his shoulder painful and difficult. Plaintiff Campbell's shoulder makes a popping sound when rotated. He requested an MRI but his request was denied. He had three visits with a physical therapist over the course of two months. Plaintiff Campbell believes the bone healed incorrectly because bone is still protruding from shoulder.

228.    Plaintiff Campbell sustained broken blood vessels in his left eye from Defendant Kirk Neal shoving his fingers and rubbing pepper spray in Plaintiff Campbell's eyes. Plaintiff Campbell's vision remains blurry as a result of the assault. Plaintiff Campbell began using eye drops as a result of this incident and continues to use them when his sight is blurry.

229.    This was the first time Plaintiff Campbell ever experienced being pepper sprayed. Even today, Plaintiff Campbell feels like there's always something stuck in his throat and is constantly trying to clear his throat.

230.    Plaintiff Campbell filed grievances but was prevented from seeking redress for his injuries. During the disciplinary hearing following Plaintiff Campbell's assault, the hearing officer refused to allow Plaintiff Campbell to call witnesses and refused to view video recordings of the incident. Defendants objected to interviewing witnesses due to COVID risk. On or about April 2020, Plaintiff Campbell's grievances were dismissed.

231.    As a result of the assault, Plaintiff Campbell suffers from frequent nightmares, loss of sleep, claustrophobia, headaches, and anxiety. He received two mental health counselling sessions for after filing a grievance regarding lack of treatment, where he was instructed to take deep breaths and redirect his thoughts.

## FACTS REGARDING ATTACK ON PLAINTIFF ADAM CALLOWAY

232.    On or about February 19, 2020, at approximately midnight, needing to use the bathroom, Plaintiff Calloway walked to the community bathroom.

233.    Plaintiff Calloway noticed Defendant Amy Mathis watch him as he walked to the bathroom.

234.   Plaintiff Calloway, concerned and mindful that Defendant Mathis was a female correction officer, used a bedsheet to cover himself as he used the bathroom.

235.   Defendant Mathis screamed at Plaintiff Calloway to "take the fucking sheet down" to which Plaintiff Calloway complied.

236.   Defendant Mathis shouted at Plaintiff Calloway to, "get the fuck over here right now." Plaintiff Calloway complied and approached Defendant Mathis.

237.   Defendant Mathis said that Plaintiff Calloway had "breached security" by using the bedsheet. Plaintiff Calloway explained why he used the bedsheet.

238.   Defendant Mathis slammed her hand down on the desk and asked, "so what are you going to do?"

239.   Defendant Mathis reached for her pepper spray and sprayed excessive amounts of pepper spray into Plaintiff Calloway's face.

240.   Defendant Mathis tackled Plaintiff Calloway, causing him to land face down.

241.   Due to his fall positioning, Plaintiff Calloway was unable to put his hands behind his back as Defendant Mathis was on top of him.

242.   Defendant Mathis grabbed Plaintiff Calloway's hair and struck Plaintiff Calloway in the head with the pepper spray can.

243.   Defendant Mathis deployed excessive amounts of pepper spray a second time into Plaintiff Calloway's face.

244.   Defendant Mathis handcuffed and threw him into the hallway.

245.   Due to the excessive pepper spray to the face, Plaintiff Calloway could not breathe.

246.   Defendants Christopher Wisniewski, John Pusey, John Dittman, Benjamin Coverdale, Dion M. Brown and Ryann Schafer arrived and approached Plaintiff Calloway as he was on the ground and handcuffed.

247.   One of these Defendants spit on and verbally assaulted Plaintiff Calloway.

248.    Another of these Defendant picked Plaintiff Calloway up and placed his hand under Plaintiff Calloway's arm and around Plaintiff Calloway's neck, and grabbed his hair. Defendant put Plaintiff Calloway in a "half-nelson" position.

249.    Defendants Wisniewski, Pusey, Dittman, Coverdale, Brown and Schafer, collectively, assaulted Plaintiff Calloway and punched Plaintiff Calloway in the face, chest, and stomach.

250.    Defendants continued to assault Plaintiff Calloway by driving Plaintiff Calloway's head into a closed and locked door. The impact of Plaintiff Calloway's head hitting the door caused his forehead to swell and glass on the door to crack. The impact caused Plaintiff Calloway to cry.

251.    Defendants mocked Plaintiff Calloway and made crying sounds themselves to taunt him.

252.    Defendants began to drag Plaintiff Calloway and his legs gave out.

253.    One of these Defendant maneuvered Plaintiff Calloway's arm in a way that "snapped" his elbow, leaving a tennis ball size knot in the elbow area.

254.    Defendants placed Plaintiff Calloway in a single cell where a nurse took his vital signs.

255.    Defendants' assault on Plaintiff Calloway's face chipped two of his teeth.

256.    Plaintiff Calloway's forehead sustained a large bump and swelling from being slammed into the door head first.

257.    Plaintiff Calloway was not provided with adequate medical examination or treatment.

258.    Defendant Joshua Niblett placed Plaintiff Calloway in "the hole" for approximately six days.

259.    Plaintiff Calloway subsequently attempted to file grievances, but was denied access to the appropriate forms.

261.     Plaintiff Calloway suffers from chronic pain in his head, left elbow and mouth as a result of the assault. His elbow fused back together improperly and causes him pain on a daily basis.

262.     Plaintiff Calloway was emotionally scarred from the assault. Every time Plaintiff Calloway heard a correctional officer's keys jingle in preparation for the evening rounds to count inmates, he was placed in a state of horror for his safety.

263.     Plaintiff Calloway requested to meet with mental health services within SCI because of the assault but his requests were denied.

264.     Even today, he suffers from anxiety, post-traumatic stress disorder, nightmares, insomnia, paranoia and depression.

265.     Defendant Robert Givens caused additional harm to Plaintiff Calloway by retaliating against him for filing the lawsuit. Plaintiff Calloway learned from another incarcerated person that Defendant Robert Givens, Jr. had directed that Callaway's lunch be thrown away as Callaway was being escorted from the Classified Reclassification Unit ("CRU") to the Captain's office.  Plaintiff Calloway called his family, who immediately called the prison to complain about the mistreatment.

266.     That same evening, Defendant Givens approached Plaintiff Callaway and stated, "you have to be the stupidest mother fucker," and directed him to put his hands behind his back. Defendant Givens escorted him to the alcove of housing unit 4 and slammed the door shut. Defendant Givens balled his hands into fists, stating "I can't believe you would fucking lie like that saying I didn't feed you."  Defendant Givens then hit the wall with his fists above Plaintiff Callaway's head and stated, "just so you know, we have every address you ever lived at and when this lawsuit gets dropped, and it will, I am going to find you and fuck you up."

and commented that he thought Defendant Givens did not like him. They took no action but merely laughed and stated, "we don't think he likes anyone."

268.     Defendant Givens later threatened Plaintiff Callaway again, stating "God can't save you now" in response to Plaintiff Callaway's request for a Bible.

## FACTS REGARDING ATTACK ON PLAINTIFF NASIER GIBBS

269.     On or about January 24, 2021, Plaintiff Gibbs was being processed for intake at SCI.

270.     Plaintiff Gibbs approached the phone and asked Defendant Amos N. Calloway to use the phone.

271.     Defendant Calloway took out a can of pepper spray, took off the cap and sprayed it into Plaintiff Gibbs' face. Defendant's assault on Plaintiff Gibbs lasted several minutes.

272.     Defendant Calloway then tripped Plaintiff Gibbs at his knees as he was walking over to the phone. Plaintiff Gibbs hit his face as he fell face first on the concrete floor.

273.     Defendant Calloway, Defendant Brian M. Clarke and Defendant Philip S. Hastings began to kick Plaintiff Gibbs all over his body. One of them kneeled on Plaintiff Gibbs' neck.

274.     Defendants Calloway, Clarke and Hastings transported Plaintiff Gibbs to a receiving cell and then placed Plaintiff Gibbs in "the hole" for seven days. Defendant A. Hanna approved of the unlawful confinement.

275.     Plaintiff Gibbs was not allowed to shower off the spray until four days later.

276.     Plaintiff Gibbs was not provided with adequate medical examination or treatment. Plaintiff Gibbs sustained large, nut sized, visible swelling to his forehead and his elbow.

277.     Today, Plaintiff Gibbs suffers from mental flashbacks and depression from the Defendant's assault.

278.    Plaintiff Gibbs filed a grievance which was ignored and disregarded.

## FACTS REGARDING ATTACK ON PLAINTIFF CHARLES TURNER

279.    On or about February 24, 2021, Plaintiff Turner went to fill out a phone slip and commissary sheet.

280.    Plaintiff Turner spoke with a correctional officer for the paperwork and filled it out.

281.    As Plaintiff Turner was completing the paperwork, he heard the correctional officers yell, "Five minutes to lock in!"

282.    Plaintiff Turner hurried to complete the paperwork. Being new to SCI, Plaintiff Turner asked the correctional officer for a location to place the paperwork for review.

283.    As Plaintiff Turner was putting the paperwork in a box, Plaintiff Turner was sprayed directly in his face between his glasses with pepper spray by Defendant Corporal Joseph Kraft.

284.    Defendant Kraft assaulted Plaintiff Turner, jumped him and slammed Plaintiff Turner down on the ground and pushed Plaintiff Turner's face into the tile concrete floor.

285.    Defendant Kraft again sprayed excessive amounts of pepper spray onto Plaintiff Turner for a second time.

286.    During the assault, under the supervision of Defendant Brett Hamstead, Defendant Kraft, Anton Lindale,  Kenneth Charles, Dee Stranick, Lyle Neal, Nicholas Psaroudakis, David Seymore, Harold McTeer, Kevin Braswell, Keith Calvert, Chase Reynolds, Stephen Chalmers and Juan Diaz taunted Plaintiff Turner with comments, "We got another one," and "We got a big one here this time!"

287.    Defendants Kraft, Lindale, Charles, Stranick, Psaroudakis, Seymore, McTeer, Braswell, Calvert, Reynolds, Chalmers and Diaz assisted in the assault and forced Plaintiff Turner into handcuffs and held his hands in the air.

288.    Plaintiff Turner previously had surgery on right arm so had difficulty putting his arms behind his back during the assault.

289.    Defendant Chalmers and Reynolds transported Plaintiff Turner to the medical unit bent over with his hands handcuffed in the air making it extremely difficult to walk.

290.    Plaintiff Turner communicated to Defendants that this position was hurting him and that he would like to be released from the position.

291.    Defendants responded to Plaintiff Turner's requests by elbowing and kneeing Plaintiff Turner as they transported him.

292.    Defendants Chalmers and Reynolds took Plaintiff Turner to the medical unit where they only took his blood pressure.

293.    Plaintiff Turner was not provided with an adequate medical examination or treatment.

294.    Defendant Brett Hampstead placed Plaintiff Turner in "the hole" for seven days.

295.    After the assault, Plaintiff Turner suffered from extreme fear of leaving his cell and being attacked by correctional officers again.

296.    Officer Matthew Long reviewed video evidence of the assault at a hearing. During the hearing, Officer Matthew Long determined that the video evidence of the incident did not support the officer's report, Plaintiff Turner was not guilty of the charges, and Defendant Kraft was wrong.

297.    The Defendants' assault was so severe that even today Plaintiff Turner continues to suffer from a shoulder injury from the assault.

298.    Plaintiff Turner subsequently filed grievances which were ignored or disregarded.

**FACTS REGARDING ATTACK ON PLAINTIFF AUGUSTINE HAYMOND**

299.    On or about April 1, 2021, concerned for his health, Plaintiff Haymond reported to Defendants Kirk Neal and Miles Vernet that his cellmate was going through substance abuse withdrawal and experiencing bowel incontinence for the past two days.

300.    Due to the unsanitary nature and stench of the cell, Plaintiff Haymond made a request to Defendant Kirk Neal and Defendant Vernet for his cellmate to take a shower.

44

301.    Defendant Kirk Neal and Defendant Vernet told Plaintiff Haymond to "do it yourself" and "handle it" or else he would be charged and sent to "the hole."

302.    While Plaintiff Haymond went to the common area for ice, Defendant Vernet entered Plaintiff Haymond's cell. When Plaintiff Haymond returned to his cell, he discovered an apple he had taken from the cafeteria smashed on the floor of his cell.

303.    Plaintiff Haymond walked over to the correctional officers' desk and asked if he could use a broom to clean the apple.

304.    Defendant Vernet told Plaintiff Haymond he should not have taken the apple and told him to "lock-in" because cell clean-up was not until Friday, recreation was over, and he was not getting a broom.

305.    Defendants Kirk Neal and Vernet each grabbed either side of Plaintiff Haymond and pulled him back into his cell.

306.    One Defendant tripped Plaintiff Haymond causing him to fall and hit his ribs on the bottom of a steel bunkbed.

307.    Plaintiff Haymond was not provided with an adequate medical examination or treatment despite his belief that his rib was broken. His vitals were taken but he was not treated for his injured rib. Plaintiff Haymond was told to put in a sick call.

308.    Defendants took Plaintiff Haymond to "the hole" for approximately ten days and gave him a disciplinary write-up for "refusing lock-in."

309.    Plaintiff Haymond's mother called SCI to complain about the treatment. No response was made after the report.

310.    When Plaintiff Haymond was returned to Housing Unit 4, Defendant Kirk Neal taunted Plaintiff Haymond and said, "Don't mess with Haymond, he'll call his mommy." Defendant Kirk Neal called Haymond "a junkie" in front of other inmates to humiliate him.

311.    On or about October 29, 2021, Plaintiff Haymond was using the dorm community bathroom to brush his teeth.

312.    Plaintiff Haymond and three other inmates were in the bathroom at the time. Defendant Mitchell yelled, "What are all you faggots doing in here?!"

313.    Plaintiff Haymond attempted to rinse out his mouth of toothpaste when Defendant Mitchell reached for his can of pepper spray and sprayed excessive amounts into the bathroom.

314.    To avoid the impact of the pepper spray, Plaintiff Haymond got on the ground and blocked his face.

315.    Despite Plaintiff Haymond's passive and non-threatening posture, Defendant Mitchell approached Plaintiff Haymond and emptied the can of pepper spray directly under Plaintiff Haymond's arm and up towards his face, temporarily blinding Plaintiff Haymond.

316.    Defendant Mitchell handcuffed Plaintiff Haymond behind his back. Other as-yet unidentified Defendants rushed over and picked Plaintiff Haymond up in the air by his hands.

