# IN THE DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 1:21-cv-01773 GBW-EGT |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| KIRK NEAL, et al., | ) | |
| | ) | **PUBLIC VERSION FILED** |
| Defendants. | ) | **JUNE 13, 2025** |

---

## CONCISE STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
## PLAINTIFF SUDLER'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT DUPERRON

---

*/s/ Daniel A. Griffith*
Daniel A. Griffith, Esq. (ID # 4209)
Whiteford, Taylor & Preston LLC
Courthouse Square
600 North King Street, Suite 300
Wilmington, DE 19801-3700
Telephone: (302) 353-4144
Email: dgriffith@wtplaw.com


*/s/ Dwayne Bensing*
Dwayne Bensing, Esq. (ID #6754)
ACLU Delaware
100 W. 10 Street, Suite 706
Wilmington DE 19801
Telephone: (202) 445-1409
Email: dbensing@aclu-de.org

*Attorneys for Plaintiffs*

Dated: May 30, 2025

*CONCISE STATEMENT OF MATERIAL FACTS THAT ARE NOT IN DISPUTE*

1.      In October 2014, Defendant Duperron joined the Delaware Department of Corrections ("DOC").  Joint Appendix ("J.A.") [   ] (Duperron Tr. 16:8-11).  By the time of the events in the lawsuit, Defendant Duperron worked as a sergeant at Sussex Correctional Institute ("SCI").  J.A. [   ] (Duperron Tr. 16:1-11); J.A. [   ] (Dkt. 69 at ¶ 50.) As a sergeant, he supervises three to four other officers.  J.A. [   ] (Duperron Tr. 20: 19, 22, 24: 21:1.)

2.      Upon joining the DOC in 2014, Defendant Duperron attended six to eight weeks of training in Dover, which included training on the permissible use of force.  J.A. [   ] (Duperron Tr. 29:23-24, 30: 1-9, 15-23; 33:16-18, 21-23.)  Specifically, Defendant Duperron admitted that he was trained to de-escalate situations before using any kind of force.  J.A. [   ] (Duperron Tr. 32:1-9.)  He testified de-escalation included separating individuals from others, sitting with them in chow hall and trying to give them five to ten minutes away from others, and talking to them one-to-one.  J.A. [   ] (Duperron Tr. 32:1-21.)

3.      During his training at the academy, Defendant Duperron learned that spraying pepper spray from ten feet away "swells the eyes."  J.A. [   ] (Duperron Tr. 34:1-11).  He learned that using pepper spray created a fire and health hazard.  J.A. [   ] (Duperron Tr. 35:9-14).  He learned that pepper spray cannot be used on non-moving resistors J.A. [   ] (Duperron Tr. 75:12-16) and cannot be sprayed within 3 feet due to the danger hydraulic needling, a term used to describe when OC spray penetrates the tissue of the skin or eyes.  J.A. [   ] (Duperron Tr. 53: 21-24, 54: 1-19); see also J.A. [   ] (DOC_SCI_0041931).  Duperron also admitted spray cannot be used as a retaliatory or disciplinary measure.  J.A. [   ] (Duperron Tr. 65: 5-15.)

4.      Defendant Duperron admitted that he receives eight hours of additional training per year exclusively about the use of force.  J.A. [   ] (Duperron Tr. 36:11-24 (describing

1

"refresher course" on use of force).   He admitted that he understood from the refresher training that the minimum distance he had to be from an inmate when he used Sabre Red pepper spray was three feet.  J.A. [   ] (Duperron Tr. 53: 21-24, 54:1-19, DOC_SCI_0041931).  Duperron testified that he understood uses of OC/chemical agents could not be used against inmates who were not following directives but were not moving -- "non-moving resistors" in DOC parlance. J.A. [   ] (Duperron Tr. 75:12-13, 16.)

5.      Defendant Duperron admitted he has used pepper spray on multiple inmates, who tried to protect themselves by covering their faces or "abruptly" turning away from the spray. J.A. [   ] (Duperron Tr. 39:13-14, 42:10-15.)

6.      Defendant Duperron admitted that he sprayed Sudler.  J.A. [   ] (Dkt. 69 at ¶ 725); J.A. [   ] (Duperron Tr. 82:5-24). Duperron admitted that he sprayed Sudler without first asking him to cuff up or trying to de-escalate the situation in any way.  J.A. [   ] (Duperron. Tr. 83:13-20, 85:3-24, 86:1-3, 8-14.)

7.      Although Defendant Duperron claimed he did so for his own safety because "I do not know if Sudler had a shank or even who was behind the shower curtain," he admitted that after he pulled back the shower curtain and saw Sudler showering in his boxers, he stood and stared at Sudler (who was under the water) for two seconds without saying a word before spraying him in the face.  J.A. [   ] (Duperron Tr. 85:3-23).

8.      As a result of the incident, Sudler was transferred to the CRU on December 4, 2021 and remained there until December 7, 2021.  J.A. [   ] (Answer, Dkt. 69 at ¶ 733). Sudler was sanctioned with the loss of all privileges including phone privileges.  J.A. [   ] (Answer, Dkt. 69 at ¶ 746).

9.    Although the DOC failed to investigate Duperron's use of OC spray until after Sudler filed a lawsuit, Internal Affairs investigator Huttie conducted a post-filing investigation and admitted under oath during his deposition that Duperron used excessive force against Sudler:

Q. Is this another situation where Sudler was a non-moving resister?

A. Yes, sir.

Q. And is this another situation where the policy says it is excessive force to pepper spray a non-moving resister?

A. Yes.

J.A. [   ] ( Huttie Tr. 234: 6-12.)

10.  Plaintiff Campell also alleged in the Third Amended Complaint, D.I. 60, D.I. 60 ¶¶ 50, 211-218. that Defendant Duperron used excessive force against him.

/s/Daniel A. Griffith
Daniel A. Griffith, Esq. (ID # 4209)
Whiteford, Taylor & Preston LLC
Courthouse Square
600 North King Street, Suite 300
Wilmington, DE 19801-3700
Telephone: (302) 353-4144
Email: dgriffith@wtplaw.com

/s/ Dwayne Bensing
Dwayne Bensing, Esq. (ID #6754)
ACLU Delaware
100 W. 10 Street, Suite 706
Wilmington DE 19801
Telephone: (202) 445-1409
Email: dbensing@aclu-de.org

*Attorneys for Plaintiffs*

Dated: May 30, 2025