**IN THE DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 1:21-cv-01773 GBW-EGT |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| KIRK NEAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**OMNIBUS MOTION FOR SUMMARY JUDGMENT**

**YOU ARE IN THE POSSESSION OF A CONFIDENTIAL FILING FROM THE**
**DISTRICT COURT OF THE STATE OF DELAWARE.**

**If you are not authorized to view this document under Rule 5.1 or by Court Order, read no**
**further than this page and contact the following person:**

**Daniel A. Griffith, Esq. (#4209)**
**Whiteford Taylor & Preston LLC**
**600 North King Street, Suite 300**
**Wilmington, DE 19801**
**(302) 357-3254**

A public version of this document will be filed on or before July 14, 2025.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

**IN THE DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 1:21-cv-01773 GBW-EGT |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| KIRK NEAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**OMNIBUS MOTION FOR SUMMARY JUDGMENT**

*/s/ Daniel A. Griffith*
Daniel A. Griffith, Esq. (ID # 4209)
Whiteford, Taylor & Preston LLC
Courthouse Square
600 North King Street, Suite 300
Wilmington, DE 19801-3700
Telephone: (302) 353-4144
Email: dgriffith@wtplaw.com

and

Dwayne Bensing, Esq. (ID #6754)
ACLU Delaware
100 W. 10 Street, Suite 706
Wilmington DE 19801
Telephone: (202) 445-1409
Email: dbensing@aclu-de.org

*Attorneys for Plaintiffs*

Dated: July 7, 2025

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Parker*,
  363 F.3d 229 (3d Cir. 2004)........................................................................................62

*Ambromovage v. United Mine Workers of Am.*,
  726 F.2d 972 (3d Cir. 1984).......................................................................................73

*Ambrose v. Delaware State University*,
  2021 WL 3568373 (D. Del. Aug. 12, 2021) ...............................................................68

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...............................................................3, 44, 45, 46, 67, 74

*Antrican v. Odom*,
  290 F.3d 178 (4th Cir. 2002) .....................................................................................71

*Aruanno v. Maurice*,
  790 Fed.Appx. 431 (3d Cir. October 30, 2019).......................................................48

*Barefoot Architecture, Inc. v. Bunge*,
  632 F.3d 822 (3d Cir. 2011)........................................................................................47

*Barkes v. First Correctional Medical, Inc.*,
  766 F.3d 307 (3d Cir. 2014)........................................................3, 5, 55, 59, 61

*Barnes v. Felix*,
  2025 WL 1401083 (May 15, 2025) ...............................................4, 44, 46, 53, 74

*Beers-Capitol v. Whetzel*,
  256 F.3d 120 (3d Cir. 2001)................................................................................5, 59

*Bomar v. Braunlich*,
  2021 WL 6498251 (W.D. Pa. Aug. 19, 2021) ...........................................................55

*Burris v. Mahaney.*
  716 F.Supp. 1051 (M.D.Tenn. 1989).........................................................................71

*Carter v. City of Philadelphia*,
  181 F.3d 339 (3d Cir. 1999).......................................................................................59

i

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................52

*Clark v. Coupe*,
  55 F.4th 167 (3d Cir. 2022) ....................................................................................65

*Coleman v. Home Depot, Inc.*,
  306 F.3d 1333 (2002).............................................................................................3, 52

*Doe v. Wildey*,
  2012 WL 1408879 (Del. Super. Mar. 29, 2012) ....................................................70

*Earl v. Harris*,
  2022 WL 17475482 (D.Del. Dec. 6, 2022).............................................................67

*Est. of Edward W. Knoster v. Ford Motor Co.*,
  200 F. App'x 106 (3d Cir. 2006).............................................................................4, 52

*Farmer v. Brennan*,
  511 U.S. 825 (1994)................................................................................................5, 59

*Garbacik v. Janson*,
  111 Fed.Appx. 91 (3d Cir. Sept. 29, 2004)............................................................57

*Garvin v. City of Philadelphia*,
  354 F.3d 215 (3d Cir. 2003)....................................................................................62

*Gonzalez v. Sec'y of Dep't of Homeland Sec.*,
  678 F.3d 254 (3d Cir. 2012)..............................................3, 44, 45, 46, 67, 74

*Groh v. Ramirez*,
  540 U.S. 551 (2004)................................................................................................65

*Groten v. California*,
  251 F.3d 844 (9th Cir. 2001) ..................................................................................71

*Growth Horizons, Inc. v. Delaware Cnty., Pa.*,
  983 F.2d 1277 (3d Cir. 1993)..................................................................................73

*Hale v. Elizabeth W. Murphy School, Inc.*
  2014 WL 2119652 (Del. Super. Ct. 2014)..............................................................71

*Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*,
  974 F.2d 391 (3d Cir. 1992).....................................................................................73

ii

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

*Holloway v. Irwin*,
   2024 WL 4980759 (W.D. Pa. Oct. 29, 2024) ..........................................................................55

*Hope v. Pelzer*,
   536 U.S. 730 (2002)..............................................................................................................65

*Hudson v. McMillian*,
   503 U.S. 1 (1992)..................................................................................................................46

*Ingrahm v. Wright*,
   430 U.S. 651 (1977)..............................................................................................................46

*J.L. v. Barnes*,
   33 A.3d 902 (Del. Super. Ct. 2011) .....................................................................................71

*A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*,
   372 F.3d 572 (3d Cir. 2004)..........................................................................................5, 59

*Jacobs v. Cumberland Cnty.*,
   8 F. 4th 187 (3d Cir. 2021) ...................................................................................................49

*Kade v. Workie*,
   238 F. Supp. 3d 625 (D. Del. 2017).....................................................................................69

*Kedra v. Schroeter*,
   876 F.3d 424 (3d Cir. 2017), *cert. denied* 138 S.Ct. 1990 (2018) ................................4, 56, 57

*Kingsley v. Hendrickson*,
   576 U.S. 389 (2015)..........................................................................................................46, 47

*Leger v. Kelly*,
   116 A.2d 429 (Conn. 1952) ..................................................................................................71

*Lilienthal's Tobacco v. United States*,
   97 U.S. 237, 24 L. Ed. 901 (1877).......................................................................................63

*Lombardo v. City of St. Louis, Missouri*,
   594 U.S. 464 (2012)..........................................................................................................44, 47

*Marino v. Indus. Crating Co.*,
   358 F.3d 241 (3d Cir. 2004)...............................................................3, 44, 46, 52, 67, 74

*Moore v. Kulicke & Soffa Indus., Inc.*,
   318 F.3d 561 (3d Cir. 2003)..................................................................................................63

iii

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

*Moore v. Walton*,
   96 F.4th 616 (3d Cir. 2024) ...................................................................................62

*Morrow v. Balaski*,
   719 F.3d 160 (3d Cir. 2013)..............................................................4, 55, 56, 57

*O'Connell v. LeBlock*,
   2000 WL 703712 (Del. Super. Ct. April 19, 2000) ..............................................71

*Patterson v. City of Wildwood*,
   354 Fed.Appx. 695 (3d Cir. 2009)...................................................................47, 74

*Pearson v. Callahan*,
   555 U.S. 223 (2009)...............................................................................................65

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)....................................................................4, 56, 57

*Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron*,
   123 F.3d 111 (3d Cir. 1997)...................................................................................65

*Richardson v. McKnight*,
   521 U.S. 399 (1997)...............................................................................................65

*Rodriquez v. Cahall*,
   2023 WL 569358 (Del. Super. Jan. 27, 2023) ......................................................67

*Rosser v. Donovan*,
   2021 WL 5055837 (3d Cir. November 1, 2021)........................................44, 47, 74

*Sample v. Diecks*,
   885 F.2d 1099 (3d Cir. 1989)..........................................................................5, 59

*Saucier v. Katz*,
   533 U.S. 194 (2001)...............................................................................................65

*Simon v. Heald*,
   359 A.2d 666 (Del. Super. Ct. 1976) ....................................................................71

*Smith v. Mensinger*,
   293 F.3d 641 (3d Cir. 2002)............................................3, 5, 44, 52, 57, 67, 74

*Smith v. Price*,
   610 Fed.Appx. 113 (3d Cir. 2015)...................................................................47, 74

iv

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

*Spada v. Houghton*,
2024 WL 4784382 (3d Cir. November 14, 2024)..................................................47, 74

*Ward v. Taylor*,
2006 WL 839402 (D. Del. Mar. 30, 2006) ...............................................................55

*Wheeler v. City of Philadelphia*,
367 F. Supp.2d 737 (E.D.Pa. 2005) .........................................................................55

*Whitely v. Albers*,
475 U.S. 312 (1986)...................................................................................................46

*Williams v. Bitner*,
455 F.3d 186 (3d Cir. 2006).....................................................................................65

*Williams v. Sec'y Pennsylvania Dep't of Corr.*,
848 F.3d 549 (3d Cir. 2017).....................................................................................65

**Statutes**

Del. Code Ann. tit. 10, § 4001 ...........................................................................70, 71, 72

Delaware Tort Claims Act ..........................................................................................70

DTCA.........................................................................................................................70

Medicaid Act..............................................................................................................71

**Other Authorities**

F.R.C.P. 15(c) .............................................................................................................62

F.R.C.P. 55 (c) (2).......................................................................................................52

F.R.C.P. 56.................................................................................................3, 4, 58, 74

F.R.C.P. 56 (c) (1) and (2) ............................................................................................7

Local Rule 9.4.............................................................................................................73

Rule 12(b)(6)...................................................................................................6, 59, 64

v

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT.................................................................................................... 3

STATEMENT OF REBUTTAL FACTS ................................................................................. 7

ARGUMENT ........................................................................................................................... 44

    I.    PLAINTIFFS' EXCESSIVE FORCE CLAIMS MUST BE RESOLVED BY A JURY TRIAL................................................................................................................... 44

    II.    PLAINTIFFS' STATE-CREATED DANGER CLAIMS SHOULD BE DECIDED BY A JURY. ................................................................................................................. 54

    III.    PLAINTIFFS' FAILURE TO INTERVENE CLAIMS MUST BE RESOLVED BY A JURY TRIAL. ...................................................................................................... 57

    IV.    PLAINTIFFS' FAILURE TO SUPERVISE CLAIMS MUST BE RESOLVED BY A JURY TRIAL. ...................................................................................................... 58

    V.    DEFENDANTS' ARGUMENTS ABOUT IMPROPER PARTIES LACK MERIT. ....... 61

    VI.    PLAINTIFFS' STATE LAW CLAIMS MUST BE RESOLVED BY A JURY TRIAL.66

    VII.    WHETHER PLAINTIFFS ARE ENTITLED TO DAMAGES BECAUSE DEFENDANTS ACTED MALICIOUSLY OR RECKLESSLY IS A JURY QUESTION. ..... 73

CONCLUSION........................................................................................................................ 73

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

## NATURE AND STAGE OF THE PROCEEDINGS

*Nature of the case*:  This case arises from the systematic, appalling, and unconstitutional abuse of thirty-four men incarcerated or detained in Sussex Correctional Institution during 2020 and 2021 by correctional officers.  This case arises because multiple correctional officers used excessive and unreasonable force against Plaintiffs; and Warden Mears and Deputy Warden Beck encouraged such abuse by adopting unconstitutional policies and practices, knowingly failed to stop it and promoted rather than disciplined the abusive correctional officers.

*Stage of proceedings*: On July 21, 2022, Plaintiffs filed a Second Amended Complaint, which defendants timely and unsuccessfully moved to dismiss.  On August 17, 2023, the Court (J. Ambro) granted defendants' motion as to the entirety of Count VII based on the law of dignity and partially granted dismissal of certain claims but denied the balance of the Motion.  D.I. 50.

On September 19, 2023, the victims filed a Third Amended Complaint ("TAC") to conform the pleading to the Court orders. D.I. 60.  On December 1, 2023, Defendants – all of whom are represented by the same lawyers – filed an Answer.  D.I. 69.

On October 15, 2024, this Court adopted a scheduling order (via an email adopting the parties' stipulation, D.I. 260) that governed the litigation of the TAC and required fact and expert discovery to be concluded by March 31, 2025 and motions for summary judgment to be filed by May 30, 2025.  The parties timely concluded discovery.

In June 2025, the parties conferred and developed a stipulated schedule that the Court deemed acceptable.  The schedule required oppositions to motions for summary judgment to be filed on July 7, 2025, and replies to be filed on August 1, 2025.  The Joint Appendix was to be filed on August 8, 2025.  D.I. 375.  This Opposition is timely filed.

1

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

On December 16, 2025, the parties are required to file a joint proposed pretrial order.  On December 23, 2025, the Court will hold a pretrial conference beginning at 1pm.

On January 12, 2026, at 9:30 am, a twelve-day trial before a jury is scheduled to begin.  *See* D.I. 190 at 10.

2

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

## SUMMARY OF ARGUMENT

Defendants have filed a voluminous memorandum in support of its motion seeking summary judgment on plaintiffs' claims, which is hereinafter referred to as "Opening Brief." This timely-filed Opposition explains why defendants' motion lack merit in all but a few minor instances.

*First*, in Section I of the Opposition, plaintiffs argue that their excessive force claims must be resolved by a jury. This argument responds to the Opening Brief, Section II, pages 51-71. As explained, controlling and familiar Supreme Court and Third Circuit jurisprudence on F.R.C.P. 56 requires district courts to draw all inferences in plaintiffs' favor and refrain from making credibility determinations or weighing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012); *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); and *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (summary judgment on excessive force claims reversed).

The Opposition, Section I, Subsections A- C walks the court through the evidence adduced during discovery and sets out how video footage and deposition testimony collected in the Plaintiffs' Statement of Rebuttal Facts (hereinafter referred to as "SORF") creates genuine disputes about material facts for each and every plaintiff. With few and immaterial exceptions, the SORF rebuts each and every material allegation made by defendants with contradictory and admissible evidence, primarily contemporaneous videos and sworn deposition testimony from both plaintiffs and defendants themselves.

In Section I, Subsection D, plaintiffs ask the court to exclude from its consideration hearsay evidence submitted by defendants and explains why the incident and disciplinary reports drafted by defendants are unreliable and constitute hearsay. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333,

3

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

1341-42 (2002); *Federal Rules of Evidence Manual* 1688–89 (Stephen A. Saltzburg et al. eds., 7th ed. 1998); *see also Est. of Edward W. Knoster v. Ford Motor Co.*, 200 F. App'x 106, 109 (3d Cir. 2006). The SORF itself identifies each instance when defendants are relying on inadmissible hearsay, which cannot be used to carry defendants' F.R.C.P. 56 burden.

In Section I, Subsection E, plaintiffs engage with the Opening Brief's arguments set forth at 51-71. As explained therein, the Opening Brief constructs a series of straw man arguments that do not withstand scrutiny. They try to separate each use of force into subsidiary parts and then seek judgment on the whole by arguing the subsidiary part does not constitute excessive use of force. Such straw man arguments ignore the Supreme Court's recent admonition that analysis of excessive uses of force by law enforcement officers requires courts to look at the totality of circumstances. *Barnes v. Felix*, 605 U.S. --, 145 S.Ct. 1353, 1359 (2025).

***Second,*** in Section II, plaintiffs respond to the Opening Brief's arguments at 52-54 and 71-72 involving whether or not excessive use of force may be litigated as a state-created danger, and whether or not failure to decontaminate may be considered an excessive use of force. As explained in that section, defendants' arguments rest on a misunderstanding of plaintiffs' trial strategy. Plaintiffs intend to use the voluminous evidence about defendants' violations of policy and repeated failures to decontaminate plaintiffs after pepper spraying to establish liability on the state-created danger cause of action. They are not going to be using evidence to establish excessive uses of force. Section II explains how the decontamination evidence fits within the state-created danger caselaw and prevents any grant of summary judgment on that claim. *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013); *Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017), *cert. denied* 138 S.Ct. 1990 (2018) and *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).

4

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

***Third,*** in Section III, plaintiffs respond to the Opening Brief arguments at 73-77, wherein defendants seek judgment on all "failure to intervene" claims. Section III explains that the videos and deposition testimony set out in the SORF are compelling evidence that defendants repeatedly opted not to intervene in ongoing excessive uses of force in the form of pepper spraying non-threatening plaintiffs, but instead jumped into the fray using their own pepper spray at times as well as physical blows. The Third Circuit decision in *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) makes it clear that such evidence needs to heard by a jury.

***Fourth***, Section IV of the Opposition engages with Opening Brief at 79-80, wherein defendants seek to have the failure to supervise claims dismissed. Section IV explains that defendants' arguments misstate the controlling law, which permits liability based on the personal failures to supervise. *See Farmer v. Brennan*, 511 U.S. 825 (1994) (supervisory prison officials are liable if they actually know about the harms to inmates); *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989); *Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001); *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004); *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 319-320 (3d Cir. 2014). That Section also provides evidence that the Warden and Deputy Warden utterly failed to supervise. Note, this evidence is not included in the SORF because defendants did not include any evidence about Warden and Deputy Warden in the SORF.