317.    Plaintiff Haymond communicated to Defendant Mitchell that he had a previous shoulder injury. Defendant Mitchell did not stop raising Plaintiff Haymond's arm above his head but instead yelled, "Shut the fuck up." Defendant Mitchell's conduct caused Plaintiff Haymond's shoulder to become reinjured and worsen.

318.    Defendants transported Plaintiff Haymond through a vestibule to medical. During the transport, Plaintiff Haymond's mouth was burning from the pepper spray causing him to drool. Defendants yelled to "stop spitting or your head is going to hit the concrete."

319.    Defendants used Plaintiff Haymond's head to slam open the vestibule doors.

320.    Defendants brought Plaintiff Haymond to a receiving area where they strip searched him. Defendants ordered Plaintiff Haymond to spread his butt cheeks and lift his testicles before ordering him to put his pepper-spray covered fingers in his mouth to open his mouth.

321.    Defendant Mitchell took Plaintiff Haymond to "the hole" and threw Plaintiff Haymond into the wall. Plaintiff Haymond stayed in "the hole" for four days.

322.    Plaintiff Haymond was not provided with an adequate medical examination or treatment despite his pepper spray and shoulder injury.

323.    Plaintiff Haymond sustained rib, shoulder, face, and back injuries from the assault.

324.    Even today, Plaintiff Haymond's shoulder continues to remain injured from the assault and he experiences a "popping" when he moves his right shoulder.

325.    Plaintiff Haymond experiences ongoing headaches after the assault.

326.    When Haymond returned to the CRU from the hole, Defendant Kirk Neal repeatedly harassed Plaintiff Haymond by knocking on the door of his cell. Many times, while Haymond tried to sleep, Defendant Kirk Neal would shout, "Wake the fuck up."

327.    Plaintiff Haymond suffers from increased post-traumatic stress disorder from the assault. He has nightmares and night terrors resulting from the assault. Plaintiff Haymond is anxious about visiting the bathroom and is in constant fear of the correctional officers. He contemplates daily that a simple visit to the bathroom could result in an assault. Plaintiff Haymond put in a mental health request due to his PTSD and anxiety after observing a correctional officer pepper-spray another inmate that was taking a shower.

328.    Plaintiff Haymond subsequently filed grievances which were disregarded. Staff Lt. Hanna met with Plaintiff Haymond about his grievance. Defendant Hanna disclosed she had not reviewed the video evidence of the incident. Defendant Hanna advised that in order for Plaintiff Haymond rejoin the ninety-day "Road to Recovery Track 4 Program," he had to plead guilty to the write-up. Plaintiff Haymond had only four days of the program remaining to achieve completion. Defendant Hanna advised that, in the alternative that Plaintiff Haymond pled not guilty, he would receive a 30-day sanction, be removed from the program, and be required to start the program from the beginning. Plaintiff Haymond pled guilty so he could return to the program.

## FACTS REGARDING ATTACK ON PLAINTIFF NEKI GIBBS

329.    On or about May 18, 2021, at approximately noon, Defendant Maddox told Plaintiff Gibbs to "lock in."

330.    Defendant Maddox took his can of pepper spray, pressed on the nozzle and sprayed excessive amounts of pepper spray onto the left side of Plaintiff Gibbs' face.

331.    After a brief tussle, Plaintiff Gibbs put himself on the floor and Defendant Maddox put his knee on top of Plaintiff Gibbs. Defendant Maddox pushed down on Plaintiff Gibbs and hit the top of his head.

332.    Defendant Maddox lifted Plaintiff Gibbs head and kneed him in his face causing Plaintiff Gibbs' left eyebrow to split open and blood to drip from his face onto the floor.

333.    Defendant Maddox orchestrated a transfer of Plaintiff Gibbs to the James T. Vaughn Correctional Center and had him placed in "the hole," where he remains.

334.    Plaintiff Gibbs was not provided with an adequate medical examination or treatment despite his obvious eye injury. When Plaintiff Gibbs requested medical treatment, Defendant Maddox responded, "You think we're going to give you any kind of help after what you did?"

335.    Plaintiff Gibbs requested stitches for his eye injury, but was denied treatment.

336.    Plaintiff Gibbs sustained a large permanent scar over his left eye lid.

337.    Plaintiff Gibbs had previously filed grievances against Defendant Maddox which were never adjudicated. Plaintiff Gibb's grievances were submitted, but Plaintiff Gibbs was told he was "imagining" the mistreatment.

338.    As a result of the assault, Plaintiff Gibbs remains in constant fear of Defendant Maddox. Plaintiff Gibbs has trouble sleeping and has frequent headaches. Plaintiff Gibbs receives mental health counseling for the assault approximately every three months.

## FACTS REGARDING ATTACK ON PLAINTIFF AARON GIVENS

339.    On or about May 21, 2021, after being processed for intake at SCI and placed in his cell, Plaintiff Givens requested medical treatment for withdrawal symptoms he was experiencing. Plaintiff Givens did not receive any treatment.

340.    On or about May 23, 2021, Plaintiff Givens again requested medical treatment for withdrawal symptoms he was experiencing.

341.    Defendant Kirk Neal approached Plaintiff Givens' cell, opened the door, and began an assault on him.

342.    Defendant Kirk Neal tackled Plaintiff Givens to the ground which caused Plaintiff Givens to hit his face on a nearby desk in the cell causing a black eye.

343.    Defendant Kirk Neal put his knee in Plaintiff Givens' back.

344.    Plaintiff Givens communicated to Defendant Kirk Neal that he could not breathe.

345.    Defendant Kirk Neal immediately inserted the can of pepper spray into Plaintiff Givens' mouth and pressed down on the nozzle, forcing large amounts of pepper spray into Plaintiff Givens' mouth, throat, and lungs.

346.    Defendant Kirk Neal lacked any cause or provocation for the violent attack.

347.    Defendant Kirk Neal radioed an emergency code and Defendants Shyanne Mancha arrived, followed later by Defendant Lyle Neal.

348.    Defendants K. Neal, Mancha and L. Neal dragged Plaintiff Givens to the infirmary.

349.    Defendant Kirk Neal placed Plaintiff Givens in "the hole" for approximately five days.

350.    Plaintiff Givens sustained a black eye, bruised ribs, and injuries from the pepper spray.

351.    Plaintiff Givens was not provided with an adequate medical examination, treatment for eye injury, or an opportunity to clean off the pepper spray.

352.    Plaintiff Givens saw a counselor about the incident on several different occasions regarding his fear of the correctional officers, and mental health from the assault.

353.     Today, Plaintiff Givens has post-traumatic stress disorder. He felt like he was going to be left to die in SCI or was going to be killed. Plaintiff Givens continues to have a hard time with sleeping and experiences nightmares about the assault.

**FACTS REGARDING ATTACK ON PLAINTIFF DONBRAY DURHAM**

354.     On or about October 30, 2021, Plaintiff Durham was processed at SCI for intake for a public intoxication arrest.

355.     Plaintiff Durham was directed to place his hands outside his cell so that a correctional officer could unlock his handcuffs.

356.     Due to his intoxication, Plaintiff Durham was unable to understand the directives.

357.     Defendant Myles Vernet entered the cell, took out his pepper spray, and sprayed Plaintiff Durham directly in his face.

358.     Defendant Hunter Simpson tackled Plaintiff Durham face down to the ground causing Plaintiff Durham's teeth to puncture his bottom lip resulting in profuse bleeding and two broken teeth.

359.     Three other as-yet unidentified Defendants entered Plaintiff Durham's cell.

360.     One Defendant knelt down on Plaintiff Durham's neck and continued to spray him with pepper spray for several minutes.

361.     After Defendant John Does emptied the pepper spray can onto Plaintiff Durham, he was left in his cell to excessively bleed, turning his orange jumpsuit burgundy.

362.     Plaintiff Durham did not receive an adequate medical evaluation or treatment despite the large amount of bleeding from his face.

363.     Plaintiff Durham feared for his well-being during and after the assault   and feared for his safety due to the lack of response from his medical requests and crying for help.

364.     The next day, Plaintiff Durham's beard hair began to fall out as a result of the pepper spray and he observed scratches on both of his biceps.

365.     Even today, Plaintiff Durham still has right knee and neck pain from the assault.

366.    Plaintiff Durham continued to take antibiotics for his lip injury from the assault.

## FACTS REGARDING ATTACK ON PLAINTIFF MICHAEL KLEIN

367.    On or about November 17, 2021, Plaintiff Klein was processed into SCI's Violation of Probation Section.

368.    While Plaintiff Klein was sitting on his bed, an as-yet unidentified Defendant told him to pick up his mattress and to stand on a white line for a couple hours.

369.    When Plaintiff Klein went to retrieve his mattress, Defendant Arthur O'Day used his pepper spray to spray excessive amounts of pepper spray onto Plaintiff Klein.

370.    A group of eight other as-yet unidentified Defendants rushed to join the assault on Plaintiff Klein.

371.    Defendant William Chandler took Plaintiff Klein outside in the yard and demanded that he push and roll a heavy log across the yard.

372.    Defendant Chandler then took out pepper spray and sprayed Plaintiff Klein.

373.    Plaintiff Klein lost consciousness while outside in the yard with Defendant Chandler. Plaintiff Klein regained consciousness and vaguely remembers being thrown around in a cell by a group of as-yet unidentified Defendants.  Based on the Department's internal affairs report, one of the Defendants is Kameron Spencer, who sprayed Plaintiff Klein.  Plaintiff Klein lost consciousness again.

374.    Sixteen days later, Plaintiff Klein woke up in Christiana Hospital where he was intubated and received six staples in his head.

375.    While in the hospital, an as-yet unidentified Defendant punched Plaintiff Klein in the jaw while he was handcuffed to the bed.

376.    Plaintiff Klein sustained damage to his throat muscles, and had to learn how to eat and talk again during rehabilitation.

377.    During rehabilitation, Plaintiff Klein learned how to walk again.

378.    Plaintiff Klein was taken back to SCI and put in the infirmary holding cell for two days.

379.    Plaintiff Klein was stripped of his clothing and was repeatedly taunted by as-yet unidentified Defendants. Plaintiff Klein was deprived of food.

380.    Plaintiff Klein continues to suffer from the injuries sustained from the assault.

381.    Plaintiff Klein has a large, eight-inch scar on his head located on the top of his head.

382.    Plaintiff Klein now experiences seizures from the assault and is required to take seizure medicine. Plaintiff Klein is no longer able to drive because of the seizures and has excessive hospital bills.

383.    Plaintiff Klein was emotionally traumatized from the assault. He feared for his life during and after the assault. Plaintiff Klein felt humiliated from the assault. Even today, Plaintiff Klein feels anxious and jittery when around people.

## FACTS REGARDING ATTACK ON PLAINTIFF KEVIN IGNUDO

384.    On or about November 16, 2021, Plaintiff Ignudo was admitted to SCI and taken directly to the infirmary where he was placed in a Psychiatric Close Observation cell to await a housing decision.

385.    Plaintiff Ignudo stayed in the infirmary building for about a week and was then transferred to an isolation cell in merit building cell 111.

386.    Plaintiff Ignudo was given a "food loaf" instead of meals and deprived of toilet paper. Plaintiff's food loaf was placed on feces.

387.    On or about November 25, 2021, while his cell was being cleaned of feces, Plaintiff Ignudo was handcuffed and moved to the MSB building. While there, Plaintiff Ignudo broke the light in his cell.

388.    Defendant Steven Long opened Plaintiff Ignudo's cell door and asked Plaintiff Ignudo about the light. Plaintiff Ignudo requested recreation time and Defendant Sgt. Steven Long responded, "You're about to get your recreation!"

389.    Defendant Steven Long reached for his pepper spray and sprayed excessive amounts of pepper spray into Plaintiff Ignudo's face.

390.    Defendants Colby Steele and Defendant Joseph McCarthy rushed to Plaintiff Ignudo's cell.

391.    Defendants Long, Steele and McCarthy punched Plaintiff Ignudo in his head and cornered him in the cell, out of sight of facility cameras.

392.    Plaintiff Ignudo, while handcuffed, attempted to move his body to the entrance of the cell where he knew a camera was. Defendants punched Plaintiff Ignudo in the ribs.

393.    During the assault, the Defendants verbally assaulted Plaintiff Igundo. One of the Defendants said, "I will rip your dick off and put it in your mouth!"

394.    After the assault, one Defendant stood on Plaintiff Ignudo's back.

395.    Plaintiff Ignudo was held in "the hole" for about seven days where he was stripped of his uniform, and made to sleep on concrete with no mattress and no clothes. Plaintiff Ignudo was then returned to his cell.

396.    Plaintiff Ignudo was written up for the incident. Plaintiff Ignudo subsequently filed a grievance on December 6, which has not been adjudicated. Plaintiff Ignudo also filed a PREA complaint on or about December 8, 2021.

397.    Plaintiff Ignudo was not provided with an adequate medical examination or treatment despite his eye being visibly swollen shut. Plaintiff Ignudo sustained injuries to his face, right eye, both knees and back. He received a blood pressure and temperature examination and cotton swab for his eye. Plaintiff Ignudo requested an MRI for his knee injuries and was denied.

398.    Even today, Plaintiff Ignudo still has a scar on his head. He also has a cut that improperly healed on his foot.

399.    Plaintiff Ignudo fears for his life when he is around the same officers who assaulted him; he is afraid they will contaminate his food. His fears are worsened as he observes correctional officers beat other inmates for non-aggressive incidents.

## FACTS REGARDING ATTACK ON PLAINTIFF GEORGE STURGIS

400.    On or about November 9, 2021, Plaintiff Sturgis participated in an open meeting in the cafeteria.

401.    Plaintiff Sturgis left the cafeteria utilizing his cane to walk to his cell to use the bathroom. Plaintiff Sturgis walked back to the cafeteria to rejoin the meeting.

402.    To get back to the cafeteria, Plaintiff Sturgis had to walk through a doorway with a sliding door that was manually operated by correctional officers.

403.    Plaintiff Sturgis approached the door as it was open.

404.    Defendant Naomi Strand observed Plaintiff Sturgis approach the doorway.

405.    Defendant Strand intentionally shut the door on Plaintiff Sturgis causing his right leg and cane to be smashed between the door and wall. Plaintiff Sturgis felt great pain from the pressure on each side of his leg.

406.    Plaintiff Sturgis looked to the doorway control area and observed Defendant Strand laughing at him as his leg was stuck.

407.    Defendant Strand then opened the door, causing Plaintiff Sturgis to fall. Another inmate helped Plaintiff Sturgis back up on his cane.