***Fifth***, Section V of the Opposition grapples with the panoply of narrow issues raised in the Opening Brief at 46-51. Subsection A addresses a pleading issue related to plaintiff Ray and explains that defendants failed to carry their burden of production and proof on the affirmative statute of limitations defense. Subsection B explains video evidence exists to establish the bona

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

fides of the deceased plaintiff Klein's claims. Subsection C explains that the law of the case doctrine prevents defendants' Rule 12(b)(6) effort to dismiss Beckwith's claim for failure to state a claim. Subsection D explains why defendants are not entitled to qualified immunity. And finally, Subsection E agrees that this court should dismiss retaliation claims raised by Calloway, Erskine and Ray, and should dismiss the unidentified John Does.

*Sixth*, Opposition, Section VI, engages with the Opening Brief's arguments about the state law claims, which are set forth at 82-91. As explained in this Opposition Section, most of those arguments collapse because they are all premised on the false assumption that there has been no excessive use of force. In fact, given the extensive rebuttal evidence introduced by plaintiffs in the SORF, it is clear that the state law claims must be heard by a jury.

*Seventh* and finally, Opposition, Section VII, explains why the Opening Brief's arguments against punitive damages set out at page 91-92 lack merit. Given the genuine disputes about material facts, a jury, not the court, needs to decide whether defendants' behavior evinces the necessary mindset for the award of punitive damages.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

**STATEMENT OF REBUTTAL FACTS**

Plaintiffs' Statement of Rebuttal Facts ("SORF") provides admissible evidence that creates genuine disputes about material facts.  In addition, the SORF identifies those instances when Defendants' averments of fact rely on inadmissible hearsay, which does not suffice as support for a motion for summary judgment, and are disputed with admissible evidence.  *See* F.R.C.P. 56 (c) (1) and (2).

1.  Admitted.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5.  Admitted.

6.  Disputed.   There is no evidence that defendant correctional officers fulfilled their professional responsibilities. *See, e.g.,* defendant Bray testifying that he was disciplined for playing videogames on a state computer.  J.A. [02047-48] (Bray Tr. 61: 19-24, 62: 1).

7.  Admitted that May testified as described but dispute the accuracy of the testimony. Correctional officers are trained (or are supposed to be trained) on Policy 8.30 to accommodate inmate's mental status, including any altered states caused by intoxicants. J.A. [ ] (T. Mears Tr. 61:9-21) (staff need to consider age, gender, health and mental status before using force); J.A. [02965] (Purnell Tr. 15:6-17); J.A. [ ] (Bray Tr. 72:11-19); and J.A. [ 02695] (Mariner Tr. 83:2-19).

8.  Admitted.

7

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

9. Disputed.  Record evidence shows SCI correctional officers are not conversant with the Use of Force policy and do not abide by its terms.  *See, e.g*., defendant Corey Keen testified that it was permissible to use OC spray even when an inmate does not present any threat.  J.A. [02555] (C. Keen 8: 1-22).

10. Disputed.  The use of force description includes the following text that reflects multiple orders must be given prior to the use of force: "An action or indirect physical contact as employed by Department staff to obtain compliance of offenders and other individuals with ***orders from staff*. . .**"  DOC_SCI_0041473 (emphasis added).

11. Admitted that the paragraph properly states policy requirements but disputed that defendants followed the policy. Defendants admitted that the DOC's goal is to *prevent* the use of force, except in circumstances where the use of force is absolutely necessary. *See, e.g*., J.A. [02838] (K. Neal Tr. 33:11 – 34:1) J.A. [03151] (Vernet Tr.. 60:16-20); J.A. [02964] (Purnell Tr.7:10-21); J.A. [02007] (Beck Tr. 33:20-23.)

12. Disputed.   Sworn testimony from an internal affairs investigator, a sergeant and establishes that DOC's Use of Force policy does not permit the use of oleoresin capsicum spray ("OC") against non-moving resistors. J.A. [02499] (Huttie Tr. 81:4-7)(Q. So according to the DOC's use of force policy, CAP spray is probably excessive for a non-moving resister. A. Yes; according to this [DOC's Use of Force policy); J.A. [02308] (Duperron Tr. 75:12-14, 16)(Q. And that means that you can't use OC/chemical agents on a non-moving resister, correct? A. Correct.)   Officer Dunn testified that he agreed with Huttie's conclusion that it is excessive to use OC spray against a non-moving resistor.  J.A. [02255] (Dunn Tr. 34: 7-12, 14).  OC spray has significant physical and psychological effects.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

The physical effects include burning of the skin and throat, coughing, shortness of breath, difficulty breathing (due to inflammation of mucus membranes, increased blood pressure, redness and swelling of the eyes, impairment of vision, and gasping for air.  J.A. [0902-03] (DOC_ 0041435 – 0041436 -OC Spray training slides); J.A. [02966-68] (Purnell Tr. 34:1 – 36:9.). The psychological effects include feelings of suffocation, confusion, disorientation, anxiety, fear, possible difficulty in following commands, panic, tunnel vision, and feelings of helplessness. J.A. [904] (DOC_0041437); J.A. [02968-70] (Purnell Tr. 36:10 – 38:3.)

13. Admitted that a policy exists but disputed that defendants followed the policy.  As evidence that defendants failed to follow the policy, plaintiffs incorporate by reference all the evidence cited in Paragraphs 24- 155, including but not limited to the video evidence capturing egregious violations of the policy by numerous defendants.

14. Admitted that officers are trained but disputed that the training is adequate.  J.A. [02256] (Dunn Tr. 35: 15-24)(Q.  Did you get any training in the degree to which a correctional officer's actions towards an inmate violate that inmate's constitutional rights?  A. As in what.  A. Did you receive any training the eighth amendment or the 14th amendment and what they – what those things say?  A.  No.  We never had classes about the Constitution.")  Also disputed as to the content of the training.  The record evidence shows that officers are trained so that an inmate does not become a non-moving resistor unless he ignores multiple orders.  J.A. [02080] (Amos Calloway Tr. 5:14-21).  The record evidence shows officers are trained to refrain from using OC spray unless they are at least 3 to 6 feet away from the inmate.  This is necessary to avoid OC piecing the skin or eyes ("hydraulic

9

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

needling") and causing long-term issues.  J.A. [02081-82] (Amos Calloway Tr. 19:3-20:10); J.A. [02271-72] (Dunn Tr. 84:11-21, 24, 85:1-10).

15. Admitted as to the existence of training but disputed that the defendants applied or adhered to their training.  As evidence that defendants failed to follow the policy, plaintiffs incorporate by reference all the evidence cited in Paragraphs 24- 155, including but not limited to the video evidence capturing egregious violations of the policy by numerous defendants.

16. Admitted.

17. Disputed.  DOC only began training on report writing after the events at issue in this lawsuit. J.A. [02272] (Dunn Tr. 85: 11-20). Sworn testimony establishes that, contrary to policy, officers involved in use of force sit together and review the videos before completing their incident reports together.  J.A. [03290] (Dunn Tr. 87:18-88:24, 89:1-24, 90: 1-14).

18. Admitted as to policy but disputed that defendants followed the policy.  For example, officer Dunn testified that he called the Watch Commander to ask if "they think it best" to prepare a written report.  J.A. [02266](Dunn Tr. 68: 7-16). He also testified that the use of force reports was primarily "done by the Watch Commander."  J.A. [02267] (Dunn Tr. 69: 17-19).  As another example, defendant K. Neal testified that he failed to include critical information in an incident report.  J.A. [02905] (K. Neal Tr. 311:8-10).  For example, in the assault on Turner, Officer Long investigated and found the incident reports filed by the correctional officers were contradicted by the video evidence. J.A. [00443] (DOC_SCI_0030398).

10

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

19. Admitted but immaterial to this lawsuit.

20. Disputed.  The Significant Incident Review Board did not operate in accord with the policy and did not review any of the incidents at issue in this lawsuit.  J.A. [2138-39] (Clark 66:17-24, 67:1-2).  Correctional officers were unaware of the role of the Board.  J.A. [02049] (Bray 68:11-21).

21. Admitted.

22. Disputed.  I.A. Investigator Clark testified that he would not follow DOC Policy and refer for criminal investigation a use of force that resulted in a serious physical injury because "you can't – you cannot -- you can't separate an injury from the intent to cause it."  J.A. [02140, 02142] (Clark Tr. 68:2-9, 70:5-24).

23. Disputed.  With one exception, I.A. did not investigate the uses of force at issue in this lawsuit until after the lawsuit was filed and did so with the written objections of plaintiffs' counsel.  J.A. [02238; 02242] (Drake Tr.  46: 6-12; 104:8-14). Lawyers for the DOC controlled the process, not I.A.  The head of I.A. at the time, Ronnie E. Drake, testified that "[t]he lawsuit had been sent to the Commissioner and Greg Smith [DOC Counsel] and this is how they wanted to respond to this lawsuit at this time.  J.A. [02238] (Drake Tr. 49: 17-20).  They sent an email as if it came from I.A. Director Drake.  J.A. [02238] (Drake Tr. 49: 5-20).

24. Admitted that Paragraph 678 of the TAC states, "Defendant Brown violently grabbed Plaintiff Bautista by the back of his neck.  Defendant Brown squeezed Plaintiff Bautista's neck tightly with his hand.  Defendant Plaintiff Bautista is off the tier, approximately twenty-five yards, with his hand tightly gripping Plaintiff Bautista's neck.  D.I. 60, ¶ 678.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

25. Disputed.  Bautista testified under oath about the incident, explaining that Dion Brown assaulted him by grabbing and jerking his neck.  J.A. [01996;02000] (Bautista Tr. 25:9-24, 30:1-20). Defendant Brown testified that he lacked any recall of the incident.  J.A. [02052-53; 02054] (Brown 9:23-10:1, 14-23.)  Defendant Brown has been found to use excessive force against other inmates. J.A. [02054]  (Brown Tr. 14:1-24, testifying he rendered an inmate unconscious.)  Defendants assert as undisputed fact that Lt. Burgess reviewed the video footage and found the footage refuted Bautista's claims, but no admissible evidence supports this assertion.  Defendants chose to depose Burgess but instead rely exclusively on inadmissible double hearsay found in DOC_SCI_0001728, a self-serving report prepared to support the litigation after the lawsuit was filed.  Defendants did not produce any of the video purportedly reviewed by Burgess, which necessarily should have been preserved as it was reviewed after an allegation of excessive force.  *See* J.A. [00498-500] (DOC_0033281-283.)

26. Admitted.

27. Disputed.  DOC Policy 8.60 expressly prohibits voyeurism by staff members. J.A. [01690] (DOC_SCI_0061973) ("Voeyeurism:  An invasion of privacy of an offender by staff for reasons unrelated to official duties, such as peering at an offender who is using a toilet in his or her cell to perform bodily functions; requiring an offender to expose his or her buttocks, genitals, or breast, . . .Voyeurism is a form of sexual abuse."  Beckwith testified that Phillips alone among the female guards entered the bathroom shower areas when inmates were toileting and showering. J.A. [02019-20] (Beckwith Tr. 31:1-24, 32:1-12.) He testified to Phillips threatened him that she would move him to a different building

12

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

(which would extend his prison stay) after he filed his PREA complaint. J.A. [02021] (Beckwith Tr. 49:10-18). Phillips admitted that she was trained to respect inmate privacy and knew that she should not gawk or stare at undressed individuals. J.A. [02039-02942] (Phillips Tr. 30:19-24, 31: l3-17, 32:6-19, 23-24, 33:1.)

28. Admitted that Beckwith filed a complaint. Disputed that the policy allows female officers to enter bathrooms without announcing themselves. The policy makes clear that "staff of the opposite gender will announce their presence when entering an offender housing unit," and only intermediate and higher-level supervisors are permitted to conduct unannounced rounds of the type conducted by Phillips. Such unannounced rounds must be documented. J.A. [01691] (DOC_SCI_0061974 at V.D.1.f and g.)

29. Disputed. Plaintiff Beckwith alleges he was "subjected to forced nudity and sexual harassment." D.I. 60, TAC ¶ 526. He asserts a retaliation claim because he was retaliated against and disciplined with a loss of all privileges for filing a grievance about the situation. D.I. 60, TAC ¶¶ 534-544.

30. Disputed. Plaintiff Bennett testified under oath Corey Keen pushed him and called him a faker in front of witnesses. J.A. [02026-27] (Bennett Tr. 38:7-24, 39:1-23). There is no contrary testimony, because Defendant Keen testified, he did not recall Bennett and did not recall the incident. J.A. [02557-58] (Keen Tr. 72:18-24, 73: 1-3).

31. Bennett's substantive complaint allegations do not refer to Truman Mears; they refer to "correctional guard" and "Defendant Mears." TAC ¶¶ 829-840. Defendants' Answer to those allegations did not assert Bennett made any mistake; instead, they claimed a lack of information sufficient to form a belief as to the truth of the allegation. D.I. 69 at TAC

13

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

¶¶ 829-840.  Contemporaneous video shows correctional officer Mears slapping Mr. Bennett in the head.  J.A. [03195-98] (Video369 7:00-7:16, Video367 7:08 - 7:28, Video373, 1:38-2:00, Video374, 2:00-2:19.  Joseph Mears testified under oath that he formed the view that Mr. Bennett was purposefully falling out of his wheelchair and he struck Mr. Bennett with his hand to the side of his face.  J.A. [02736-37] (J. Mears Tr. 79: 11-14, 18-24, 80:1.)

32.  Defendants have filed a motion to exclude Sinclair's report.  As a result, defendants cannot rely on the Sinclair report as admissible evidence to support their motion for summary judgment.[1]

33.  Disputed.  Plaintiff Bullock was incarcerated for five days at SCI during the summer of 2020. J.A. [02071] (Bullock Tr. 13:13-20.) DOC_SCI0052394 constitutes inadmissible hearsay.  He testified that during his intake process, he asked the guards two questions as a result of his nervousness and "ideological rebellion against systemic problems":  (1) why were their tattoos covered? and (2) were they confederates or racist pigs?  J.A. [02073-74] (Bullock Tr. 61:1-24, 62:1-5.)

34. Disputed.  When asked if the officers had responded to these questions, Mr. Bullock testified, "I know I was assaulted almost immediately after that.  Like, I'd kind of, like, broken that rule of kind of questioning them." J.A. [02074] (Bullock Tr. 62:6-11); see also J.A. [02075] (Bullock Tr. 66: 3-7).  Contemporaneous video shows that Mr. Bullock was not posing any threat to the officers when they sprayed him with pepper spray and violently threw him onto the ground and jumped on top of him. J.A. [03201] (Video006, 6:00-7:30).

---

[1] Based on his review of the contemporaneous video, Plaintiffs' expert Steven Sinclair opined as follows:  "It is my opinion, Sgt. Mears acted unprofessionally and used unnecessary force on Mr. Bennett. J.A. [01845] (Sinclair Report at p. 33)

14

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

Mr. Bullock described the effects of the pepper spray: "I was blind. I head searing pain throughout my eyes and nasal passages, and breathing became extremely difficult, and it felt like, you know, my whole esophagus, mouth, face, was on fire." J.A. [02076-77] (Bullock Tr. 69:21-24, 70:1-4). These effects did not dissipate for two or three weeks. J.A. [02077] (Bullock Tr. 70:5-14).

35. Disputed.  Contemporaneous video shows a restrained Bullock covered in OC spray being forcibly thrown onto the floor of a holding cell. J.A. [03200] (Video004, 1:30-2:05).

36. Disputed.  DOC_SCI_0052440 constitutes inadmissible hearsay.  Mathis admitted Calloway's feet were visible.  J.A. [02699] (Mathis Tr. 46:20-22).

37. Disputed.  DOC_SCI_0052440 constitutes inadmissible hearsay.  Mathis admitted that Calloway removed the sheet after she stood at the podium and gave a verbal order to do so.  J.A. [02700] (Mathis Tr. 47:4-12).

38. Disputed.  DOC_SCI_0052440 constitutes inadmissible hearsay.  Mathis admitted that she deployed OC spray in Calloway's face despite the fact that he was not moving.  J.A. [02704] (Mathis Tr. 51:2-21). She admitted she used OC spray without asking him to turn around and be cuffed. J.A. [02708] (Mathis Tr. 55:10-12). She did not warn him that he would be sprayed if he failed to comply with her order.  J.A. [02708] (Mathis Tr. 55:13-18).

39. Disputed.  DOC_SCI_0052440 and DOC_SCI_0030772 constitute inadmissible hearsay. Defendants cited Pusey's testimony as evidence that he escorted Calloway and Calloway hit his head, but the citations do not support the averments.