408.    Plaintiff Sturgis requested to go to medical and was told to file multiple sick slips.

409.    Plaintiff Sturgis contacted medical and they reported they did not have any record of his injuries.  Plaintiff Sturgis submitted sick calls every day for several weeks to obtain medical care.

410.    Plaintiff Sturgis filed grievances based on the lack of records of his injuries and sick calls resulting in a lack of treatment for injuries and pain he was experiencing. He was only given pain relievers.

411.    On or about November 21, 2021, Plaintiff Sturgis received his medication at the infirmary and began to walk back to his cell.

412.    Defendant Alvin Hudson ordered Plaintiff Sturgis to open his mouth to check that his medication was swallowed. Plaintiff Sturgis complied.

413.    Defendant Sgt. Hudson ordered Plaintiff Sturgis to stick out his tongue. Plaintiff Sturgis complied.

414.    Defendant Sgt. Hudson ran out from behind the desk and positioned himself between Plaintiff Sturgis and his cell to prevent Plaintiff Sturgis from going into his cell.

415.    Defendant Sgt. Hudson then grabbed Plaintiff Sturgis by the neck and choked him.

416.    Correctional Officer Psaradakis handcuffed Plaintiff Sturgis and stated, "You know how he is. This is for your own safety."

417.    Due to Plaintiff Sturgis' understanding of Defendant Sgt. Hudson's reputation for fighting other inmates at SCI, Plaintiff Sturgis was under the belief that Defendant Sgt. Hudson wanted to agitate the situation to initiate a fight.

418.    Defendant Sgt. Hudson claimed he choked Plaintiff Sturgis because he feared Plaintiff Sturgis had Covid-19.

419.    Defendant Sgt. Hudson falsely wrote Plaintiff Sturgis up for creating a safety hazard. Plaintiff Sturgis was placed in "the hole" for twenty-three days. Plaintiff Sturgis was denied clothing, bedding, and toilet paper.

420.    Plaintiff Sturgis talked with Sgt. Hanna who tried to convince him to stop claiming that Defendant Sgt. Hudson choked him and in return he would receive time served for the twenty-three days in "the hole."

421.    On or about November 25, 2021, while attempting to walk down a flight of stairs to take a shower, Plaintiff Sturgis fell down the stairs.

422.    Plaintiff Sturgis was initially hospitalized due to the fall and then returned to SCI and placed in the CRU.

423.    Correctional officer Bowen worked overtime to take Plaintiff Sturgis to the hospital. On the evening of November 25, Officer Bowen told Plaintiff Sturgis, "If we weren't on the news right now, I would kick your ass." Officer Bowen complained to Plaintiff Sturgis that he has to explain to his wife that he has to miss Thanksgiving to take him to the hospital.

424.    On or about November 27, 2021, Defendant Kirk Neal approached Plaintiff Sturgis' cell. Defendant Kirk Neal told Plaintiff Sturgis that "If you fall again or act like you're sick, then I'm going to spray you personally, and things will happen to you that no one will find out about."

425.    One night, Plaintiff Sturgis didn't have food in his cell during meal time. Defendant Kirk Neal told him, "Go to the hospital to eat."

426.    Plaintiff Sturgis lived in daily fear of Defendant Sgt. Hudson, Defendant Kirk Neal, and other correctional officers as he was verbally taunted by them on a consistent basis about faking his fall.

427.    Plaintiff Sturgis continuously has nightmares about Defendant Sgt. Hudson choking him and pushing him down the stairs. On a previous occasion in 2008, Defendant Sgt. Hudson pushed Plaintiff Sturgis down a flight of stairs and proceeded to pepper spray him as Plaintiff Sturgis was walking to medical cart on the tier to receive his medication. Plaintiff Sturgis experiences symptoms of post-traumatic stress disorder from the assaults at SCI.

428.    Plaintiff Sturgis feared retaliation after he filed grievances against Defendant Sgt. Hudson for choking him. Plaintiff Sturgis also feared that correctional officers would set him up to be attacked. On one occasion, correctional officers instructed and made Plaintiff Sturgis walk outside while the building was on a Code Four lock down where inmates were required to be in their cells. Luckily, another correctional officer directed Plaintiff Sturgis back to safety.

429.    Plaintiff Sturgis feared for his life and safety. Plaintiff Sturgis' biggest fear was the possibility that he could die at SCI and no one would know what happened to him.

430.    Today, Plaintiff Sturgis is deathly afraid of stairs.

431.    On or about February 1, 2022, after his release from SCI, Plaintiff Sturgis met with a nurse about the injury to his leg from the December 19, 2019 incident. This was the first time Plaintiff Sturgis was able to have his injuries examined after numerous assaults during his time served.

### FACTS REGARDING ATTACK ON PLAINTIFF RICHARD EDWARDS

432.    In the summer of 2020, Plaintiff Edwards contracted Covid-19.

433.    Plaintiff Edwards was placed in an open lot dorm that housed roughly eighty other inmates. After requesting approximately twenty-four other inmates to move bunks and due to those inmates' lack of compliance, correctional officers ordered Plaintiff Edwards repeatedly to move to different bunk locations on at least four occasions over the course of two days around the SCI facility while he was sick with Covid-19.

434.    Despite being sick with Covid-19, Plaintiff Edwards complied with the correctional officers' orders to move. Plaintiff Edwards was required to move his own bedding, locker box, and property by himself.

435.    On July 12, 2020, due to physical, mental, and emotional exhaustion, Plaintiff Edwards reported to Defendant Corey W. Keen a request to stay in one bunk because the constant moving from one bunk to another was causing him to feel suicidal.

436.    Defendant Keen and Defendant Jeremiah R. Purnell  immediately handcuffed Plaintiff Edwards with his hands behind his back.

437.    Defendants John E. Pusey, Myles J. Vernet, Brandon L. Messick, Brandon C. Wilkins, Andrew J. Cassidy and Richard T. Wilson working in the Covid-19 Unit rushed to the site of Plaintiff Edwards and joined with Keen and Purnell in assaulting him.

438.    Defendant Keen asked Plaintiff Edwards if he was suicidal, to which Plaintiff Edwards answered "yes."

439.    Defendant Keen stated to Plaintiff Edwards, "This isn't going to go down like you expected" and began to assault Plaintiff Edwards.

440.    Defendant Keen squeezed Plaintiff Edwards' left bicep extremely hard, applying pressure between his bicep and triceps to the point where Plaintiff Edwards' arm naturally and instinctively moved to correct an unnatural positioning.

441.    Defendant Keen yelled to the other Defendants, "He is resisting, he is resisting," and they rushed to participate in the assault against Plaintiff Edwards.

442.    One Defendant picked up Plaintiff Edwards and slammed him face first into metal tables. Defendants (Cassidy, Keen, Purnell, Messick, Wilkins, Wilson, Vernet, Pusey) picked up Plaintiff Edwards again and slammed him on the ground.

443.    Once Plaintiff Edwards was on the ground, Defendants kicked, punched and kneed Plaintiff Edwards. Defendants worked together to carry out the assault on Plaintiff Edwards.

444.    During the assault, one of the Defendants repeatedly told the others to, "Turn his head," at which point they turned Plaintiff Edwards' head and punched him in the face.

445.    Two nurses, Beth and Sherry, hit the window overlooking the area to stop the attack. Defendants brought Plaintiff Edwards into a hallway that did not have cameras and continued the assault.

446.    Defendants slammed Plaintiff Edwards into the wall, grabbed him by the throat, and choked him.

447.    Plaintiff Edwards pleaded and begged for Defendants to stop because he could not breathe.

448.    Defendants continued their assault and raised Plaintiff Edwards' arms while handcuffed, forcing Plaintiff Edwards to fold his body over himself, making breathing even more difficult for him.

449.    One Defendant interlaced his fingers with Plaintiff Edwards' and made a twisting, squeezing motion, causing Plaintiff Edwards' bones to experience extreme pressure.

450.    Defendants moved Plaintiff Edwards into another hallway called the Alcove. The Alcove is a hallway between areas that are secured and can only be unlocked by an officer in the control booth.

451.    Defendants raised Plaintiff Edwards' arms behind his back handcuffed as high as they could go, forcing Plaintiff Edwards to walk bent over.

452.    One or several of the involved Defendants ran Plaintiff Edwards' head directly into a door they knew was locked, causing severe cuts on Plaintiff Edwards' head.

453.    Defendants repeated the assault they just performed on Plaintiff Edwards, again concluding with running his head into the locked door, and once again, causing severe injuries to Plaintiff Edwards' head.

454.    While Defendants were deciding where to take Plaintiff Edwards after the assault, Defendants held him bent over with his arms straight up in the air, again, making it difficult for Plaintiff Edwards to breathe.

455.    Simultaneously throughout the physical assault, Defendants verbally assaulted Plaintiff Edwards.

456.    Defendants repeatedly made verbal statements such as, "I bet your bitch ass ain't suicidal now," "You motherfuckers are gonna learn," and "Say you're a bitch."

457.    Defendants took Plaintiff Edwards to the infirmary where they threatened to "kick his ass" if he didn't start walking and placed him in psychiatric observation.

458.    Plaintiff Edwards reported the incident to the physician, as well as to Defendant Warden Truman Mears, Defendant Deputy Warden J. Beck, and Security Superintendent

Marvella Wise. Plaintiff Edwards' family reported the incident to the Department of Corrections ("DOC") headquarters. No one ever followed up with Plaintiff Edwards.

459.    Plaintiff Edwards has experienced multiple suicide attempts and receives psychiatric treatment. He experiences constant anxiety each time he sees any of the guards involved in the incident. Plaintiff Edwards fears of retaliation. He reports trouble sleeping and uncontrollable crying.

460.    Plaintiff Edwards' head suffered from several open wounds as a result of assaults on his head.

461.    For months, Plaintiff Edwards had dark purple bruises and indentations on his wrists, as well as scabs on his broken skin from the handcuffs.

462.    Even today, months after the assault, Plaintiff Edwards experiences physical scarring on his arms. He feels constant pain in his wrist and hand whenever it is turned. Plaintiff Edwards receives physical therapy every two weeks for neck and back injuries.

## FACTS REGARDING ATTACK ON PLAINTIFF TIMOTHY NEWCOMB

463.    On or about December 6, 2021, a nurse was giving urine tests in the shower area of Plaintiff Newcomb's tier.

464.    Unaware of the upcoming request for a urine test, Plaintiff Newcomb used the bathroom and returned to his cell right before a nurse arrived on the tier.

465.    Defendant Isaac Mitchell approached Plaintiff Newcomb's cell and advised him that he needed to take a urine test and to drink water. When Plaintiff Newcomb said he just used the bathroom, Defendant Mitchell put Plaintiff Newcomb in handcuffs and advised Newcomb that he was taking him to medical.

466.    Just before Defendant Mitchell and Plaintiff Newcomb were about to leave the tier, Defendant Kenneth W. Charles momentarily left the tier to check if the transport to medical complied with the tier's scheduled quarantine.

467.    Defendant Charles returned and told Plaintiff Newcomb again to drink water.

468.    Plaintiff Newcomb was unable to drink water because he was still handcuffed. When Plaintiff Newcomb communicated this to Defendant Mitchell, Defendant Mitchell became enraged.

469.    Defendant Mitchell picked up the handcuffed-Plaintiff Newcomb and slammed him on the ground causing Plaintiff Newcomb to hit his face and shoulder on the tile concrete floor. Defendant Mitchell landed on top of Plaintiff Newcomb.

470.    The nurse observed the assault, became frightened and exclaimed, "Oh my God!"

471.    Defendant Mitchell lifted Plaintiff Newcomb up by his handcuffed hands behind his back forcing him to be bent over. Plaintiff Newcomb exclaimed that he felt his shoulder was broken. Defendant Mitchell took Plaintiff Newcomb to medical where Plaintiff Newcomb again expressed his shoulder was broken. The staff in medical advised Plaintiff Newcomb to put in a sick call.

472.    Defendant Mitchell wrote Plaintiff Newcomb up for belligerence and non-compliance.

473.    Defendant Mitchell placed Plaintiff Newcomb in "the hole" for fifteen days.

474.    Plaintiff Newcomb entered sick calls for seven consecutive days.

475.    Despite the fact that Plaintiff Newcomb's bone was sticking up in his shoulder and another bone was exposed under his eye, Plaintiff Newcomb was not provided with adequate medical examination or treatment. On or about December 11, 2021, Plaintiff Newcomb was taken to a doctor and x-rays were requested by the doctor. The x-rays were not conducted due to "short staffing." On or about December 15, 2021, an x-ray examination was finally performed on Plaintiff Newcomb's shoulder. Plaintiff Newcomb never received the results from the X-rays or any care for his injury.

476.    Today, Plaintiff Newcomb's shoulder remains injured from the assault. Plaintiff Newcomb's right shoulder bone protrudes out from his body. He experiences decreased mobility

in lifting his arm and putting his arm behind him. He experiences pain every time he is handcuffed behind his back. For two months Plaintiff Newcomb requested medical care but has not received any medical care for his shoulder injury.

477.    Plaintiff Newcomb now experiences severe headaches on a regular basis that he never had before.

478.    Plaintiff Newcomb subsequently filed grievances regarding the assault and lack of medical treatment, none of which were adjudicated. The only time his grievance was acknowledged was when Capt. Jones advised Plaintiff Newcomb that the grievance filed against the correctional officers for the assault should be placed against medical staff instead.

479.    Plaintiff Newcomb suffers daily from continuous fear and anxiety of retaliation from Defendants Mitchell and Charles from filing his grievances. Plaintiff Newcomb experiences depression from not being able to treat his shoulder injury.

### FACTS REGARDING ATTACK ON PLAINTIFF BARRY CLINE

480.    On or about August 31, 2021, Plaintiff Cline was ordered to be released from SCI on pre-trial detention unsecured bond. Plaintiff Cline was not released.

481.    On or about September 1, 2021, at approximately ten forty-five in the morning, Plaintiff Cline's cell mate was sick and throwing up onto Plaintiff Cline's bed located on the lower bunk.

482.    Plaintiff Cline made a request for cleaning supplies to nearby correctional officers Defendant Jeff Purdy and Defendant Myles Vernet. Plaintiff Cline's cell only had a sink and a tiny bar of soap.

483.    Defendant Purdy yelled, "Get back in your cell...lock it in!" Plaintiff Cline complied.

484.    Recreation was scheduled for approximately eleven thirty in the morning. Plaintiff Cline walked from his cell to exit downstairs and was the last person in line to exit the tier for

recreation. Plaintiff Cline made a request to Defendant Vernet to visit medical or mental health.