40. Disputed in part; admitted in part.  There is no cited evidence in the paragraph that the sheet was confiscated by Duperron, although that is what occurred.  The TAC paragraph

15

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

referenced relates to Calloway, not Campbell.  Admitted that Campbell had a sheet hanging from his window because "I had washed it and it was the only place I could dry it."  J.A. [02105] (Campbell Tr. 47:21-24).  Campbell viewed Duperron as being racist because another inmate had his sheet returned to him.  J.A. [02108] (Campbell Tr.50:9-16).  Campbell told Duperron that "I felt as though he was being racist and I asked him for a grievance and a clothing request form."  J.A. [02109] (Campbell Tr. 51: 17-24).

41. Disputed.  DOC_SCI_0052449 constitutes inadmissible hearsay evidence.  As admitted by K. Neal, he injected himself into the situation regarding Campbell's confiscated sheet, refused Campbell's request to involve a lieutenant to resolve the situation, and instead conducts a shakedown of Campbell's bunk.  J.A. [02900-05] (K. Neal Tr. 306: l3-24, 307: 1-24; 308:1-18, 21-24, 309: 1-24, 310:1-24, 311:1-16). K. Neal failed to include that information in his incident report.  J.A. [02905] (K. Neal 311:8-10).  Campbell complied with K. Neal's request to open his locker box.  J.A. [02111] (Campbell Tr. 53:6-13).  After K. Neal turned his back and went away, Campbell locked it back up and started to walk into the chow hall.  J.A. [02111] (Campbell Tr. 53:10-17).

42. Disputed.  DOC_SCI_0052449 constitutes inadmissible hearsay evidence.  At this point, K. Neal called Campbell back and insisted he open the locker box again. J.A. [02111] (Campbell Tr. 53: 14-17).  When Campbell objected to repeating the opening, K. Neal became aggressive, which prompted Campbell to ask for a lieutenant as he was moving to open the combination lock.  J.A. [02111] (Campbell Tr. 53: 18-23, 56:3-23). Angered by the oversight request, K. Neal sprayed pepper spray directly into Campbell's face.  J.A. [02111] (Campbell Tr. 53:18-23).  Contemporaneous video captured the events and show K.

16

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

Neal's excessive use of force, including throwing Campbell to the ground after spraying him in the face from less than three feet away and repeatedly striking him in the head. J.A. [03203-04] (Video020, 0:35-2:20, Video019, 0:40-2:18).

43. Admitted but disputed any force would have been necessary if Duperron had abided by the Use of Force policy.

44. Admitted in part; denied in part.  DOC_SCI_0052449 constitutes inadmissible hearsay evidence.  Steele and Drummond did not simply "escort" Campbell; they threw Campbell to the floor of a holding cell covered with pepper spray.  J.A. [03205] (Video026, 0:00-:20)

45. Disputed.  DOC_SCI_0052544 constitutes inadmissible hearsay evidence. The video shows Vernet pulling Cline out of the line to recreational time.  J.A.[03208] (Video 038: 2:35-3:00).  Cline testified that on the day of the assault, he had lost his recreation privileges because he wanted to get some cleaning supplies because his cellmate was throwing up all over his mattress.  He then asked to speak to Medical, and defendants Vernet and Purdy assaulted him, including using OC spray.  J.A. [02199-02203] (Cline Tr. 61: 60:24-61:24, 62:1-22, 63:3-24, 64:1-6.)  Cline was not trying to sneak into recreation.  J.A. [02205-02206] (Cline Tr. 67: 20-24, 68: 1-2, 5-10.)

46. Disputed.  DOC_SCI_0052544 constitutes inadmissible hearsay evidence.  The video evidence shows defendant Vernet throwing Cline to the floor without justification.  J.A. [03209] (Video039: 2:40-3:50).

47. Disputed.  DOC_SCI_0052544 constitutes inadmissible hearsay evidence.  The video evidence shows defendants Purdy and Lindale joining in Vernet's assault on Cline.  One of them sprays OC in Cline's face.  Vernet then takes out his OC and also sprays Cline

17

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

directly in this face.  Vernet continues to push Cline's head into the floor.  J.A. [03209] (Video039: 2:40-3:50).

48. Disputed as lacking full context.  Cline testified that on the day of the assault, he had lost his recreation privileges because he wanted to get some cleaning supplies because his cellmate was throwing up all over his mattress.  He then asked to speak to Medical, and defendants Vernet and Purdy assaulted him, including using OC spray. J.A. [02200-03] (Cline Tr. 61:60:24, 61:1-24, 62:1-22, 63:3-24, 64:1-6.)  Cline was not trying to sneak into recreation.  J.A. [02205-06] (Cline Tr. 67: 20-24, 68: 1-2, 5-10.)

49. Disputed.  The video evidence shows Cline trying to walk under his own power, but unable to get traction in his stocking feet.  He loses his footing and falls face-first.  Although he is bleeding from his head, defendants drag him into the holding cell, ignore Cline's bloody head, and leave him there without having been decontaminated and without any medical attention.  J.A. [03207] (Video032: 1:20-1:49).

50. Disputed.  The deposition testimony cited by defendants should not be admitted because during the deposition, Plaintiffs' counsel objected to form yet defendants' counsel did not rephrase the question.  Video evidence clearly establishes that Purdy and Lindale could have intervened to stop Vernet's assault on Cline but instead joined in the assault. (Video039: 2:40-3:50)

51. Disputed in part; admitted in part.  DOC_SCI_0052579 constitutes inadmissible hearsay evidence. Davis was upset because he was detained in prison despite having been released on his own recognizance.  J.A. [02219-20] (Davis Tr. 26: 1-24, 27: 1- 2). K. Neal walked over to Davis and started screaming "get over here, you fucking dickhead. What the

18

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

fuck." J.A. [02220-21] (Davis Tr. 27: 22-24, 28: 1-10). K. Neal became enraged and began to beat Davis when Davis misunderstood K. Neal's question and began to beat him. J.A. [ 02221-24] (Davis Tr. 28:15-24, 29:1-8, 22-24, 30:1-24; 31:1-15). Contemporaneous video corroborates Davis' account, showing K. Neal quickly becoming enraged at Davis, grabbing him by the arm, and pulling him into a camera blind spot. J.A. [03213-14] (Video051, 1:00-2:58, Video050, 1:55-2:55).

52. Disputed. DOC_SCI_0052579 constitutes inadmissible hearsay evidence. K. Neal was not escorting Davis to his cell; he was beating him and using pepper spray. Vernet was not assisting in handcuffing Davis; he was joining K. Neal in beating Davis, and he repeatedly kicked Davis. J.A. [03214] (Video051, 1:00-2:58), J.A. [03213] (Video050, 1:55-2:55); J.A. [02221-23] (Davis Tr. 28:15-24, 29:1-8, 22-24, 30:1-31:15). Davis sustained grievous injuries from the beating. *See* Exhibit A (photographs of Davis).

53. Disputed. DOC_SCI_0052579 constitutes inadmissible hearsay evidence. Contemporaneous video establishes that D. Steele and Carl Thomas threw Davis to the floor in the hallway, put a spit mask over his head despite the fact he was covered in pepper spray and struggling to breath, and then threw him to the floor of a holding cell without removing the pepper spray or the spit mask. J.A. [03212] (Video048, 2:50-3:36), J.A. [03211] (Video 046, 3:02-3:31).

54. Admitted as to TAC allegations; otherwise disputed. DOC_0039370 constitutes inadmissible hearsay.

19

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

55. Disputed. DOC_0039370 constitutes inadmissible hearsay. Durham testified that he became agitated and began shouting when they wanted him to get naked. J.A. [02324] (Durham Tr. 32: 5-10).

56. Disputed. DOC_0039370 constitutes inadmissible hearsay Contemporaneous video contradicts defendants' allegations. Rather than place Durham in a holding cell until he sobered up enough to cooperate with the fingerprinting, four officers use force against him merely because he was backtalking. J.A. [03216] (Video058, 2:55-4:41). See also J.A. [02324-25] (Durham Tr. 32:11-24, 33:1-20).

57. Disputed. DOC_0039370 constitutes inadmissible hearsay. Contemporaneous video contradicts defendants' allegations and shows Durham being thrown – without having been decontaminated – into a holding cell. J.A. [03215] (Video057, 3:00-3:32).

58. Admitted.

59. Disputed. DOC_SCI_0052608 constitutes inadmissible hearsay evidence. Contrary to the allegations, Keen did not testify that Purnell cuffed Edwards because Edwards threatened to kill himself. Keen testified that Edwards told him that he was going to kill himself, but Keen decided not to cuff him at that point because it was a safety hazard. J.A. [02561-62] (Keen Tr. 78:12-79:9). Keen did not see what happened next because he only turned around when he heard a commotion and saw an altercation going on. J.A. [02562] (Keen Tr. 79: 10-15).

60. Disputed. DOC_SCI_0052608 constitutes inadmissible hearsay evidence Edwards testified that he was feeling suicidal and complied with being handcuffed. J.A. [02334-35 ] (Edwards Tr. 91:24-25, 92: 1-2). But then the guard "grabbed my bicep, and in between

20

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

the muscle of my bicep and bone squeezed as hard as he could and told me, this isn't' going to go down like you thought it was." J.A. [02335] (Edwards Tr. 92: 5-8). When Edwards' arm moved instinctively away from the pain, "he screamed, "he's resisting, he's resisting." J.A. [02335] (Edwards Tr. 92: 8-10). At that point, the guards began to pick him up and slam him against the table and then onto the ground, screaming to stop resisting. But Edwards is "not resisting at all, I'm handcuffed behind my back and the only movement I'm making are the movement that they're forcing me to do by tussling me around." J.A. [02335] (Edwards Tr. 92: 10-19). This assault continued with kneeing, kicking and choking, as Edwards begged them to stop and told them he could not breath. J.A. [02335-36] (Edwards Tr. 92: 20-24, 93: 1-18).

61. Disputed. DOC_SCI_0052608 constitutes inadmissible hearsay evidence. Edwards testified that they dragged him and ran his head into a door. J.A. [02336-37] (Edwards Tr. 93:19-24, 94: 1-18.)

62. Disputed. Defendants have filed a motion to exclude Sinclair's report. As a result, defendants cannot rely on the Sinclair report as admissible evidence to support their motion for summary judgment.

63. Disputed. Erixson testified this was not an ordinary shakedown: "Actually, my whole two years and some change in that building we had never been to a shakedown like that." J.A. [02345] (Erixson Tr. 43:18-20); see also J.A. [02345] (Erixson Tr. 13-16).

64. Disputed. K. Neal grabbed Erixson by the shirt and pushed him to the exit. J.A. [03220] (Video067: 00:14) and J.A. [03220] (Video069: 00:13) This force was unnecessary because Erixson was already moving in the right direction. *Id.* Erixson did ***not*** admit that nothing

21

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

happened and that he was not harmed; instead, he testified that K. Neal slapped him five or six times at the very outset of his encounter.  J.A. [02348] (Erixson Tr. 54: 4-16.)

65. Disputed.  The TAC alleges Erixson suffered an injury; namely, emotional distress.  TAC ¶ 877.  Erixson testified that he endured a pattern of abuse from K. Neal causing distress. J.A. [02350] ( Erixson Tr. 56: 6-25, 57:1-5.)

66. Defendants have filed a motion to exclude Sinclair's report.  As a result, defendants cannot rely on the Sinclair report as admissible evidence to support their motion for summary judgment.

67. Disputed.  DOC_SCI_0052638 constitutes inadmissible hearsay.  Erskine testified that he was an "extra" cart pusher and not assigned a specific cart.  He was advised by Officer Gray to go wait and see if there were any extra carts.  He followed that directive, and tried explaining the situation to Officer Williams, who failed to listen and became irate. Erskine returned to the building and explained everything to Officer Gray, who assured him he should not worry about it.  But then Chandler issued him a write up despite the fact he was following Officer Gray's express instructions about waiting on a cart.  J.A. [ 02354-57] (Erskine Tr. 29:22-24, 30:1-24, 31:1-32:5.)  Erskine appealed the write up and was found not guilty.  J.A. [02359] (Erskine Tr. 34: 14-17).

68. Disputed.  Officer Ukie Johnson testified that he knew Erskine was a laundry cart pusher. J.A. [02532] (U. Johnson Tr. 8:4-10). Erskine testified about the retaliation: when he insisted on a hearing to challenge the disciplinary write up, he was subjected to a shakedown and transferred to another building. Eventually, he was found not guilty of the infraction written up by Chandler.  J.A. [02357-60] (Erskine Tr. 32:6-24, 33:1-24, 34:1-35:10). Erskine

22

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

testified that the SCI staff – including Ukie Johnson – targeted inmates who filed grievances and contested write ups.  J.A. [02361] (Erskine Tr. 37: 8-16)

69. Disputed.  The evidence establishes that Officer Johnson verbally and physically abused Erskine when he sought toilet paper.  J.A. [02362-65] (Erskine Tr. 46:2-24, 47:1-24, 48:1-24, 49:1-16.)  Erskine alleges emotional injuries.  J.A. [02366] (Erskine Tr. 56:9-12). U. Johnson claims he cannot remember whether or not the interaction was tense or peaceful.  J.A. [02533] (U. Johnson Tr. 12:12-13, 16-17).

70. Disputed.  The cited TAC paragraph only alleges Nasier Gibbs was processed for intake at SCI on or about January 24, 2021.

71. Disputed.  DOC_SCI_0052648 constitutes inadmissible hearsay.  Contemporaneous video contradicts defendants' statement.  The video shows an officer smashing Nasier Gibbs' head into the wall in the sallyport. J.A. [03223] (Video080:1:25-1:50).

72. Disputed.  DOC_SCI_0052648 constitutes inadmissible hearsay.  Officer Calloway sprayed Nasier Gibbs without having provided any verbal warning and then throws him to the ground, where Clarke and Hastings join in the assault.  J.A. [03221] (Video077:8:50-9:45).  The officers threw Nasier Gibbs, who is covered in OC spray, into a holding cell without providing him any means for him to de-contaminate himself.  J.A. [03222] (Video078: 4:45-5:05).

73. Disputed.  DOC_SCI_0039436 constitutes inadmissible hearsay.  Contemporaneous video contradicts defendants' statement.  The video shows Maddox spraying Neki T. Gibbs without any justification.  At the time he was sprayed, he was peacefully putting

23

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

on his shirt.  J.A. [03225] (Video354: 0:30-2:00).  He was subsequently thrown into a holding cell without having been decontaminated.  J.A. [03224] (Video353: 1:35-2:00).

74. Disputed.    Contemporaneous video contradicts defendants' statement. J.A. [ 03225] (Video354: 0:30-2:00).  Also, Defendants deceptively quote only part of Neki T. Gibbs' testimony.  He testified "I grabbed Officer Maddox by the waist because I was going to pick him up and slam him backwards, but I changed my mind.  That's when I stopped resisting and got on the ground. I never was trying to pull him down, I was going to pick him up."  J.A. [02382-83] (N.T. Gibbs Tr. 61: 20-24, 62: 1-3).

75. Disputed.  Neki T. Gibbs testified that you cannot see it on the camera, but Officer Maddox kneed him in the head a few times with his right knee before he was lifted up by the cuffs by the other guards and then kneed him in the eye.  J.A. [02385-86] (N.T. Gibbs Tr. 66:20-24, 67:1-3).

76. Defendants have filed a motion to exclude Sinclair's report.  As a result, defendants cannot rely on the Sinclair report as admissible evidence to support their motion for summary judgment.

77. Admitted except DOC_SCI0052724 constitutes inadmissible hearsay.

78. Disputed.  Harding testified that he knew about the rule and was not the one talking during chow. J.A. [ 02391] (Harding Tr. 37: 2-8, 11-20). Note, there is no discernible penological reason for this onerous "no talking" rule.  J.A. [02971] (Purnell Tr. 61: 17-18) (Q. "Why is there no talking at chow?  A.  It's just always has been.")

79. Disputed.  Harding was not talking during chow.  J.A. [ ] (Harding Tr. 37: 2-8, 11-20). Purnell testified that he did not believe using OC spray was justified because Harding

24

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

complied with orders to stop talking. J.A. [02972-75] (Purnell Tr. 62:1-24, 63:1-2, 4-9, 64:22-65:2) ("if it was me, I would have, again, gave the order again to stop speaking, stop talking during chow multiple times. If he had not, then I would have told him okay, exit the chow hall.")

80. Disputed. DOC_SCI0052724 constitutes inadmissible hearsay. Harding testified that, after having a conversation with Purnell, he was sitting down with his tray when within seconds Correa started shaking his can and sprayed him in the face with OC spray. J.A. [02393-97] (Harding Tr. 47:13-24, 48:1-24, 49:1-50:24, 51:1-11). Correa was only a foot or perhaps at most two feet away from Harding when he sprayed his face. J.A. [ 02398] (Harding Tr. 59: 5-14). Contemporaneous video corroborates Harding's testimony. J.A. [03226] (Video394: 1:00 -2:26). After being sprayed at close range, Harding was thrown to the ground, handcuffed and placed into a holding cell without being decontaminated despite requesting help. J.A. [02399-02400; 02401] (Harding Tr. 75:20-24, 76:1-7, 80:2-9). Contemporaneous video corroborates Harding's testimony. J.A. [ ] (Video401: 1:35-1:52).