Defendant Vernet immediately replied, "No! Lock in."

485.    Defendant Vernet grabbed Plaintiff Cline by the left arm and pulled him back to his cell.

486.    Once in front of his cell, Defendant Vernet lifted Plaintiff Cline up and threw Plaintiff Cline face first into the ground. As a result, Plaintiff Cline's head and face made a forceful impact with the concrete floor.

487.    Defendant Vernet beat Plaintiff Cline and held him down on the ground.

488.    Defendant Vernet turned Plaintiff Cline's head, inserted a can of pepper spray can into Plaintiff Cline's nostril and pressed down on the nozzle, forcing pepper spray into Plaintiff Cline's nose. Defendant Vernet repeatedly sprayed Plaintiff Cline in his nose and face, utilizing approximately three or four cans of pepper spray. Defendant Anton A. Lindale Jr. also pepper sprayed Plaintiff Cline.

489.    Defendants Corey W. Keen and Kevin T. Dunn arrived to Plaintiff Cline's cell. Plaintiff Cline was handcuffed. Two Defendants got on each side of Plaintiff Cline, yanked him up to his feet, and lifted him off the ground holding his arms behind him like a fish hook. Defendants dragged Plaintiff Cline to a booking cell.

490.    Once in front of the booking cell, Defendants Keen and Dunn picked up Plaintiff Cline and threw him into the cell. Plaintiff Cline was still handcuffed when Defendants threw him. Plaintiff Cline's head made a direct forceful impact with the floor causing it to split open. Plaintiff Cline was unable to brace the fall because he was still handcuffed.

491.    Plaintiff Cline's head bled and blood ran down his face. After five minutes, he was taken to medical where he received butterfly stitches on his forehead.

492.    Defendants Vernet, Purdy, Lindale, Dunn and Keen caused Plaintiff Cline to be placed in "the hole" for ten days.

494.    Even today, Plaintiff Cline cannot taste or smell and has a scar on his forehead.

495.    Plaintiff Cline was released from SCI on September 10, 2021.

496.    Today, Plaintiff Cline experiences nightmares about the assault. He is emotionally

distraught from the assault and is in extreme fear of SCI.

### FACTS REGARDING ATTACK ON PLAINTIFF GERALD LUSBY

497.    On or about June 5, 2020, at approximately eight thirty in the morning, Plaintiff

Lusby's unit was mandated to go outside while electrical work was done at SCI.

498.    June 5, 2020 was brutally hot and sunny.

499.    Plaintiff Lusby, along with other inmates, were confined to the outside yard area

that did not have a place to take shelter from the sun, for seven hours.

500.    Plaintiff Lusby experienced discomfort and pain on his skin from the long

exposure to the sun.

501.    Defendant Jeffrey Wright was responsible for the gym and yard.

502.    Plaintiff Lusby communicated to Defendant Wright that he was experiencing pain

from the exposure to the sun and requested to go inside to the gym/garage to get out of the sun.

503.    Defendant Wright denied his request.

504.    Plaintiff Lusby tried to escape the sun by putting a shirt over his head.

505.    Defendant Wright ordered Plaintiff Lusby to remove the shirt from his head.

506.    Plaintiff Lusby experienced sun poisoning from the long exposure to the sun. His

right eye was swollen shut.

507.    On or about June 6, 2020, Plaintiff Lusby received Tylenol and lotion

for the sun poisoning from medical.

508.    Over the next few days, Plaintiff Lusby's eye swelling and skin blistering worsened.

Plaintiff Lusby made several additional visits to medical. During one visit, a nurse told him the

lotion he was given was making his condition worse. The nurse did not prescribe anything else.

509.    Plaintiff Lusby received "no work" paperwork due to his sun poisoning, swollen eye, and blistering peeling skin.

510.    Plaintiff Lusby's shoulders and tops of hands suffered from blistering and peeling with puss.

511.    Plaintiff Lusby experienced headaches for months after the long sun exposure.

512.    Plaintiff Lusby's swollen eye and blistering skin conditions lasted for several weeks after the sun exposure.

513.    Today, Plaintiff Lusby has noticeable large circles of discoloration on his skin from the blisters.

514.    Plaintiff Lusby filed several grievances against Defendant Wright for being confined to the yard and confined to seven hours of sun exposure causing him to experience sun poisoning, but his grievances were all ignored or disregarded.

## FACTS REGARDING ATTACK ON CHRIS MORALES

515.    On or about August 21, 2021, Plaintiff Morales arrived at SCI as a pretrial detainee.

516.    After securing his housing information and blankets, Plaintiff Morales was ordered, in hostile and condescending language, to go upstairs to his cell.

517.    As he started to proceed up the stairs, Plaintiff Morales said something to the effect of "You guys are mighty hostile."

518.    At that point, Defendant Kirk Neal responded "That's right" and then came around from behind the podium where he was standing and ran toward Plaintiff Morales.

519.    Defendant Kirk Neal sprayed mace inside of Plaintiff Morales' mouth as he and other officers punched Plaintiff Morales in a manner by which they used their handcuffs as a form of brass knuckles.

520.    As a result of the correctional officers' assault, Plaintiff Morales suffered injuries to his head and face.

521.    Notwithstanding his obvious injuries, the correctional officers declined to provide

65

any medical treatment for Plaintiff Morales. Instead, Plaintiff Morales was charged with

disobeying an order and disrespect toward correctional officers, for which he was immediately

brought to a disciplinary segregation cell.

522.   At his subsequent administrative disciplinary hearing, Plaintiff Morales

complained about the officers' conduct and brought to the disciplinary hearing officer's attention

the assault he had endured, pointing out that it was likely captured on video. Plaintiff Morales

therefore exercised his administrative rights.

523.   Nevertheless, the disciplinary hearing officer ignored Plaintiff Morales' claims and

determined him to be guilty of the charges against him. Plaintiff Morales therefore had no further

administrative remedy.

524.   Even if Plaintiff Morales had administrative remedies beyond his September 7,

2021 disciplinary hearing, he was transferred out of SCI a few days after that hearing. Plaintiff

Morales later filed a Complaint with the Department of Corrections, Office of Internal Affairs.

Upon information and belief, that investigation is still pending. However, there is no remedy to be

afforded to Plaintiff Morales through the Internal Affairs process since (1) that process relates

to internal discipline for correctional officers and no remedies for victims; and (2) Plaintiff

Morales is no longer incarcerated so the grievance process is unavailable to him.

### FACTS REGARDING ASSAULT ON DONALD R. BECKWITH

525.   On or about June to July of 2021, Plaintiff Donald R. Beckwith was confined in

the Stanley Taylor and Program buildings of SCI.

526.   In both the Stanley Taylor and Program buildings, Plaintiff Beckwith was

subjected to forced nudity and sexual harassment.

527.   Plaintiff Beckwith and other inmates are required to defecate in front of each

Other and in front of staff, including female staff, without being allowed to cover their genitalia

in any way, while placed in the Stanley Taylor and Program buildings.

528.    In both the Stanley Taylor and Program buildings, the showers and toilets are installed together, approximately three feet away from each other.

529.    Plaintiff Beckwith and other inmates are required to shower and perform all hygiene and bodily functions without being allowed any privacy    .

530.    There are no shower curtains provided in either the Stanley Taylor or Program buildings.

531.    As a result, many inmates shower while wearing underwear in order to preserve privacy.

532.    Female correctional officer Defendant Michelle Philips walked into the shower area without announcing herself in violation of policy and observed male inmates performing hygiene and bodily functions.

533.    The inmate reference manual DOC 4.4 Policy states that "every inmate has the right to do his time with dignity," but Defendant Warden Mears and other Defendants continued to refuse to build any structures to provide privacy and continued to permit correctional staff to invade Plaintiff Beckwith and other incarcerated persons' privacy on a daily basis.

534.    On or about July 2, 2021, Plaintiff Beckwith used a sheet to cover himself while using the toilet. Correctional Officer Christopher Monaco took the sheet away from Plaintiff Beckwith and wrote him up for a class-2 violation for using a bed-sheet to conceal his genitals while using the restroom.

535.    On or about July 3, 2021, Capt. Billy C. Edwards issued a memorandum prohibiting inmates from adequately covering themselves while using the toilet.

536.    On or about July 3, 2021, Plaintiff Beckwith grieved the ongoing and persistent violation of the incarcerated persons' rights to dignity in the bathroom and shower stalls. Plaintiff Beckwith was not provided a grievance hearing for the July 2021 complaint. His grievance was ignored or disregarded.

537.    The ACA inspection on Sep 27, 2021, at approximately 10:50 am observed the open nature of the restroom facilities in the Program Building. Unknown DOC officials from Dover visited the facility on October 4, 2021 at 11:30am and observed the open nature of the restrooms in the Program Building.

538.    Instead of fixing the problem, Defendants exacerbated the violations.

539.    Around October 2021, Plaintiff Beckwith filed a second grievance. His grievance was ignored or disregarded.

540.    On or about December 7, 2021, Plaintiff Beckwith filed a third grievance.

541.    On or about January 20, 2022, a hearing was held. At the hearing, Plaintiff Beckwith's grievance was acknowledged. Plaintiff Beckwith has not been provided a response following the hearing.

542.    Plaintiff Beckwith was disciplined with a loss of all privileges despite his appeal to Lt. Burgess and Staff Lt. Long explaining the Fourth Amendment and PREA violations for observing him while performing bodily functions.

543.    Correctional officers continue to watch inmates perform bodily functions without serving any legitimate purpose.

544.    Plaintiff Beckwith and other persons again grieved the issue and reported the issue to the PREA hotline. PREA Investigator Sgt. Madigan admitted to the violative nature of the Defendants' conduct but claimed he lacked the power to change the policy.

**FACTS REGARDING EXCESSIVE FORCE AGAINST JACOB REECE**

545.    On or about January 31, 2022, Plaintiff Reece was admitted into SCI. Following intake, Plaintiff Reece was assigned to a cell that was occupied by four inmates.

546.    Because of the lack of space and resources provided, Plaintiff Reece had no other option but to sleep on a mattress that was too small, such that the majority of his body was on the cold, concrete floor while he was sleeping.

547.    On or about February 3, 2022, Plaintiff Reece felt so cold from sleeping on the concrete floor that he began to feel ill. At or about midnight, Plaintiff Reece had a seizure in his cell.

548.    Plaintiff Reece was later told by one of his cell mates that they observed correctional officers drag Plaintiff Reece out of his cell down the hall on a blanket.

549.    On or about February 8, 2022, Plaintiff Reece woke up handcuffed by his hands and feet to a hospital bed.

550.    Plaintiff Reece had previously been diagnosed with high blood pressure and was prescribed medication for this condition.

551.    While at the hospital Plaintiff Reece received a one-time dose of his blood pressure medication along with potassium and a saline bag. During the duration of his hospital stay, Plaintiff Reece was restrained with metal handcuffs.

552.    While restrained to his hospital bed, Plaintiff Reece noticed that both of his wrists were bleeding. He also noticed that the skin in multiple areas of his body felt worn, thin and sensitive including his elbows and ankles.

553.    Throughout Plaintiff Reece's hospitalization, at the beginning of every shift, Defendants Benjamin Harmon, Ralph Richardson, Fredrick Dobronz, Aaron Bennett, Christopher Turak, Donald Layton, Melinda Robinson, Jeremiah Purnell, Andrew Cassidy, Mark Huling, and Jon Mumford tormented Plaintiff Reece daily by showing them that they had soft restraints but would not change his metal handcuffs despite his bleeding wrists and irritated skin. One of these Defendants reached under Plaintiff Reece's hospital bed, pulled out soft restraints and simultaneously exclaimed "Soft restraints are still here!" That Defendant then put the soft restraints back under the hospital bed.

554.    Throughout Plaintiff Reece's hospitalization, he was forced to defecate in front of Defendants, one of which was a female correctional officer, Melinda Robinson. Defendants taunted Plaintiff Reece as he used the restroom.

555.    On or about February 11, 2022, Defendant Kirk Neal drove Plaintiff Reece back to SCI and took him to the nurse. Defendant Kirk Neal mocked Plaintiff Reece and said, "Good job faking your seizure," and "Are you going to fake another seizure so you can go to the hospital?".

556.    Upon leaving the infirmary, Defendant Kirk Neal walked Plaintiff Reece to his cell. As they were walking, Defendant Kirk Neal taunted Plaintiff Reece and yelled "Reece is special! He doesn't need to stay in the infirmary!".

557.    Plaintiff Reece was released on February 16, 2022. The following day, he made a visit to his doctor who advised that Plaintiff Reece's blood pressure was so high that his life was at risk if he did not take his blood pressure medication.

558.    To this date, Plaintiff Reece is deeply disturbed by his experiences at SCI.

## FACTS REGARDING ATTACK ON PLAINTIFF KYLE BULLOCK

559.    Plaintiff Bullock was a protester with the Black Lives Matter movement during Summer 2020. On or about June 12, 2020, Plaintiff Bullock was arrested and transported to SCI. His intake was performed late in the evening of June 12, 2020 and extended into the early hours of June 13, 2020.

560.    Upon intake, Defendant Zachary McMahon took off Plaintiff Bullock's handcuffs and said, "Have a seat." Plaintiff Bullock was fingerprinted and processed and cooperated throughout the experience.

561.    Plaintiff Bullock then asked for a drink of water and, when he was allowed, went to wash his hands first, due to the prevalence of COVID virus. At that time, Defendant Zachary McMahon said, "We didn't say you could wash your hands," and then ordered Plaintiff Bullock to "Come stand on the X," a specific location in the intake area. Defendants McMahon, Timothy Manaraze and Corey Keen then started questioning Plaintiff Bullock about the facts underlying his arrest.

70

562.    While Plaintiff Bullock was speaking, Defendant McMahon sprayed him with pepper spray and then delivered a right hook punch to Plaintiff Bullock's head. Plaintiff Bullock fell to the ground and struck the linoleum-covered concrete flooring violently as he was struggling to breathe due to the pepper spray.

563.    Defendant McMahon, Manaraze and Keen then placed unnecessarily tight hand cuffs on Plaintiff Bullock and punched him in the back of the head. Plaintiff Bullock was then taken to a holding cell with the handcuffs still on.

564.    At that time, Plaintiff Bullock was losing circulation in his hands and his wrists were bruising. After approximately one hour, under the supervision of Defendant John E. Pusey, Defendants  Nicolas Thomson, Christopher A. Wisniewski, Ralph J. Richardson, Steve E. Mariner and Amontay Clanton took off Plaintiff Bullock's handcuffs and dragged him into a cell on an empty tier, where Plaintiff Bullock remained for five days.