81. Disputed. DOC_SCI_0052799 constitutes inadmissible hearsay. Haymond testified that he was seeking cleaning supplies when Officer Vernet grabbed him by the shirt and then threw him into his cell towards the metal bunks. J.A. [02459-66] (Haymond Tr. 56:15-24, 57:1-24, 58:1-24, 59:1, 59:11-60:16, 61:14-62:24, 63:1-8). Haymond hit the end of the metal bunk. J.A. [02467] (Haymond Tr. 79: 6-11). Contemporaneous video corroborates Haymond's testimony and contradicts defendants' averments. J.A. [03230] (Video120: 1:25-1:45, Video115: 4:35-6:15). Although the video lacks audio, it proves Haymond's verbal

25

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

conduct towards Vernet was not aggressive because another officer within earshot sat calmly without going to Vernet's aid and without displaying any other indication of alarm about the tone and tenor of the conversation.

82. Disputed.  DOC_SCI_0052799 constitutes inadmissible hearsay.  Haymond testified he was pushed by Vernet and the video corroborates his testimony.  See citations above, paragraph 81, which are incorporated in full by reference.  Admitted as to the text of the TAC but disputed as to whether the TAC allegation is material in any way to the resolution of the lawsuit.

83. Disputed as to the admissibility of the evidence relied upon to establish Neal was not on duty.  The documents constitute inadmissible hearsay.

84. Disputed.  Haymond was in the bathroom brushing his teeth when Mitchell entered and said "what the fuck are you all in here doing talking about some faggot shit.  Get to your bunks." J.A. [02470] (Haymond Tr. 93: 24, 94:1-6).  Some officers allow inmates who are using the bathroom to be counted where they stand.  J.A. [02468-70] (Haymond Tr. 91:23-24, 92:1-2, 6-24, 93:1-4).  As Haymond asked if he could finish brushing his teeth and began rinsing, Mitchell took out his OC spray and began to spray Haymond as he rinsed out his mouth.  J.A. [02472-77] (Haymond Tr. 95:18-24, 96:1-15, 19-24, 97:1-24, 98:1-11,15-24, 99:1-24, 100:1-2, 10-16).  Contemporaneous video corroborates Haymond's account and contradicts defendants' allegations.  J.A. [ 03231] (Video159: 00:30-1:51). Video also establishes that defendants threw Haymond into a holding cell without any decontamination.  J.A. [03232] (Video163: 0:45-1:07).

26

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

85. Disputed. DOC_SCI_0039819 constitutes inadmissible hearsay. Ignudo testified that he was forced to engage in the misconduct because officers refused to provide toilet paper. J.A. [02515] (Ignudo Tr. 59:9-14).

86. Admitted except that DOC_SCI_0039819 constitutes inadmissible hearsay.

87. Admitted except that DOC_SCI_0039819 constitutes inadmissible hearsay.

88. Disputed except admitted that Long sprayed Ignudo with pepper spray. Ignudo testified that one of the officers grabbed his penis and said, "You want to keep breaking stuff? I'll rip your dick off, and put it in your mouth." J.A. [02524] (Ignudo Tr. 101:16-20). Ignudo testified that the officers were assaulting him in the cell, and trying to keep him in the cell to prevent being recorded by the video cameras. J.A. [02525-26] (Ignudo Tr. 102: 17-24, 103:1-9). Contemporaneous video shows a portion of the events. J.A. [03233] (Video002: 0:00-6:26).

89. Disputed except admitted that C. Steele pepper sprayed Ignudo. The officers were assaulting Ignudo and trying to prevent the assaults from being seen by the video camera. J.A. [02525-26] (Ignudo Tr. 102:17-24, 103:1-9).

90. Defendants have filed a motion to exclude Sinclair's report. As a result, defendants cannot rely on the Sinclair report as admissible evidence to support their motion for summary judgment. If the report is admitted, it supports Ignudo's claim because Sinclair opined that Mr. Ignudo and staff were injured because of the approach taken by the correctional officers.

91. Disputed. DOC_SCI_0052909 constitutes inadmissible hearsay. Laquan Johnson banged his tray against the trash can to get his food off it. J.A. [02536] (L. Johnson Tr. 42: 18-

27

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

21).  Alvin Hudson told Johnson not to bang his tray, and Johnson responded, "you got it, good old boy" and entered his cell.  [JA_02536] (L. Johnson Tr. 42: 14-18).

92. Disputed.  Hudson became aggressive after Johnson's response, and entered his cell and began to assault Johnson.  Officer Purnell joined in the assault.  [JA_02536-37] (L. Johnson Tr. 42:19-24, 43:1-10).  Johnson knew they were assaulting him in the camera's blind spot, and he tried to move to a location where the assault would be recorded. [JA_02537, 02542 ] (L. Johnson Tr. 43: 3-6, 53:2-10).  Hudson never told Johnson to turn around and cuff up; Johnson never refused to cuff up.  [JA_02 ] (L. Johnson Tr. 47:17-24, 48:1-16, 49:4-11).  Contemporaneous video corroborates Johnson's testimony and contradicts defendants' allegations.  [JA_03235] (Video411: 0:35 – 3:11).

93. Disputed.  Hudson and Purnell assaulted Johnson by banging his head, putting knees in his back in his neck, and spraying OC in his ears, nostrils, mouth and eyes.  J.A. [ ] (L. Johnson Tr. 48: 17-23, 51: 19-24, 52: 1-5).  They punched him in the face.  J.A. [ ] (L. Johson Tr. 53:19-24, 54:1).  Johnson did not fight back.  J.A. [ ] (L. Johnson Tr. 48: 24, 49: 1-3).  Contemporaneous video corroborates Johnson's testimony and contradicts defendants' allegations.  [JA_03235] (Video411: 0:35 – 3:11).  Video also shows that defendants threw Johnson into a holding cell while he was covered in OC spray. [JA_03235] (Video 1:28-1:58).  DOC_SCI_0052909 constitutes inadmissible hearsay.

94. Disputed.  DOC_SCI_0052909 constitutes inadmissible hearsay.

95. Disputed.   DOC_SCI_0039746 at p. 14 constitutes inadmissible hearsay and the testimony cited establishes only that inmates are not allowed to be laying down at 9:15 am.  It does not establish that Klein was lying in his bunk at that time.  Further, Spencer

28

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

testified that the rule is not absolute – inmates with medical issues are allowed to be lying down.  [JA_03050] (Spencer Tr. 89: 7-9).

96. Disputed.  DOC_SCI_0039746 at p. 10, 14, constitutes inadmissible hearsay.

97. Disputed.   DOC_SCI_0039746 at p. 14 constitutes inadmissible hearsay.  The cited Spencer testimony establishes only that Spencer has seen the report language; he does not testify to the fact of Mr. Klien's statement, if any.  Contemporaneous video shows Klein posing no threat when Spencer sprayed him with OC in the face and assaulted him. [JA_03237] (Video429: 0:00 – 1:42,).

98. Disputed.    DOC_SCI_0039746 at p. 14, 16 constitutes inadmissible hearsay. Contemporaneous video shows Klein being thrown in the holding cell while writhing in pain from the OC spray and the assault. [JA_03236] (Video426: 0:00 – 1:42).

99.  Disputed.  DOC_SCI_0039746 at p. 2, 10, 14, 16 constitutes inadmissible hearsay.

100.     Disputed.  DOC_SCI_0039746 at p. 16 constitutes inadmissible hearsay.

101.     Disputed.    DOC_SCI_0039746 at p. 16 constitutes inadmissible hearsay. Contemporaneous video shows Klein posing no threat when Chandler sprayed him with OC in the face and assaulted him. [JA_03238] (Video430: 0:35-3:00).

102.     Admitted.

103.     Admitted.

104.     Disputed. J. Klein testified that his brother told him "he got beat up while he was in the cell." [JA_02578] (J. Klein Tr. 16: 2-4).  He testified his brother talked to him at the time of the assault and "complained about it." [JA_02579] (J. Klein Tr. 18: 4-6).  His deceased brother told him at the time of the assault that "they handcuffed him and beat him up. .

29

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

.they threw him against the wall." [JA_02579] (J. Klein Tr. 18: 9-15). He "complained about his head and the staple put in his head, that they threw him against the wall." [JA_02579] (J. Klein Tr. 18: 18-22). He told him the impact of the injuries from the assault: "that he always had headaches." [JA_02580] (J. Klein Tr. 19: 1). J. Klein also personally observed a significant change in his brother: "He would have conversations normally before he was incarcerated. Then he got injured and afterwards he would forget things, forget what he was doing, just go off topic in conversations." [JA_02581] (J. Klein Tr. 20: 4-8); see also [JA_02582-83] (J. Klein Tr. 21:8-24, 22:1-9).

105.    Disputed in part. TAC ¶ 610 states, "Plaintiff Lewandowski was in a call with another inmate who had HIV/AIDS and was bleeding and defecating himself." DOC_SCI_0052948 at p. 1 constitutes inadmissible hearsay. In addition to the testimony cited, Lewandowski explained the guards "kind of like use food as, like, a punishment. Say if you're talking at a table, they'll tell you to you dump your tray. If you do anything out of what they want you to do, they'll tell you dump your tray and go lock in." [JA_02634] (Lewandowski Tr. 46: 19-24).

106.    Disputed. DOC_SCI_0052948 at p. 1 constitutes inadmissible hearsay.

107.    Disputed. Purnell testified that he did not know what action Lewandowski took that gave Purnell the impression he was going to assault his cellmate. [JA_02980] (Purnell Tr. 91:4-14). DOC_SCI_0052948 at p. 1 constitutes inadmissible hearsay. Lewandowski testified under oath to the events that led up to Purnell's assault. [JA_02635-02639] (Lewandowski Tr. 47:15-24, 48:1-24, 49:1-24, 50:1-24, 51:1-10). Contemporaneous video corroborates Lewandowski's testimony and contradicts defendants' allegations. [JA_03240]

30

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

(Video186: 0:20 – 1:32).  Video also shows defendants throwing Lewandowski covered with OC spray into a holding cell.  (Video 182: 0:55-1:14).

108.    Disputed.   DOC_SCI_0052948 constitutes inadmissible hearsay.   The cited Lewandowski testimony cited above establishes that Purnell tripped over cellmate Coale's mattress.

109.    Admitted.

110.    Admitted.  In the cited testimony, Lusby explained that inmates were not allowed to remain in the bathroom but had to use the bathroom and come right back out.

111.    Disputed.  Lusby testified that Wright sat inside the gym but forced the inmates to stay outside without shelter from the sun. [JA_02668-69] (Lusby Tr. 61:21-24, 62:1-5).  When Lusby tried to protect himself from the sun by covering his head with his t-shirt, Wright forced him to stop. [JA_02669] (Lusby Tr. 62: 6-20.)  Lusby was not "sunburned" -- he was suffered from sun poisoning to such a degree that it caused his skin to blister, his eyes to swell shut, and dizziness and nausea. [JA_02664] (Lusby Tr. 43: 9-24, 44: 1-24, 45: 1-24, 46: 1-18.)  Wright testified that his only independent recall was sending Lusby for medical help. [JA_03170] (Wright Tr. 15: 3-22).

112.    Disputed as to the Neal testimony because the page cited (357) does not exist.  Disputed as to the statement that Neal and the other officers bringing Maddux down from the vent.  DOC_SCI_0053028 at p. 52 constitutes inadmissible hearsay. [JA_01314]

113.    Disputed as to suggestion that the Maddux testimony is internally inconsistent.  As the deposition testimony makes clear, Maddux saw K. Neal use the OC spray and also

31

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

drifted in and out of consciousness due to the brutality of force used against him. [JA_02685] (Maddux Tr. 30:9 -15), [JA_02686] (Maddux Tr. 31:1-22.)

114.    Admitted that DOC policy requires officers to file Use of Force reports but otherwise disputed.    DOC_SCI_0053028 at p. 1 constitutes inadmissible hearsay. Maddux testified that he was trying to hang himself as a way to escape the cell with feces after K. Neal refused to remove the feces. [JA_02678-79] (Maddux Tr. 23:14-23, 24:10- -24; 25:1-11). Officers sprayed OC through the door and then assaulted Maddux. [JA_02681 -84] (Maddux Tr. 26: 15-24, 27: 1-24, 28: 1-29:17).  Maddux was conscious the officers sprayed and tackled him. [JA_02685] (Maddux Tr. 30: 9-15).  Maddux testified that he was scared and terrified of K. Neal because Neal had tackled him and screamed at him.  He was also physically and emotionally hurt from the assault with his jaw fractured and his face was burning from the OC spray.  [JA_02686] (Maddux Tr. 31:1-22.)

115.    Admitted but immaterial.

116.    Disputed.  DOC_SCI_0040908 p. 31 constitutes inadmissible hearsay.

117.    Disputed.   DOC_SCI_0040908 p. 31 constitutes inadmissible hearsay. McIvor testified that K. Neal and Purdy initiated an assault by first directing McIvor's cellmate to exit and then began trying to pull down McIvor's pants as they called him a bitch and began to pummel him and spray him with OC spray. [JA_02729-32] (McIvor Tr. 38: 7-24, 39:1-24, 40: 1-24, 41:1-10.)

118.    Disputed.    Contemporaneous video corroborates McIvor's testimony and contradicts defendants' allegations. [JA_03281] (Video458-460 & 444-446: 00:23): [JA_03281]

32

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

(Video458-460 & 444-446: 00:29) DOC_SCI_0040908 p. 31 constitutes inadmissible hearsay.

119.     Disputed.   DOC_SCI_0053176 at p. 16 constitutes inadmissible hearsay.   In response to a question from defense counsel, Montague testified that K. Neal and Maddux assaulted him, including pulling out his dreadlocks.  J.A. [ ] (Montague Tr. 54: 12-24, 55:1-24, 56: 1-24, 57: 1-24, 58: 1-24, 59: 1-24, 60: 1-18)  Contemporaneous video corroborates Montague's testimony and contradicts defendants' allegations. [JA_03269; 03247]( Video 208: 1:15-3:25, Video202: 1:40-3:10.)  In addition, a still clip taken from the video proves that the guards pulled Montague's dreadlock out of his head. (Exhibit 12 to Clark Deposition)

120.     Disputed.  The TAC paragraphs cited by defendants do not state that Schaffer, Drummond and Sessler did not witness the initial use of force, and thus there is no record evidence establishing that allegation.  Contemporaneous video establishes that they threw a bleeding and injured Montague who was covered with OC spray into a holding cell without decontamination and without medical attention.  (Video203: 1:38 – 4:07).

121.     Disputed.  The TAC paragraph states only "[o]n or about August 21, 2021, Plaintiff Morales arrived at SCI as a pretrial detainee.  DOC_SCI_0053229 at p. 7, 31 constitutes inadmissible hearsay.   Contemporaneous video contradicts defendants' allegations because it shows Morales speaking to a group of correctional officers while holding his bedding.  Despite a lack of any movement by Morales, Defendant Kirk Neal suddenly sprayed him in the face with pepper spray from a close distance.  And then Defendant

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

Kirk Neal immediately grabbed him and threw him to the ground. [JA_03271] (Morales Video234: 0:25-1:32).

122.    Disputed.  The video contradicts defendants' statement. [JA_03271] (Morales Video234: 0:25-1:32).  Defendant Kirk Neal's deposition testimony also contradicts defendants' statement.  Defendant Kirk Neal admitted that he sprayed Morales in the face with pepper spray.  [JA_02864] (K. Neal Tr. 216:11-13.)  He admitted in the disciplinary report he filed against Morales that the spraying was prompted by Morales' backtalking, not by any physical conduct. [JA_01363] (DOC_SCI_0053227) (immediately before CO Kirk Neal sprayed him, "Morales stood there" and engaged in backtalk).  Defendant Kirk Neal admitted that he did not take any steps to distance himself from Morales but instead moved towards him before spraying him in the face. [JA_02873] (K. Neal Tr. 225:15-20.) Defendant Kirk Neal admitted he did not give the spray time to work before throwing Morales on the ground. [JA_02877] (K. Neal Tr. 229:3-4, 6-7.)  He testified that he sprayed him at the 41 second mark on the video and grabbed him and threw him to the ground on the 42 second mark on the video. [JA_02877] (K. Neal Tr. 229: 9-15.)  After being assaulted with OC spray and physical force, Morales was thrown into a holding cell without any decontamination. [JA_02871] (Video223: 1:10 – 1:40).