565.    The showers in the empty tier did not work and, as a consequence, Plaintiff Bullock had the pepper spray covering his skin for the duration of his tenure.

566.    Defendants offered Plaintiff no treatment other than a tuberculosis test and a mental health evaluation even though Plaintiff Bullock's head was swollen.

567.    Plaintiff Bullock was released from SCI after five days because his bail was paid and he therefore had no opportunity to file a grievance.

568.    The assault upon Plaintiff Bullock was captured on surveillance video.

569.    Following his release, Plaintiff Bullock finally received treatment at Delaware Behavioral Health.

570.    Plaintiff Bullock remains in fear of correctional officers and law enforcement in general as a consequence of his experience and has suffered physical and emotional injuries as a consequence of his assault.

**FACTS REGARDING ATTACK ON PLAINTIFF DANNY HARDING, JR.**

That evening, he had just been let out of his cell for dinner, had his tray, and was seated in the dining hall with his meal tray.

572.     At that time, an unknown person from behind a cell door (whom Plaintiff Harding cannot identify) spoke out to one or more individuals seated at Plaintiff Harding's table.

573.     Believing that the voice had come from the person seated at the table, Defendant Sgt. Purnell stated "Obviously, you guys don't want your fucking chow. I have to keep telling people not to talk in chow."

574.     Plaintiff Harding was concerned by Defendant Sgt. Purnell's comment that the pretrial detainees at the chow table were going to incur some form of discipline, including removal or suspension of their recreational time, including phone calls. Plaintiff Harding had recently lost his mother and the ability to speak with his family was of paramount importance.

575.     Consequently, it was important to Plaintiff Harding that Defendant Sgt. Purnell understand that Plaintiff Harding was not speaking at the chow table. Plaintiff Harding said to Defendant Sgt. Purnell "I didn't say anything." In response, Defendant Sgt. Purnell stated, "You are calling me a liar; okay, I am a liar."

576.     Plaintiff Harding then emphasized that he did not want any problems. However, Defendant Antony Correa approached Plaintiff Harding from behind, pulled out a mace can, sprayed the side of Plaintiff Harding's face, and then grabbed Plaintiff Harding and slammed him onto the floor.

577.     At that point, Defendant Jermaine Fountain kneed Plaintiff Harding's ear, causing Plaintiff Harding to suffer a bruise on his cheek and a broken tooth.

578.    Plaintiff Harding was then put in handcuffs and taken to a small suicide watch cell in segregation. Plaintiff Harding was also charged with refusing to lock into his cell, disobeying an order, and disorderly conduct.

579.    As of the date of the filing of the initial Complaint, Plaintiff Harding has not yet had a hearing. He has been on segregation and received no medical treatment. He has been unable to file a grievance.

580.    The full extent of Plaintiff Harding's physical and emotional injuries is presently Unknown. Upon information and belief, the assault of Plaintiff Harding was captured on video.

## FACTS REGARDING ATTACK ON PLAINTIFF DONALD WHITE

581.    Around June 2020, SCI experienced a COVID-19 outbreak.

582.    Despite not having COVID-19, correctional officers placed Plaintiff White in the COVID-19 unit. All of Plaintiff White's belongings were removed and he was not provided with a change of clothes.

583.    Around July 2020, Defendants Brandon Messick and Myles Vernet entered the COVID-19 unit with spray paint guns loaded with pepper spray.

584.    They began to shoot pepper spray from their guns at inmates in the unit and ordered inmates to go to their bunks.

585.    Plaintiff White complied and started to walk to his bunk. While walking up the stairs, one of the Defendants shot Plaintiff White directly in his back with pepper spray. Plaintiff White continued to walk back to his bunk.

586.    Plaintiff White's body burned from the pepper spray. He struggled to breathe through the thick fumes of the pepper spray in the air. Many other inmates in the unit began to cough heavily and sneeze simultaneously from the pepper spray and fumes in the air.

587.    Fumes from the pepper spray remained in the unit for approximately two hours after the shootings.

588.    Plaintiff White sent in sick call medical requests, but his requests were ignored or disregarded.

589.    On or about August 2020, Plaintiff White received his personal property back. His family photographs and case documents were destroyed.

590.    Plaintiff White feared for his life while in the COVID-19 unit. Everyday Plaintiff White feared that he would not make it home to meet his daughter. Plaintiff White formed the belief that he could potentially die if he caught COVID-19 like some other inmates did after being placed in the unit. The exposure of the inmates coughing and sneezing after the attack increased the risk.

591.    Around December 2020, Plaintiff White contracted COVID-19 while housed in the COVID-19 unit.

### FACTS REGARDING ATTACK ON PLAINTIFF KENDALL SMITH

592.    On or about February 10, 2021, at approximately one thirty in the afternoon, Plaintiff Smith was housed in solitary confinement at Vaughn.

593.    Plaintiff Smith observed individuals on the tier that were dressed in khakis and black sweatshirts instead of a correctional officer uniform.  They were not wearing any visible credentials or nametags.

594.    Defendants Aaron Bianca, Jared Payton, and Kirk Neal opened Plaintiff Smith's cell door all the way. Plaintiff Smith's door was not properly opened half way with the standard pipe key method.

595.    Defendants Aaron Bianca, Jared Payton, and Kirk Neal ordered Plaintiff Smith to back up. Plaintiff Smith complied.

596.    Defendants Aaron Bianca, Jared Payton, and Kirk Neal ordered Plaintiff Smith to strip out of his clothing for a search. Plaintiff Smith complied.

597.    Defendants Aaron Bianca, Jared Payton, and Kirk Neal ordered Plaintiff Smith to lift his arms, open his mouth, and expose his buttocks. Plaintiff Smith complied.

598.    The Defendants asked Plaintiff Smith to repeat the search three times. Defendant Bianca tilted his pelvis close to Plaintiff Smith during the search. Plaintiff Smith requested to speak with a supervisor.

599.    Defendant Bianca took out a can of pepper spray and sprayed Plaintiff Smith in his eyes. As Plaintiff Smith tried to defend himself from the assault by Defendant Bianca, Defendant Payton sprayed him.

600.    Defendant Jared Payton or Kirk Neal punched Plaintiff Smith in his chin and grabbed his torso.

601.    Plaintiff Smith ran to the shower area for his own safety. Plaintiff Smith was barricaded in the shower area by bars.  Neither he nor the Defendants could open the bars unless an authorization came from a correctional officer outside the tier releasing the control door button. The water to the showers was turned off.

602.    The locked shower bars prevented Defendants from entering but there was no physical barrier to the pepper spray.  Defendant Eric Layman took out a can of pepper spray and sprayed Plaintiff Smith in the back of his head, on his bare back and buttocks. Plaintiff Smith believed that Defendant Layman tried to spray his genitals with pepper spray. Defendant Layman used at least two containers of pepper spray to spray Plaintiff Smith in the shower.

603.    Plaintiff Smith was barricaded in the shower area for the following forty-five minutes naked with two female correctional officers on shift on the tier.

604.    Plaintiff Smith was then taken to medical where he did not receive adequate medical treatment. The nurse took his vitals and told Plaintiff Smith to squeeze his genitals using his pepper spray contaminated hands.

605.    Plaintiff Smith sustained swelling to the right side of his head, including his ear, chin, and nose area. Plaintiff Smith's ribs caused him so much pain he was unable to sleep. The skin of Plaintiff Smith's genitals burned for weeks.

606.    Plaintiff Smith was placed in "the hole" for approximately fourteen days.

607.    Plaintiff Smith filed several grievances on the assault but they were all ignored or disregarded.

608.    Today, Plaintiff Smith's ribs still feel abnormal. The skin on Plaintiff Smith's genitals appears discolored with abrasions.

609.    Plaintiff Smith is traumatized from the assault. The memories from the incident causes Plaintiff Smith to lose sleep regularly. The assault has triggered prior abuse that Plaintiff Smith underwent as a child. Plaintiff Smith experiences feelings of hopelessness and fears of retaliation. He contemplates whether he will make it home to see his mother and little sisters.

## FACTS REGARDING ATTACK ON PLAINTIFF NATHAN LEWANDOWSKI

610.    On or about March 29, 2021, Plaintiff Lewandowski was in a cell with another inmate who had HIV/AIDS and was bleeding and defecating himself.

611.    Plaintiff Lewandowski asked Defendant Purnell if his cellmate could go to medical, clean him up, or if he was able to take a shower.

612.    Defendant Purnell denied Plaintiff Lewandowski's requests and said "Oh well."

613.    Defendant Purnell came back and gave Plaintiff Lewandowski's cellmate a sick slip and said "If  you want to kill yourself, you can put in a sick call. See you in a couple of days."

614.    Plaintiff Lewandowski requested if he could use a mop or if his cellmate could take a shower.

615.    Defendant Purnell took out a can of pepper spray and sprayed Plaintiff Lewandowski in his eyes.

616.    Defendant Purnell dragged Plaintiff Lewandowski to the back of the cell. Purnell sprayed pepper spray in Plaintiff Lewandowski's face again.

617.    Defendant Purnell then grabbed Plaintiff Lewandowski by his shirt and punched him. Defendant Purnell forced Plaintiff Lewandowski down to the ground.

618.    Plaintiff Lewandowski was on his back on the ground facing up. Defendant Purnell sat on top of Plaintiff Lewandowski and repeatedly punched Plaintiff Lewandowski in the face. Blood gushed from Plaintiff Lewandowski's nose from the impact.

619.    Defendant Purnell took out a can of pepper spray and hit Plaintiff Lewandowski in his head with the can. Defendant Purnell then sprayed Plaintiff Lewandowski with pepper spray.

620.    Plaintiff Lewandowski did not fight back. Plaintiff Lewandowski tried to cover his head with his arms as Defendant Purnell was hitting the back and top of his head. Defendant Purnell was approximately twice Plaintiff Lewandowski's size.

621.    Defendant Purnell then threw Plaintiff Lewandowski out of the cell and slammed Plaintiff Lewandowski's forehead into the ground. The assault continued for several minutes. Defendant Purnell shouted to another correctional officer to "call Code." Other unidentified correctional officers arrived to the assault, laughed, taunted Plaintiff Lewandowski and shouted, "Got another one!"

622.    Plaintiff Lewandowski spoke with a nurse and told her that he was assaulted and did not feel safe. Plaintiff Lewandowski requested pain medication but did not receive any medical treatment.

623.    Plaintiff Lewandowski was sent to "the hole" for fourteen days. Plaintiff Lewandowski was denied privileges including phone calls. Despite the blood on him, Plaintiff Lewandowski was not allowed to shower for the two days following the assault.

624.    Plaintiff Lewandowski vomited in his cell throughout the following day and night of the assault. Plaintiff Lewandowski experienced difficulty breathing due to the pepper spray fumes. He also experienced difficulty seeing from his eyes for two days. Plaintiff Lewandowski experienced throbbing, pounding, and dizzy sensations in his head. Plaintiff Lewandowski filed sick call medical requests and mental health requests almost every day. His requests were disregarded or ignored.

625.    On or about April 1, 2021, Plaintiff Lewandowski filed a grievance regarding the assault. On or about April 6, 2021, the grievance was stamped as received, but Plaintiff Lewandowski hasn't been contacted regarding a follow up or investigation.

626.    After his time in the hole, Plaintiff Lewandowski was terrified and feared for his life. He suffered from frequent nightmares and lost his appetite to eat. While at SCI, Plaintiff Lewandowski was in constant fear of being surrounded by guards that he believed could harm him at any time.

627.    Today, Plaintiff Lewandowski suffers from post-traumatic stress disorder, attention deficit hyperactivity disorder, and depression. He has nightmares and now twitches in his sleep.

## FACTS REGARDING ATTACK ON PLAINTIFF BRADLEY ZAHNER

628.    On or about May 2021, at approximately six o'clock in the morning, Plaintiff Zahner exited his cell with a food tray to get in line to eat breakfast within Housing Unit 4.

629.    Defendant Anthony L. Wise yelled to Plaintiff Zahner to, "lock in" because it was too late to eat breakfast. Defendant Wise hit Plaintiff Zahner's food tray out of his hands. Defendant Wise then took out a can of pepper spray and sprayed Plaintiff Zahner in his face.

630.    Defendant Wise picked up Plaintiff Zahner and slammed him down to the ground. Plaintiff Zahner's face forcefully hit the ground when he was slammed down.

631.    Once on the ground, Defendant Wise put his knee in Plaintiff Zahner's back which made Plaintiff Zahner defecate himself.

78

632.    Defendant Tracy J. Jones, Jr. and Defendant Wise handcuffed Plaintiff Zahner and called code.  Defendants James Bray and Defendant Corey Keen and other unidentified correctional officers ran over.

633.    Defendant Jones put his knee on the back of Plaintiff Zahner's head which caused Plaintiff Zahner's head to bounce and hit the ground multiple times. The left side of Plaintiff Zahner's forehead split open, causing blood to pour from his face.

634.    Defendants Bray and Keen pinned Plaintiff Zahner's body down to the ground.

635.    Defendants Bray and Keen  lifted Plaintiff Zahner off the ground and dragged him with his arms raised behind his back to visit the nurse.

636.    Plaintiff Zahner was not allowed to shower for two days despite being covered in blood and feces.

637.    Plaintiff Zahner was placed in "the hole" for twenty days.

638.    Plaintiff Zahner was moved back to Housing Unit 4. Plaintiff Zahner overheard Defendant Jones bragging about the assault and that he was the one who caused the scar on Plaintiff Zahner's face.

639.    Plaintiff Zahner now experiences headaches when he is around bright lighting. Plaintiff Zahner has a large scar on his left forehead above his eyebrow from the assault.

640.    Plaintiff Zahner is petrified that an assault could occur again. He avoids contact with correctional officers during Defendant Wise's and Defendant Jones' work shifts. Plaintiff Zahner will not eat breakfast anymore.

## FACTS REGARDING ATTACK ON PLAINTIFF ATIBA MAYFIELD

641.    On or about April 28, 2021, an inmate on Plaintiff Mayfield's tier went to use the bathroom and was pepper sprayed by a correctional officer. At the next scheduled meal time, the remaining inmates on the tier did not eat.

642.    Defendant Brandon Wilkins handcuffed Plaintiff Mayfield and improperly accused him of inciting a riot. Plaintiff Mayfield was taken to "the hole" for two days.

643.    On or about May 1, 2021, Plaintiff Mayfield made numerous requests to be relocated from "the hole" His requests were all ignored.