123.    Admitted.

124.    Disputed. DOC_SCI_0053272 at p. 4 constitutes inadmissible hearsay.  In the cited Mitchell testimony, he testified only that Newcomb appeared to be sleeping but was brought into the dayroom "until he said he could procure a [urine] sample."  Newcomb testified that he explained to an officer that he had just gone to the bathroom but was told

34

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

to go to the bathroom anyway. When his name was called, he stood up and Mitchell picked him up, slung him around and slammed him down. [JA_02919] (Newcomb Tr. 46: 6-20.) Contemporaneous video not cited at all by defendants corroborates Newcomb's testimony and contradicts Mitchell's testimony. [JA_03273] (Video383: 5:15-7:04).

125.    Disputed. DOC_SCI_0053272 at p. 4 constitutes inadmissible hearsay.

126.    Disputed. Contemporaneous video corroborates Newcomb's testimony and contradicts Mitchell's testimony. [JA_03273] (Video383: 5:15-7:04). After the assault, defendants threw Newcomb into a holding cell without having decontaminated him from the OC spray. [JA_03272] (Video381: 3:10-5:45)

127.    Disputed. Ray, a mentally ill inmate, sought help from mental health professional and a nurse arrived. [JA_02996-3000; 3003] (Ray Tr. 20-24, 47:1-15, 22-24). He assured the nurse that he was not homicidal or suicidal, and told the nurse that he feared for his safety. [JA_03004](Ray Tr. 48:1-21)

128.    Disputed. During the discussion with the nurse, Ray removed the toilet paper from his window; the nurse could see into his cell and sat talking to him for several minutes. [JA_03006-10] (Ray Tr. 50: 8-9, 12-24, 51:1-24, 52: 1-24, 53:1-24, 54:1-2).

129.    Disputed. DOC_SCI_0053305 at p. 13, 19, 22, 28 is inadmissible hearsay. The recorded evidence shows officers knew Ray needed mental health help. [JA_02035-43] (Blank Tr. 4-12). Ray was trying to clear his window and was visible in his cell when Blank ordered a QRT team to assemble and enter the cell. See paragraph 128 above, and [JA_02044] (Blank 73: 17-21).

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

130.    Disputed.  DOC_SCI_0053305 at p. 13, 19, 22, 28, 34 is inadmissible hearsay. Disputed that the QRT team used the least amount of force necessary.  Contemporaneous video shows that only 22 seconds had passed before the QRT team entered the cell [JA_ 03276] (Video245: 34:54-35:30.)  This is not enough time to take effect.  Even more importantly, the video shows that the QRT team did not need to enter the cell and did not need to use violence against Ray.  The video shows that as the canines are barking and the QRT team of four people gathers outside his cell, Ray raised both his hands above his head facing away from the entry team – a position of surrender.  At that point, the four members of the QRT team did not need to enter the cell but instead could have simply directed Ray out of the cell and handcuffed him. [JA_03275] (Video243: 1:00-2:00).  The QRT team then dragged Ray by his restraints, an impermissibly violent act.  (Video243: 2:21).  Indeed, the force was so great that it prompted Blank to check to see if Ray was still alive.  [JA_02045] (Blank Tr. 75: 5-13).

131.    Disputed.  Ray testified that the SCI prison refused to allow him to be transferred back to SCI – even though that was the only place he could complete the Road to Recovery Program, which could have suspended three years off his sentence. [JA_03014-15] (Ray Tr. 172: 3-24, 173:1-9).  DOC vested Warden Beck and Deputy Warden Truman Mears with oversight over these decisions.  [JA_350] DOC_SCI_ 0000617 at 10.

132.    Disputed.  Paragraph 704 states only "On or about November 2021, Plaintiff Robinson was taking a shower in SCI."  DOC_SCI_0030102 at p. 1 constitutes inadmissible hearsay.

36

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

133.    Disputed.  Robinson testified that he did not know what Code Red meant when he heard it; he had only been at SCI for two weeks and the term was being used in a different fashion than he was familiar with from his time elsewhere. [JA_03023-25] (Robinson Tr. 34:11-17, 33:7-10, 35:20-36:3).  Robinson testified when Hastings came into the shower and told him he had to get out, he identified himself and then complied with Hastings' directive to get out within thirty seconds by shutting off the shower, rinsing the soap out of his eyes and putting on his boxers. [JA_03023-25] (Robinson Tr. 34: 11-24, 35:1-13).  But regardless of his full compliance, Hastings did not wait thirty seconds but instead opened the shower curtain and immediately sprayed Robinson directly in the face. [JA_03024] (Robinson Tr. 35: 8-13).  Hastings admitted that he did not ask Robinson to cuff up before he sprayed Robinson directly in his face. [JA_24033-34] (Hastings Tr. 94: 22-24, 95: 1).

134.    Admitted except that DOC_SCI_0053426 at p. 4 constitutes inadmissible hearsay.

135.    Disputed.    DOC_SCI_0053426 at p. 4 constitutes inadmissible hearsay. Contemporaneous video captures the encounter between Plaintiff Selby and Defendant Mitchell.  [JA_] (Video438:  0:00 – 1:40).  The video shows Plaintiff Selby standing still and using the telephone.  Defendant Mitchell walks up and stands inches away and appears to be speaking for sixteen seconds.  After sixteen seconds, Defendant Mitchell grabs Plaintiff Selby, sprays OC spray in his face and forcibly throws him to the ground. *Id*.  During his deposition, Defendant Mitchell admitted he used pepper spray on Plaintiff Selby when he was only a step away from him.  [JA_02809-10] (Mitchell Tr. 132: 18-21, 133: 18-21.)  Defendant Mitchell admitted that Selby never verbally or physically threatened him or anyone.  [JA_02808] (Mitchell Tr. 123: 5-15.) Defendant Mitchell admitted

37

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

he knew that if the spray is used to close to the target, it may penetrate the tissue of the eyes or skin, which is known as hydraulic needling.  [JA_] (Mitchell Tr. 11: 18-21, 12:1-10.)  He admitted that he knew that the recommended distance to use pepper spray was "three to six feet."  [JA_] (Mitchell Tr. 12:11-19.) Defendant Mitchell admitted that, despite this extensive training, he was investigated for excessive use of force involving pepper spray and required to undergo additional training. [JA_02781-86] (Mitchell Tr. 32:13 -21,33:1-8, 18-21, 34:1-15, 37:8-11.)  Video also establishes that Selby was thrown into a holding cell without being decontaminated. [JA_3235] (Video 441: 1:40-2:03).

136.    Disputed.    DOC_SCI_0053517 at p. 10 constitutes inadmissible hearsay. Defendant Hastings recalled the incident with Plaintiff Solomon and his testimony contradicts defendants' allegations. [JA_02436] (Hastings Tr. 105: 4-23.)  He admitted that he and several other officers were in the room with Solomon sitting on a bench, not moving.  [JA_02439-47] (Hastings Tr. 111 -120.)  He admitted that he sprayed Solomon merely because Solomon refused to move, and he failed to try to use holding or control instruments with Solomon before resorting to force. [JA_02444] (Hast. Tr. 117: 22-24, 118: 1.) Defendant Hastings admitted that Solomon "[was] not being combative" when Hastings decided to spray him.  [JA_02449] (Hastings Tr. 122:15-24, 123:1-5.)  He admitted that Solmon was not doing anything threatening at any point captured by the video.  J.A. [02450-54] (Hastings Tr. 123: 6-124:24, 126:2-4, 13-23, 127:3-9.)  Defendant Hastings admitted that despite the lack of any threat posed by Solomon, he sprayed the OC spray directly in his face at less than three feet. [JA_02454] (Hastings Tr. 127:3-17.)  Even after he was sprayed, Solomon did not present any threat, instead turning around and offering his

38

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

hands to be cuffed. [JA_02455] (128:11-24, 129:1).  Contemporaneous video also contradicts defendants' allegations. [JA_03280] (Video457: 2:50-5:00) and [JA_03279] (Video450: 2:50-5:00 overhead view of same timeframe).  Solomon is sitting on a bench.  Hastings walks up to him and gestures that Solomon should move.  Although there is no audio on the video recordings, it appears that Hastings is speaking to Solomon.  Solomon does not get up and does not create any physical threat to Hastings.  Hastings walks closer to him and sprays him directly in the face.  Solomon raises his shirt over his face to block the spray.

137.    Disputed.  In the TAC, Solomon alleges his Constitutional rights were violated by Hastings' misconduct, which constitutes a legally cognizable injury.  Video also shows Solomon being thrown into a holding cell without having been decontaminated. [JA_03281] (Video458: 3:45 – 4:01).

138.    Defendants filed a motion to exclude Sinclair's report.  As a result, defendants cannot rely on the Sinclair report as admissible evidence to support their motion for summary judgment.  If the Sinclair report is admitted, Sinclair stated with respect to Solomon, "In my opinion, this was another instance of using force on a non-moving resistor."  [JA_01909] (Sinclair report at ¶ 318.)

139.    Admitted that the TAC alleges the facts.  Disputed with regards to DOC_SCI_0039580 at 5, which constitutes inadmissible hearsay evidence.

140.    Disputed as to Hudson believing Sturgis was going to spit on him. DOC_SCI_0039580 at 5 constitutes inadmissible hearsay evidence and there is no other record evidence to support this allegation.  Admitted that Hudson choked Sturgis for no reason in front of a room full of people. [JA_03075-76] (Sturgis Tr. 106: 14-24, 107: 1-9).

39

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

141.    Admitted.  Sturgis testified that Psarousdakis was shouting stop at Hudson, not at Sturgis, and told Sturgis he was handcuffing him as a way to keep him safe from Hudson because "you know how he is. . ."  [JA_03076-78] (Sturgis Tr. 107: 10-24, 108:1-109:11). Psarousdakis' deposition testimony corroborates that he was helping Sturgis because he filed a use of force report because "I saw an officer [Hudson] push an inmate [Sturgis]. J.A. [02961] (Psaroudakis Tr. 205: 20-22).

142.    Admitted.

143.    Disputed.  Defendant Duperron admitted that he sprayed Sudler.  (Dkt. 69 at ¶ 725); J.A. [02311] (Duperron Tr. 82:5-24).  Duperron admitted that he sprayed Sudler without first asking him to cuff up or trying to de-escalate the situation in any way.  J.A. [ ] (Duperron. Tr. 83:13-20, 85:3-24, 86:1-3, 8-14.)  Although Defendant Duperron claimed he did so for his own safety because "I do not know if Sudler had a shank or even who was behind the shower curtain," he admitted that after he pulled back the shower curtain and saw Sudler showering in his boxers, he stood and stared at Sudler (who was under the water) for two seconds without saying a word before spraying him in the face.  J.A. [02314] (Duperron Tr. 85:3-23).  Contemporaneous video also contradicts defendants' allegations.  J.A. [03282] (Video 305:  0:00-1:18).

144.    Disputed insofar as the allegation relies on DOC_SCI_0053586 at p. 7, 13, which constitutes inadmissible hearsay.  Video shows the events.  J.A. [03282] (Video 305: 0:00-1:18); J.A. [03283] (Video310: 0:50-1:15).

145.    Admitted.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

146.     Disputed.  Contemporaneous video captures the encounter between pretrial detainee Turner and correctional officer Joseph Kraft on that day and establishes the falsity of defendants' testimony.  J.A. (Video331: 0:00 – 0:21); J.A. [03286] (Video332: 0:00 – 1:55).  The video shows detainee Turner calmly handing in paperwork.  Defendant Kraft walked up behind Turner and pepper sprayed him in the face from mere inches away.  As Defendant Kraft continued to spray directly in Turner's face, he twisted Turner around and forcibly threw him to the ground.  *Id*.  *See also* J.A. [03143] (Turner Tr. 18: 18-24, 19:1-24, 20:1-12.)  Kraft admitted during his deposition that he twice sprayed Turner in his face. J.A. [02612] (Kraft Tr. 116:15-24, 117:1-7).  He also admitted he was disciplin ed for using excessive force against Turner.  J.A. [02603] (Kraft Tr. 73:6-8, 14-15). [2]

147.     Disputed.  Paragraph 146 is hereby incorporated in full by reference.  In addition, the DOC has already found defendant Kraft's and Psaroudakis' version of events to be false.  On February 24, 2021, Defendant Kraft electronically filed a disciplinary report alleging Turner refused to lock in, refused to obey an order and engaged in disrespect and active resistance towards staff.  J.A. [0441] (DOC_SCI_0030396). Kraft's disciplinary report described the specifics of the incident in a manner that does not conform to the video evidence.  *Compare* id. to J.A. [03286] (Video 332_01).  On March 1, 2021, Officer Matthew Long held a disciplinary hearing and found Plaintiff Turner not guilty of a disciplinary infraction. (Answer, Dkt. 69 at ¶ 296); J.A. [0443] (DOC_SCI_0030398).  Officer

---

[2] Kraft also admitted he previously had been disciplined for his treatment of a different person. J.A. [ ] (Kraft Tr. 73: 16-24, 74:1-24, 75:1-13).

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

Long expressly held ***"[v]ideo evidence of the incident does not support the officers [sic] report."*** *Id*. (emphasis added).

148.    Disputed based on the evidence cited in paragraphs 146 and 147 above, which are hereby incorporated by reference.

149.    Disputed based on the evidence cited in paragraphs 146 and 147 above, which are hereby incorporated by reference.

150.    Disputed.  DOC_SCI_0053609 at p. 1, 7, 19 constitutes inadmissible hearsay.  or the reasons.  Video establishes that defendants threw Turner into a holding cell without having decontaminated him.  J.A. [03284] (Video325: 1:00 – 1:22).

151.    Disputed regarding McTeer and Reynolds because the allegations rely on DOC_SCI_0053609 at p. 1, 7, 19, which constitutes inadmissible hearsay.  Admitted as to Calvert.  Video captures and establishes the defendants' actions and inactions.  J.A. [03285] (Video331: 0:00 – 0:21); J.A. 03286 ] (Video332: 0:00 – 1:55).

152.    Disputed.  Defendants cite to TAC ¶ 628 for the proposition that Anthony Wise and Tracy Jones Jr. were assigned to the HU4 where Zahner was held awaiting sentencing.  But the TAC alleges only that "on or about May 2021, at approximately six o'clock in the morning, Plaintiff Zahner exited his cell with a food tray to get in line to eat breakfast within Housing Unit 4."  Defendants' Answer denied this allegation, except admitted the incident occurred in May 2021.   (D.I. 69 at ¶ 628.)

153.    Disputed.  The Jones testimony cited in support does not establish that Wise and Jones gave the first call for chow at 5:35 am.

154.    Admitted.

42

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

155.    Disputed.  Zahner testified that the officer told him to go back and get his mask, and did not tell him to lock in.  J.A. [ ] (Zahner Tr. 59: 14-24, 60: 1-2, 6-11, 61: 5-15, 18-19).  Contemporaneous video footage corroborates Zahner's testimony and contradicts defendants' allegations.  J.A. [03288] (Video 343, 00:50-2:25).  The footage shows that Zahner walks over to get his food well before the men from the other cell block appear.  He is picking up a plate when Wise storms over to him, hits the plate out of his hand, pepper sprays him and then throws him to the ground.

156.    Disputed.  The video shows Zahner being dragged, not falling, and being thrown into a holding cell with having been decontaminated.  J.A. [03287] (Video339: 0:50 -1:12).

43

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

**ARGUMENT**

A robust evidentiary record developed by plaintiffs during discovery shows a troubling pattern of repeated brutality by correctional guards at SCI.  Yet defendants ask this Court to accept their assurances that the multiple uses of force against non-threatening inmates were justified.  The court should decline defendants' invitation to commit reversible error.

## I.  PLAINTIFFS' EXCESSIVE FORCE CLAIMS MUST BE RESOLVED BY A JURY TRIAL.

Defendants argued in Section II, pages 51-71 of their Opening Brief, that this Court should grant summary judgment to defendants on plaintiffs' excessive use of force claims.  This Section of the Opposition explains why doing so would be reversible error.  *Barnes v. Felix*, 605 U.S. --, 145 S.Ct. 1353, 1359 (2025); *Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464 (2012); and *Rosser v. Donovan,* No. 20-3278, 2021 WL 5055837 *3 (3d Cir. Nov. 1, 2021).

As explained in **Subsection A**, black-letter law compels denial of defendants' motion for summary judgment because the motion repeatedly and improperly asks this court to make credibility determinations, ignore contradictory evidence, and draw inferences in defendants' favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012); *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); and *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (summary judgment on excessive force claims reversed).

As explained in **Subsection B**, 29 of the plaintiffs rely on video footage, which establishes that the use of force occurred and that it was excessive.  This video footage creates genuine disputes of material fact that preclude the grant of summary judgment.

44

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

As explained in **Subsection C**, the other five plaintiffs have introduced testimonial evidence from themselves and defendants that raise genuine disputes about material facts. This section also includes Jason Bennett, whose first assault was not videotaped, although his second was videotaped.