644.    Plaintiff Mayfield made a suicide attempt in an effort to be relocated from "the hole." He tied a sheet around his neck and ask for Mental Health. Defendants Joseph Smith, Terry Hood, Steve Long, Dustin Simpson, Harold McTeer, Brandon Jenkins, and Michael Runne entered Plaintiff Mayfield's cell.

645.    Defendants pinned Plaintiff Mayfield down in his cell and began to assault him. Defendants pushed Plaintiff Mayfield up against the wall and then threw him on the bed face down. Defendants punched Plaintiff Mayfield in the head, kneed him, twisted his arms and verbally assaulted him. Defendants then handcuffed Plaintiff Mayfield.

646.    Plaintiff Mayfield bled from the assault and was taken to medical where he received wound care. Plaintiff Mayfield sustained a large wound on the back of his head that swelled into a lump.

647.    Plaintiff Mayfield was taken to psychiatric care for four days and then placed back in "the hole" for four days until a disciplinary hearing was held.

648.    At the disciplinary hearing, Plaintiff Mayfield was found not guilty for inciting a riot.

649.    Plaintiff Mayfield continues to feel traumatized and helpless after the assault. He is frightened whenever he hears another inmate is assaulted because he fears that the correctional officers will never be held accountable. Plaintiff Mayfield tries to avoid any interaction with correctional officers because he does not want to get pepper sprayed and lose all privileges for an unprovoked interaction.

## **FACTS REGARDING ATTACK ON PLAINTIFF BRYON KELLY**

650.    On or about May 4, 2021, Plaintiff Kelly was processed through intake at SCI.

651.    Defendant Myles Vernet entered Plaintiff Kelly's cell on Housing Unit Four. Defendant Vernet ordered Plaintiff Kelly and his cellmate to exit the cell and sit in front.

652.    Defendant Jeffrey Purdy began to yell and then handcuffed Plaintiff Kelly. Defendant Vernet walked Plaintiff Kelly out to the alcove outside area.

653.    Defendant Vernet bent Plaintiff Kelly's right ring finger and Plaintiff Kelly felt a painful pop in his hand that caused excruciating pain. Plaintiff Kelly asked if Defendant Vernet could let go of his hand because he was in pain. Defendant Vernet responded, "Shut the fuck up and keep walking."

654.    Plaintiff Kelly was taken to medical where he told the nurse that his finger was broken. Despite Plaintiff Kelly's pleading with the nurse that he was in pain, Plaintiff Kelly did not receive any medical treatment.

655.    Plaintiff Kelly was placed in "the hole" for approximately five days.

656.    Plaintiff Kelly submitted numerous sick call medical requests.

657.    Plaintiff Kelly was transported back to Housing Unit Four. Plaintiff Kelly received mental health visits.

658.    Plaintiff Kelly filed a grievance but it was returned unprocessed.

659.    Around April 2021, Plaintiff Kelly underwent an x-ray that confirmed that his finger was broken. Plaintiff Kelly was prescribed physical therapy but he never received any care.

660.    Plaintiff Kelly received a finger splint but it was designed to heal a different part of a finger. As a result of not having a proper finger splint, Plaintiff Kelly's finger healed improperly.

661.    Today, Plaintiff Kelly cannot bend his right ring finger properly and it remains swollen. The inability to bend his finger creates daily challenges for Plaintiff Kelly. He struggles to write and carry heavy items.

662.    Plaintiff Kelly is extremely fearful of retaliation. He experiences flashbacks when he is in common spaces with Defendant Vernet and Defendant Purdy.

### FACTS REGARDING ATTACK ON PLAINTIFF WARREN SELBY

663.    On or about June 2021, at approximately six o'clock in the evening, Plaintiff Selby was using the phone within SCI.

665.    Plaintiff Selby complied with the announcement and rushed to get off the phone.

666.    Defendant Mitchell approached Plaintiff Selby, took out a can of pepper spray, and sprayed Plaintiff Selby directly in his eyes, nose, and face.

667.    Defendant Mitchell then grabbed Plaintiff Selby's left arm and twisted it behind Plaintiff Selby's back causing him to fall to the ground. Plaintiff Selby put his hands out in front of him to brace his fall. Due to the impact of the fall on the hard tile floor, Plaintiff Selby's right wrist became injured.

668.    Other correctional officers rushed over and handcuffed Plaintiff Selby.

669.    Plaintiff Selby was transported to "the hole" where he remained overnight. Plaintiff Selby was unable to take a shower until the following day.

670.    Plaintiff Selby was prescribed physical therapy for his right wrist injury. Plaintiff Selby saw a physical therapist for six visits. The physical therapy did not heal Plaintiff Selby's wrist injury or pain.

671.    Today, Plaintiff Selby's daily movements are limited by the pain in his wrist from his injury. Plaintiff Selby is unable to lift heavy items without feeling pain from his wrist.

## FACTS REGARDING ATTACK ON PLAINTIFF PATRICIO BAUTISTA

672.    On or about July 21, 2021, at about five forty-five in the morning, Plaintiff Bautista exited his cell to join the line for breakfast on Tier D of the Stan Taylor building.

673.    Plaintiff Bautista overheard Defendant Dion Brown yell at an inmate to tuck in his shirt. Plaintiff Bautista did not know who Defendant Brown was referring to.

674.    Plaintiff Bautista's shirt was tucked into his pants in the front. Plaintiff Bautista was unaware that his shirt was not tucked into his pants in the back.

675.    Plaintiff Bautista overheard Defendant Brown shout again at an inmate to tuck in his shirt.

676.    Defendant Brown yelled, "you!" to Plaintiff Bautista. Plaintiff Bautista realized Defendant Brown was talking to him.

677.    Defendant Brown ordered Plaintiff Bautista to approach him and Plaintiff Bautista complied.

678.    Defendant Brown violently grabbed Plaintiff Bautista by the back of his neck. Defendant Brown squeezed Plaintiff Bautista's neck tightly with his hand. Defendant Brown pushed Plaintiff Bautista off the tier, approximately twenty-five yards, with his hand tightly gripping Plaintiff Bautista's neck.

679.    Defendant Brown pushed Plaintiff Bautista out into the hallway and ordered Plaintiff Bautista to remain standing and face the wall.

680.    After fifteen minutes, Defendant Sgt. Brown came back and said, "Mr. Bautista, you must not know who I am. I don't know where you're from, but if you want to make it out of here, you will do as I say." Plaintiff Bautista responded, "Ok, sir." Defendant Sgt. Brown then ordered Plaintiff Bautista to go back to his bunk. Plaintiff Bautista complied.

681.    Plaintiff Bautista sustained a neck injury and pain from Defendant Sgt. Brown's tightening grip on his neck. Plaintiff Bautista immediately filed a sick call medical request to be examined. After no response, Plaintiff Bautista made several additional requests to visit medical. On or about July 26, 2021, Plaintiff Bautista was sent to the infirmary and prescribed a daily dose of ibuprofen.

682.    Over the next thirty days, Plaintiff Bautista suffered from an irregularly stiff and painful neck. He was unable to move it normally without experiencing pain.

683.    On or about July 21, 2021, Plaintiff Bautista filed his first grievance regarding the assault. After a lack of response, Plaintiff Bautista made several subsequent requests to grieve the assault. On or about September 20, 2021, Lt. Burgess advised that she received Plaintiff Bautista's grievance and could not see the incident on the cameras. Plaintiff Bautista is not aware of any follow up since then.

684.    Plaintiff Bautista requested to speak with a mental health clinician on several different occasions due to his emotional distress, loss of sleep, and fear from the assault. Plaintiff Bautista observed Defendant Sgt. Brown assault other inmates which caused Plaintiff Bautista to experience increased fear and emotional distress.

## FACTS REGARDING ATTACK ON PLAINTIFF JAMAL SOLOMON

685.    On or about September 8, 2021, Plaintiff Solomon completed a work shift in the kitchen in the medium building.

686.    Defendant Sgt. Hastings told Plaintiff Solomon to walk into tier A.

687.    Plaintiff Solomon communicated to Defendant Sgt. Hastings that he had a conflict with another individual who was housed on tier A. Plaintiff Solomon explained that if he walked into tier A, it would result in Plaintiff Solomon getting jumped. Defendant Sgt. Hastings proceeded to tell Plaintiff Solomon to walk on to tier A again. After Plaintiff Solomon explained again that he would likely get assaulted by another inmate, Defendant Sgt. Hastings directed Plaintiff Solomon to go back to the cafeteria area.

688.    Plaintiff Solomon sat down on a bench. Defendant Sgt. Hastings again told Plaintiff Solomon to walk into tier A. Plaintiff Solomon again explained to Defendant Sgt. Hastings that he would be jumped if he entered tier A.

689.    Despite Plaintiff Solomon's sitting down and non-threatening and seated position, Defendant Sgt. Hastings pulled out a can of pepper spray and sprayed Plaintiff Solomon in his nose and mouth while standing directly in front Plaintiff Solomon. Defendant Sgt. Hastings continued to spray Plaintiff Solomon with pepper spray for several seconds.

690.    Plaintiff Solomon attempted to block his face with his hands.

691.    Defendant Sgt. Hastings handcuffed Plaintiff Solomon and transported Plaintiff Solomon to "the hole" where he remained for fifteen days.

692.    Plaintiff Solomon was deprived of privileges for 30 days.

84

693.   Plaintiff Solomon does anything to avoid confrontation with correctional officers.

## FACTS REGARDING ATTACK ON PLAINTIFF LAQUAN JOHNSON

694.   On or about October 2021, Plaintiff Johnson was ordered by correctional officers to move to three different cells.

695.   Plaintiff Johnson banged his food tray on a can out of frustration.

696.   Defendant Alvin Hudson told Plaintiff Johnson to "Shut the fuck up," threatened to take away Plaintiff Johnson's recreation time, and to "lock in."

697.   Plaintiff Johnson complied and said, "You got it."

698.   After returning to his cell, Defendant Hudson entered Plaintiff Johnson's cell and grabbed him by the back of his neck and then jumped on Plaintiff Johnson's back.

699.   After Defendant Hudson pulled Plaintiff Johnson from the cell, Defendants Jeremiah Purnell, Dylan Steele and Bryan J. Tindley grabbed Plaintiff Johnson's neck and dragged Plaintiff Johnson to the ground.

700.   Defendant Purnell then took out a can of pepper spray and sprayed it into Plaintiff Johnson's nostrils, eyes, and ears. The assault continued for several minutes resulting in Plaintiff Johnson's head being banged on the ground several times.

701.   Plaintiff Johnson was transported to medical. Plaintiff Johnson communicated to the nurse that he had migraines and that his head did not feel right after the assault. Despite his injuries, Plaintiff Johnson did not receive any medical treatment.

702.   Plaintiff Johnson was placed in "the hole" for approximately six days and then was transferred to James T. Vaugh in maximum security.

703.   Today, Plaintiff Johnson suffers from eating problems, headaches, and a scar on the back of his ear.

## FACTS REGARDING ATTACK ON PLAINTIFF CHARLES ROBINSON

704.   On or about November 2021, Plaintiff Robinson was taking a shower in SCI.

705.    Defendant Sgt. Hastings yelled in the shower, "Who the hell is in my shower during Code Red?!"

706.    Plaintiff Robinson responded, "Okay, I'm putting on my boxers."

707.    Plaintiff Robinson reached for a towel to dry off and formed the belief that Defendant Sgt. Hastings saw him with the towel.

708.    Plaintiff Robinson put one leg into his boxers when Defendant Sgt. Hastings abruptly opened the shower curtain.

709.    Defendant Sgt. Hasting took out a can of pepper spray and sprayed Plaintiff Robinson in the face.

710.    Plaintiff Robinson asked Defendant Sgt. Hasting why he sprayed him. Defendant Sgt. Hastings responded, "You were taking too long in the shower."

711.    Defendant Sgt. Hastings took Plaintiff Robinson to "the hole" for seven days.

712.    Plaintiff Robinson observed that his cell was filthy. He observed moldy milk cartons and trash left in the cell when he entered. Plaintiff Robinson was not allowed to shower for twenty-four hours.

713.    After Plaintiff Robinson was able to shower, he was forced to wear clothes that were still contaminated with pepper spray.

714.    Plaintiff Robinson requested a different set of clothes but his request was denied. Plaintiff Robinson was forced to wear the pepper spray contaminated clothing for twelve days.

715.    On or about February 3, 2022, at approximately ten forty in the evening, Plaintiff Robinson left his cell to use the restroom.

716.    Plaintiff Robinson was radioed to go to the cafeteria.

717.    Defendant Sgt. Hastings threatened Plaintiff Robinson and told him, "You didn't learn the first time? If you get out of your bed again, I'm going to spray you."

718.    As a result of being pepper sprayed, Plaintiff Robinson now experiences blurred vision.

719.    Plaintiff Robinson experiences nightmares from being pepper sprayed by Defendant Sgt. Hastings.

720.    Plaintiff Robinson fears every time a correctional officer is present on the tier that they will spray him unannounced and unprovoked.

### FACTS REGARDING ATTACK ON PLAINTIFF SHAMIR SUDLER

721.    Around December 2021, at approximately eight fifteen in the evening, Plaintiff Sudler finished his work shift in the kitchen.

722.    Plaintiff Sudler went to shower in preparation to see a visitor scheduled at eight thirty.

723.    While in the shower, Plaintiff Sudler heard Defendant Duperron yell, "get out of the shower."

724.    Plaintiff Sudler immediately rinsed the soap off his face. As Plaintiff Sudler wiped his face, Defendant Duperron opened the shower curtain and yelled, "get the fuck out of the shower!"

725.    Defendant Duperron took a can of pepper spray and sprayed it in Plaintiff Sudler's face. Plaintiff Sudler used his hand to protect his face from the pepper spray. Plaintiff Sudler did not act in a threatening manner towards Defendant Duperron.

726.    Defendant Duperron again yelled, "get the fuck out of the shower!" Plaintiff Sudler responded, "I'm trying to, I can't see."

727.    Defendant Duperron grabbed Plaintiff Sudler causing him to fall on the floor on the right side of his face. Defendant Duperron yelled, "Stupid ass, should have gotten out of the shower!"

728.    Without announcement, Defendant Hanna entered the bathroom. Defendant Duperon said to Defendant Hanna, "Give me something to cover his little dick."

729.    Defendant Duperon transported Plaintiff Sudler out of the bathroom and to a holding cell. During the transport, Defendant Duperon taunted Plaintiff Sudler saying, "stupid ass," "idiot," "stupid little fucker," and "keep fucking around you're going to be in jail the rest of your life."