As explained in **Subsection D**, this court should exclude hearsay from the evidence that is considered.

**Subsection E** rebuts all the various straw man arguments constructed by defendants' Opening Brief at 51-71. Specifically, Subsection E explains that plaintiffs are not relying on verbal abuse, strip searches, permissible use of handcuffs or dragging, standing alone, as grounds for their excessive use of force claims. Nor are plaintiffs relying on excessive force to establish their state-created danger claims. Instead, they are relying on defendants' failure to decontaminate.

**A. Controlling Summary Judgment Jurisprudence Holds That District Courts Cannot Make Credibility Determinations, Ignore Contradictory Evidence and Draw Inferences in the Movants' Favor.**

Summary judgment cannot be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)(quoting *First National Bank of Arizona v. Cities Service Co*., 391 U.S. 253 (1968)). Inferences drawn from evidence alone suffice to prevent a grant of summary judgment: "Summary judgment is ***not permissible*** if there is the "possibility of the existence of certain facts from which it 'would be open to a jury . . . to infer from the circumstances' that there had been a meeting of the minds." *Anderson* at 249, (citing *Adickes v. SH. Kress & Co.*, 398 U.S. 144, 158-59 (1970) (emphasis added)). *See also Gonzalez v. Sec'y of Dep't of Homeland Sec*., 678 F.3d 254, 257 (3d Cir. 2012).

45

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

To assess whether a disputed fact is material, the court must look at the substantive law. *Id.* at 248   The court is not to weigh the evidence but only determine whether there is a genuine issue for trial. *Id.* at 249. The moving party must submit sufficient evidence upon which a jury could return a verdict for that party. *Id*.  If reasonable minds could differ on the importance of the evidence, summary judgment cannot be granted. *Id.* at 250-51.  The standard is the same as the directed verdict standard. *Id.* at 251-52.

Plaintiffs, as the non-moving parties receive the benefit of having all facts viewed in the light most favorable to him, and having all inferences drawn in his favor. *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012).  District courts cannot make credibility determinations in order to decide motions for summary judgment.  Instead, ***all*** evidence of non-moving party is to be believed, and justifiable inferences are to be drawn in his favor. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

Excessive force cases do not lend themselves to summary judgment because resolution requires the weighing of four factors, each of which turns on the specific facts at hand.  That is, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015),  and require courts to consider considering (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by responsible officials and (4) any efforts made to temper the severity of forceful response. *Hudson v. McMillian*, 503 U.S. 1,7 (1992); *see also Whitely v. Albers*, 475 U.S. 312 (1986); *Ingrahm v. Wright*, 430 U.S. 651, 664 (1977).

The Supreme Court recently reaffirmed in the context of a Fourth Amendment case that in *all* excessive use of force cases, courts must look at the totality of circumstances and not put on any "chronological blinders." *Barnes v. Felix*, 605 U.S. --, 145 S.Ct. 1353, 1359 (2025).  And as this

46

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

court considers each factor, it needs to apply an objective standard and construe the facts in favor of plaintiffs. *See, e.g., Rosser v. Donovan,* 2021 WL 5055837 *3 (3d Cir. November 1, 2021) (reversing district court's grant of summary judgment because failed to use the objective standard for each factor and failed to construe that facts in the non-movant's favor.) *See also Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464 (2012), where the Supreme Court issued a *per curiam* decision to reverse a grant of summary judgment in favor of correctional officers when the district and circuit court failed to look at all the facts and circumstances in applying the *Kingsley* factors and instead applied the standard in a mechanical fashion.

The Third Circuit has not hesitated to overturn district court decisions that have improvidently granted summary judgment in excessive use of force cases, including those that have misinterpreted video evidence. *See, e.g., Spada v. Houghton*, 2024 WL 4784382 (3d Cir. November 14, 2024); *Smith v. Price*, 610 Fed.Appx. 113 (3d Cir. 2015) (overturned district court's grant of summary judgment to correctional officers on excessive force claim); *see also Patterson v. City of Wildwood*, 354 Fed.Appx. 695 (3d Cir. 2009) (finding district court improperly weighed evidence in granting police officers' motion for summary judgment on excessive force claims). Any district court grant of summary judgment may be appealed and reviewed *de novo. Barefoot Architecture, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011).

### B. Contemporaneous Video Establishes That Defendants Repeatedly Used OC Spray and Physical Violence Against Non-Threatening Inmates.

This lawsuit has brought to light a troubling pattern of extreme brutality at SCI. Each plaintiff has adduced substantial record evidence (including video) proving defendants' use of force against them was excessive. *See supra,* Statement of Rebuttal Facts ("SORF") ¶¶ 24-156. As plaintiff Ray

47

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

testified during his deposition, SCI is unique within the Delaware prison system for the high level of violence against inmates.  J.A. [ ] (Ray Tr. 40:19-24, 41:1-8).

Admissible evidence – including video evidence -- shows that defendants repeatedly and brutally used excessive force in the absence of any physical threat from plaintiffs.  And they did so without making any effort whatsoever to de-escalate or avoid the use of force.  *See Aruanno v. Maurice*, 790 Fed.Appx. 431, 434 (3d Cir. October 30, 2019) (not selected for publication), explaining that any violent response to back talk may be excessive.  "It is not clear *any* force was necessary here, as it is not clear that Aruanno was making any type of physical threat against Maurice."  *Id*. at 434 (emphasis in the original).

Troubling, defendants failed to apprise the court of the existence of this relevant video footage capturing events at issue with respect to the following plaintiffs: Bennett, Calloway, Edwards, Harding, Ignudo, L. Johnson, Klein (deceased), Lewandowski, Maddux, Montague, Morales, Newcomb, Ray, Robinson, Sudler, Turner and Zahner.

Each of the following plaintiffs has submitted video evidence that raises genuine disputes about whether defendants had any penological justification to use force, whether they used de-escalation techniques prior to using force, and whether they used an excessive amount of force.

1.  Jason Bennett – Second Assault - SORF ¶¶ 30-31.
2. Kyle Bullock - SORF ¶¶ 33-35.
3. Adam Calloway - SORF ¶¶ 36-39.
4. Keith Campbell - SORF ¶¶ 40-44
5. Barry Cline - SORF ¶¶ 45-50.
6. William Davis - SORF ¶¶ 51-53
7. Donbray Durham - SORF ¶¶ 54-57.
8. Richard Edwards - SORF ¶¶ 58-62.
9. Luke Erixson -   SORF ¶¶ 63-66
10. Nasier Gibbs - SORF ¶¶ 70-72.
11.  Neki T. Gibbs - SORF ¶¶ 73-75.
12. Danny Harding - SORF ¶¶ 77-80

48

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

13. Augustine Haymond - SORF ¶¶ 81-84
14. Kevin Ignudo - SORF ¶¶ 85-90
15. Laquan Johnson - SORF ¶¶ 91-94
16. Michael Klein - SORF ¶¶ 95-104
17. Nathan Lewandowski - SORF ¶¶ 105-108
18. Richard Maddux - SORF ¶¶ 112-115
19. Bashan McIvor-Bosman - SORF ¶¶ 116-118
20. Isaac Montague - SORF ¶¶ 119-120
21. Chris Morales - SORF ¶¶ 121-122
22. Timothy Newcomb - SORF ¶¶ 123-126
23. Reuel Ray - SORF ¶¶ 127-131
24. Charles Robinson - SORF ¶¶ 132-133
25. Warren Selby - SORF ¶¶ 134-135
26. Jamal Solomon -SORF ¶¶ 136-138
27. Shamir Sudler - SORF ¶¶ 142-144
28. Charles Turner - SORF ¶¶ 145-151
29. Bradley Zahner - SORF ¶¶ 152-156

The video evidence contradicts defendants' evidence and creates a genuine dispute about numerous facts material to the resolution of the lawsuit. For example, there are disputes about (1) the credibility of defendants' perception of a physical threat from plaintiff, (2) the permissibility of using OC spray without warning and within a dangerous distance, and (3) the necessity for the use of physical throws and blows against an inmate disabled by OC spray. This video footage, standing alone, precludes summary judgment for defendants. *Jacobs v. Cumberland Cnty.*, 8 F. 4th 187, 192 (3d Cir. 2021)("[i[n cases where there is a reliable video depicting the events in question, courts must not adopt a version of the facts that is 'blatantly contradicted' by the video footage.)

### C. Sworn Testimony from Plaintiffs and Defendants Also Establishes a Genuine Dispute of Material Fact.

In those few cases that lack video evidence, deposition testimony establishes genuine disputes over material facts, such as whether the use of force occurred and whether it was justified. These cases are each discussed below.

49

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

### 1.  Patricio Bautista

Although the assault on Bautista was videotaped, the video evidence was destroyed by correctional officer Burgess, who is not a defendant.  Bautista testified that Brown assaulted him by grabbing and jerking his neck.  Brown, a correctional guard who used such excessive force against another inmate that he rendered him unconscious, cannot contradict Bautista because he testified, he lacked any recall of the incident. SORF ¶¶ 24-25

### 2.  Donald R. Beckwith

Beckwith's sworn testimony creates genuine disputes about defendant Phillips' misconduct, which included entering the men's bathroom without announcing herself and threatening to extend Beckwith's stay in retaliation for filing a PREA complaint.  See SORF ¶¶ 26-29.

### 3.  Jason Bennett – First Assault

Although the second assault on Jason Bennett was videotaped, there is no video of the first assault.  On the first assault, Bennett testified under oath that Keen pushed him and called him a faker; Keen disavows any recall of doing so.  SORF ¶¶ 30-31.

### 4.  Justin Erskine

Erskine testified that he was physically and emotionally abused by Ukie Johnson.  Johnson testified that he cannot remember whether the interaction was tense or not.  SORF ¶¶ 67-69.

### 5.  Gerald Lusby

Lusby testified under oath that he was forced to stay out in the sun and that defendant Wright refused his entreaties for help and prevented him from protecting himself.  Lusby was not "sunburned"; he had sun poisoning with blistering skin, swollen eyes, dizziness and nauseousness.

50

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

Wright testified his only independent recall was sending Lusby for medical help.  SORF ¶¶ 109-111.

### 6. George Sturgis

Sturgis testified about being attacked for no reason by defendant Hudson, and Psarousdakis intervened and cuffed him but told him it was to keep him safe from Hudson.  His testimony is corroborated by defendant Psaroudakis who admitted he saw Hudson push Sturgis.  SORF ¶¶ 139-141.

### D. Hearsay Reports Need Not Be Considered.

In contrast to plaintiffs' reliance on video and sworn testimony, defendants rely extensively on inadmissible hearsay in the form of incident and disciplinary reports drafted by the defendants.[3] These reports lack any indicia of reliability.  Deposition testimony proves that correctional officers did not follow the policy on how to write the reports but instead sat around as a group reviewing the video and jointly preparing their reports.  *See* SORF ¶¶ 19-20.  Deposition testimony proves that facts critical to determine whether force was justified were omitted from the reports.  *See* SORF ¶ 19.  At least one of the incident reports was deemed to be a false report by a DOC hearing officer.  *See* SORF ¶ 147.

Such unreliable hearsay need not be considered by this court.  F.R.C.P. 55 (c) (2) requires a court to reduce the evidentiary record considered for a motion for summary judgment to admissible

---

[3] Plaintiffs have identified with specific bates numbers all those instances when defendants used inadmissible hearsay or double hearsay.  *See* SORF ¶¶ 25, 33, 36, 37, 38, 39, 41, 42, 44, 45, 46, 47, 51, 52, 53, 54, 55, 56, 57, 59, 60, 61, 67, 71, 72, 73, 74, 77, 80, 81, 82, 83, 85, 86, 87, 91, 93, 94, 95, 97, 97, 98, 99, 100, 101, 106, 107, 108, 112, 114, 116, 117, 119, 124, 125, 129, 130, 132, 134, 135, 136, 139, 140, 144, 150, 151.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

evidence. And the party moving for summary judgment (here defendants) must carry their burden with admissible evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). As explained by the Third Circuit in *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1341-42 (2002), "[m]ost notably, a report may be untrustworthy "if the report appears to have been made subject to a suspect motivation. For example, if the public official or body who prepared the report has an institutional or political bias, and the final report is consistent with that bias." *Federal Rules of Evidence Manual* 1688–89 (Stephen A. Saltzburg et al. eds., 7th ed. 1998); *see also Est. of Edward W. Knoster v. Ford Motor Co.*, 200 F. App'x 106, 109 (3d Cir. 2006) ("Even though the reports are relevant, they are also hearsay and thus are not admissible unless they fit within an exception to the hearsay rule.") In short, this court need not consider the extensive hearsay and double hearsay relied upon by defendants.

In conclusion, each of the plaintiffs adduced admissible evidence during discovery that creates genuine disputes about the facts material to the resolution of their excessive force claims. These plaintiffs are entitled to have all inferences drawn in their favor at this procedural stage. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). And this court cannot assess credibility and weigh their testimony against testimony from the defendants. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). That role belongs to the jury that will be selected in January 2026.

### E. Defendants Construct Multiple Straw Man Arguments To Overcome This Jurisprudence But They Lack Any Merit.

In light of the overwhelming amount of evidence – including video -- contradicting defendants' claims, defendants lacked a reasoned basis upon which to seek summary judgment on the excessive force claims. Defendants' Opening Brief tries to overcome this reality by parsing through the types of abuse inflicted on plaintiffs and then claiming that various acts – verbal abuse, strip searching,

52

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

handcuffing, dragging – cannot be deemed to constitute excessive force.  *See* Opening Brief at 55-71.  But this organizational structure ignores the reality of the violence used by the guards.  For example, defendant Kraft did not just spray Turner in the face from behind and in close range, he then violently threw him to the ground and beat him.  And afterwards, he filed a false report.  *See* SORF ¶¶ 146-147.  Each incident includes multiple different forms of force and abusive tactics and must be considered as a whole.  Indeed, the Supreme Court recently reaffirmed that courts must look at the totality of circumstances and not put on any "chronological blinders" when analyzing excessive uses of force by law enforcement officials.  *Barnes v. Felix*, 605 U.S. --, 145 S.Ct. 1353, 1359 (2025).

### 1.  Plaintiffs Are Not Relying on Verbal Abuse To Establish Their Excessive Force Claims.

Defendants construct a straw man argument in Section II.A.  Record evidence in this case demonstrates that defendants repeatedly acted with an utter lack of professionalism, swearing and taunting plaintiffs and other inmates.  *See e.g.* SORF ¶ 84 ("what the fuck are you doing in her talking about some faggot shit").  But in no instance is a plaintiff relying exclusively on verbal abuse to prove that a defendant used excessive force.  Even if this Court were to exclude the voluminous evidence regarding defendants' verbal abuse, plaintiffs' claims against defendants other than Beck and Mears would not be impacted at all.  At trial, plaintiffs will adduce ample evidence of the excessive use of force contemporaneous video, and defendants' admissions that the force was used.  The question for the jury will be whether or not the force used was excessive or justified.

Note, evidence of defendants' verbal abuse should go to a jury because it demonstrates the culpability of defendants Beck and Mears in failing to maintain a professional correctional staff, a

53

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

topic which is further addressed below.  But it need not be admitted for plaintiffs to prevail on their excessive use of force claims against defendants.

### 2.  Plaintiffs Are Not Alleging That Strip Searches, Standing Alone, Constitute Excessive Force.

Defendants spill two pages of ink setting up a straw man argument that strip searches are not improper.  Opening Brief II.C.iii at pages 68-69.  Yet in no instance are Plaintiffs relying exclusively on the fact of being strip searched as the grounds for their excessive use of force claims.

### 3.  Plaintiffs are Not Alleging That Use of Handcuffs, Standing Alone, Constitutes Excessive Force.

Defendants construct yet another – albeit thankfully brief – straw man argument that handcuffing does not constitute excessive force.  Opening Brief II.A.C.iv at page 69.  Yet in no instance are Plaintiffs relying exclusively on the fact of being strip searched as the grounds for their excessive use of force claims.

## II.  PLAINTIFFS' STATE-CREATED DANGER CLAIMS SHOULD BE DECIDED BY A JURY.

Defendants' Opening Brief at pages 52-54 and 71-72 reflects a fundamental misunderstanding of plaintiffs' intended use of the voluminous evidence regarding defendants' repeated failures to decontaminate plaintiffs who have been pepper sprayed before throwing them into holding cells. This evidence is not going to be used to establish the excessive use of force claims; it will be used to establish the state-created danger claims.  Even if the Court adopts the premise that this evidence has no bearing on the court's use of force analysis, this body of evidence improper decontamination evidence establishes the *bona fides* of plaintiffs' state-created danger claims.