730.    Plaintiff Sudler was brought to a holding cell where he was ordered to take his clothes off. After Plaintiff Sudler took his shoe off, Defendant Duperron picked it up and violently threw it at Plaintiff Sudler.

731.    Defendant Duperron ordered Plaintiff Sudler to touch his genitals with his hands contaminated with pepper spray and then open his mouth. After the inspection, Plaintiff Sudler put his clothes back on.

732.    Plaintiff Sudler visited medical, where he requested treatment for his burning genitals and body. The nurse only checked his vitals.

733.    Plaintiff Sudler was taken to "the hole" for seven days.

734.    Plaintiff Sudler was not allowed to take a shower. Plaintiff Sudler was unable to sleep properly. Every time he began to fall asleep, his body temperature increased, which caused him to sweat. The sweat, in combination with the pepper spray embedded in his skin, reactivated excruciating burning sensations on Plaintiff Sudler's body.

735.    Plaintiff Sudler experienced ongoing burning sensations for weeks after the assault. The pepper spray remained in Plaintiff Sudler's hair. Every time Plaintiff Sudler took a shower, the water reactivated the pepper spray and it dripped from his hair down his body and burned him.

736.    For weeks following the incident, Plaintiff Sudler's bedding remained covered in pepper spray.

737.    Plaintiff Sudler's genitals remain irritated and he experiences burning sensations.

738.    Plaintiff Sudler experienced scabbing from the pepper spray and his face peeled from it daily.

739. Plaintiff Sudler was moved back to the tier where he frequently encounters Defendant Duperon.

740. Defendant Duperron continues to taunt and ridicule Plaintiff Sudler, calling him, "dumbass," "idiot," and "stupid little fucker" on a regular basis.

741. Plaintiff Sudler did not file a grievance on the assault in fear of retaliation from correctional officers.

742. Plaintiff Sudler experiences depression and fears that he could be killed at SCI. He is scared to say anything in the event a correctional officer may be having a bad day and takes their anger out on him. After observing assaults on other inmates in SCI, Plaintiff Sudler believes small issues get turned into big problems and he fears the risk of his safety.

743. Plaintiff Sudler experiences post-traumatic stress disorder from the assault.

744. The daily count ticker used by correctional officers causes great anxiety in Plaintiff Sudler.

745. Plaintiff Sudler avoids correctional officers if he can and will not even ask a question.

746. Plaintiff Sudler's phone privileges were terminated.

## **FACTS REGARDING ATTACK ON PLAINTIFF RICHARD S. MADDUX**

747. On or about December 30, 2021, Plaintiff Maddux was transported to a CRU.

748. In the CRU, Plaintiff Maddux was provided a mat that had feces and mold on it.

749. Plaintiff Maddux made a request to Defendant Kirk Neal for a different mat. Defendant Kirk Neal denied Plaintiff Maddux's request and said, "Oh well!"

750. Plaintiff Maddux was extremely repulsed by the feces in the mat. Being confined to a small cell, with no escape of the feces covered mat, compelled Plaintiff Maddux to take the fabric of a dirty ripped sheet left in his cell and hang himself from a vent on the side of the wall.

751.    Defendant Kirk Neal saw Plaintiff Maddux hanging from the vent.

752.    Defendant Kirk Neal took his pepper spray and sprayed into Plaintiff Maddux's cell from the small opening on the door. Plaintiff Maddux formed the belief that the pepper spray was suited for bears, not humans, due to the burning sensations he felt.

753.    Defendant Kirk Neal barged into Plaintiff Maddux's cell and tackled Plaintiff Maddux.

754.    Defendant Kirk Neal picked up Plaintiff Maddux by his knees and forcefully pulled him down away from the vent. Plaintiff Maddux's neck was still attached to the fabric tied to the vent.

755.    Plaintiff Maddux's neck became twisted from the forceful tackle causing Plaintiff Maddux to experience a neck injury.

756.    Defendant Kirk Neal's tackle caused the fabric attached to Plaintiff Maddux's neck to snap and break away from the vent. Defendant Kirk Neal slammed Plaintiff Maddux to the ground.

757.    Defendant Kirk Neal's tackle caused Plaintiff Maddux to sustain a neck laceration.

758.    Plaintiff Maddux's face made a forceful impact with the ground causing a broken jaw.

759.    A nurse entered the cell. Defendant Kirk Neal picked Plaintiff Maddux up to a sitting position.

760.    Plaintiff Maddux was ordered to walk outside his cell and lay down on a gurney. Plaintiff Maddux complied.

761.    Plaintiff Maddux was transported to Psychiatric Care for three days.

762.    Plaintiff Maddux was stripped of his clothing and was forced to remain naked and covered in pepper spray for three days. Plaintiff Maddux's cell had a clear glass window where staff would peer in at him.

763.    On numerous occasions, Plaintiff Maddux requested medical assistance and communicated that he felt like his body was on fire. Plaintiff Maddux's medical requests were ignored or disregarded.

764.    Plaintiff Maddux was forced to sleep on a fiber glass mat.

765.    Plaintiff Maddux was not allowed to shower for four days.

766.    Plaintiff Maddux's genitals burned from the pepper spray. Before he was able to shower, Plaintiff Maddux requested a cloth to clean himself but his request was denied.

767.    Plaintiff Maddux believes he had a bulging or ruptured disc in his neck and a neck laceration as a result of Defendant Kirk Neal tackling him. Plaintiff Maddux requested an MRI, but his request was denied.

768.    Plaintiff Maddux's left wrist became swollen to the size of a tennis ball. He received an ultrasound but never received the results.

769.    Defendant Kirk Neal broke Plaintiff Maddux's jaw. Plaintiff Maddux had an abscess on his jaw from an infection after it was broken from Defendant Kirk Neal's assault. Plaintiff Maddux underwent surgery to have a tooth pulled and Penrose drain inserted to release pressure on the abscess. Plaintiff Maddux is no longer able to use his dentures. His teeth and smile are permanently damaged. Plaintiff Maddux fears it will impact his chances of employment once released.

770.    Plaintiff Maddux was already coping with past trauma. Defendant Kirk Neal's assault caused a resurfacing of that trauma.

771.    Plaintiff Maddux remains in constant fear of the correctional officers at SCI, and specifically fears that they will harm him unprovoked. Plaintiff Maddux tries to stay away from correctional officers any chance he can. In fear of his safety, Plaintiff Maddux does not sleep.

772.    Plaintiff Maddux's privileges were terminated. Due to his prior trauma, Plaintiff Maddux heavily relies on routine calls with his loved ones to manage his mental and emotional

well-being. Plaintiff Maddux's phone calls to his loved ones were terminated and he struggles daily with maintaining his mental and emotional well-being.

773.    Plaintiff Maddux filed grievances to medical but they were all ignored or disregarded.

## FACTS REGARDING ATTACK ON PLAINTIFF JIMMIE MOORE

774.    Around February 2021, Plaintiff Moore was housed in SCI and was assaulted when Correctional Officer Jenkins used a trailer to back over Plaintiff Moore's leg. As a result of litigation in connection with the assault, Plaintiff Moore received a No Contact Order (the "Order") from the Court that specified Plaintiff Moore cannot have contact with the facility.

775.    On or about February 2022, Plaintiff Moore was placed in SCI.

776.    Upon arrival, Plaintiff Moore communicated to a correctional officer that he was not supposed to be there because of the Order.

777.    The correctional officer responded, "I remember you." Plaintiff Moore communicated that he feared for retaliation and feared for his life in the facility.

778.    On or about February 27, 2022, at about four o'clock in the evening, Plaintiff Moore was on the phone with his sister. A correctional officer intentionally cut off Plaintiff Moore's phone call. Plaintiff Moore asked why his phone call was shut off. The correctional officer told Plaintiff Moore to, "Shut the fuck up" and get off the pod.

779.    Plaintiff Moore was sent to the Violation of Probation ("VOP") Center and put in a holding cell. Defendant Sgt. Tanner Russell said to Plaintiff Moore, "I know who you are. I'm named in your lawsuit. You're going to a sanction pod for refusing to scrub the base boards of the building with a tooth brush."

780.    Approximately ten minutes later, Defendant Sgt. Russell ordered Plaintiff Moore to go to a receiving room to pick up his write up.

781.    Defendant Tyson Jefferson stepped back and said, "Fuck this." Defendant Jefferson pulled out a can of pepper spray and sprayed Plaintiff Moore in his face.

782.    Defendant Jefferson jumped on Plaintiff Moore causing him to fall to the ground. Defendant Jefferson then handcuffed Plaintiff Moore behind his back.

783.    Defendant Jefferson yelled for Defendant Spencer. Defendant Kameron Spencer came into the cell and put his knee on Plaintiff Moore's neck while simultaneously spraying him with pepper spray.

784.    Plaintiff Moore told Defendant Jefferson and Defendant Spencer that he could not breathe. He asked that Defendant Jefferson or Defendant Spencer remove the pepper spray covered mask from his face.

785.    Defendant Jefferson and Defendant Spencer lifted Plaintiff Moore up by his arms and pushed him to walk while bent over with his arms handcuffed and raised behind his back. Plaintiff Moore was taken to a holding cell.

786.    Defendant Jefferson and Defendant Spencer threw Plaintiff Moore head first into a cell. Plaintiff Moore's head was smashed into the wall. Plaintiff Moore's forehead swelled into a large lump. The impact caused Plaintiff Moore to feel dizzy. Plaintiff Moore experienced subsequent neck pain and nerve damage to his neck.

787.    Defendant Spencer said to Plaintiff Moore, "I hope you die in there."

788.    Plaintiff Moore's mask on his face was saturated with pepper spray. He struggled to breathe and gagged through the fumes which caused him to excessively salivate and for drool to build up in the space between his face and the mask.

789.    Plaintiff Moore's body felt like it was on fire from the pepper spray. Plaintiff Moore laid his face on the toilet in an effort to cool his body down.

790.    At approximately eight o'clock in the evening, Plaintiff Moore was placed in pod seven for four days and deprived of privileges including phone calls.

791.    Plaintiff Moore made sick call medical requests to be examined and for an MRI. Plaintiff Moore's requests were ignored or disregarded.

792.    Today, Plaintiff Moore experiences pain in his neck. He cannot fully rotate his neck to the left in a full motion.

793.    Plaintiff Moore experiences nightmares from the assault. Plaintiff Moore frequently jumps in his sleep and calls his sister crying from fearing for his livelihood.

## FACTS REGARDING ATTACK ON PLAINTIFF REUEL RAY

794.    On or about February 9, 2022, approximately between the time of seven thirty and nine thirty in the morning, Plaintiff Ray was moved from the housing unit to the classification unit.

795.    Plaintiff Ray requested to speak with a mental health clinician because he was experiencing depression and wanted help.

796.    Toothpaste and toilet paper were smeared on the window of Plaintiff Ray's cell.

797.    Plaintiff Ray tried to remove the toothpaste from the window by wiping it with toilet paper, but the toilet paper only made it look worse.

798.    A nurse arrived at Plaintiff Ray's cell. The nurse determined that because he was not homicidal or suicidal that Plaintiff Ray needed to wait.

799.    The nurse took away Plaintiff Ray's toilet paper and toothpaste. The nurse instructed Plaintiff Ray to submit a sick call medical request.

800.    Defendants Ronald R. West and Scott D. Bollinger walked up to Plaintiff Ray's door with a canine. Defendants Uhland J. Pepper and David R. Seymore ordered Plaintiff Ray to remove the tooth paste from the window. Plaintiff Ray requested a rag to effectively remove the toothpaste.

801.    Plaintiff Ray observed the Quick Response Team ("QRT") dressed in helmets and padding approach. The team consisted of Defendants Jeremy Blank, Jeremy R. Purnell, Joseph E. Kraft, Jeremiah L. Drummond, and Joshua M. Betts; and was supervised by Joshua L. Niblett. Plaintiff Ray asked why the QRT was present. Defendant Blank told Plaintiff Ray to back up in his cell.

802.    Defendant Blank placed a Sabre Red Cell Buster under Plaintiff Ray's cell door and activated the device. Plaintiff Ray observed pepper spray invading his cell and that it became difficult to breathe.

803.    Plaintiff Ray rushed to cover his face with a blanket and used it to breathe.

804.    Defendant Blank placed another Sabre Red Cell Buster under Plaintiff Ray's cell door for a second time. Plaintiff Ray's door opened and Defendants Blank, Purnell, Kraft, Drummond and Betts entered.

805.    One of these Defendants smashed Plaintiff Ray's face into the wall.

806.    Plaintiff Ray placed his hands behind his head. Defendants Blank, Purnell, Kraft, Drummond and Betts punched and kicked Plaintiff Ray's body. Plaintiff Ray did not resist the attack.

807.    Defendant Purnell placed his foot on the back of Plaintiff Ray's neck, and took a step up, using all his weight to stand up on Plaintiff Ray's neck.

808.    Plaintiff Ray communicated that he could not breathe. Plaintiff Ray felt the nerves in his neck become sensitive and go erratic. Plaintiff Ray requested that Defendant Purnell release his neck because he could not breathe. The combination of pressure on his neck with the pepper spray fumes in the cell made Plaintiff Ray fear for his life.

809.    The pressure from Defendant Purnell caused a blood vessel to burst in Plaintiff Ray's right eye.

810.    One of the Defendants in the cell  pulled Plaintiff Ray's pants down exposing his genitals.

811.    Despite placing Plaintiff Ray in handcuffs, Defendants Blank, Purnell, Kraft, Drummond and Betts  continued to kick and stomp on Plaintiff Ray's body.

812.    Defendants dragged Plaintiff Ray out of his cell while he was faced down, scraping his genitals across the floor. Plaintiff Ray yelled out in pain from his exposed genitals

being scraped across the floor. One of the attacking Defendants yelled at Plaintiff Ray to, "Shut the fuck up!"

813.    Defendants bound Plaintiff Ray's ankles and hands together behind his back in a hogtie. Defendants threw Plaintiff Ray to the ground, causing his face to hit the floor and cause injury.

814.    Plaintiff Ray was placed on a stretcher bed with his genitals still exposed. Plaintiff Ray recalled being in and out of consciousness. One of the involved Defendants checked Plaintiff Ray's pulse and stated, "Hurry, get him to medical!"

815.    In medical, Plaintiff Ray requested for his neck to be examined. The nurse did not provide any care to Plaintiff Ray's neck. Plaintiff Ray's right eye was swollen shut and his right jaw was injured.