54

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

Defendants cite to two district court decisions -- *Wheeler v. City of Philadelphia*, 367 F. Supp.2d 737, 746 (E.D.Pa. 2005) and *Ward v. Taylor*, 2006 WL 839402 at *8 (D. Del. Mar. 30, 2006) – for the legal proposition that excessive force claims should be litigated under Section 1983, not under the state-created danger doctrine. This Court need not decide whether or not to adopt that reasoning because plaintiffs' state-created danger claims do not rest on defendants' excessive force but rather rest on defendants' improper decontamination. It cannot be disputed improper decontamination does not constitute excessive use of force as defendants conceded that point in their Opposition at Section II.B at p. 52-53, citing *Banks v. Meck*, 2013 WL 1101135, at *7 (W.D. Pa. Jan. 31, 2013); *Bomar v. Braunlich*, 2021 WL 6498251, at *9 (W.D. Pa. Aug. 19, 2021); and *Holloway v. Irwin*, 2024 WL 4980759, at *6 (W.D. Pa. Oct. 29, 2024).

The Third Circuit set out the four elements needed to establish a state-created danger claims in *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013). **First**, the harm must have been foreseeable and fairly direct. **Second**, the state actor must have acted with a degree of culpability that shocks the conscience. **Third**, there must be a relationship that makes plaintiff a foreseeable victim. **Fourth**, the state actor must have affirmatively used his or her authority in a way that "created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *See Morrow*, 719 F.3d at 177. *See also Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017), *cert. denied* 138 S.Ct. 1990 (2018) and *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).

There is voluminous record evidence that defendants repeatedly ignored the training and policies that governed how they were supposed to decontaminate inmates after using OC spray. Instead, they threw visibly-suffering plaintiffs into holding cells without any effort to decontaminate them. They deprived them of any ability to lessen their suffering by leaving them

55

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

handcuffed and in some cases, hooded.  Defendants violated policy and training by failing to decontaminate plaintiffs after pepper spraying them at close range and instead threw them covered in spray – and at times handcuffed and hooded – into holding cells.  *See* SORF ¶¶ 34 (Bullock), 44 (Campbell), 49 (Cline), 53 (Davis), 57 (Durham), 72 (N. Gibbs), 73 (N.T. Gibbs), 80 (Harding), 84 (Haymond), 93 (L. Johnson), 98 (Klein), 107 (Lewandowski), 120 (Montague), 122 (Morales), 126 (Newcomb), 135 (Selby), 137 (Solomon), 150 (Turner) and 156 (Zahner).

Such egregious misconduct clearly establishes all four elements necessary to maintain a state-created danger claim.  First, the harm was direct and foreseeable, which is why the DOC adopted policies and procedures to require decontamination.  See J.A. [  ] (DOC_0041455) (setting forth detailed instructions about decontaminating sprayed individuals and stating, "**DO NOT LEAVE A SUSPECT SPRAYED UNATTENDED UNTIL <u>COMPLETELY</u> DECONTAMINATED**") (all emphasis in original).Second, defendants' blatant and repeated violations of decontamination policies establish defendants acted with sadistic intent to inflict unnecessary suffering.  A jury clearly would be justified in finding such misconduct shocks the conscience.  Third and fourth, a relationship between plaintiffs-inmates and guards, and the guards abused their authority to create the danger to plaintiffs.

For this reason, this Court should deny defendants' motion for summary judgment.  Defendants who threw plaintiffs covered with pepper spray into holding cells without decontamination need to stand trial and have a jury decide if they created a danger to plaintiffs.  *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013); *Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017), *cert. denied* 138 S.Ct. 1990 (2018) and *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

### III. PLAINTIFFS' FAILURE TO INTERVENE CLAIMS MUST BE RESOLVED BY A JURY TRIAL.

The Third Circuit has made clear that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). And the relative rank of the officers has no bearing on the analysis. *Id*. The Third Circuit reasoned, "The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lens to those who are actually striking the blows. Such silence is an endorsement of the constitutional violation resulting from the illegal use of force. . . The restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs. " *Id.* at 651." And in *Garbacik v. Janson*, 111 Fed.Appx. 91, *94 (3d Cir. Sept. 29, 2004) (not selected for publication), the Third Circuit held that there has been a clearly established duty to intervene since prior to 1997.

Defendants try to evade liability in three ways. First, they argue that defendants involved in the underlying use of force cannot fail to intervene. Opening Brief at 73-74. Although it is accurate that a defendant cannot be held liable for failing to intervene against himself, he certainly can be held liable for joining in an ongoing excessive use of force rather than intervening and putting an end to it. Such misconduct certainly satisfies the elements of the claim. This lawsuit is replete with instances when a defendant was not involved in the initial use of force – namely the use of OC

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

spray – but instead of halting the offending officer from throwing the plaintiff on the ground and beating him, the defendant jumped into the fray and joined in the beating.

Second, defendants argue that none of the force used against plaintiffs was excessive, so no duty was triggered. Opening Brief at 74. This tautological argument fails. As shown in the SORF and discussed above, there are genuine disputes about whether defendants repeatedly and brutally used excessive force.

Third, they argue that defendants did not have an opportunity to respond. Opening Brief at 75-77. But defendants have not carried their Rule 56 burden on this point. The videos and deposition testimony proves (or at least creates a genuine conflict about) defendants joined ongoing assaults rather than intervening in all of the instances involving the use of OC spray. *See* SORF ¶¶ 33-34 (Bullock), 40-44 (Campbell), 45-49 (Cline), 51-53 (Davis), 54-57 (Durham), 70-72 (N. Gibbs), 73-75 (N.T. Gibbs), 77-80 (Harding), 81-84 (Haymond), 91-94 (L. Johnson), 95-104 (Klein), 105-108 (Lewandowski), 119-120 (Montague), 121- 122 (Morales), 123-126 (Newcomb), 134-135 (Selby), 136-138 (Solomon), 145-151 (Turner) and 152-156 (Zahner). For these reasons, this court should deny summary judgment on the failure to intervene claims.

## IV. PLAINTIFFS' FAILURE TO SUPERVISE CLAIMS MUST BE RESOLVED BY A JURY TRIAL.

Defendants argue that Warden Mears and Deputy Warden Beck are entitled to summary judgment because they did not draft the Use of Force Policy and they had to obtain approval of the Bureau Chief before the adoption of any facility-level policy. Opening Brief at 79-80. They seek summary judgment as a matter of law. This argument fails to persuade because it is based on a misstatement of the controlling law, which allows for liability based on failures to act.

58

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

The Supreme Court and Third Circuit jurisprudence on supervisory liability in Section 1983 cases requires plaintiffs to establish that the supervisor failed to employ a supervisory practice or policy, and that this supervisory failure created an unreasonable risk of a constitutional violation. The supervisor must be aware that his failures created an unreasonable risk but remain indifferent to that risk. And the failure must cause constitutional injury. *See Farmer v. Brennan*, 511 U.S. 825 (1994) (supervisory prison officials are liable if they actually know about the harms to inmates); *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989); *Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001); *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004). *See also Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 319-320 (3d Cir. 2014) (reversed a district court's grant of summary judgment on a failure to supervise claim).[4]

Here, plaintiffs seek to hold Warden and Deputy Warden responsible for their personal failure to prevent a pattern of excessive use of force at SCI. Their failures extend far beyond merely failing to adopt appropriate policies. They are liable for encouraging excessive use of force in the following ways: failing to conduct the institutional reviews that they were supposed to oversee; failing to refer excessive uses of force for criminal prosecution; failing to involve Internal Affairs or the State Police, failing to convene a single Significant Incident Review Board to review any of the thirty-four excessive uses of force; failing to discipline correctional officers who repeatedly used excessive force. *See* SORF ¶¶ 1-156.

---

[4] Defendants misread *Carter v. City of Philadelphia*, 181 F.3d 339, 357-58 (3d Cir. 1999), the police brutality case they relied upon. There, the Third Circuit made clear that a failure to supervise claim will survive a Rule 12(b)(6) motion if it alleges a pattern of misconduct and surmising from that pattern that such misconduct reflected inadequate training and supervision.

59

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

The evidence shows at all times, Beck and T. Mears handled disciplinary issues and were apprised in real time of all codes and uses of force. J.A. [ ] (Dunn Tr. 95: 21-24, 96: 1-20) J.A. [ ]; (T. Mears Tr. 47:2 – 48:1; 64:13-23; 86:5-10; 107:20 – 108:8; 110:16 – 113:11); J.A. [  ] (Beck Tr. 13:9-20; 88:19 – 89:4). Yet Mears and Beck did nothing to stop the culture of excessive force against non-threatening inmates.

As but one example of the utter lack of supervision exercised by the Warden and Deputy Warden, they continued to employ defendant Kirk Neal. As established in the SORF with admissible evidence, defendant Kirk Neal used excessive force against plaintiffs. *See* SORF ¶¶ 1-156. By the time of the events in the lawsuit, Warden and Deputy Warden knew that that multiple inmate alleged defendant Kirk Neal had used excessive force against them, and that he had been repeatedly found to have engaged in unprofessional conduct. *See* J.A. [ ] (K. Neal Tr. 62:5-13; 64:5-10; 65:10-20, 67:10-14; 71:11-14, 16"); J.A. [ ] (K. Neal Tr. 86:1-4) ("a pattern of excessive inmate complaints with alleged verbal and physical confrontation.") They knew Neal had been ███████████████████████████████████████████████████████████ (K. Neal Tr. 86:5-7). They knew K. Neal had been investigated on multiple investigations for unprofessional conduct that "raise[d] behavioral concerns." *See* J.A. [ ] (DOC_SCI_52244.) Yet they did nothing to stop defendant K. Neal from using plaintiffs and other inmates as his personal punching bags.

They also adopted an SCI practice in direct contravention of DOC policy -- namely, the Warden made the rule that defendants should not wash off the OC spray before placing inmates in holding cells. J.A. [ ] (Purnell 97: 1-6). Deputy Warden Beck testified that "decontamination is not necessarily required." J.A. [  ] (Beck Tr. 37:10-16.) Mears also said decontamination was not

60

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

necessary. J.A. [   ] (T. Mears Tr. 70:18 – 71:1.) This testimony is directly contradicted by the training slides used to train COs, which expressly require decontamination and state precisely how to decontaminate a sprayed individual. J.A. [   ] (DOC_0041455).

The controlling case law makes clear that such shocking malfeasance is not insulated from jury scrutiny merely because defendants Beck and T. Mears did not draft DOC's policies.  For example, *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 319-320 (3d Cir. 2014), the Third Circuit reversed the district court's grant of summary judgment on a failure to supervise claim.  The Court explained there are two ways that liability may attach to supervisors.  First, they may be liable if "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Id.* at 316,  citations omitted.  Second, they may be liable if they "as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*, citations omitted.  The Third Circuit reversed the district court because it found reasonable jurors could find that DOC's "dilatory manner of supervision" allowed a contractor's provisions of medical services to degrade. *Id.* at 331.  In short, this court should deny defendants effort to avoid having a trial hear the evidence about their repeated and constant failures to supervise SCI correctional officers.

## V.  DEFENDANTS' ARGUMENTS ABOUT IMPROPER PARTIES LACK MERIT.

### A.  Defendants Are All Proper Parties and Are Not Protected by the Statute of Limitations.

Plaintiff Bennett's substantive allegations in his complaint refer to "correctional officer" Mears. TAC ¶¶ 829-840.  Discovery revealed that correctional officer Mears' first name is Joseph.  See *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) (much of the evidence in civil rights cases

61

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

needs to be developed through discovery.)  He deposed about his use of excessive force against Bennett, and has been defended by Saul Ewing, the firm serving as defense counsel for all the correctional officers, the Warden, Deputy Warden and DOC itself.

Defendants argue that a set of claims are barred by the statute of limitations.  See Opening Brief at 48-50 (Bullock claims against Clanton, Manaraze, Mariner, McMahon, Pusey, Richardson, Thomson and Wisniewski; Calloway's claims against Dittman, Pusey, Schafer and Wisniewski, Campbell's claims against Bates, Drummond, D. Steele and Wilson, Edwards' claims against Pusey and Wilson, and Montague's claims against Drummond and Schafer.)

This argument fails.  The claims at issue relate back to the date of the original pleading. F.R.C.P. 15(c). *See Moore v. Walton*, 96 F.4th 616, 623 (3d Cir. 2024) (citing Fed. R. Civ. P. 15(c)(1).  The claims arise from the same nucleus of facts already detailed in the original and amended complaints—namely, incidents of excessive force, failure to intervene, or other constitutional torts arising out of specific DOC practices within a defined time and setting.  The John Doe device was used to toll the statute, and the defendants were named and served after discovery revealed their culpability. *See Garvin v. City of Philadelphia*, 354 F.3d 215, 220–21 (3d Cir. 2003) (relation back appropriate when plaintiff can demonstrate that delay in naming defendant was good faith, not strategic delay).

Defense counsel Saul Ewing asserts that the claims do not relate back because "there is no evidence the SOL Defendants had actual notice of the TAC." Opening Brief at 49.  But defendants, not plaintiffs, bear the burden of proving with admissible evidence the affirmative fact that these officers lacked actual or constructive knowledge that plaintiffs filed complaints against multiple SCI correctional officers.  "Beyond question, the general rule is that the burden of proof in civil

62

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

cases lies on the party who substantially asserts the affirmative of the issue[.]" *Lilienthal's Tobacco v. United States*, 97 U.S. 237, 266, 24 L. Ed. 901 (1877); *see also Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003) (defendant has both the burden of production and the burden of persuasion for the affirmative defense).

Plaintiffs' lawsuit was the subject of media attention, and it seems unlikely that defendants lacked any awareness of them, particularly as these correctional officers are far more than mere "colleagues." As they would have known even before discovery revealed their names to plaintiffs, these defendants were part of the groups of correctional officers whose conduct was challenged in the complaints preceding the TAC.

Thus, in order for defendants to carry their burden on the affirmative statute of limitations defense, they should have deposed defendants about the issue or at least had them swear under penalty of perjury that they lacked any actual knowledge. Indeed, most of these defendants were deposed by plaintiffs' counsel and defense counsel certainly had the opportunity to build an evidentiary record of a lack of notice, and of course subject them to cross-examination on the issue.[5] But defense counsel opted not to do so. Indeed, defense counsel do not even provide a declaration under oath to support the facts about their own conduct that they allege in the Opening Brief at 49-50. Defendants cannot evade culpability for their misconduct merely because Saul Ewing claims the DOC did not timely retain them to represent *all* of the defendants. Defense

---

[5] For example, plaintiffs deposed Manaraze; Mariner; Pusey; Richardson; Thomson; Steele; Drummond; and Wilson. Yet defense counsel failed to ask questions to elicit the evidence needed for this affirmative defense.

63

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

counsel failed to carry their burden, and this court should not dismiss any claims based on the statute of limitations.

### B.  Video Evidence Proves Michael Klein's Claims.

Defendants ask this court to dismiss Michael Klein's claims because he died in prison. Opening Brief at 50-51.  But defendants fail to apprise the court of the fact that there is contemporaneous video.  See Defendants' Statement of Facts, II.S. Facts Regarding Plaintiff Michael Klein, wherein defendants do not cite to the video.  As set forth above, this video clearly establishes what happened to Klein and contradicts defendants' self-serving assertions.  *See* SORF, ¶¶ 95-104.

### C.  Law of the Case Prohibits Defendants' Effort To Take A Second Bite Under Rule 12(b)(6) and Dismiss Beckwith's Claims as a Matter of Law.

The TAC does not assert any PREA claims.  *See* D.I. 60 at SORF ¶¶ 809-844.  That Beckwith filed a PREA complaint about defendant Phillips' egregious voyeurism does not govern the legal analysis.  Rather, the TAC governs.  Defendants tried and failed to have Beckwith's claim dismissed for failing to state a legally cognizable claim under F.R.C.P. 12(b)(6).  D.I. 33.  Under the law of the case doctrine, defendants cannot now try for a second bite at the 12(b)(6) apple by wrongfully misstating the legal grounds for Beckwith's claim.  The law of the case doctrine directs courts to refrain from re-deciding issues that have already been resolved earlier in the litigation. The doctrine applies "as much to the decisions of a coordinate court in the same case as to a court's own decisions."  *Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir. 1997) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).

### D.  Defendants Are Not Entitled To Qualified Immunity.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

Defendants' qualified immunity argument rests on the shaky foundation that all of plaintiffs' claims lack merit and therefore defendants are entitled to immunity.  In fact, plaintiffs are confident that the record evidence will persuade a jury that defendants used excessive force and violated plaintiffs' Constitutional rights.  Government officials are not entitled to invoke qualified immunity if they violate clearly established constitutional rights.  *See generally*, *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009); *Richardson v. McKnight*, 521 U.S. 399, 412 (1997); *Williams v. Sec'y Pennsylvania Dep't of Corr.,* 848 F.3d 549, 557 (3d Cir. 2017); *Clark v. Coupe*, 55 F.4th 167 (3d Cir. 2022).