816.    Despite not being homicidal or suicidal, Plaintiff Ray was placed in Psychiatric Close Observation for several hours.

817.    Plaintiff Ray was then placed in "the hole" for fifteen days.

818.    On or about February 14, 2022, Plaintiff Ray filed a grievance on the assault and for mistreating him for requesting mental health help. Plaintiff Ray's grievance was ignored or disregarded.

819.    Reasonable discovery will show that Defendants Beck and Mears retaliated against Plaintiff Ray, who had an opportunity to participate in a program that would allow three years of his sentence to be suspended.  But in order to participate, Defendants had to permit Plaintiff Ray to return to SCI from the Howard Young facility, where he resided after being transferred. Defendants refused to permit Plaintiff Ray to participate, thus causing him to be incarcerated three years longer than necessary.

820.    Today, Plaintiff Ray has pain that extends from the back of his head down to the middle of his back. Plaintiff Ray is unable to move in quick motions and he cannot turn to the

right without experiencing sharp pain. Plaintiff Ray is now unable to exercise. When he walks, he feels a tingling sensation in his neck.

821.    Plaintiff Ray feels despair from the assault. He feels like his life is worthless after the assault and that he was almost killed. Plaintiff Ray fears for his safety every day at SCI.

## FACTS REGARDING ATTACK ON PLAINTIFF JASON BENNETT

822.    On or about February 14, 2022, Plaintiff Bennett was processed through intake at SCI. Plaintiff Bennett is a veteran and visibly disabled. He has a broken femur and a metal rod in his leg.

823.    During intake, Plaintiff Bennett had crutches that he used to help him walk. Plaintiff Bennett had a recent surgery to his chest. Plaintiff Bennett communicated to the correctional officers that he just had surgery and that he had a wound and bandage on his chest.

824.    Plaintiff Bennett was walked to an area to strip down and change from his clothes. Plaintiff Bennett walked with a limp with his crutches. Defendant Corey Keen screamed at Plaintiff Bennett to "move it."

825.    Defendant Keen pushed Plaintiff Bennett from behind. Defendant Keen verbally assaulted Plaintiff Bennett calling him, "faker," "loser," and "worthless."

826.    Plaintiff Bennett was transported to the nurse during intake. The nurse yelled at Plaintiff Bennett, "Welcome to prison!" Plaintiff Bennett attempted to tell the nurse of his medical condition but the nurse did not listen to him.

827.    Plaintiff Bennett formed the belief that SCI was not equipped to meet his basic needs as a disabled person. Plaintiff Bennett's legs frequently go numb when he stands due to nerve damage and he falls. Plaintiff Bennett did not shower for the week he was at SCI.

828.    Plaintiff Bennett was put in a cell with three other inmates. A few hours later, Plaintiff Bennett suffered from an asthma attack.

829.    Plaintiff Bennett's cellmates called for the attention of a correctional officer for help. Defendant Mears walked to the front of Plaintiff Bennett's cell.

831.    Defendant Mears grabbed Plaintiff Bennett by the front of his shirt and lifted him in the air causing his shirt to close in on his throat.

832.    Defendant Mears then dropped Plaintiff Bennett back down and yelled for a wheel chair. Defendant Mears grabbed Plaintiff Bennett from the front of his shirt once again. Defendant Mears called Plaintiff Bennett a "faker."

833.    Defendant Mears then threw Plaintiff Bennett into the wheel chair causing Plaintiff Bennett's left leg to make a forceful impact with a metal bar on the chair.

834.    Plaintiff Bennett immediately cried out from the pain from his leg. Plaintiff Bennett has osteoporosis and a prior hip fracture from the time he served in the military.

835.    Defendant Mears taunted Plaintiff Bennett by mocking Plaintiff Bennett's crying.

836.    The impact to Plaintiff Bennett's leg caused an inch long cut and dark bruising, the side of a softball, near the ball joint.

837.    Plaintiff Bennett was taken to the nurse. The nurse said, "You are here for drugs" and began to call Plaintiff Bennett a "fat kid."

838.    Plaintiff Bennett said through difficult breathing that he needed his asthma inhaler and was in pain. The nurse stuck a needle in Plaintiff Bennett's arm. Despite asking the nurse, Plaintiff Bennett was never told what was injected into his body.

839.    Defendant Mears wheeled Plaintiff Bennett in the wheelchair back to his cell without his inhaler. Plaintiff Bennett put his hands over his chest to cover his wound from his surgery. Defendant Mears grabbed Plaintiff Bennett's hands and pushed them down.

840.    Defendant Mears demanded Plaintiff Bennett to "sit up." Plaintiff Bennett reached for his chest again. Defendant Mears then punched Plaintiff Bennett in the jaw on the right side of his face.

841.    Today, Plaintiff Bennett suffers from lack of sleep and has panic attacks. He was severely scared of Defendant Mears and the other correctional officers at SCI. The assault has

## FACTS REGARDING PERSONAL INVOLVEMENT OF SCI'S ADMINISTRATION
## AND LACK OF SUPERVISION

842.    In their capacity of Warden and Deputy Warden at SCI, Defendants Mears and Beck are responsible for establishing the policies and procedures for correctional staff at SCI. By allowing and encouraging a system of abusive conduct by correctional officers to become a *de facto* policy at SCI, Defendants Mears and Beck were personally involved in the unconstitutional and unlawful conduct at issue.

843.    In addition, prior to the assaults upon the Plaintiffs as described above, Defendant Mears knew about the excessive force routinely employed by the Defendant correctional officers. Yet despite knowing the details and in many cases having access to videotaped recordings of these assaults, Defendant Mears failed to supervise and take effective disciplinary actions against the Correctional Officer Defendants.

844.    Defendant Mears' failure to supervise the Correctional Officer Defendants involved in the attacks described above was a proximate cause of the same Correctional Officer Defendants' subsequent assaults.

845.    Reasonable discovery likely will also show that Defendants Mears and Beck knew that one or more of the Correctional Officer Defendants had previously used excessive force against an incarcerated person. Their failures to supervise the Correctional Officer Defendants led to the assaults described above.

846.    Reasonable discovery will show that Defendant Mears was well aware that SCI correctional officers routinely and violently assaulted Plaintiffs and other incarcerated persons.

847.    Reasonable discovery will show that Defendant Mears learned of the correctional officers' pattern and practice of the excessive use of force through grievances, videotapes of the assaults, infirmary records and reporting by officials.

848.    Reasonable discovery will show that Defendant Mears failed to halt the pattern and practice of the excessive use of force.

849.    Reasonable discovery will show that Defendant Mears' failures and omissions are the proximate cause of harm to Plaintiffs.

850.    Prior to the assault on Plaintiffs, Defendant Beck knew about the excessive force used by the Correctional Officer Defendants against other Plaintiffs.

851.    Yet despite knowing the details and having access to a videotaped recording of the assault, Defendant Beck failed to take effective disciplinary actions against the Correctional Officer Defendants involved in the assault on Plaintiffs.

852.    Defendant Beck's failure to supervise the Correctional Officer Defendants involved in the attack on Plaintiffs is a proximate cause of the same Correctional Officer Defendants' subsequent assault on other Plaintiffs.

853.    Reasonable discovery will show that Defendant Beck was well aware that SCI correctional officers routinely and violently assaulted Plaintiffs and other incarcerated persons.

854.    Reasonable discovery will show that Defendant Beck learned of the correctional officers' pattern and practice of the excessive use of force through grievances, videotapes of the assaults, infirmary records and reporting by officials.

855.    Reasonable discovery will show that Defendant Beck failed to halt the pattern and practice of the excessive use of force.

856.    Reasonable discovery will show that Defendant Beck's failures and omissions are the proximate cause of harm to Plaintiffs.

### COUNT I - FOURTEENTH AND EIGHTH AMENDMENTS - USE OF EXCESSIVE FORCE

857.    The foregoing allegations are incorporated in full by reference as if fully set forth.

858.    Defendants' use of excessive force against Plaintiffs violates their Fourteenth Amendment and Eighth Amendment rights to be free from cruel and unusual punishment.

859.    By failing to provide appropriate medical treatment following their use of excessive force against the Plaintiffs, Defendants' actions and omissions were deliberately indifferent to Plaintiffs' serious medical needs.

860.    As such, Defendants' failure to provide adequate medical care violated Plaintiffs' Fourteenth and Eighth Amendment rights to be free from cruel and unusual punishment.

### COUNT II - FOURTEENTH AND EIGHTH AMENDMENTS - FAILURE TO SUPERVISE

861.    The foregoing allegations are incorporated in full by reference as if fully set forth.

862.    Defendants Mears and Beck are officials with policymaking authority at SCI and had either actual or constructive knowledge of the propensity and routine of Correctional Officer Defendants to engage in unnecessary, excessive and punitive force against incarcerated persons. By failing or refusing to discipline officers employing excessive force against incarcerated persons, Defendants Mears and Beck were personally involved in the violations of Plaintiffs' Fourteenth and Eighth Amendment rights.

863.    Defendants Mears and Buck, by virtue of their own deliberate indifference to known deficiencies in their policies and procedures, allowed to develop an environment in which there was an unreasonable risk that a constitutional injury would occur, and their deliberate indifference caused or contributed to Plaintiffs' injuries.

864.    Their failures to supervise were a proximate cause of the assault on Plaintiffs.

### COUNT III - FOURTH AMENDMENT - FAILURE TO INTERVENE

865.    The foregoing allegations are incorporated in full by reference as if fully set forth.

866.    Each of the individual Correctional Officer Defendants and the John Doe Defendants had actual knowledge of the violation of Plaintiffs' constitutional rights by the others. Each of the individual Correctional Officer Defendants (including the John Doe Defendants) were present at the scene when Plaintiffs were assaulted and had the opportunity to intervene and protect Plaintiffs' constitutional rights.

the John Doe Defendants) violated Plaintiffs' Fourth Amendment rights.

### COUNT IV - FOURTEENTH AMENDMENT - STATE-CREATED DANGER

868.    Because of Plaintiffs' status as incarcerated persons and Defendants' status as correctional officers and officials, Defendants maintained a level of authority and control over the Plaintiffs.

869.    The harm caused to the Plaintiffs by the Defendants was foreseeable and direct.

870.    The harm caused to the Plaintiffs was intended by the Defendants.

871.    By virtue of their authority and control over the Plaintiffs, Defendants created an opportunity that otherwise would not have existed to cause harm to the Plaintiffs.

872.    Defendants are therefore liable to the Plaintiffs under the Fourteenth Amendment. *See Estate of Smith v. Marasco*, 318 F.3d 497, 506 (3d Cir. 2003).

### COUNT V - ASSAULT AND BATTERY

873.    The foregoing allegations are incorporated in full by reference as if fully set forth.

874.    Each of the Defendants (including the John Doe Defendants) engaged in acts of assault and battery against Plaintiffs. Defendants' assault and battery of Plaintiffs were non-discretionary acts done in bad faith and with gross or wanton negligence.

875.    The Defendants (including the John Doe Defendants) are therefore liable for assault and battery.

### COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

876.    The foregoing allegations are incorporated in full by reference as if fully set forth.

877.    Defendants intentionally inflicted emotional distress on certain Plaintiffs.  Consistent with the Court's Memorandum and Order dated August 17, 2023 (Dkt. Nos. 49 and 50), Plaintiffs Erixson, Campbell, Calloway, Nasier Gibbs, Turner, Hammond, Neki Gibbs, Givens, Michael Klein, Ignudo, Sturgis, Edwards, Kendall Smith, Lewandowski, Zahner, Mayfield, Bautista, Sudler, Moore and Ray allege Defendants (1) engaged in extreme and outrageous conduct (2) with an intent to cause emotional

2d 433, 444 (D. Del. 2006) (quoting *Capano Mgmt. Co. v. Transcon. Ins. Co.*, 78 F.Supp. 2d 320, 327 (D.Del. 1990)).

## COUNT VII - RETALIATION UNDER 42 U.S.C. §1983

878.    The foregoing allegations are incorporated in full by reference as if fully set forth.

879.    The filing of this action seeking redress for the Defendants' unlawful conduct is a constitutionally-protected exercise of free speech under the First Amendment to the Constitution of the United States of America.

880.    Since the filing of this action, Plaintiffs Ray and Calloway have been subjected to various acts of retaliation sufficient to deter a person of ordinary firmness from continuing to participate in the prosecution of this lawsuit.

881.    Defendants' retaliatory conduct was intended to, and does, adversely affect Plaintiffs' right to free speech.

882.    There is a direct causal link between the Defendants' retaliatory conduct and the impairment of Plaintiffs' free speech rights.

883.    Defendants are therefore liable under 42 U.S.C. §1983 for their violation of Plaintiffs' Ray and Calloway's First Amendment free speech rights.

## COUNT VIII - VIOLATION OF PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHTS

884.    The foregoing allegations are incorporated in full by reference as if fully set forth.

885.    The Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States of America prohibits state actors from depriving any person of life, liberty, or property, without due process of law.

886.    By denying Plaintiffs the right to a full and fair administrative hearing to challenge and bring to light Defendants assaults, Defendants have violated Plaintiffs' Due Process rights.

887.    Defendants are therefore liable under 42 U.S.C. §1983 for their violation of Plaintiffs' Fifth and Fourteenth Amendment Due Process rights.

## **PRAYER FOR RELEIF**

**WHEREFORE,** Plaintiffs request that the Court grant the following relief:

A.    Award compensatory damages;

B.    Award punitive damages against all Defendants;

C.    Award attorneys' fees and costs; and

D.    Award any other relief as the Court deems just and proper.

WHITEFORD, TAYLOR & PRESTON, LLC

/s/ *Daniel A. Griffith*
Daniel A. Griffith, Esquire (#4209)
Susan L. Burke (#6973)
600 N. King Street, Suite 300
Wilmington, DE  19801
P:  302-357-3254
F:  302-357-3274
Email:  dgriffith@whitefordlaw.com
Email:  sburke@whitefordlaw.com

ACLU DELAWARE

/s/*Dwayne S. Bensing*
Dwayne S. Bensing (#6754)
100 W. 10th Street, Suite 706
Wilmington, DE  19801
Email:  dbensing@aclu-de.org

Dated:  September 18, 2023

**CERTIFICATE OF SERVICE**

I, Daniel A. Griffith, Esquire hereby certifies that on this 19th day of September, 2023 that a true and correct copy of the *Third Amended Complaint* was served upon all counsel of records via CM/ECF E-filing.

/s/ *Daniel A. Griffith*
Daniel A. Griffith, Esquire (#4209)

*13089528*