Officers are not entitled to qualified immunity if prior decisions, constitutional text, or statutes give the defendants "fair warning" that their conduct is prohibited.  *See Groh v. Ramirez*, 540 U.S. 551 (2004) (no reasonable officer could have believed that search warrant failing to comply with Fourth Amendment "particularity requirement" was valid; qualified immunity denied); *Hope v. Pelzer*, 536 U.S. 730, 742 (2002) (no prior cases on these facts are needed to demonstrate that conduct of prison officials violated Eighth Amendment;); *Williams v. Bitner*, 455 F.3d 186 (3d Cir. 2006) (prison officials had fair warning that punishing prisoner kitchen worker for refusing to handle pork was unconstitutional; qualified immunity denied).  As defendants themselves conceded, correctional officers know that they are not allowed to use excessive force against inmates.  *See* defendants' Statement of Facts at ¶¶ 9-12, 14, 19-23, explaining that officers are governed by a policy and are trained about when force is permitted and when it is excessive.  Defendants' immunity argument lacks any merit and does not suffice as reason to grant summary judgment.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

### E.  Plaintiffs Would Have Stipulated To Dismissal of Certain Claims Had They Been Asked To Do So.

As the course of discovery made known to defendants, plaintiffs have not been prosecuting retaliation claims for Calloway, Erskine and Ray.  See Opening Brief at 80-81.  Nor have plaintiffs prosecuting claims against unidentified John Does. Opening Brief at 47-48.

The parties have worked together in the past to eliminate certain claims and certain parties. *See, e.g.*, D.I. 340 (stipulating to the dismissal of dignity and medical claims).  It is unclear why defense counsel failed to ask plaintiffs to stipulate to the dismissal of the retaliation claims or the claims against unidentified John Does during the meet-and-confer because that approach would have saved judicial resources.  In any event, plaintiffs do not object to the court's dismissal of the John Does and the retaliation claims.

## VI.  PLAINTIFFS' STATE LAW CLAIMS MUST BE RESOLVED BY A JURY TRIAL.

Defendants devote nine pages to arguing they are entitled to summary judgment on plaintiffs' state law claims for assault and intentional infliction of emotional distress.  *See* Opening Brief at 82-91.  But the arguments fall apart because they are premised on the false assumption that defendants did not use excessive force.

### A.  Assault and Battery

Defendants cite *Earl v. Harris*, 2022 WL 17475482 at *7 (D.Del. Dec. 6, 2022) for the three elements of an assault: (1) intentional acts, (2) without plaintiffs' consent, and (3) placing plaintiff in fear of imminent harmful or offensive contact.  And they cite *Rodriquez v. Cahall*, 2023 WL 569358 at *4 (Del. Super. Jan. 27, 2023) for the two elements of battery: (1) an intentional act (2) that caused harmful or offensive conduct to plaintiff.

66

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

### 1.   Whether Defendants Used Excessive Force Is a Jury Question.

But after properly articulating the elements, defendants then simply assert that defendants did not use excessive force and thus the assaults were justified.  Defendants cannot declare by fiat that defendants were justified in the force they used.  To obtain summary judgment on the assault and battery claims, they must prove that there are no genuine disputes about materials facts regarding the uses of force.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012); *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); and *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (summary judgment on excessive force claims reversed).

Defendants cannot prove the necessary lack of disputes.  As established through plaintiffs' SORF, there are significant and genuine disputes about material facts.  *See* SORF ¶¶ 24-155.  Take as but one example the disputed facts surrounding plaintiff Zahner: Zahner testified that he was following the officer's order to go get a mask when defendants stormed up to him, hit his plate out of his hand, sprayed him in the face with OC spray and threw him to the ground.  Video corroborates Zahner's account.  *See* SORF ¶¶ 152-155.  As plaintiffs established above, there are disputed facts about each and every use of force at issue in this lawsuit.

### 2.   Whether Plaintiffs Feared Defendants Is a Jury Question.

As noted in the case cited by defendants, evaluating the merits of an assault claim involves an assessment of the "state of mind" of both the defendant and plaintiff.  *Ambrose v. Delaware State University*, 2021 WL 3568373 at *11 (D. Del. Aug. 12, 2021).  Yet defendants again state without basis that plaintiffs have not adduced evidence that they feared imminent or harmful conduct.  In fact, the 25 plaintiffs named by defendants appended video evidence that memorializes forever

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

their fear and apprehension as they are being pepper sprayed and beaten.  *See* SORF ¶¶ 24-156. They also directly testified to same, or an inference can be drawn from their testimony that they were frightened.  SORF ¶¶ 24-156.

Defendants' assertion that they were acting for legitimate penological purposes similarly has been fully disputed with admissible evidence.  *See* SORF ¶¶ 24-156.  To take but one example, the DOC itself found that defendant Kraft's violence against Turner was excessive and not for proper penological purposes.  *See* SORF ¶¶ 145-151.

### 3. Defendants Purnell and Mitchell Were Not Defending Anyone When They Assaulted Plaintiffs.

Citing *Anthony's Club v. Scottsdale Ins. Co.*, 1998 WL 732947, *6 (Del. Super. July 15, 1998), defendants argue that the assault and battery claims by Lewandowski against Purnell must be dismissed because Purnell was protecting Lewandowski's cellmate.  Likewise, they argue Newcomb's assault and battery claims against Mitchell must be dismissed because he was protecting a nurse.  But those facts are disputed.  Plaintiffs have appended deposition testimony from both Lewandowski and Purnell, as well as the video of the assault.  SORF ¶¶ 105-108. Purnell could not identify a single action taken by Lewandowski that gave Purnell the impression Lewandowski was going to assault his cellmate.  SORF ¶ 107.  Similarly, the evidence regarding Mitchell's assault on Newcomb – including both video and deposition testimony -- establishes that Mitchell was not protecting anybody but instead acting unprofessionally and without justification. SORF ¶¶ 123-126.  When the evidence is reviewed with all inferences drawn in favor of Lewandowski and Newcomb, it is clear summary judgment cannot be granted.

### B. Intentional Infliction of Emotional Distress

68

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

### 1.   Whether Defendants Engaged in Outrageous Conduct Is a Jury Question.

Under Delaware law, if reasonable minds may differ, the question of whether the conduct is extreme and outrageous, as required for a claim for intentional infliction of emotional distress, is for the jury. *Kade v. Workie*, 238 F. Supp. 3d 625 (D. Del. 2017). Thus, the question is whether the evidence adduced by Bautista, Calloway, Campbell, Edwards, Erixson, Erskine, N. Gibbs, N.T. Gibbs, Haymond, Ignudo, Klein, Lewandowski, McIvor-Bosman, Ray, Sturgis, Turner and Zahner could cause a reasonable mind to differ and reject defendants' assertion that the violence was not atrocious or intolerable. Note, defendants' suggestion that the court simply ignore plaintiffs' sworn testimony is contrary to the law. But even if one disregards deposition testimony and only looks at the video, a reasonable mind could find defendants' violence to be atrocious and intolerable. In short, it is clear that a jury, not the court, should decide whether or not defendants' conduct was outrageous.

### 2.   Plaintiffs' Expert Report Establishes Causation.

Plaintiffs' expert reports from Quirk and Wills provide the causative link for plaintiffs Campbell, Edwards, Ignudo, Lewandowski, N. Gibbs, N.T. Gibbs, Ray and Sudler. The mere fact that these plaintiffs had prior traumas did not prevent Drs. Quirk and Wills from finding defendants' violence inflicted severe emotional distress.

Plaintiffs do not oppose the dismissal of the emotional distress claims of Bautista, Calloway, Klein and Sturgis. These plaintiffs encountered life circumstances (or in Klein's case, death) that prevented them from being able to meet with experts retained by plaintiffs' counsel.

### 3.   Erixson and Erskine Need Not Show Physical Injury If a Jury Finds Defendants Conduct To Be Outrageous.

69

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

Defendants concede – as they must – that plaintiffs need not show physical injury if defendants engaged in extreme or outrageous conduct. *Doe v. Wildey*, 2012 WL 1408879, at \*4 (Del. Super. Mar. 29, 2012). As explained above, whether defendants' conduct towards Erixson and Erskine constitute outrageous conduct should be a question for the jury. If the jury finds the conduct to be atrocious and intolerable, Erixson and Erskine may prevail regardless of physical injury. But note, Erixson disputes with admissible evidence defendants' claim that he did not allege physical injuries. *See* SORF ¶ 65.

### C.    Defendants Are Not Eligible To Invoke the DTCA.

Defendants claim that they are protected by the Delaware Tort Claims Act ("DTCA"). The DTCA, codified at Title 10, Section 4001, codified existing common law principles of sovereign immunity by creating a limitation on civil liability for damages arising from the actions of public officers or employees "[e]xcept as otherwise provided by the Constitutions of the laws of the United States or of the State of Delaware. . ."  Del. Code Ann. tit. 10, § 4001.

But this limitation on immunity applies if, and only if, three conditions are met: (1) the action required discretion by the public employee; (2) the action was done in good faith and in the belief the public interest would be served; and (3) the conduct at issue "was done without gross or wanton negligence." *Id.* Here, none of these three standards is met. An act is ministerial, not discretionary, if the conduct is directed by mandatory rules or polices. Delaware law draws a distinction between defendants acting pursuant to legal obligations or not. If defendants are acting pursuant to legal obligations to act, they are engaging in ministerial acts or omissions. *See J.L. v. Barnes*, 33 A.3d 902, 914 (Del. Super. Ct. 2011); *Simon v. Heald*, 359 A.2d 666 (Del. Super. Ct. 1976) *O'Connell v. LeBlock*, 2000 WL 703712 (Del. Super. Ct. April 19, 2000); *Hale v. Elizabeth*

70

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

*W. Murphy School, Inc*. 2014 WL 2119652 (Del. Super. Ct. 2014).  Federal courts elsewhere also used this same approach to discern whether acts were ministerial or discretionary.  *See Antrican v. Odom,* 290 F.3d 178, 191 (4th Cir. 2002) (state official's duty to provide dental treatment and screening under the Medicaid Act is ministerial, rather than discretionary); *Burris v. Mahaney.* 716 F.Supp. 1051, 1064 (M.D.Tenn. 1989) (sheriff's duty to garnish wages); *Leger v. Kelly,* 116 A.2d 429, 431-32 (Conn. 1952) (commissioner's duty to register motor vehicles); and *Groten v. California,* 251 F.3d 844, 851 (9th Cir. 2001) (official's duty to provide real estate appraiser with materials to apply for licenses).

First, as defendants themselves concede, they were obligated to adhere to policies governing the appropriate use of force.  See Defendants' Statement of Facts ¶¶ 9-16.

Second, the parties dispute with admissible evidence whether "the action was done in good faith and in the belief the public interest would be served."  Del. Code Ann. tit. 10, § 4001.  That determination requires the resolution of genuine disputes of material facts, which resolution turns at least in part into an assessment of credibility.

Third, the parties dispute with admissible evidence whether the conduct "was done without gross or wanton negligence."  Del. Code Ann. tit. 10, § 4001.  That determination also requires an assessment of credibility.

Given that the jury, not the Court, resolves genuine disputes of material facts and makes credibility assessments, defendants cannot obtain summary judgment on the state law claims.

### D.  Defendants Waste Judicial Resources by Briefing Supplemental Jurisdiction While Federal Claims Are Pending.

Defendants' Opening Brief argues that if this court does not grant summary judgment to defendants on plaintiffs' state law claims, the court should decline to exercise supplemental

71

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

jurisdiction.  Opening Brief at 90-91.  Section 1367(c) authorizes courts to decline supplemental jurisdiction in narrow circumstances, such as where all federal claims have been dismissed.  But here, plaintiffs' Eighth and Fourteenth Amendments claims remain pending and are factually intertwined with the alleged assault, battery, and intentional infliction of emotional distress claims brought under Delaware law.  Thus, it seems an intentional waste of judicial resources to ask this court to consider how it would act in some future hypothetical universe where plaintiffs' federal claims have been dismissed.

In the event that plaintiffs' federal claims are dismissed on summary judgment (which they should not be), plaintiffs may be amendable to litigate their state-law claims in state court.  Such a procedural posture would permit plaintiffs to appeal the dismissal of their federal claims as they simultaneously go to trial in state court.  Plaintiffs respectfully request that the court table this argument and allow the parties to brief on the issue of supplemental jurisdiction if the court grants summary judgment on the federal claims but not on the state claims.  Obviously, in those circumstances, the court nonetheless retains full discretion to exercise supplemental jurisdiction over the state law claims if the court chooses to do so.  *See Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) ("[T]he district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"); *Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 991 (3d Cir. 1984) (When examining supplemental jurisdiction "court[s] account for several factors, including fairness to the litigants, judicial economy, and the interests of federalism."); *see also Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*, 974 F.2d 391, 398 (3d Cir. 1992) ("[I]t is well settled that, after disposal of a federal claim, a district court has discretion to hear, dismiss, or remand a

72

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

supplemental claim for which there is no independent basis for federal subject matter jurisdiction.").

**VII.    WHETHER PLAINTIFFS ARE ENTITLED TO DAMAGES BECAUSE DEFENDANTS ACTED MALICIOUSLY OR RECKLESSLY IS A JURY QUESTION.**

Defendants' Opening Brief at 91-92 argues that plaintiffs cannot recover for punitive damages and for medical bills paid by DOC. As to the latter category, defendants need not have briefed that issue. Defense counsel was already advised by discussions and discovery responses pursuant to Local Rule 9.4 that plaintiffs are not seeking to recover medical costs paid by DOC. As to the former category (punitive damages), this court needs not credit defendants' tautological argument that such damages cannot be recovered because plaintiffs failed to establish constitutional violations.

Given the evidentiary record replete with significant and genuine disputes about material facts that bear on whether punitive damages are available, summary judgment precluding the award of punitive damages would be contrary to controlling law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012); *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); and *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). In sum, a jury needs to decide both whether plaintiffs established constitutional violations and whether plaintiffs proved defendants acted maliciously and recklessly.

## CONCLUSION

Plaintiffs are entitled to a jury trial. A jury should determine whether it is permissible to allow SCI correctional guards to repeatedly brutalize inmates with OC spray and physical violence

73

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

in circumstances devoid of any threat.  A jury should determine whether it is permissible for a Warden and Deputy Warden to knowingly turn a blind eye to repeated unconstitutional uses of force.  Given that the SORF and the section on failure to supervise set forth admissible evidence creating genuine disputes about material facts, this court should deny defendants' motion for summary judgment, except as to the John Does and the retaliation claims.  Such a result is compelled by F.R.C.P. 56 and controlling Rule 56 jurisprudence.  *Barnes v. Felix*, 605 U.S. --, 145 S.Ct. 1353, 1359 (2025); *Rosser v. Donovan,* 2021 WL 5055837 *3 (3d Cir. November 1, 2021); *Spada v. Houghton*, 2024 WL 4784382 (3d Cir. November 14, 2024); *Smith v. Price*, 610 Fed.Appx. 113 (3d Cir. 2015); and *Patterson v. City of Wildwood*, 354 Fed.Appx. 695 (3d Cir. 2009) (finding district court improperly weighed evidence in granting police officers' motion for summary judgment on excessive force claims).

*/s/ Daniel A. Griffith*

Daniel A. Griffith, Esq. (ID # 4209)
Whiteford, Taylor & Preston LLC
Courthouse Square
600 North King Street, Suite 300
Wilmington, DE 19801-3700
Telephone: (302) 353-4144
Email: dgriffith@wtplaw.com


and

Dwayne Bensing, Esq. (ID #6754)
ACLU Delaware
100 W. 10 Street, Suite 706
Wilmington DE 19801
Telephone: (202) 445-1409
Email: dbensing@aclu-de.org

74

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

*Attorneys for Plaintiffs*

Dated: July 7, 2025

75

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

The court order governing the length of the Opposition provided that plaintiffs had one hundred pages for an Opposition. It did not set forth any separate page limit for a rebuttal statement of facts. To ensure compliance, plaintiffs included their Statement of Rebuttal Facts within the Opposition. The Opposition complies with the order and does not exceed one hundred pages.

/s/ Daniel A. Griffith
Daniel A. Griffith, Esq. (ID # 4209)

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 C OR BY COURT ORDER

**IN THE DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 1:21-cv-01773 GBW-EGT |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| KIRK NEAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I, Daniel A. Griffith, Esquire, hereby certify that on this 7th day of July, 2025, that a true

and correct copy of Plaintiffs' Opposition to Defendants' Omnibus Motion for Summary Judgment

was served upon all counsel of record via CM/ECF and electronic mail.

/s/ Daniel A. Griffith
Daniel A. Griffith, Esq. (ID # 4209)
Whiteford, Taylor & Preston LLC
Courthouse Square
600 North King Street, Suite 300
Wilmington, DE 19801-3700
Telephone: (302) 353-4144
Email: dgriffith@wtplaw.com

*Attorneys for Plaintiffs*

Dated: July 7, 2025